EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: Aprobación de las Reglas de Conducta Profesional de Puerto Rico; Requisito de créditos de educación jurídica continua sobre las Reglas de conducta Profesional; Comité Asesor Permanente para la Revisión de la Reglas de Conducta Profesional | 2025 TSPR 64 216 DPR ___ |

Número del Caso:   ER-2025-0002

Fecha:   17 de junio de 2025

Materia: Aprobación de las Reglas de Conducta Profesional de Puerto Rico; Requisito de créditos de educación jurídica continua sobre las Reglas de conducta Profesional; Comité Asesor Permanente para la Revisión de la Reglas de Conducta Profesional.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Aprobación de las Reglas de Conducta Profesional de Puerto Rico; Requisito de créditos de educación jurídica continua sobre las Reglas de Conducta Profesional; Comité Asesor Permanente para la Revisión de las Reglas de Conducta Profesional

ER-2025-02

RESOLUCIÓN

En San Juan, Puerto Rico, a 17 de junio de 2025.

En el descargue de nuestra responsabilidad de reglamentar la práctica de la profesión legal en Puerto Rico, en el 1970 aprobamos el Código de Ética Profesional fundamentado principalmente en los Cánones de la American Bar Association (ABA) de 1908. Este código es el cuerpo legal ético que por los pasados cincuenta y cinco años ha regulado las actuaciones de la clase togada en el país mediante unas normas mínimas de conducta profesional. Los cambios en la práctica de la abogacía, los avances tecnológicos y la nueva jurisprudencia interpretativa que inciden en los cánones tuvieron como consecuencia que este Tribunal considerara y comenzara un proceso de evaluación de sus preceptos.

La reglamentación de la conducta profesional de aquellas personas que ejercen el noble oficio de la abogacía no es tarea liviana. Se trata de garantizar que las personas llamadas a defender a las poblaciones más vulnerables y a la búsqueda de la justicia cumplan con el estándar ético necesario. El desarrollo de normas éticas sustantivas que considere el balance de los intereses de las personas que abogan por la justicia y de aquellas que soliciten sus servicios, mientras se integran los cambios normativos en nuestra jurisdicción y el aumento en el uso de la tecnología

para tramitar los procesos legales, requiere de un examen sosegado y amplio que resulta necesario para asegurar una eficiente administración de la justicia.

En ánimo de obtener una propuesta cabal, meticulosa y articulada, mediante la Resolución de 25 de marzo de 2022, EC-2022-02, este Tribunal constituyó el Comité Especial para la Revisión del Proyecto de Reglas de Conducta Profesional de Puerto Rico (Comité Especial), adscrito al Secretariado de la Conferencia Judicial y Notarial (Secretariado).[1] Esto, con el propósito de validar el Informe sobre el Proyecto de Código de Conducta Profesional, presentado por el Secretariado, e incluir las recomendaciones necesarias para proponer un cuerpo normativo ético-disciplinario que considerara la tecnología y otros cambios sociales y económicos que han afectado la profesión desde la aprobación del Código de Ética Profesional.

Acorde con lo requerido, el Comité Especial, con el apoyo técnico y jurídico del Secretariado, cumplió la tarea delegada al presentar el Proyecto de Reglas de Conducta Profesional de Puerto Rico (Proyecto de Reglas) y su respectivo Informe sobre el Proyecto de Reglas de Conducta Profesional de Puerto Rico (Informe de Reglas de Conducta Profesional) el 31 de mayo de 2023. Esencialmente, el proyecto usó como punto de partida el contenido de las Reglas Modelo de la American Bar Association (ABA) con ciertas excepciones con el fin de ajustar la propuesta de reglas a nuestra realidad normativa.

Tras un examen exhaustivo del Informe de Reglas de Conducta Profesional, este Tribunal le encomendó al Secretariado una serie de investigaciones de Derecho adicionales y la incorporación de cambios significativos para contar con un cuerpo normativo que regulara los aspectos éticos de la abogacía y la notaría. Luego de realizar el estudio y análisis en Derecho y las modificaciones solicitadas por este Tribunal, el Secretariado compareció nuevamente el 31 de octubre de 2024. Evaluada la propuesta, este Tribunal acordó que el Secretariado debía integrar nuevos cambios a esta como, por ejemplo, regular la competencia y diligencia tecnológica, incluido el uso de la inteligencia artificial, en la profesión legal. Así las cosas, el Secretariado cumplió con esta encomienda el 9 de mayo de 2025.

Tras estudiar detenidamente el contenido del Proyecto de Reglas, así como los cambios y las recomendaciones del Secretariado, este Tribunal aprueba las Reglas de Conducta Profesional de Puerto Rico, las cuales se hacen formar parte integral de esta Resolución. Este Tribunal adopta las nuevas reglas al amparo del poder inherente de regular la profesión legal.

---

[1] *In re Comité. Revisor Cód. Conducta Prof.*, 209 DPR 35 (2022).

La adopción de este cuerpo normativo constituye la inserción de la práctica de la profesión legal en nuestra jurisdicción como una de avanzada en materia ética. La nueva estructura normativa va a transformar la forma en que se conducen los trabajos legales y, junto a nuestros pasos afirmativos para lograrlo, esta transformación será una continua a través de los años venideros. Esta aprobación ocurrió en el marco de un proceso participativo en el cual a través del tiempo todos los sectores con interés tuvieron la oportunidad de expresarse. Se agradece la participación de todas estas personas, pues sus aportaciones fueron pieza clave en el desarrollo de este cuerpo reglamentario.

El nuevo marco normativo de la práctica de la abogacía incorpora, entre otros, los siguientes cambios fundamentales:

- Están estructuradas en reglas – en lugar de cánones – que establecen las normas de carácter vinculante que regirán la conducta profesional de quienes ejercen la abogacía y la notaría en Puerto Rico.[2] En consecuencia, en un mismo cuerpo ético-normativo se regula la práctica de la abogacía y la notaría. Se integran, por primera vez, los deberes de las personas que ejercen la notaría para particularizar la conducta ética-profesional en el ejercicio de la función notarial.
- Cada regla se acompaña con un comentario que explica e ilustra su significado y propósito para fines de interpretación o provee recomendaciones a las personas que ejercen la profesión legal. Estos comentarios no añaden obligaciones adicionales a las y los profesionales del Derecho.
- Se añade una regla de definiciones (Regla 1.0) que aportarán a la precisión e interpretación uniforme de la terminología que se integra en las reglas y los comentarios, así como también se introducen ciertas definiciones en las propias reglas o comentarios.
- Respecto a los honorarios (Regla 1.5), se establece un cambio sustancial en la normativa ética en la medida que el acuerdo de honorarios contingentes deberá estar por escrito. También, se establece cuándo se autoriza dividir los honorarios entre las y los profesionales de la abogacía que no ejercen en la misma oficina, entre otros asuntos.
- Se detalla con mayor puntualidad los deberes sobre la confidencialidad de la información (Regla 1.6) y los deberes hacia las y los clientes actuales (Regla 1.7) y anteriores (Regla 1.9) en la práctica de la abogacía y la notaría.
- Se reincorpora en la normativa ética la autorización para asumir la representación de una o un cliente

---

[2] Las Reglas de Conducta Profesional siguen, en gran medida, el orden temático de las Reglas Modelo de la American Bar Association, con excepción de la Regla 1.0 (Definiciones), la Regla 1.19 (Competencia y diligencia tecnológica), y las reglas del Capítulo II (La función de asesoramiento).

cuando exista un conflicto de intereses concurrentes si, entre otras cosas, cada cliente afectada o afectado dio su consentimiento informado, ratificado por escrito (Regla 1.7).

- Se añaden prohibiciones para la o el profesional del Derecho en cuanto a realizar transacciones comerciales con su cliente, solicitar regalos sustanciales o adquirir intereses en el litigio, entre otros (Regla 1.8).

- La defensa denominada comúnmente como muralla china se adopta en las reglas para evitar la descalificación cuando se proteja la confidencialidad y se salven situaciones de conflicto de intereses, según la Regla 1.10 (Imputación de conflictos de intereses: regla general).

- Se establecen reglas específicas sobre conflictos de intereses para las personas que ejercen la abogacía que se desempeñaron en el servicio público (Regla 1.11) o mientras ocupaban un cargo de juez, jueza, oficial adjudicativo u oficial jurídico, árbitro, árbitra, mediador, mediadora o evaluador o evaluadora neutral (Regla 1.12).

- Se regula la venta de la práctica profesional legal (Regla 1.17), la cual no estaba reglamentada en la normativa ético-profesional.

- Por primera ocasión se crea una regla ética sobre competencia y diligencia tecnológica (Regla 1.19), que reconoce que la tecnología se ha convertido en una herramienta indispensable del ejercicio de la profesión jurídica y notarial.

- Se reconoce en las reglas los deberes de la persona que ejerce la abogacía como interventora neutral en el desempeño de estas funciones (Regla 2.3).

- Por primera vez se regula de forma detallada el deber de las personas que ejercen su cargo en el Ministerio Público, aplicable tanto a la o el fiscal como al procurador o a la procuradora (Regla 3.8).

- Se mantiene la norma que prohíbe a una abogada o un abogado comunicarse con otra persona que tiene representación legal en relación con el asunto objeto de la representación legal, mas se incluyen ciertas excepciones que no estaban en el ordenamiento ético. Además, se adopta la norma jurisprudencial de *Hoyos Gómez v. Tribunal Superior*, 90 DPR 201(1964), reiterada en *Pueblo v. Rodríguez Aponte*, 116 DPR 653, 660 (1985), la cual autoriza a una abogada defensora o un abogado defensor entrevistar a las personas que sean testigos de cargo con anterioridad al juicio, siempre que cuenten con el consentimiento de las y los testigos. (Regla 4.2).

- Se aprueban reglas para regular la práctica de la abogacía y las oficinas legales (Capítulo V), tales como los deberes de las personas que ejercen funciones de supervisión o son socios o socias, así como los deberes de las personas supervisadas y asistentes que

sean empleadas, contratadas o se relacionen con una persona que ejerce la abogacía o con la oficina legal.

- Se reiteran las limitaciones éticas sobre compartir honorarios, aunque, la persona que ejerce la abogacía, queda autorizada para practicar en una oficina legal en la que una persona que no ejerce la abogacía es propietaria de una participación social, solo si se cumplen con los criterios obligatorios enumerados en el inciso (b) de la Regla 5.4(Independencia profesional de la persona que ejerce la abogacía). Sobre esta excepción, este Tribunal efectuará una evaluación sobre su efectividad no más tarde de tres años de la entrada en vigor.

- Se preserva uno de los pilares fundamentales de la abogacía de ofrecer servicios profesionales *pro bono* a las personas sin la capacidad para pagarlos y se precisan las diversas formas en que la persona que ejerce la profesión legal deberá proveer estos servicios (Regla 6.1). De otra parte, se crea una regla particular sobre el deber ético de aceptar una asignación de representación legal de oficio para representar a una persona indigente (Regla 6.2) que va acorde con lo dispuesto en el *Reglamento para la Asignación de Abogados y Abogadas de Oficio de Puerto Rico* (Reglamento para la Asignación de Oficio).[3]

- Se introducen cambios en la forma que una persona que ejerce la profesión legal puede anunciar sus servicios profesionales para atemperarla al derecho constitucional a la libre expresión según la decisión del Tribunal Supremo federal en *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977) (Reglas 7.1 y 7.2).

- Se mantiene la norma ética que prohíbe la solicitación de clientes en persona excepto cuando se den las circunstancias particulares que se indican en la Regla 7.3 (Solicitación de clientes) y se dispone expresamente que esta solicitación puede ser iniciada por, o en beneficio de, una oficina legal.

- Se crean varias reglas concernientes a la integridad de la profesión legal, entre las cuales se encuentran la prohibición de realizar manifestaciones falsas o con grave menosprecio a la verdad sobre las cualificaciones o la integridad de jueces, juezas, funcionariado del Ministerio Público u oficiales adjudicativos (Regla 8.2) y la obligación de informar la conducta profesional impropia de otra abogada u otro abogado, incluso en el cargo de juez o jueza (Regla 8.3).

- El nuevo marco normativo se aparta del concepto general de apariencia de conducta impropia, contenido en el Canon 38 del Código de Ética Profesional de 1970, como criterio para imponer disciplina profesional y en su

---

[3] Aprobado mediante la Resolución de 12 de octubre de 2018, ER-2018-04, *In Re Aprob. y Enmdas. Reglamentos TS*, 201 DPR 261 (2018), según enmendada.

lugar adopta de forma particularizada ciertas instancias de conducta impropia (Regla 8.4).

Las nuevas Reglas de Conducta Profesional entrarán en vigor el 1 de enero de 2026, de manera que la comunidad jurídica se familiarice con el nuevo cuerpo ético normativo. Consecuentemente, a partir de esta fecha, quedarán derogados los Cánones de Ética Profesional de 1970.[4] No obstante, los procesos disciplinarios por las violaciones éticas previas a la vigencia de estas reglas se regirán por los Cánones de Ética Profesional de 1970. Las disposiciones de la Regla 7.2(b)(2) relacionadas con el servicio de referido de abogadas y abogados no entrarán en vigor hasta que este Tribunal apruebe los criterios para cualificarlo.

Por la importancia que reviste la aprobación de esta regulación para la profesión legal, se ordena a todas las personas autorizadas por este Tribunal a ejercer la abogacía, incluso la notaría, con estatus activo o suspendidas temporalmente, a partir de este momento, a tomar un mínimo de seis horas crédito en cursos de educación jurídica continua que traten principalmente sobre las nuevas normas éticas que hoy adoptamos en o antes del 31 de diciembre de 2026. Los cursos deberán estar preaprobados, aprobados o acreditados por el Programa de Educación Jurídica Continua del Tribunal Supremo (PEJC).

Este requisito especial únicamente se exigirá en una sola ocasión y es distinto al cumplimiento de las horas crédito obligatorias del *Reglamento del Programa de Educación Jurídica Continua* (Reglamento del PEJC)[5] o de cualquier otro requisito de horas crédito, incluso sobre la nueva regulación ética, que sea exigido de forma particular por este Tribunal. Se dispone, además, que las personas que soliciten la reactivación o la readmisión a la profesión, entre las demás condiciones requeridas en tales procesos, deberán completar el mínimo de las seis horas crédito aquí establecidas.

Se decreta que el requisito especial de seis horas crédito podrá formar parte del mínimo de veinticuatro horas crédito de educación jurídica continua por periodo trienal de cumplimiento y utilizarse como parte de las cuatro horas crédito que se deben dedicar a cursos de ética profesional. El requisito especial deberá acreditarse aun si la abogada o el abogado ya cumplió con las cuatro horas créditos en materia de ética durante su periodo trienal.

Las personas que ejercen la profesión legal que sean recursos de educación jurídica continua o impartan cursos de Derecho, a tiempo completo o parcial en escuelas de Derecho de las universidades reconocidas por este Tribunal o por la ABA, podrán acreditar los cursos que ofrezcan sobre

---

[4] Aprobado mediante la Resolución de 24 de diciembre de 1970, *Código de Ética Profesional*, 99 DPR 999 (1970), según enmendado.
[5] Aprobado mediante la Resolución de 2 de junio de 2017, ER-2017-4, *In re Aprobación Reglamento PEJC*, 198 DPR 254 (2017), según enmendada.

la nueva normativa ética para cumplir con las seis horas crédito mediante el mecanismo alterno que establece la Regla 34 del Reglamento del PEJC.

Se excluye de cumplir con este requisito a: (1) las juezas y los jueces del Tribunal General de Justicia de Puerto Rico, de la Corte Federal para el Distrito de Puerto Rico, de la Corte de Quiebras y las magistradas y los magistrados federales para el Distrito de Puerto Rico y las exjuezas y los exjueces de este Tribunal;(2) las y los profesionales del Derecho con estatus de inactivo o de baja voluntaria ante la Secretaría del Tribunal Supremo;(3) las abogadas y los abogados que se hayan separado del ejercicio de la profesión de forma permanente;(4) las y los profesionales del Derecho que soliciten ante la Junta de Educación Jurídica Continua y obtengan una exoneración por razones de justa causa; [6] (5) las y los integrantes del Comité Asesor Permanente para la Revisión de las Reglas de Conducta Profesional, y (6) las personas que se encuentran admitidas a practicar la abogacía por cortesía a la fecha de la aprobación de esta Resolución. No obstante esto último, este Tribunal podrá requerir a las personas que soliciten admisión por cortesía que tomen el número de créditos que estime conveniente sobre el nuevo ordenamiento ético de conducta profesional como condición para autorizarle a postular como abogada o abogado en Puerto Rico.

Las y los profesionales del Derecho deberán evidenciar el cumplimiento ante el PEJC mediante el envío de la certificación de cumplimiento, la cual se hace formar parte de esta Resolución, junto al certificado de participación del curso emitido por una proveedora o un proveedor de educación jurídica continua.[7] Esta información está sujeta a verificación y rectificación como parte del proceso de validación del PEJC. La Directora Ejecutiva del PEJC podrá establecer una dirección de correo electrónico única que deberá utilizarse para remitir la certificación de cumplimiento.[8] En cuyo caso, se divulgará esta información

---

[6] Las razones de justa causa son situaciones como una enfermedad o la insolvencia económica que impiden a la o el profesional del Derecho cumplir con las horas crédito. Se entenderá que esta exclusión del requisito especial también incluye a las o los profesionales del Derecho que a la fecha de esta Resolución ya cuentan con o soliciten una exoneración por razones de justa causa a tenor con la Regla 4(C)(7) del Reglamento del Programa de Educación Jurídica Continua (Reglamento del PEJC) y el periodo de tiempo de exclusión concedido por la Junta de Educación Continua concluya luego del término para cumplir con las seis horas crédito que se disponen en esta Resolución.

[7] El proceso de las solicitudes de acreditación, mecanismo alterno de cumplimiento o la notificación de las listas que remiten las proveedoras o los proveedores para acreditar la participación y las horas crédito de las y los profesionales del Derecho que tomaron un curso sobre las nuevas Reglas de Conducta Profesional no exime de la responsabilidad de notificar al Programa de Educación Jurídica Continua la certificación de cumplimiento.

[8] En virtud del Reglamento del PEJC, su Junta y la Directora Ejecutiva podrán determinar otros asuntos - no contemplados en esta Resolución -

a la comunidad jurídica, con el apoyo de la Oficina de Comunicación de la Oficina de Administración de los Tribunales (Oficina de Comunicación).

Se instruye al PEJC que transcurridos 75 días desde la fecha límite para el cumplimiento de las y los profesionales del Derecho con esta disposición: (1) evalúe de forma gradual las situaciones de incumplimiento con las horas crédito requeridas en esta Resolución y (2) refiera a este Tribunal a la o el profesional del Derecho que no haya cumplido. Se apercibe a las y los profesionales del Derecho que incumplir con la responsabilidad de tomar un mínimo de seis horas crédito en cursos sobre la nueva normativa ética podría ser causa para el inicio de un procedimiento disciplinario.

Por último, este Tribunal agradece a las y los miembros del Comité Especial por la dedicada labor realizada para elaborar una propuesta de reglamentación ética. Reconocemos el compromiso excepcional, el riguroso estudio del Derecho y la diligencia profesional que cada integrante del Comité Especial desplegó al asesorar a este Tribunal, a saber:[9] Hon. Sigfrido Steidel Figueroa, como su presidente, Lcda. Carmen H. Carlos Cabrera, Lcdo. Guillermo Figueroa Prieto, Lcda. Crisanta González Seda, Not. Dennis D. Martínez Colón, Lcdo. Hiram R. Morales Lugo, Lcdo. Luis M. Negrón Portillo, Lcdo. Manuel A. Quilichini García, Lcdo. Doel R. Quiñones Núñez, Lcda. Ygrí Rivera Sánchez y Lcda. Mayté N. Rivera Rodríguez. Asimismo, se agradece la participación especial del Lcdo. Alfonso Martínez Piovanetti por sus aportaciones puntuales y asesoramiento en el grupo de trabajo que se organizó sobre el tema de competencia y diligencia tecnológica.

Con la aprobación de estas reglas, concluye la encomienda delegada al Comité Especial. A los fines de que la comunidad cuente con el producto del trabajo del Comité Especial, se autoriza divulgar en el Portal del Poder Judicial el Informe de Reglas de Conducta Profesional sometido y el Proyecto de Reglas. La divulgación aquí autorizada se delega en la Directora del Secretariado con el apoyo de la Oficina de Comunicación.

Con miras a mantener la revisión continua de las Reglas de Conducta Profesional, preservar su vigencia y proponer a este Tribunal un Proyecto de Reglas de Procedimiento para Asuntos Disciplinarios, se constituye el Comité Asesor Permanente para la Revisión de las Reglas de Conducta Profesional (Comité de las Reglas de Conducta Profesional). Este quedará conformado por las personas siguientes:

---

para la adecuada implementación en el PEJC del proceso de cumplimiento del requisito especial.

[9] Se reconoce la valiosa aportación y asesoramiento del Lcdo. Alfonso Martínez Piovanetti y el Lcdo. Manuel A. Quilichini García en el grupo de trabajo que se organizó sobre el tema de competencia y diligencia tecnológica.

1. Hon. Sigfrido Steidel Figueroa, como su presidente
2. Lcda. Carmen H. Carlos Cabrera
3. Lcdo. Guillermo Figueroa Prieto
4. Lcda. Crisanta González Seda
5. Not. Dennis D. Martínez Colón
6. Lcda. Milagros Martínez Mercado
7. Lcdo. Hiram R. Morales Lugo
8. Lcdo. Luis M. Negrón Portillo
9. Not. Virmarily Pacheco Rivera
10. Lcdo. Manuel A. Quilichini García
11. Lcdo. Doel R. Quiñones Núñez
12. Lcda. Ygrí Rivera Sánchez
13. Lcda. Mayté N. Rivera Rodríguez

El Comité de las Reglas de Conducta Profesional estará adscrito al Secretariado. En conjunto, se les faculta para determinar la organización y el funcionamiento interno de este comité, incluida la facultad de determinar si los trabajos requieren la intervención temporera de otras personas profesionales del Derecho, a los fines de cumplir con el propósito de su creación acorde con lo aquí dispuesto.

Las y los integrantes de este comité quedarán relevados – durante el tiempo que estén en funciones – de cumplir con el PEJC, según la Regla 4(C)(8) del Reglamento del PEJC, y con el Reglamento para la Asignación de Oficio, de conformidad con su Regla 7(b)(6). Se instruye a la Directora del Secretariado a emitir certificaciones anualmente al PEJC y a la Secretaría del Tribunal Supremo para acreditar que el Comité de Reglas de Conducta Profesional haya estado activo.

Previa aprobación de este Tribunal y cuando sea convocado por el Secretariado, la encomienda y la esfera de la actividad del Comité de Reglas de Conducta Profesional, se centrará en lo siguiente:

- Considerar y revisar de manera continua el ordenamiento ético vigente con el objetivo de mantener actualizadas las Reglas de Conducta Profesional, incluso los avances y los cambios que efectúe la American Bar Association en materia ética y las tendencias en ética notarial que desarrolle la Unión Internacional del Notariado Latino.

- Formular y recomendar las enmiendas o modificaciones que sean propias o necesarias para el mejoramiento de las reglas ético-normativas.
- Atender las consultas que le refiera el Secretariado para considerar propuestas de enmiendas a las Reglas de Conducta Profesional.

- Llevar a cabo cualquier otra encomienda que le delegue el Tribunal Supremo en relación con este asunto.

Además, se encomienda al Comité de Reglas de Conducta Profesional a que atienda – como asuntos prioritarios - lo siguiente: (1) elaborar un proyecto de Reglas de Procedimiento para Asuntos Disciplinarios que facilite el procesamiento y evaluación de las quejas ética-disciplinarias presentadas contra las personas que ejercen la abogacía y la notaría, (2) desarrollar una propuesta de los criterios para el servicio de referido de abogadas y abogados, según la Regla 7.2 (Comunicaciones concernientes a los servicios de personas que ejercen la abogacía: Reglas Específicas) y (3) evaluar la efectividad de las disposiciones del inciso (a)(5) y (b) de la Regla 5.4 no más tarde de tres años de su entrada en vigor. El Comité de Reglas de Conducta Profesional, en conjunto con el Secretariado, trazará un plan de trabajo para cumplir con estas encomiendas prioritarias en un plazo oportuno.

Se ordena al Secretariado, con el apoyo de la Oficina de Comunicación y la Oficina de Prensa de la Oficina de Administración de los Tribunales, que divulguen en el portal del Poder Judicial y por los medios de comunicación esta Resolución y las nuevas Reglas de Conducta Profesional. De otra parte, el Director Administrativo de los Tribunales adoptará las directrices administrativas necesarias para facilitar que las juezas, los jueces y el funcionariado miembro de la profesión legal del Poder Judicial conozcan y se adiestren sobre el nuevo ordenamiento ético profesional.

Notifíquese al Director Administrativo de los Tribunales, a la Directora de la Oficina de Comunicación, al Director de la Oficina de Prensa y a la Directora de la Oficina de Educación y Relaciones con la Comunidad de la Administración de los Tribunales, a la Junta de Educación Jurídica Continua, a la Directora Ejecutiva del Programa de Educación Jurídica Continua, al Director Ejecutivo de la Academia Judicial Puertorriqueña, a las y los integrantes del Comité Asesor Permanente para la Revisión de las Reglas de Conducta Profesional, a la Directora del Secretariado de la Conferencia Judicial y Notarial, al Presidente de la Asociación de Abogados de Puerto Rico, a la Presidenta del Colegio de Abogados y Abogadas de Puerto Rico, al Presidente del Colegio Notarial y a los Decanos y la Decana de las escuelas y facultades de Derecho de Puerto Rico.

Esta Resolución tendrá vigencia inmediata.

Publíquese.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió un Voto Particular de conformidad en parte y

disidente en parte. La Jueza Presidenta Oronoz Rodríguez hace constar las expresiones siguientes:

Tras décadas de análisis y discusión, en el día de hoy este Tribunal alcanza el punto culminante respecto al marco jurídico que gobernará la conducta ética que se espera en la práctica de la profesión legal en Puerto Rico. Así, 55 años luego de que se aprobara el Código de Ética Profesional que hoy rige, comenzamos un nuevo capítulo en la práctica de la abogacía. En este contexto, al abordar la confección de las Reglas de Conducta Profesional que hoy aprobamos, perseguimos lograr el balance justo entre preservar llamados imperativos y exhortativos que tienen el propósito de elevar el estándar de conducta de la profesión legal y establecer la regulación de su conducta en situaciones que, de otro modo, no serían previstas. Este estudio toma en consideración la diversidad de situaciones que confrontan en el ejercicio de su profesión las abogadas y los abogados, así como aquellos que ejercen la indispensable labor del notariado puertorriqueño. Nuestro norte ha sido reconocer la modernidad en el ejercicio de esta profesión digna, y proteger a la ciudadanía de aquellas personas que no asumen con seriedad y compromiso el juramento que hicieron al ser admitidas a la práctica legal. Para lograr esto apostamos por un esquema más completo y preciso de normas para garantizar el debido proceso de ley de aquellas personas que son llamadas a responder por su conducta en un proceso disciplinario.

Aprobamos reglas que velan por los derechos de las personas acusadas y procuramos atemperar la práctica de la abogacía a los retos y las oportunidades que presenta la era digital. Específicamente, aprobamos la Regla 3.8 para atender los deberes especiales que pesan sobre los abogados y las abogadas que se desempeñan como fiscales o defensores. De este modo, promovemos un sistema jurídico dirigido a alcanzar la verdad para lograr la justicia. Además, se incluyó la Regla 1.19 sobre competencia y diligencia tecnológica. Mediante esta atendemos las ventajas y los riesgos que presenta el uso de la inteligencia artificial y de la tecnología en el quehacer de la profesión.

No obstante lo anterior, consigno mi oposición respecto a la aprobación de la Regla 5.4, mediante la cual se permite que personas que no han sido admitidas a la práctica legal funjan como socios en una oficina legal y compartan honorarios con abogados y abogadas. Esta medida tiene el efecto potencial de ocasionar que

intereses ajenos a la práctica legal intervengan en ella en detrimento de la estabilidad de los negocios jurídicos que queremos avanzar de manera efectiva pero correcta. No concurro con una mayoría de este Tribunal en cuanto a que Puerto Rico es la jurisdicción con las mejores condiciones para asumir este experimento.

De igual modo, si bien creo que la adopción de estas normas es necesaria y un avance importante en nuestro estado de derecho, tengo reparo en cuanto a la inclusión de reglas normativas sobre la práctica de la notaría en las Reglas que hoy aprobamos. Esto, pues el ejercicio del notariado es una labor inherentemente pública que desempeña un rol esencial en el tráfico jurídico. De ahí surge el deber del notariado para con la fe pública, la cual es una distinción fundamental entre la práctica de la abogacía y la práctica de la notaría. Los abogados y las abogadas representan los intereses de sus clientes, los notarios y las notarias no. Por ello, en su función, el notario o la notaria no es abogado o abogada de ninguna de las partes que comparecen a los documentos y negocios jurídicos que autoriza. La naturaleza del notariado latino y las cualidades que diferencian su práctica de la anglosajona ameritaban que su reglamentación se atendiera de manera separada y consistente con el desarrollo normativo en los países que esta práctica reconoce su especialización.

Nuevamente, a pesar de mis reparos, no albergo duda de que las Reglas que hoy aprobamos constituyen un paso de vanguardia que reconcilia de manera cohesiva la labor disciplinaria de este Tribunal con la realidad de la práctica de la profesión legal en Puerto Rico. Confío en que con su implementación alentaremos una práctica legal consciente de su rol en la sociedad puertorriqueña.

Reconocemos y agradecemos la labor del Comité Especial para la Revisión del Proyecto de Reglas de Conducta Profesional de Puerto Rico compuesto por: el Hon. Sigfrido Steidel Figueroa, como su presidente, la Lcda. Carmen H. Carlos Cabrera, el Lcdo. Guillermo Figueroa Prieto, la Lcda. Crisanta González Seda, el Not. Dennis D. Martínez Colón, el Lcdo. Hiram R. Morales Lugo, el Lcdo. Luis M. Negrón Portillo, el Lcdo. Manuel A. Quilichini García, el Lcdo. Doel R. Quiñones Núñez, la Lcda. Ygrí Rivera Sánchez y la Lcda. Mayté N. Rivera Rodríguez. Asimismo, destacamos la labor indispensable de la Lcda. Melissa A. Pagán Osorio, directora del Secretariado de la Conferencia Judicial y Notarial de este Tribunal

Supremo y de su equipo de trabajo. También deseo expresar que el trabajo realizado durante más de una década por pasadas directoras, abogadas y abogados que integraron el Secretariado no pasa por desapercibo por el Tribunal y fue esencial para alcanzar este logro. De igual modo, agradecemos a todos los profesionales del Derecho, que desde la academia o diversos foros, se interesaron por el tema y compartieron sus ideas y visiones con este Tribunal, en busca de lograr un nuevo cuerpo normativo que responda a la práctica jurídica del 2025.

La Jueza Asociada señora Pabón Charneco hace constar las expresiones siguientes:

Hoy, este Tribunal como foro que ostenta el poder inherente y exclusivo para reglamentar, admitir y separar a las abogadas y los abogados que postulan ante los Tribunales y organismos administrativos en Puerto Rico, deja a un lado el Código de Ética Profesional, 4 LPRA Ap. IX, adoptado en 1970, a favor de la adopción de las Reglas de Conducta Profesional de Puerto Rico.

Luego de cincuenta y cinco (55) años emitimos una reforma comprensiva del conjunto de normas con el fin de promover el desempeño personal y profesional de las abogadas y los abogados de acuerdo con los más altos principios de conducta decorosa en pro de la profesión legal, la ciudadanía y las instituciones de justicia. *Véase, In re Ramos Bahamundi*, 2025 TSPR 43, pág. 8, 215 DPR _ (2025); *In re Navedo Dávila*, 203 DPR 300, 306 (2019); *In re Suárez Jiménez*, 192 DPR 152, 159 (2014); *In re Gervitz Carbonell*, 162 DPR 665, 686 (2004).

Las Reglas de Conducta Profesional atienden los retos presentados por las nuevas tecnologías y los cambios que han surgido en la práctica de la abogacía desde la aprobación del Código de Ética Profesional, *supra*. Además, con su aprobación Puerto Rico se une a los cincuenta estados norteamericanos y al Distrito de Columbia en adoptar un ordenamiento ético profesional basado en los *Model Rules of Professional Conduct* (Reglas Modelo) de la *American Bar Association*. Lo anterior, presenta un avance importante al uniformar nuestro ordenamiento con la práctica y costumbre de estas jurisdicciones.

Por otra parte, las Reglas de Conducta Profesional de Puerto Rico rompen con la longeva inercia en cuanto a la innovación en la reglamentación de la Profesión Legal. Entre las Reglas que hoy adoptamos, la Regla 1.19 requiere

que los Profesionales del Derecho mantengan un grado de competencia tecnológica, contemplando específicamente los deberes éticos de uso de la inteligencia artificial.

Puntualizo que las normas adoptadas no ponen fin al sistema híbrido o mixto del Derecho Civilista y del Derecho Común en nuestra jurisdicción disciplinaria. Aun cuando la uniformidad con otras jurisdicciones norteamericanas constituye uno de los principales beneficios de la Reglas Modelos, es importante notar que entre los ordenamientos éticos vigentes existen variaciones entre los estados.[10] Siendo ello así, en las Reglas adoptadas se prestó especial atención a la reglamentación ética de la función notarial.

En Puerto Rico la notaría es practicada por personas que primero deben ser admitidas a la profesión legal. Esto representa un elemento distintivo de la práctica notarial puertorriqueña, rompiendo con la tradición del Derecho Común donde los notarios no son representantes de la fe pública y el ejercicio de la abogacía no es prerrequisito para ejercer esa profesión. Además, se distancia de otras jurisdicciones de tradición civilista donde el notariado constituye una profesión separada e independiente a la abogacía.[11] Siendo así, se optó por integrar dentro del orden temático de las Reglas de Conducta Profesional las disposiciones pertinentes a la práctica notarial. Entiendo que estas atienden los asuntos éticos particulares a la función notarial y en gran medida evitan trastocar las disposiciones de la Ley Notarial de Puerto Rico, el Reglamento Notarial y la labor de la Oficina de Inspección de Notarías (ODIN).

---

[10] Lo anterior surge claramente de un estudio de las tablas comparativas provistas por la ABA. Véase, ABA, *Jurisdictional Rules Comparison Charts*, https://www.americanbar.org/groups/professional _responsibility/policy/rule_charts/ (última visita, 5 de junio de 2025).

[11] De manera ilustrativa, en el *Informe sobre el Proyecto de Reglas de Conducta Profesional de Puerto Rico (*Informe*)* presentado el 31 de mayo de 2023 por el Comité Especial para la Revisión del Proyecto de Conducta Profesional de Puerto Rico (Comité Especial) se destacaron las jurisdicciones civilistas de Costa Rica, Veracruz, México, la Provincia de Misiones, Argentina, Bolivia, Chile, Paraguay y Perú. En particular, tanto en Costa Rica como en Veracruz, México la supervisión del desempeño de la persona notaria recae en el poder ejecutivo y no en el judicial. Por otra parte, en las otras jurisdicciones mencionadas se prohíbe la práctica de la abogacía por parte del notario. Comité Especial, *Informe,* págs. 54-81.

Como último punto, expreso mi preocupación con la adopción de la Regla 3.8 que plantea delinear los deberes especiales de las abogadas y los abogados en los procesos penales. Por lo general, los ordenamientos éticos tienden a ser normas de aplicación general que establecen la conducta apropiada para todo profesional del derecho. Así las cosas, no surge razón alguna para regular con particularidad a los fiscales *vis a vis* a los registradores de la propiedad y otros procuradores que no cuentan con una regla específica. En gran medida, la Regla 3.8 presenta una intromisión de nuestro ordenamiento ético en las facultades del Departamento de Justicia para disciplinar a sus fiscales y abogados por incumplir con las responsabilidades del cargo público.

No obstante, estoy conforme con la *Resolución* que se certificó. Tras medio siglo, este Tribunal da paso a una reforma integral del ordenamiento Ético Profesional de la abogacía, bajo el cual se disciplinará a los abogados y abogadas a base de criterios específicos y objetivos. Abandonamos la práctica de considerar el Preámbulo y los Criterios Generales del Código de Ética, al igual que, utilizar la apariencia de conducta impropia del Canon 38, por sí sola, como base para disciplinar a abogados y abogadas. Tal como intimé previamente *In re Hoffmann Mouriño*, 194 DPR 179, 194 (2015), era necesario analizar y revaluar nuestro Código de Ética con el fin de proveer un "grado de certidumbre a los miembros de la profesión legal en cuanto a la conducta que este Tribunal considera que infringe el Código". Con satisfacción, entiendo que hemos dado un paso en esa dirección.

El Juez Asociado señor Colón Pérez hace constar las expresiones siguientes:

La aprobación de un nuevo ordenamiento deontológico en nuestro País, tras aproximadamente cincuenta y cinco (55) años desde la promulgación del primero, constituye un hito de trascendental importancia para la consolidación de los principios éticos que rigen la conducta de los y las profesionales del derecho en nuestra jurisdicción. Este logro refleja el compromiso de las instituciones y la sociedad en su conjunto por actualizar y fortalecer los valores que sustentan el ejercicio responsable de la profesión legal, adaptándola a los desafíos y realidades del mundo contemporáneo.

Y es que, a lo largo de estos cincuenta y cinco (55) años, los cambios sociales,

tecnológicos y culturales han transformado profundamente el panorama en el que los y las profesionales del derecho desempeñan sus labores. La aprobación de este documento evidencia, pues, una capacidad de adaptación y un reconocimiento de que la ética debe evolucionar para abordar dilemas contemporáneos, como el impacto de la tecnología, la globalización y las nuevas dinámicas sociales. Este esfuerzo es también un testimonio del diálogo constructivo entre los diversos actores involucrados, quienes han sabido consensuar un marco que promueva en nuestro País la conducta decorosa, la excelencia y la responsabilidad.

Sobre este último extremo, vaya al Hon. Sigfrido Steidel Figueroa, como su Presidente, y a los licenciados y licenciadas, Carmen H. Carlo Cabrera, Guillermo Figueroa Prieto, Crisanta González Seda, Dennis D. Martínez Colón, Hiram R. Morales Lugo, Luis M. Negrón Portillo, Manuel A. Quilichini García, Doel R. Quiñones Núñez, Ygrí Rivera de Martínez y Mayté N. Rivera Rodríguez, todos y todas miembros del Comité Especial para la Revisión del Proyecto de Reglas de Conducta Profesional, nuestro más sincero agradecimiento por la labor, de primer orden, aquí realizada. Agradecimiento que también hacemos extensivo al Lcdo. Alfonso Martínez Piovanetti, quien tuvo una participación especial en los trabajos.

Según señalamos al comienzo de los procesos que buscaban darle vida a un nuevo ordenamiento ético-disciplinario en nuestra jurisdicción, en ese entonces, nos preocupaba grandemente que el resultado final de la encomienda delegada al Comité Especial fuese la adopción automática de las Reglas Modelo de Conducta Profesional de la *American Bar Association* (ABA), así como de los comentarios que contienen cada una de dichas reglas, como algunos de los integrantes de este Tribunal proponían. La viabilidad o no de ello era un asunto que, a nuestro juicio, le correspondía analizar, con particular detenimiento, a los miembros del referido Comité que recién se nombraba, en atención a las particularidades de nuestra jurisdicción. Véase, *In re Comité Especial para la revisión del Informe sobre el Proyecto de Código de Conducta Profesional de Puerto Rico,* 209 DPR 35 (2022) (expresiones del Juez Asociado señor Colón Pérez).

Así las cosas, finalizada su tarea, evaluado el nuevo ordenamiento deontológico que el Comité Especial presentó ante nuestra consideración,

entendemos que, -- salvo por contadas excepciones --, nuestras preocupaciones quedaron atendidas. Hoy se adopta un ordenamiento ético-disciplinario que no solo es reflejo de las corrientes internacionales en los temas que se discuten el mismo, sino que también atiende las particularidades que tiene el ejercicio de la profesión legal en nuestro Puerto Rico.

En fin, este nuevo ordenamiento deontológico que hoy se presenta es motivo de orgullo y un llamado a la acción para todos los y las profesionales del derecho del País. **Aprobar unas nuevas *Reglas de Conducta Profesional* después de tanto tiempo no solo honra la tradición ética que nos precede, sino que también establece un compromiso renovado con las generaciones futuras**. Este documento se convierte, pues, en una guía para enfrentar los retos del presente y del futuro con una brújula moral clara, asegurando que la confianza de la sociedad en nuestra profesión legal se mantenga firme.

Aun cuando tenemos serios reparos con la adopción de la Regla 5.4, -- la cual permite que los abogados y las abogadas puedan compartir parte del capital de una oficina legal con personas que no están autorizadas a ejercer la profesión legal en Puerto Rico -- , así como con otras de las determinaciones de menor escala a las que aquí se llegaron, celebramos este logro como un paso adelante en la construcción de una sociedad más justa, solidaria e inclusiva, y reconocemos el esfuerzo colectivo que ha hecho posible esta renovación histórica. Como siempre sucede cuando se emprenden tareas de esta magnitud, sin lugar a duda, quedaron asuntos por atender, que quizás requieran de más análisis, para los cuales seguimos abiertos a la conversación.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re<br><br>Aprobación de las Reglas de Conducta Profesional de Puerto Rico; Requisito de créditos de educación jurídica continua sobre las Reglas de Conducta Profesional; Comité Asesor Permanente para la Revisión de las Reglas de Conducta Profesional | ER-2025-02 |

Voto particular de conformidad en parte y disidente en parte emitido por el Juez Asociado Señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 17 de junio de 2025.

Hoy es un día histórico para la comunidad jurídica del país, pues, tras un arduo proceso consultativo y deliberativo, este Tribunal aprueba las Reglas de Conducta Profesional de Puerto Rico (Reglas de Conducta Profesional) que guiarán el futuro de la profesión legal. Ciertamente, al movernos hacia un nuevo esquema ético-disciplinario, estamos en la alborada de una transición considerable en el estado de derecho vigente en nuestra jurisdicción. Sin lugar a dudas, este trascendental acontecimiento representa un paso de avanzada en el ejercicio de nuestro poder inherente para reglamentar la profesión jurídica en Puerto Rico.

Adviértase que el Poder Judicial no ejerció su labor de forma aislada en este esfuerzo. Al contrario, la preparación

de este proyecto conllevó una amplia coordinación con los diversos sectores de la comunidad jurídica, quienes presentaron comentarios y recomendaciones que nutrieron la discusión y fortalecieron las propuestas contenidas en el Proyecto de Reglas de Conducta Profesional de Puerto Rico (Proyecto de Reglas). En ese sentido, la elaboración del Proyecto de Reglas se benefició del cumplimiento con el postulado de participación sectorial de la vasta comunidad jurídica en Puerto Rico, principio que consecuentemente he defendido. Véase, *In re Aprobación Enmdas. Regl. TS*, 212 DPR 244 (2023) (Voto particular del Juez Asociado señor Estrella Martínez).

Asimismo, reconozco la labor de los miembros del Comité Especial para la Revisión del Proyecto de Reglas de Conducta Profesional de Puerto Rico (Comité Especial) en la encomienda de evaluar el Informe sobre el Proyecto de Código de Conducta Profesional del año 2021, presentado por el Secretariado de la Conferencia Judicial y Notarial (Secretariado)[1], para atemperarlo a los cambios más novedosos

---

[1] Es pertinente señalar que, en cumplimiento con la encomienda asignada en el 2013 para elaborar una nueva propuesta de Código de Conducta Profesional que incorporara los cambios más recientes de la American Bar Association a sus Reglas Modelo de Conducta Profesional, así como el proyecto presentado por el Colegio de Abogados y Abogadas de Puerto Rico en 2005 y los comentarios recibidos durante los procesos de consulta celebrados en 2006, 2013 y 2014, el Secretariado presentó, el 30 de septiembre de 2021, el Informe sobre el Proyecto de Código de Conducta Profesional. Véanse *In re Com. Esp. Rev. Cod. Cond. Prof.*, 209 DPR 35 (2022); *In re Extensión Términos I*, 190 DPR 314 (2014); *In re Proy. Conducta Prof. y Regl. Disc.*, 189 DPR 1032 (2013). Este

y sustanciales que han surgido en el ejercicio de la abogacía. Es precisamente de ese proceso de evaluación que surge el Proyecto de Reglas que hoy aprobamos, junto con su respectivo Informe sobre el Proyecto de Reglas de Conducta Profesional de Puerto Rico.

De igual forma, resalto la diversidad de profesionales que caracterizó la composición del Comité Especial y la forma en que este trabajó con miras a cumplir con la labor asignada. El hecho de que se celebraran veintisiete (27) reuniones plenarias y setenta y nueve (79) reuniones internas de los distintos subcomités abona a esa afirmación. Finalmente, elogio sus esfuerzos encaminados a conciliar estas Reglas de Conducta Profesional con el esquema de las Reglas Modelo de la American Bar Association (ABA), pero en observancia de las particularidades inherentes a la profesión legal en nuestra jurisdicción. Sobre este aspecto, como expondré más adelante, aún existe margen para continuar trabajando.

En cuanto al contenido sustantivo de las Reglas de Conducta Profesional, en términos generales, este se distingue por ser un cuerpo reglamentario actualizado que establece obligaciones precisas que todo abogado y abogada deberá observar en el ejercicio de esta ilustre profesión, así como las consecuencias de su incumplimiento. Ante este

---

informe de 2021 fue, precisamente, el que revisó el Comité Especial.

panorama, debo consignar que estoy conforme con la gran mayoría de su contenido normativo.

Sin embargo, si bien reconozco que estas Reglas de Conducta Profesional constituyen un paso en la dirección correcta, debo hacer constar que conservo serias preocupaciones con respecto a algunas de las disposiciones que hoy se aprueban. Asimismo, estimo que se desaprovechó esta coyuntura para introducir cambios en nuestra normativa ética dirigidos a reducir las discrepancias que puedan surgir en la relación cliente-abogado o abogada, particularmente en lo relacionado con el pacto de honorarios legales. Además, considero que se descartaron propuestas de enmienda cuyo objetivo era precisar ciertos aspectos, armonizar las reglas con nuestra jurisprudencia y mantener vigentes algunos de los postulados éticos que han servido en beneficio de toda la comunidad jurídica.

Habida cuenta de lo anterior, en este Voto particular de conformidad en parte y disidente en parte, precisaré los cambios más significativos a los que he conferido mi conformidad. Además, me concentraré en plasmar y fundamentar mi oposición a la inclusión de ciertas reglas y comentarios que, respetuosamente, considero no son congruentes con nuestros postulados éticos vigentes ni la jurisprudencia de este Tribunal. Así también, expondré mi postura sobre aquellas enmiendas a reglas o comentarios que, a mi juicio, debieron incluirse. Por último, explicaré las razones por las cuales favorezco que las reglas éticas dirigidas a la

práctica de la notaría hubiesen sido codificadas en otro cuerpo reglamentario. En fin, a continuación, enunciaré las razones que me impiden impartir un voto de conformidad absoluto a las nuevas Reglas de Conducta Profesional.

**I.**

De entrada, debo destacar que estoy esencialmente conforme con el cambio de paradigma que hoy aprobamos en este nuevo modelo ético-disciplinario: la transición de un Código de Ética Profesional a un modelo de Reglas de Conducta Profesional. Sobre la diferencia conceptual entre ambos modelos, el profesor Guillermo Figueroa Prieto destaca lo siguiente:

> Generalmente se acepta que un código de ética establece los principios generales, o estándares, que deben guiar la conducta de los miembros de una profesión. Usualmente, los códigos de ética se redactan en términos hortatorios, tienden a ofrecer un margen de discrecionalidad y son poco específicos. Por su parte, cuando se adoptan reglas de Conducta Profesional, se define en estas la conducta de los profesionales de manera más específica, tanto la conducta permisible como la conducta prohibida. En un sentido, los códigos y las reglas son similares en cuanto pretenden regir la conducta de los profesionales. Sin embargo, ambos tienen diferencias entre sí sobre la manera de regir tal conducta. La tendencia moderna en Estados Unidos es hacia el uso del término reglas cuando se intenta regir la conducta específica requerida, así como la prohibida al profesional.[2] (Subrayado nuestro).

En ese sentido, vemos que un código de ética presupone la existencia de cánones que se refieren a un principio o

---

[2]G. Figueroa Prieto, Comentarios generales a los proyectos de Código de ética profesional de Puerto Rico y de Reglas de procedimiento para asuntos disciplinarios de la abogacía y la notaría, 84 Rev. Jur. UPR 1007, 1019 (2015).

aspiración máxima de índole general, desprovista de contenido normativo específico.[3] Resáltese que, al movernos hacia la adopción de las Reglas de Conducta Profesional, incorporamos una política pública de reglamentación dirigida a promover normas éticas más claras, específicas y uniformes, cuyo incumplimiento podría conllevar la imposición de medidas disciplinarias.

Como vemos, la adopción de un cuerpo de reglas, más que un cambio semántico, constituye uno conceptual. Por ello, considero favorable que este Tribunal, en el ejercicio inherente de su poder para reglamentar la conducta profesional de la abogacía, se decante por aprobar un Proyecto de Reglas de Conducta Profesional. De este modo, brindamos certeza en cuanto a las conductas sancionables y establecemos parámetros éticos objetivos para ejercer nuestra función disciplinaria.

Consignado este asunto de umbral, procedo a exponer mi postura sobre el contenido sustantivo de las Reglas de Conducta Profesional.

**REGLA 1.0 – DEFINICIONES**

Esta regla resulta sumamente pertinente, ya que proporciona una lista de treinta y seis (36) conceptos que definen ciertas conductas y estados mentales que sirven de base para sancionar las conductas prohibidas en las

---

[3]S. Steidel Figueroa, Ética para juristas: Ética del abogado y responsabilidad disciplinaria, San Juan, Puerto Rico, Ed. SITUM, 2016, pág. 43.

distintas reglas. Además, incluye definiciones de conceptos que estaban ausentes en el derogado Código de Ética Profesional de 1970, 4 LPRA Ap. IX. Esta inclusión no solo facilita la aplicación de las reglas, sino que también fortalece la claridad y la transparencia en la interpretación de las conductas profesionales.

Resalto la inclusión de la definición de lo que constituye un servicio pro bono. Desde mi perspectiva, considero que esto es necesario debido a las implicaciones que tiene en la interpretación de las distintas reglas de este cuerpo reglamentario, particularmente para la Regla 6.1. Así, sostengo que, por su extrema imbricación con la regla aludida, fue acertado incorporar la definición adoptada por este Tribunal en el Reglamento para la Asignación de Abogados y Abogadas de Oficio de Puerto Rico, 4 LPRA Ap. XXXVIII.[4]

## CAPÍTULO I – LA RELACIÓN CLIENTE-ABOGADO O ABOGADA Y REQUIRENTE-NOTARIO O NOTARIA

### A. Regla 1.2 – Alcance de la representación legal y la función notarial

---

[4]Por lo tanto, la definición pro bono quedó consignada como sigue:

> [S]e refiere a aquellos servicios legales que se ofrecen gratuitamente y sin la expectativa de recibir compensación a personas o comunidades de escasos recursos económicos, o a personas jurídicas con limitados recursos para sufragar honorarios y cuya misión primordial es proveer servicios que benefician directamente a personas en estado de insolvencia económica.

En lo que respecta al alcance de la representación legal dispuesto en la Regla 1.2, su inciso (f) indica que la mejor práctica es reducir a escrito los acuerdos de representación legal. Sin embargo, no impone un mandato que exija, como regla general, a los abogados y a las abogadas formalizar estos acuerdos por escritos. Por esta razón, disiento del lenguaje aprobado por una mayoría de este Tribunal. En cambio, considero que esta era una oportunidad propicia para establecer dicha obligación.

Constantemente hemos expresado que, al inicio de la representación legal, la mejor práctica es que las personas que ejercen la abogacía consignen por escrito el contrato de servicios profesionales. *In re Rodríguez Cora*, 193 DPR 447, 458 (2015). Dicho contrato "deberá contener los términos de la relación obligacional, libre de ambigüedades y haciendo constar las contingencias previsibles que pudieran surgir durante el transcurso del pleito." Íd. Lo anterior, para reducir significativamente las posibilidades de desavenencias entre las personas que ejercen la abogacía y sus clientes.

En esa línea, propuse mantener el lenguaje recomendado en el inciso (f) de la Regla 1.2 por el Comité Especial y el Secretariado, el cual establecía lo siguiente:

> (f) Ha de entenderse que la mejor práctica es que etos acuerdos sean reducidos a escritos. **La persona que ejerce la abogacía, como norma general, deberá**

**hacer constar los acuerdos de representación legal por escrito.**[5]

De este modo, el lenguaje previamente propuesto serviría como un mecanismo de protección frente a posibles conflictos éticos que pudieran surgir por la falta de constancia sobre el alcance del contrato de representación legal. Esto, sin implicar que quienes ejercen la abogacía puedan utilizarlo como un subterfugio para eludir señalamientos éticos bajo el pretexto de la inexistencia de un vínculo jurídico.

## B. Regla 1.3 – Diligencia

Estoy conforme con la aprobación de esta regla, la cual establece el deber de diligencia requerido a todo miembro de la comunidad jurídica. De ese modo, todo abogado o abogada "deberá actuar con diligencia razonable y prontitud al asumir la representación de su cliente". Adviértase que esta regla es equivalente al Canon 18 del derogado Código de Ética Profesional, *supra*.

Por su parte, mediante el comentario [5], se aconseja a toda persona que practica la profesión legal por cuenta propia que, como parte del deber de diligencia, designe un abogado sustituto o una abogada sustituta en caso de muerte, disminución de capacidad o cuando se desconozca su paradero, circunstancia en la que se le conocerá como abogado designado o abogada designada. Por su relevancia, procedo a exponer <u>in extenso</u> el contenido del comentario aludido:

---

[5]Se advierte que lo resaltado en negrillas representa lo que el Juez que suscribe hubiese incorporado al texto de la regla.

[5] Para evitar el abandono de los asuntos del o de la cliente, el deber de diligencia hace aconsejable que un abogado o una abogada que trabaja por cuenta propia designe de antemano a otra persona que ejerce la abogacía de forma competente en caso de muerte, incapacidad (disminución de capacidad) o cuando se desconozca su paradero. La persona que ejerce la abogacía así designada, previa autorización de la o del cliente, podrá revisar los archivos, notificar a cada cliente sobre la muerte o la incapacidad de la persona que ejerce la abogacía, y determinar si existe la necesidad de alguna acción protectora inmediata. Las gestiones realizadas por la persona designada que ejerce la abogacía no establecerán una relación cliente-abogado o abogada, a menos que la o el cliente solicite que la abogada designada o el abogado designado le represente.

La persona que ejerce la abogacía notificará al abogado o a la abogada que se propone designar para estas gestiones, quien deberá expresar su aceptación por escrito. Aceptada la designación, deberá comunicar cualquier cambio en sus circunstancias que le impida continuar como abogada o abogado designado.

A mi juicio, lo propuesto en este comentario representa una de las principales novedades introducidas por las Reglas de Conducta Profesional. Esta medida fomenta la continuidad en la prestación de servicios legales, al evitar que los asuntos de las y los clientes queden desatendidos ante la ausencia o el impedimento del abogado o la abogada titular de la representación legal. Además, refuerza el compromiso ético de la profesión legal al garantizar que los intereses de las personas representadas no se vean perjudicados por circunstancias ajenas a ellas. Por esta razón, estoy conforme con que se asiente la figura del abogado designado o la abogada designada en nuestra jurisdicción.

## C. Regla 1.5 (b) - Honorarios

En cuanto a este tema, que resulta de vital importancia para la clase togada y para la sociedad en general, la Regla 1.5 (b) quedó configurada de la forma siguiente:

> (b) El alcance de la representación y la base o tarifa que se utilizará para calcular los honorarios y gastos por los cuales responderá su cliente, le serán comunicados, preferiblemente por escrito, antes o razonablemente cerca de haber comenzado su representación, excepto cuando se trate de un o una cliente regular bajo la misma base o tarifa. Cualquier propuesta de cambio en la base o tarifa de los honorarios o gastos también le será informado a la o el cliente.

En concordancia con mi postura, disiento del lenguaje aprobado por una mayoría de este Tribunal, toda vez que no contiene un mandato que exija, como regla general, que todo pacto de honorarios legales y gastos sea comunicado y aceptado por escrito por el o la cliente. En cambio, considero que se debió aprovechar esta coyuntura para establecer tal requisito de manera expresa y de cumplimiento obligatorio e ineludible. Me explico.

Es sabido que, por su naturaleza, en el contrato de servicios legales convergen los elementos clásicos de un contrato de arrendamiento de servicios profesionales y las consideraciones éticas que permean la profesión jurídica. Por ello, se ha catalogado como un contrato sui generis. En ese sentido, el pacto suscrito entre un cliente y un abogado o abogada se distingue de otros contratos típicos de arrendamiento de servicios, pues "[l]a relación entre abogado y cliente responde en gran medida a las inexorables

exigencias éticas, muy particulares de esta profesión". *In re Rodríguez Cora, supra*, pág. 457 (citando a *Nassar Rizek v. Hernández*, 123 DPR 360, 369 (1989)).

Pese a lo anterior, el Canon 24 del Código de Ética Profesional, *supra*, solo dispone que es deseable que una persona que ejerce la abogacía "llegue a un acuerdo sobre los honorarios a ser cobrados por el abogado al inicio de la relación profesional y que dicho acuerdo sea reducido a escrito". Íd. Al interpretar el alcance de esta disposición, consecuentemente hemos indicado que, aunque no es obligatorio, constituye la mejor práctica que todo abogado o abogada, al inicio de la representación legal, reduzca a escrito el contrato de servicios profesionales. *In re Rodríguez Cora, supra; In re Rodríguez Mercado*, 165 DPR 630 (2005); *Pérez v. Col. Cirujanos Dentistas de P.R.*, 131 DPR 545 (1992); *Ramírez, Segal & Látimer v. Rojo Rigual*, 123 DPR 161 (1989). Ello, por cuanto reducir a escrito el acuerdo de honorarios legales disminuye significativamente las posibilidades de desavenencias entre las personas que ejercen la abogacía y sus clientes.

**Inclusive, en el pasado hemos sancionado a abogados y abogadas por, entre otros aspectos, no reducir a escrito los honorarios pactados con sus clientes.** Por ejemplo, en *In re García Ortiz*, 176 DPR 123 (2009), evaluamos un acuerdo verbal de representación legal ante alegaciones de que los honorarios eran excesivos. Para fundamentar parte de la sanción, aplicamos el Canon 24 del Código de Ética

Profesional, *supra*, y concluimos que "el letrado debió suscribir un acuerdo escrito para que no surgieran discrepancias sobre la cuantía o sobre la naturaleza de la gestión para la que fue contratado". Íd., pág. 129. Asimismo, en *In re Delannoy Solé*, 172 DPR 95 (2007), amonestamos al abogado querellado por no detallar por escrito el acuerdo sobre los honorarios que cobraría por sus servicios, así como por no puntualizar de forma específica la cantidad que cobraría o la fórmula para computar los honorarios legales. Por lo anterior, expresamos que "este proceder no es cónsono con las normas del Canon 24 del Código de Ética Profesional, *supra*". Íd., pág. 104.

**Nótese que, en ambos precedentes, aplicamos estrictamente la máxima de que la mejor práctica es reducir a escrito los acuerdos de representación legal.** Por tanto, si la mejor práctica ha sido documentar por escrito los acuerdos de representación legal, ¿por qué no incorporar tal precepto como un requisito general, sujeto a ciertas excepciones?

Consecuente con mi postura, propuse que este Tribunal adoptara el modelo reglamentario implementado en la jurisdicción de Massachusetts, el cual exige que, como norma general, el contrato de representación legal sea reducido a escrito. Este debe incluir el alcance de la representación legal y la base o la tarifa de los honorarios y cómo se sufragarán los gastos asociados al litigio. A su vez, este modelo contempla varias excepciones, a saber, que tal

exigencia no aplica: **a**) a clientes regulares del abogado o la abogada, siempre y cuando no haya cambios en cuanto al monto de los honorarios (de haber un cambio, el mismo debe ser comunicado y aceptado por la o el cliente por escrito); **b**) cuando el abogado o la abogada solo ofrece una consulta por la cual factura; **c**) cuando la persona que ejerce la abogacía razonablemente tenga la expectativa de que el monto de facturación al cliente no excederá los $500.00; y **d**) cuando el caso es de oficio o <u>pro bono</u>, aun cuando el tribunal imponga honorarios legales a favor de un o una cliente indigente.[6] Así las cosas, el lenguaje que propuse fue el siguiente:

> **(b)(1) Excepto lo dispuesto en el párrafo (b)(2),** el alcance de la representación y la base o tarifa que se utilizará para calcular los honorarios y gastos por los cuales responderá su cliente, le serán comunicados, **por escrito**, antes o razonablemente cerca de haber comenzado su representación, excepto cuando se trate de un o una cliente regular bajo la misma base o tarifa. Cualquier propuesta de cambio en la base o tarifa de los honorarios o gastos también le será informado, **por escrito**, a la o el cliente.

> **(b)(2) El deber impuesto por el inciso (b)(1) no aplicará a una consulta legal de una sola sesión o cuando la persona que ejerce la abogacía espere razonablemente que la tarifa total que se le cobrará al cliente sea inferior a $500.00. Se aclara que, cuando se trate de una designación de oficio o de una o un cliente pro bono, no se requerirá que haya un contrato por escrito entre la persona que ejerce la abogacía y el o la cliente.**[7]

---

[6] Véase, *Massachusetts Rules of Professional Conduct* (Mass. R. Prof. C.), Rule 1.5.

[7] Se advierte que lo resaltado en negrillas representa lo que el Juez que suscribe hubiese incorporado al texto de la regla.

En esa línea, también propuse que se incluyera, en la sección de comentarios referente al inciso (b), el lenguaje siguiente:

[2] Cuando la persona que ejerce la abogacía representó regularmente a una o un cliente, de ordinario habrán desarrollado un entendido sobre la base o tarifa de honorarios y los gastos por los cuales la o el cliente será responsable. Sin embargo, en una nueva relación cliente-abogado o abogada se debe establecer prontamente un acuerdo, **por escrito**, sobre honorarios y gastos. **El requisito de que el contrato de representación legal sea comunicado por escrito al cliente, por lo general, se satisface** al proporcionar a la o el cliente al menos un memorando simple o una copia de los honorarios que cobra usualmente, donde establezca de forma general la naturaleza de los servicios legales a prestar, la base, tarifa o suma total de los honorarios y hasta qué medida la o el cliente responderá por los gastos que se produzcan en el curso de la representación.

**[3] Un acuerdo por escrito sobre los términos de la representación reduce la posibilidad de malentendidos entre la persona que ejerce la abogacía y su cliente. El abogado o la abogada debe comunicar por escrito el acuerdo de representación legal y la tarifa pactada de honorarios y gastos al cliente antes de que se inicie la prestación de servicios sustanciales. Cuando la o el cliente contrata a un abogado o una abogada para una consulta de una sola sesión o cuando la persona que ejerce la abogacía espere razonablemente que los honorarios totales del cliente sean inferiores a $500.00, no se requiere que el acuerdo sea comunicado por escrito. No obstante, el alcance de la representación y la base o tarifa de los honorarios y gastos de los que el o la cliente será responsable se le deberán comunicar.**[8]

Habida cuenta de que esta recomendación no obtuvo el aval mayoritario, consigno mi disenso, así como la propuesta que defendí. Me reitero en que este momento representaba el

---

[8]Se advierte que lo resaltado en negrillas representa lo que el Juez que suscribe hubiese incorporado al texto del comentario.

escenario idóneo para descartar el modelo del Canon 24 del Código de Ética Profesional, *supra*, e insertar el requerimiento de que todo pacto de honorarios conste por escrito, sujeto a ciertas excepciones. De esta forma, se fomenta la certeza en el cobro de los honorarios, asunto que la experiencia judicial indica es una de las principales fuentes de divergencia en la relación cliente-abogado o abogada.

## D. Regla 1.5 (c) - Honorarios

Por su parte, el inciso (c) regula lo relacionado con los pactos de honorarios contingentes. Este tipo de arreglo contractual se define como un acuerdo entre la persona que ejerce la abogacía y su cliente, en el cual se establece que únicamente habrá compensación si se prevalece en el caso, y esta será en proporción a la cuantía que se recobre por virtud de sentencia o acuerdo extrajudicial. *Cruz Pérez v. Roldán Rodríguez et al.*, 206 DPR 261, 270-271 (2021); *In re Colón Hernández*, 189 DPR 275, 285 (2013); *Colón v. All Amer. Life & Cas. Co.*, 110 DPR 772, 776 (1981). En ese sentido, el acuerdo de honorarios contingentes se caracteriza por el elemento de riesgo, ya que, de no prevalecer, el abogado o la abogada no podrá cobrar honorarios, independientemente del tiempo y esfuerzo que haya dedicado. Véanse, *In re Acevedo Álvarez*, 178 DPR 685 (2010); *Colón v. All Amer. Life & Cas. Co.*, *supra*. Resáltese que este tipo de contrato tiene que constar por escrito y debe incluir todos los requisitos que exige la regla.

Consecuente con mi postura sobre las formalidades del contrato de representación legal, expreso mi conformidad con la aprobación de este inciso. Considero que la regla, tal cual redactada, otorga mucha flexibilidad a la persona que ejerce la abogacía para pactar sus honorarios en caso de que el pleito se transija, se ventile en su fondo o se prevalezca en apelación.

De igual manera, estoy conforme con la normativa dirigida a que el contrato de honorarios contingentes incluya el alcance de la representación legal. También, debo resaltar que se integraron en los comentarios explicativos de la regla nuestra jurisprudencia en cuanto a las limitaciones impuestas por ciertas leyes especiales que prohíben el cobro de honorarios a los y las clientes. Véase, por ejemplo, *In re Pellot Córdova y otro*, 204 DPR 814 (2020); *Berkan et al. v. Mead Johnson Nutrition*, 204 DPR 183 (2020); *In re Rivera Rodríguez*, 202 DPR 1026 (2019); *In re Acevedo Álvarez*, *supra*.

De igual forma, se incluyeron comentarios referentes al hecho de que ciertas leyes especiales regulan el tope máximo que un abogado o una abogada puede cobrar como honorarios contingentes en casos de daños y perjuicios e impericia médica, particularmente cuando estas reclamaciones involucran a menores de edad.[9]

---

[9]Véanse las disposiciones de la Ley Núm. 9 de 8 de agosto de 1974, 4 LPRA sec. 742, que establecen que, en este tipo de casos, de ordinario, el abogado o la abogada cobrará el 25% y, que solo en la eventualidad de que el tribunal apruebe una cantidad mayor, esta no podrá sobrepasar el 33%.

En consecuencia, el comentario según enmendado, establece que:

> [10] Además de los deberes impuestos en esta regla respecto al cobro de honorarios, toda persona que ejerce la abogacía debe regirse también por las limitaciones estatutarias que existen respecto a la fijación de honorarios profesionales. Entre estas la prohibición de llevar a cabo pactos sobre honorarios con trabajadores o trabajadoras que reclamaren contra sus patronos, según dispuesto por la Ley Núm. 402 de 12 de mayo de 1950, 32 LPRA sec. 3112 et seq. Asimismo, al momento de redactar un acuerdo de representación legal en el que se pacte el cobro de honorarios contingentes, toda persona que ejerce la abogacía deberá observar el límite máximo para los honorarios contingentes en acciones por daños y perjuicios establecido en la Ley Núm. 9 de 8 de agosto de 1974, 4 LPRA sec. 742 y, en reclamaciones por impericia médica establecido en la Ley Núm. 4 de 30 de diciembre de 1986, 26 LPRA sec. 4111. Particularmente, en aquellas instancias en las que la persona que ejerce la abogacía acuerde representar a una persona menor de edad.

Finalmente, destaco que la inclusión de este comentario ejemplifica las bondades de atemperar las reglas modelo de la ABA al contexto particular de nuestra jurisdicción. Por todo lo anterior, estoy conforme con la aprobación del inciso (c) de la Regla 1.5.

## E. Regla 1.7 – Deberes hacia las o los clientes actuales

Esta regla tiene su equivalencia en el Canon 21 del Código de Ética Profesional, *supra*, sobre conflicto de intereses, aunque con un alcance más amplio. A partir de ahora, bajo ciertos parámetros, se permitirán las representaciones adversas concurrentes en la relación cliente-abogado o abogada. Ello estará condicionado a que la persona que ejerce la abogacía obtenga el consentimiento informado y ratificado por escrito de los y las clientes con

intereses adversos entre sí. La Regla 1.7 establece una norma general de prohibición de la representación simultánea adversa. Así, el inciso (a) establece lo siguiente:

> (a) Excepto lo dispuesto en el inciso (b) de esta regla, una persona que ejerce la abogacía no deberá representar a una o un cliente si esto presenta un conflicto de intereses concurrentes. Existe un conflicto de intereses concurrentes cuando:
>
> > (1) la representación de una o un cliente será directamente adversa hacia otra u otro cliente, o
> >
> > (2) hay un riesgo significativo de que la representación de uno, una o más clientes esté sustancialmente limitada por los deberes de la persona que ejerce la abogacía hacia otro u otra cliente actual, un o una cliente anterior, una tercera persona, o por los intereses personales de la persona que ejerce la abogacía; o
> >
> > (3) la persona que ejerce la abogacía tiene una relación de parentesco por cuarto grado de consanguinidad o segundo grado de afinidad, cohabita, tiene una relación personal íntima o existe una unión civil análoga al matrimonio con la persona que ejerce la abogacía de una parte adversa.

Acto seguido, el inciso (b) permite que una persona que ejerce la abogacía, aun cuando exista un conflicto de intereses concurrentes, asuma la representación de una o un cliente. Sin embargo, lo condiciona al cumplimiento de los requisitos siguientes:

> > (1) la persona que ejerce la abogacía cree razonablemente que podrá brindar una representación competente y diligente a cada cliente afectado o afectada;
> >
> > (2) la representación no está prohibida;
> >
> > (3) la representación no conlleva la reclamación entre clientes a quienes la

persona que ejerce la abogacía representa, y

(4) cada cliente afectado o afectada por el conflicto presta su consentimiento informado, ratificado por escrito.

En esa línea, destaco la pertinencia del comentario [2], ya que detalla los pasos a seguir para resolver un conflicto de intereses concurrentes. A esos fines, para cumplir con la regla aludida, se requerirá que todo abogado o abogada

(1)   identifique claramente a su cliente o sus clientes;

(2)   determine si existe un conflicto de intereses;

(3)   decida si la representación puede ser llevada a cabo a pesar de la existencia de un conflicto, es decir, si el conflicto puede ser consentido, y

(4)   de ser así, consultar con las y los clientes afectados bajo el inciso (a) y obtener su consentimiento informado, ratificado por escrito.

Naturalmente, la aprobación de este nuevo marco reglamentario representa uno de los cambios más significativos en materia disciplinaria que se introducen con la aprobación de estas Reglas de Conducta Profesional. Concretamente, se podría afirmar que la mayor parte del contenido sustantivo del Canon 21 del Código de Ética Profesional, *supra*, quedará derogado, y su jurisprudencia interpretativa como, por ejemplo, *In re González Hernández*, 190 DPR 164 (2014), será revocada por esta nueva regla.

**F. Regla 1.8 – Conflicto de intereses: clientes actuales: reglas específicas**

En cuanto al tema de conflicto de intereses, estoy conforme con que el comentario [7] de la Regla 1.8 incluya las consecuencias de otorgar disposiciones a favor de parientes dentro del cuarto grado de consanguinidad o segundo grado de afinidad del notario o la notaria que autorizó el instrumento público, conforme al Art. 5 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2005. En consonancia con ello, el comentario expone lo siguiente:

> [7] Si la entrega de un regalo sustancial requiere la preparación de un documento jurídico, la persona que ejerce la abogacía debe advertirle a la o el cliente sobre la conveniencia de obtener el asesoramiento desinteresado que otra persona que ejerce la abogacía puede proveer. La única excepción a esta regla es cuando el o la cliente es familiar del donatario o la donataria. **No obstante, toda persona que ejerce la abogacía que esté admitida al ejercicio de la notaría en Puerto Rico, en el desempeño de tales funciones, no podrá autorizar instrumentos públicos que contengan disposiciones a su favor. Tampoco podrá autorizarlos si alguna de las personas otorgantes es su pariente dentro del cuarto grado de consanguinidad o segundo de afinidad, excepto cuando aquel o aquella comparezca en el instrumento en calidad representativa. Asimismo, por disposición de ley no producirán efecto las disposiciones a favor de parientes, dentro del cuarto grado de consanguinidad o segundo de afinidad de la persona que ejerce la notaría que autorizó el instrumento público en que se hicieron. Véase, Art. 5 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2005.** (Negrillas suplidas).

Por otro lado, considero que el inciso (h) de la Regla 1.8 abre la puerta para que una persona que ejerce la profesión legal se valga de un salvoconducto para reducir la posibilidad de responder por actos presentes o futuros que

redunden en impericia profesional. Así, se establece que un
abogado o una abogada no podrá

> (1) hacer un acuerdo que prospectivamente limite su
> responsabilidad por impericia profesional hacia una
> o un cliente; o
>
> (2) transigir una reclamación actual o potencial por
> impericia profesional con una o un cliente actual o
> anterior que no tenga representación legal
> independiente y adecuada, a no ser que le haya
> advertido por escrito sobre la conveniencia de
> obtener representación legal independiente en
> conexión con la transacción y le haya ofrecido una
> oportunidad razonable de obtener dicha
> representación legal independiente y adecuada.

Debo hacer constar que no soy partidario de esta
disposición, ya que estimo que las excepciones harán
inoperante la regla general. Aun así, y en ánimo de colegiar,
propuse que se incluyeran ciertas salvaguardas a favor de
las y los clientes afectados por los presuntos servicios
legales deficientes de una persona que ejerce la abogacía.
A esos efectos, debo destacar la apertura de mis compañeras
y compañeros de estrado para acoger mis sugerencias en cuanto
al comentario [19], que lee así:

> Los acuerdos que limitan la responsabilidad y
> aquellos que resuelvan una reclamación o una
> potencial reclamación por impericia contra una
> persona que ejerce la abogacía, de ninguna manera
> limitan el poder inherente del Tribunal Supremo de
> Puerto Rico de pasar juicio sobre las actuaciones
> de una persona que ejerce la abogacía. Un acuerdo
> de relevo de responsabilidad profesional no limita
> que una o un cliente presente una queja y a la
> persona que ejerce la abogacía de tener que
> responder a nivel ético por sus actuaciones u
> omisiones negligentes. Es altamente impropio que una
> persona que ejerce la abogacía demandada por daños
> por impericia profesional transija el caso y que,
> como parte del acuerdo, incluya una cláusula en la
> cual el agraviado o la agraviada, a cambio de una
> indemnización, se obligue a no presentar una queja

disciplinaria o a solicitar la desestimación de una queja de esa índole. La persona que ejerce la abogacía no puede condicionar la transacción o el acuerdo a que un o una cliente retire una queja o querella o no presente una queja en su contra.

Este comentario estuvo fundamentado en nuestra jurisprudencia interpretativa del Canon 26 del Código de Ética Profesional, *supra*, mediante la cual hemos reafirmado el poder inherente de este Tribunal para pasar juicio sobre las actuaciones de las y los miembros de la profesión legal. *In re Pagán Ayala*, 117 DPR 180 (1986). Además, para acentuar que, de ninguna forma, un acuerdo de relevo de responsabilidad profesional veda al o a la cliente de presentar una queja, ni exime a la persona que ejerce la abogacía de ser disciplinada éticamente por sus actuaciones u omisiones negligentes. *In re Franco Rivera*, 203 DPR 770 (2019).

## G. Regla 1.15 – Protección de los bienes de la o el cliente

Esta regla tiene su equivalente en el Canon 23 del *Código de Ética Profesional*, *supra*. De entrada, brindo mi conformidad a la aprobación de esta disposición reglamentaria y apoyo que se eliminara la referencia a las cuentas conocidas como IOLTA.[10] Ello, debido a que la apertura y el mantenimiento de este tipo de cuentas debe ser de carácter voluntario, según expusimos en *In re Manejo Cuentas Fid. Servs. Leg.*, 207 DPR 761 (2021).

---

[10]IOLTA corresponde a las siglas en inglés de los programas "*Interest on Lawyers Trust Accounts*". *In re Manejo Cuentas Fid. Servs. Leg.*, 207 DPR 761 (2021).

En cuanto al contenido sustantivo de esta regla, estimo adecuado que se haya precisado el contenido del inciso (d) y sus comentarios. En vista de que en los comentarios se alude al deber del abogado o de la abogada de entregar con prontitud cualquier fondo o propiedad a su cliente o a una tercera persona, así como de efectuar un informe de contabilidad de serle requerido, la última parte del inciso (d) fue modificada para que reflejara esa indicación. De este modo, el inciso aludido quedó redactado en los términos siguientes:

> (d) Una vez la persona que ejerce la abogacía recibe fondos u otra propiedad en la cual su cliente o una tercera persona tiene interés, la persona que ejerce la abogacía lo notificará con prontitud a su cliente o a la tercera persona. Excepto lo dispuesto en esta regla, lo permitido por la ley o lo acordado con su cliente, la persona que ejerce la abogacía entregará con prontitud cualesquiera fondos o propiedad a su cliente o a la tercera persona que tenga derecho a recibirlos y, al ser requerido por su cliente o esta tercera persona, rendirá con prontitud un informe de contabilidad relacionado con dicho fondo o propiedad.

Asimismo, imparto mi conformidad a las modificaciones insertadas en los comentarios sobre el inciso (d), las cuales integran nuestra jurisprudencia sobre el Canon 23 del Código de Ética Profesional, *supra*. Tras el correspondiente proceso deliberativo y de colegiación, los comentarios al inciso aludido quedaron redactados de la forma siguiente:

> [3] La dilación en remitir los fondos al o a la cliente es causa suficiente para que una persona que ejerce la abogacía sea disciplinada éticamente, por lo que ni la devolución de los fondos retenidos indebidamente al cliente, ni la falta de intención de apropiárselos permanentemente le exime de la sanción disciplinaria correspondiente. El hecho de

que la persona que ejerce la abogacía no conozca a la persona enviada por el o la cliente a recoger los fondos o las propiedades, no es eximente de su deber de no retener indebidamente los fondos o las propiedades perteneciente al cliente o tercera persona con interés si la persona enviada acredita su autoridad para recibir el dinero en representación del o de la cliente o la persona que ejerce la abogacía tenía los medios para acreditar la autoridad delegada. Por eso, el inciso (d) establece que una vez la persona que ejerce la abogacía recibe fondos u otra propiedad en la cual su cliente o una tercera persona tiene interés, deberá notificarlo y entregarlos con prontitud a su cliente o a la tercera persona. Incluso, de ser requerido, deberá rendir con la misma prontitud un informe de contabilidad.

[4] A menudo, las personas que ejercen la abogacía reciben fondos de los cuales serán pagados sus honorarios. La persona que ejerce la abogacía no tiene la obligación de remitir a sus clientes los fondos que estima razonablemente que representan el pago de honorarios adeudados. Sin embargo, una persona que ejerce la abogacía no puede retener los fondos para coaccionar a una o un cliente a aceptar la contención de la persona que ejerce la abogacía. La parte de los fondos que no se encuentra en controversia deberá ser distribuida prontamente. La parte de los fondos en disputa debe ser mantenida en una cuenta fiduciaria, y la persona que ejerce la abogacía debe sugerir medios para la solución rápida de la controversia, y de ser esto viable, las partes podrán acudir a la vía judicial.

Como vemos, los comentarios modificados y aprobados por este Tribunal preservan nuestra jurisprudencia sobre este trascendental tema. Por ejemplo, en *In re Arana Arana*, 112 DPR 838 (1982), dispusimos que, sin importar que la retención indebida se realice sin el ánimo de apropiación permanente, la mera dilación en remitir el dinero constituye, <u>per se</u>, una conducta antiética. De igual forma, en *In re Rivera Navarro*, 193 DPR 303 (2015), establecimos que la dilación en remitir los fondos al cliente es causa suficiente para que

una letrada o un letrado sea disciplinado éticamente. Además, señalamos que ni la devolución del dinero retenido indebidamente al cliente ni la falta de intención para apropiárselo permanentemente eximen al abogado o la abogada de la sanción disciplinaria correspondiente.

Por otro lado, en cuanto al requerimiento hecho por una tercera persona a nombre del o de la cliente, en *In re Bonilla Berlingeri*, 175 DPR 897 (2009), pautamos que el hecho de que el abogado o la abogada no conozca a la persona enviada por el o la cliente para recoger el dinero o la propiedad, no le exime de su deber de no retener indebidamente bienes que pertenecen al cliente.

Por entender que el lenguaje que incorporamos hoy complementa el contenido sustantivo del inciso y establece reglas básicas que todo abogado o abogada debe observar en el manejo de bienes ajenos, estoy conforme con la aprobación de esta regla. Estas disposiciones resultan esenciales para garantizar la confianza que las personas depositan en los y las profesionales del derecho y para reforzar los estándares éticos que rigen la práctica legal.

## H. Regla 1.16 – Rechazo o terminación de la representación o la gestión notarial

El inciso (c) de esta regla establece el deber de toda persona que ejerce la abogacía de obtener el permiso del tribunal antes de concluir una representación legal, una vez iniciado un pleito judicial. En ese sentido, dispone el procedimiento que deberá seguir un letrado o una letrada

para renunciar a la representación legal de su cliente cuando existe un pleito judicial pendiente de adjudicación.

Estoy conforme con precisar que este deber de obtener el permiso del tribunal surge a partir del inicio del pleito judicial. Por consiguiente, la abogada o el abogado deberá continuar con la representación legal hasta tanto el tribunal emita la autorización correspondiente para su relevo. Así las cosas, el inciso (c) quedó redactado de la forma siguiente:

> (c) Cuando se ha iniciado un pleito judicial, una persona que ejerce la abogacía deberá notificar y obtener permiso del tribunal previo a terminar con una representación legal. Deberá continuar con la representación de su cliente cuando el tribunal lo ordene, aunque exista motivo suficiente para terminarla hasta que el tribunal autorice el relevo de la representación legal.

## CAPÍTULO II – LA FUNCIÓN DE ASESORAMIENTO

### A. Regla 2.2 – Evaluación de asuntos para el uso de terceras personas

La Regla 2.2 (a) establece que una persona que ejerce la abogacía puede realizar una evaluación sobre un asunto que afecte a su cliente, para el uso de una tercera persona, siempre que determine razonablemente que dicha evaluación es compatible con otros aspectos de su relación profesional. En otras palabras, el abogado o la abogada puede analizar y emitir una opinión legal sobre un asunto relacionado con su cliente con el propósito de que una tercera persona la utilice. No obstante, antes de hacerlo, debe asegurarse de

que esa evaluación no genere un conflicto con sus demás obligaciones profesionales hacia su cliente.

Por ello, de manera complementaria, el inciso (b) de la Regla 2.2 dispone que, si el abogado o la abogada conoce o debe conocer razonablemente que la evaluación probablemente afectará de manera sustancial y adversa los intereses de su cliente, no podrá llevarla a cabo a menos que la o el cliente otorgue su consentimiento.

Si bien coincido con las disposiciones contenidas en los incisos (a) y (b) de la aludida regla, y en consonancia con mi postura de que los acuerdos legales deben constar por escrito, considero que el inciso (b) debió especificar expresamente que, además de obtener el consentimiento del cliente, este debe ser ratificado por escrito. Por lo cual, propuse la inclusión del lenguaje siguiente en dicho inciso:

> (b) Cuando la persona que ejerce la abogacía conoce o debe conocer razonablemente que es probable que la evaluación afectará sustancial y adversamente los intereses de su cliente, no proveerá tal evaluación a no ser que su cliente presete consentimiento informado, **ratificado por escrito.**[11]

Un argumento que respalda esta postura se encuentra en el comentario [4] de la Regla 2.2, que establece lo siguiente:

> Acceso y divulgación de información a la persona que ejerce la abogacía
>
> [4] La calidad de una evaluación depende de la libertad y la amplitud de la investigación realizada. Normalmente, una persona que ejerce la

---

[11]Se advierte que lo resaltado en negrillas representa lo que el Juez que suscribe hubiese incorporado al texto de la regla.

abogacía, como una cuestión de juicio profesional, debe ampliar la investigación según le parezca necesario. No obstante, en algunas circunstancias los términos de la evaluación pueden ser limitados. Por ejemplo, ciertos asuntos o fuentes pueden ser categóricamente excluidos, o el alcance de la búsqueda puede quedar limitado por restricciones de tiempo o falta de cooperación de las personas que tengan información pertinente. Estas limitaciones que son pertinentes para la evaluación deben ser descritas en el informe. **Si después de que una persona que ejerce la abogacía inició una evaluación, la o el cliente se niega a cumplir con los términos que se pactaron para realizar la evaluación, las obligaciones de la persona que ejerce la abogacía serán determinadas por la ley, con referencia a los términos del acuerdo con la o el cliente y las circunstancias que lo rodean.** En ningún caso se permite que la persona que ejerce la abogacía haga, a sabiendas, una declaración falsa sobre hechos sustanciales o de Derecho al proveer una evaluación bajo esta regla. Véase la Regla 4.1 (Negrillas suplidas).

En ese sentido, si se presentara una situación como la descrita en el comentario anterior, contar con el consentimiento del cliente por escrito proporcionaría mayor claridad sobre los términos acordados y facilitaría la determinación de las obligaciones de la persona que ejerce la abogacía conforme a la ley y a las circunstancias del caso. Esto, a su vez, contribuiría a fortalecer la seguridad jurídica y promovería la transparencia en la relación profesional.

Toda vez que no se estableció que el abogado o la abogada deba obtener el consentimiento informado y ratificado por escrito de su cliente para llevar a cabo una evaluación de asuntos legales destinada al uso de terceras personas, disiento en ese extremo.

**Capítulo III – El Abogado y la abogada como representante legal**

## A. Regla 3.3 – Conducta ante los tribunales

Tras evaluar su contenido, es evidente que esta regla delimita varias instancias en las cuales una persona que ejerce la abogacía no cumple con la conducta esperada ante un tribunal. Por ejemplo, hacer declaraciones falsas sobre hechos o sobre el Derecho; omitir informar las fuentes del Derecho que le sean adversas; ofrecer prueba con conocimiento de que es falsa, entre otras (inciso (b)). Además, incluye el deber de tomar medidas correctivas razonables cuando el abogado o la abogada conoce que una persona intenta incurrir o incurre en conducta criminal o fraudulenta.

Estimo que los deberes impuestos en esta regla son adecuados y representan escenarios en donde, ciertamente, la persona que ejerce la abogacía debe intervenir para evitar determinada conducta o abstenerse de incurrir en ella. Por tanto, estoy conforme parcialmente con la aprobación de esta regla.

Ahora bien, soy del criterio de que la regla no aborda otra amplia gama de conductas que deben ser observadas por las y los miembros de la profesión legal ante los tribunales. Específicamente, el lenguaje del Canon 9 del Código de Ética Profesional, *supra*, iba dirigido a proscribir aquella conducta que se aleje del mandato de respetar las órdenes y directrices emitidas por los tribunales. Entiéndase, el respeto a la autoridad judicial y sus funcionarios y

funcionarias. Por ejemplo, al amparo de este canon hemos resuelto que el deber de respeto al tribunal y a las juezas y jueces se extiende también a funcionarios del Poder Judicial en asuntos relativos a la administración de la justicia. *In re Rodríguez Rivera*, 170 DPR 863 (2007); *In re Barreto Ríos*, 157 DPR 352 (2002).

De igual forma, hemos recurrido al canon precitado para sancionar a una persona que ejerce la abogacía por incumplir reiteradamente con las órdenes del tribunal, sumado a una serie de incomparecencias injustificadas a vistas pautadas por el foro de primera instancia, lo que ocasionó una dilación indebida en la tramitación del caso. *In re Stacholy Ramos*, 207 DPR 521 (2021); *In re Montalvo Delgado*, 196 DPR 542 (2016). Asimismo, ha servido para sancionar el ingreso sin permiso a la oficina de un juez y tomar un documento del zafacón, que resultó ser las notas que el togado tomó durante una vista en la que el abogado fungió como defensor. *In re Miranda Marchand,* 135 DPR 580 (1994).

Por lo anterior, favorecí que se retomara el lenguaje del criterio general que antecedía al Canon 9 del Código de Ética Profesional, *supra*, para salvaguardar este aspecto tan trascendental en la regulación de la conducta de los abogados y las abogadas ante los tribunales. A esos fines, sugerí incluir la redacción siguiente en el inciso (a) de la Regla 3.3 -sin excluir los subsiguientes incisos- para reflejar el principio de respeto y decoro ante los tribunales:

        **(a)**    **La buena marcha del proceso judicial es responsabilidad de toda persona que ejerce la abogacía. En ese sentido, le corresponde** procurar que en los tribunales siempre prevalezca un ambiente de decoro y formalidad, **laborando para mejorar la calidad de la justicia que en estos se imparte. La abogada o el abogado debe observar para con los tribunales una conducta que se caracterice por el mayor de los respetos.**[12]

No obstante, reconozco que el lenguaje sugerido fue incorporado en el comentario [1], el cual se expresa de la siguiente manera:

> [1] La buena marcha del proceso judicial es responsabilidad de cada miembro de la profesión legal. La persona que ejerce la abogacía debe observar en los tribunales una conducta que se caracterice por el mayor de los respetos. A su vez, la persona que ejerce la abogacía deberá colaborar para mejorar la calidad de la justicia que se imparte en estos foros.

Estoy conforme con que el lenguaje propuesto no fuera excluido de este cuerpo normativo al incluirse en el comentario precitado. A fin de cuentas, el respeto hacia los tribunales es uno de los pilares sobre los cuales descansa la buena marcha de los procedimientos judiciales y la confianza que el público deposita en ellos.

## B. Regla 3.5 – Imparcialidad e influencias indebidas

Esta regla establece una norma ética específica sobre la comunicación de una persona que ejerce la abogacía hacia un juez o una jueza, de forma <u>ex parte</u>, en el contexto de un

---

[12]Se advierte que lo resaltado en negrillas representa lo que el Juez que suscribe hubiese incorporado al texto de la regla.

asunto pendiente de adjudicación ante su consideración. Véase, *In re Marchand Quintero*, 151 DPR 973 (2000). Este deber emana del Canon 11 del Código de Ética Profesional, *supra*, el cual califica como conducta antiética que un abogado o una abogada se comunique con una jueza, un juez o con algún miembro del personal de su oficina con el propósito de brindarle algún documento o información sobre un caso pendiente ante su consideración. *In re Ortíz Sánchez*, 201 DPR 765 (2019). Ello, porque tal proceder, al menos en apariencia, tiene el efecto de influir en el proceso decisorio del tribunal. *In re Rodríguez Ortiz*, 135 DPR 683 (1994).

En atención a lo anterior, estoy conforme con la redacción de los incisos (a), (b) y (c) de esta regla, los cuales quedaron consignados de la forma siguiente:

La persona que ejerce la abogacía no deberá:

(a)   intentar influir por medios indebidos a un juez o una jueza, al jurado, a una o un potencial jurado u otro oficial en capacidad similar;

(b)   comunicarse *ex parte* con las personas indicadas en el inciso (a), excepto que se le haya autorizado por ley u orden judicial;

(c)   en ausencia de la otra parte, comunicarse ni discutir con el juez o la jueza sobre los méritos de un caso pendiente; […]

Además, en el comentario [2] relacionado con esta regla, se detalló que "[l]a persona que ejerce la abogacía merece ser reprendida por cualquier acción encaminada a obtener especial consideración personal de un juez o una jueza". Me

complace esta inclusión, ya que no deja lugar a dudas a los abogados y a las abogadas que cualquier intento de obtener una consideración personal especial de un juez o de una jueza puede ser motivo de reprensión.

## C. Regla 3.8 – Deberes especiales de las personas que ejercen la abogacía como defensoras y fiscales

Favorezco la aprobación de esta regla, ya que provee contornos éticos específicos para los abogados y las abogadas que se desempeñan en el Ministerio Público. Adoptar esta disposición resulta particularmente beneficioso para los y las fiscales, pues les proporciona directrices éticas claras que los guiarán en el ejercicio de su cargo. Asimismo, considero necesario reglamentar especialmente a quienes integran el Ministerio Público, en atención a que ostentan el poder fiduciario de representar al Pueblo de Puerto Rico en los casos criminales, lo que les otorga la facultad y discreción de encauzar procedimientos penales contra la ciudadanía. Finalmente, estimo que la regla adelanta las nociones básicas de protección de los derechos de las personas acusadas de delito, particularmente a través de los incisos (b), (c), (d) y (f).

En definitiva, impartí mi conformidad por considerar que la aprobación de esta regla contribuirá al adecuado desempeño del descargo de las funciones del Ministerio Público, al tiempo que refuerza los estándares éticos y protege los derechos de todas las personas involucradas en un proceso penal.

CAPÍTULO IV – EL TRATO HACIA PERSONAS QUE NO SON CLIENTES

## A. Regla 4.2 – Comunicación con personas representadas por una persona que ejerce la abogacía

La precitada regla quedó conformada de la forma siguiente:

> La persona que ejerce la abogacía que representa a una o un cliente, o se representa a sí mismo o misma, no deberá comunicarse con otra persona en relación con el asunto objeto de la representación cuando le consta que esta tiene representación legal para atender el asunto, salvo que cuente con el consentimiento del o de la representante legal o esté autorizada por ley u orden judicial.
>
> Por otro lado, la persona que ejerce la abogacía que represente a un o una cliente en cualquier causa criminal, podrá interrogar o entrevistar a las o los testigos de cargo con anterioridad al juicio, siempre y cuando cuente con la anuencia del (de la) testigo o de los(as) testigos.

Según se desprende del texto aprobado, esta regla dispone que los abogados y las abogadas que representan a una parte no deben comunicarse con otra persona, en relación con el asunto objeto de la representación, cuando les consta que esta cuenta con representación legal. Esto, salvo que la comunicación se realice con el consentimiento del abogado o la abogada de la otra parte, o que exista una autorización por ley o una orden judicial.

Ahora bien, lo resuelto en *Hoyos Gómez v. Tribunal Supremo*, 90 DPR 201 (1964) y *Pueblo v. Rodríguez Aponte*, 116 DPR 653 (1985), representa una excepción a esta regla. Por ello, elogio la inclusión del segundo párrafo de la Regla 4.2, que reconoce ambos precedentes en los que reiteramos

que, con anterioridad al juicio, el derecho de una persona imputada de delito a interrogar o entrevistar a las o los testigos de cargo está circunscrito únicamente a la voluntad de estos. Es decir, en nuestro ordenamiento penal se permite a la defensa entrevistar a las o los testigos del Ministerio Público, con la única limitación de que estos deberán acceder voluntariamente a ello. De forma que, si estos no se oponen, nada impedirá que el representante legal de la persona imputada se comunique con ellos.

Ahora bien, considero que se debió incluir una disposición a los efectos de establecer que el Estado no podrá impedir tal entrevista mediante actos o prohibiciones afirmativas y que hacerlo, a pesar del consentimiento de las o los testigos de cargo, podría representar un acto contrario a esta regla. En ese sentido, coincidí con el lenguaje que se propuso originalmente al final del segundo párrafo de la Regla 4.2, como última oración, el cual disponía lo siguiente:

> […] **El estado no podrá impedir tal entrevista a pesar de la voluntariedad de las o de los testigos. Un acto contrario a este mandato supondrá una violación a esta regla.**[13]

Incluso reitero que, como cuestión sustantiva, resulta adecuado extender esa garantía a otras instancias en las cuales, a mi juicio, también es aplicable, como, por ejemplo, en las Reglas de Procedimiento Criminal.

---

[13]Se advierte que lo resaltado en negrillas representa lo que el Juez que suscribe hubiese incorporado al texto de la regla.

**B. Regla 4.4 – Respeto a los derechos de terceras personas**

Estoy conforme con la aprobación de esta regla que impone sobre el abogado o la abogada de una parte el deber de respetar los derechos de terceras personas que no son sus clientes. En sintonía con ese mandato, el inciso (b) dispone que, si una persona que ejerce la abogacía recibe documentación o información almacenada electrónicamente relacionada con la representación de su cliente y conoce o debe razonablemente conocer que dicha información le fue enviada de forma inadvertida, deberá notificarlo prontamente al o la remitente.

Por entender que la regla también persigue proteger primordialmente los derechos de personas ajenas a la relación cliente-abogado o abogada, considero acertada la precisión del contenido del inciso (b) con respecto a los derechos de terceras personas, de manera que su redacción es la siguiente:

> (b) La persona que ejerce la abogacía que recibe un documento o información almacenada electrónicamente relacionada con la representación de su cliente, **o que afecte derechos de la otra parte o de terceras personas,** y que conoce o debe conocer razonablemente que le fue enviado inadvertidamente, deberá notificarlo prontamente al o a la remitente. (Negrillas suplidas).

Como vemos, este lenguaje añade salvaguardas adicionales a la información recibida inadvertidamente por una persona que ejerce la profesión legal. Así, por ejemplo, si en el contexto de un intercambio de documentación producto de un

descubrimiento de prueba un abogado o una abogada recibe, inadvertidamente, información que vulnera el derecho a la intimidad de una o un testigo o recibe información que no es pertinente para su caso, tendrá el deber de notificarlo prontamente al remitente. Por estas razones, estoy conforme con su aprobación.

**CAPÍTULO V – ASUNTOS RELATIVOS A LA PRÁCTICA DE LA ABOGACÍA Y LAS OFICINAS LEGALES**

**A. Regla 5.4 – Independencia profesional de la persona que ejerce la abogacía**

La regla, tal como fue aprobada por este Tribunal, establece lo siguiente:

(a) Una persona que ejerce la abogacía o una oficina legal no compartirá honorarios con otra persona que no esté autorizada a ejercer la abogacía, excepto que:

(1) podrá suscribir un acuerdo con su oficina legal, socios o socias, asociados o asociadas para disponer el pago de dinero a su sucesión o a otras personas en particular durante un periodo de tiempo razonable luego de su fallecimiento;

(2) podrá comprar la práctica profesional de un abogado fallecido o una abogada fallecida, declarado o declarada incapaz o asusente judicialmente, conforme a las disposiciones de la Regla 1.17, mediante el pago del precio de compra acordado a la sucesión o a otro u otra representante de ese abogado o esa abogada;

(3) podrá incluir a empleados y empleadas que no son abogados o abogadas en un plan de compensación o retiro, aunque el plan se base, en todo o en parte, en un acuerdo de

participación y distrubución de beneficios;

(4) podrá compartir honorarios concedidos por un tribunal con una organización sin fines de lucro que le contrate, emplee o recomiende para atender el asunto; y

(5) podrá compartir dividendos con un propietario o una propietaria que no sea un abogado o una abogada en una oficina legal siempre que cumpla con el inciso (b) de esta regla.

(b) Una persona que ejerce la abogacía podrá practicar en una oficina legal en la que una participación social sea propiedad de una persona que no ejerce la abogacía solo si:

(1) la oficina legal prevé el cumplimiento colectivo de la responsabilidad de prestar servicios legales gratuitos a las personas indigentes;

(2) toda persona que posea un derecho de propiedad en una oficina legal y no ejerza la abogacía, deberá asegurarse de que dicha oficina sea operada solo por una persona admitida a la profesión legal en Puerto Rico. A su vez, esta persona que ejerce la abogacía, deberá representar al propietario o a la propietaria que no ejerce la abogacía, en el ejercicio de todo derecho relacionado con el voto, y en todos los demás asuntos relacionados con la oficina legal. Además, velará que se cumpla con las reglas de responsabilidad profesional y que, se notifique al Tribunal Supremo una vez comience el presente acuerdo. El 15 de enero de cada año, debe presentar ante el Secretario o la Secretaria del Tribunal Supremo de Puerto Rico una declaración jurada que detalle el número de personas abogadas que componen la oficina legal, las fechas y los montos de todas las inversiones realizadas por el propietario o la propietaria que no ejerce la abogacía, y las ganancias

recibidas por él o ella durante el año calendario anterior;

(3) ni el propietario o la propietaria que no ejerce la abogacía, ni ningún agente designado por este o esta, desempeñará el ejercicio no autorizado de la abogacía, provisto además que el único valor proporcionado por el propietario o la propietaria que no ejerce la abogacía a cambio de su participación en la propiedad de la oficina legal es dinero, por lo que ni el propietario ni la propietaria, ni nigún agente suyo podrán proporcionar algún servicio a la oficina legal, incluso, pero sin limitarse a, servicios de mercadeo, en relación con la oficina legal;

(4) no habrá interferencia por parte del propietario o de la propietaria que no ejerce la abogacía con la independencia del juicio profesional de la persona que ejerce la abogacía o con la relación cliente-abogado o abogada;

(5) la información relacionada con la representación de un o una cliente está protegida según lo exigido por la Regla 1.6;

(6) el acuerdo dispuesto en el inciso (2) no contraviene la Regla 1.5;

(7) la persona que ejerce la abogacía informa al o a la cliente que una participación social en la oficina legal pertenece a una persona que no ejerce la abogacía; y

(8) los propietarios o las propietarias que no ejercen la abogacía adquieren una participación que no exceda el 49% de las acciones de la oficina legal.

(c) Una persona que ejerce la abogacía no permitirá que una persona que le recomienda, le emplea o le paga por prestar servicios legales a otra persona, dirija o controle su

juicio profesional al prestar estos servicios.

(d) El Tribunal Supremo hará una evaluación de la efectividad de lo dispuesto en el inciso (b) de esta regla no más tarde de tres años luego de entrar en vigor.

Como se puede apreciar, esta disposición permite que las personas que ejercen la abogacía compartan parte del capital de una oficina legal con personas que no están autorizadas para ejercer la práctica legal en Puerto Rico. En otras palabras, esta norma permite que personas ajenas a la abogacía puedan invertir económicamente en las oficinas legales del país. Habida cuenta de lo anterior, no estoy conforme con la implementación de esta regla, debido a las posibles consecuencias nocivas que podría acarrear.

En primer lugar, permitir esta fuente de financiamiento en las oficinas legales de Puerto Rico podría representar un riesgo significativo para la autonomía e independencia del juicio profesional de los abogados y las abogadas que las conforman.[14] De hecho, esta fue una de las principales preocupaciones del Comité Especial y del Secretariado, quienes no recomendaron la aprobación de esta disposición reglamentaria tras su redacción apartarse de la Regla Modelo 5.4 de la ABA.

En el pasado, hemos rechazado la intervención de terceras personas en la toma de decisiones, estrategias o consejos

---

[14]Amy Pona, Trending: Non-Lawyer Ownership of Law Firms, 36 COM. L. WORLD 24, 27 (2022); S. Younger, The Pitfalls and False Promises of Nonlawyer Ownership of Law Firms, 132 Yale L.J. 259, 288-289 (2022).

legales en un litigio. Véanse *In re Rochet Santoro*, 174 DPR 123 (2008); *In re Franco Rivera*, 169 DPR 237 (2006). En consecuencia, las expectativas y los resultados esperados por las personas inversionistas podrían ejercer una presión indebida que afectaría negativamente el criterio profesional del abogado o de la abogada responsable de la representación de una persona que acudió a la oficina legal. Por ejemplo, las personas inversionistas que no están sujetas a las normas de ética profesional podrían sentirse inclinadas a presionar para alcanzar un acuerdo que favorezca su interés en compartir honorarios, en lugar de continuar con el litigio con el fin de obtener el mejor resultado para el cliente.[15] Por tanto, esto podría interpretarse como una intervención en las decisiones, estrategias o consejos legales relacionados con un litigio o con un cliente en particular.

Además, de acuerdo con los hallazgos proporcionados por el Secretariado, en la práctica, las personas inversionistas suelen estar impulsadas por intereses estrictamente económicos, lo que no garantiza una mejora en la oferta de servicios legales accesibles para la ciudadanía puertorriqueña ni en la calidad del servicio legal.[16] Incluso, los argumentos a favor de flexibilizar la Regla Modelo 5.4 podrían desviar la atención de estrategias más

---

[15]S. Younger, *supra*, pág. 269.

[16]<u>Memorando de Proyecto de Reglas de Conducta Profesional</u>, suscrito por el Secretariado el 31 de octubre de 2024.

efectivas para mejorar el acceso a la justicia.[17] En el caso específico de nuestra jurisdicción, el *Reglamento para la Asignación de Abogados y Abogadas de Oficio en Puerto Rico*, *supra*, así como las entidades que brindan servicios legales gratuitos, y el Fondo para el Acceso a la Justicia, creado por ley, **promueven y aseguran un acceso a la justicia sin motivaciones económicas**. Es decir, estos mecanismos sí facilitan y garantizan el acceso a la justicia libre de intereses financieros.

Otro aspecto que refuerza mi postura es que, aún más preocupante, carecemos de autoridad disciplinaria sobre las personas inversionistas que no son abogados o abogadas en Puerto Rico. A mi juicio, esta situación crea un vacío de control y fiscalización, ya que, aunque existan criterios establecidos en la Regla 5.4 para permitir que terceras personas inviertan en las oficinas legales, no contamos con un mecanismo inherente para regular su comportamiento disciplinario y los contornos éticos. **Como consecuencia, estas personas inversionistas podrían influir en decisiones legales sin estar sujetas a las mismas normas éticas y de responsabilidad que rigen a los abogados y a las abogadas en Puerto Rico**. Por consiguiente, esta situación podría generar conflictos de interés y poner en riesgo la calidad de los servicios legales ofrecidos a la ciudadanía.

---

[17]S. Younger, *supra*, pág. 275.

Por otro lado, la adopción de esta norma nos aparta del modelo establecido por la ABA, y, por tanto, de la encomienda al Comité Especial de armonizar nuestras reglas éticas con las reglas modelo de la ABA.[18] Véase, *In re Proy. Conducta Prof. y Regl. Disc.*, 189 DPR 1032 (2013). Actualmente, la ABA mantiene su postura de que los abogados o las abogadas

---

[18]Inclusive, no solo nos aparta del modelo establecido por la ABA, sino que también nos aleja del ámbito regulatorio de otras profesiones según lo dispuesto en el inciso (b) del Artículo 18.02 de la Ley Núm. 164-2009, conocida como la <u>Ley General de Corporaciones</u>, 14 LPRA sec. 3922, que establece que una corporación profesional

> significa una corporación que está organizada bajo este Capítulo, con el propósito único y exclusivo de prestar un servicio profesional y los servicios auxiliares o complementarios a este servicio profesional, **y que tiene como accionistas únicamente a individuos que estén debidamente licenciados en el Estado Libre Asociado para ofrecer el mismo servicio profesional que la corporación.** (Negrillas suplidas).

Esta disposición deja claro que las corporaciones profesionales deben estar integradas exclusivamente por personas licenciadas para ejercer la profesión que ofrecen. En el caso de las oficinas legales del país, esto significa que sus accionistas deben ser abogados o abogadas debidamente admitidos a ejercer en Puerto Rico. Ahora bien, con la flexibilización de la Regla 5.4 en nuestra jurisdicción, se permite la participación de personas no licenciadas como accionistas en estas entidades, lo cual contraviene el marco normativo vigente en la Ley General de Corporaciones, *supra*.

De manera similar, la Ley Núm. 165-2013, conocida como la <u>Ley del "Fondo para el Acceso a la Justicia de Puerto Rico"</u> define un "bufete de abogados" como una

> [o]ficina, agrupación, corporación de servicios profesionales (C.S.P.), sociedad de responsabilidad limitada (L.L.C.), o cualquier persona jurídica que se dedique a la práctica profesional de la abogacía, **compuesta por abogados admitidos al ejercicio de la misma.** (Negrillas suplidas). 4 LPRA sec. 695(E).

ni las oficinas legales deben compartir honorarios con personas no autorizadas para ejercer la abogacía, ni permitir que personas ajenas a la profesión inviertan en las oficinas legales. De hecho, la gran mayoría de las jurisdicciones en Estados Unidos siguen aplicando disposiciones éticas similares a la Regla Modelo 5.4 de la ABA, que aborda el mismo asunto que nuestra Regla 5.4.[19]

Ahora bien, reconozco que las jurisdicciones de Arizona y el Distrito de Columbia modificaron su Regla 5.4 para levantar la prohibición absoluta que impide a las personas que ejercen la abogacía compartir participación en el capital de una oficina legal con personas no autorizadas para ejercer la práctica legal. Asimismo, Carolina del Norte presenta una situación particular, ya que permite que una persona que no sea abogada ocupe un puesto de dirección u oficial en una corporación dedicada a ofrecer servicios legales, siempre que no tenga autoridad para dirigir o controlar la conducta de los abogados y las abogadas que laboran en la oficina legal. A su vez, Utah implementó un proyecto piloto en agosto de 2020, con vigencia hasta 2027,

---

[19] Prácticamente la totalidad de las jurisdicciones estatales mantienen en vigor disposiciones éticas similares a la Regla Modelo 5.4 de la ABA. Entre estas se incluyen: Alabama, Alaska, Arkansas, Colorado, Connecticut, Delaware, Florida, Guam, Idaho, Indiana, Iowa, Kansas, Kentucky, Luisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Misuri, Montana, Nebraska, Nevada, Nueva Hampshire, Nueva Jersey, Nuevo México, Nueva York, Dakota del Norte, Ohio, Oklahoma, Oregón, Pensilvania, Rhode Island, Carolina del Sur, Dakota del Sur, Tennessee, Texas, Utah, Vermont, Islas Vírgenes, Virginia, Washington, Virginia Occidental, Wisconsin, y Wyoming.

para evaluar la viabilidad de flexibilizar la restricción impuesta por la Regla 5.4. A pesar de lo anterior, los resultados preliminares de la experiencia de permitir esta práctica en Arizona, el Distrito de Columbia y el proyecto piloto de Utah no han aportado evidencia de que haya mejorado el acceso a la justicia, sino que en la práctica las personas inversionistas realmente están motivados por intereses puramente económicos, tal y como adelanté.[20]

Por estas razones, estuve de acuerdo con la redacción inicialmente propuesta por el Comité Especial y el Secretariado, cuya aprobación no fue respaldada por una mayoría de este Tribunal. En concreto, la regla disponía lo siguiente:

(a) Una persona que ejerce la abogacía o una oficina legal no compartirá honorarios con otra persona que no esté autorizada a ejercer la abogacía, excepto que:

(1) podrá suscribir un acuerdo con su oficina legal, socios o socias, asociados o asociadas para disponer el pago de dinero a su sucesión o a otras personas en particular durante un periodo de tiempo razonable luego de su fallecimiento;

(2) podrá comprar la práctica profesional de un abogado fallecido o una abogada fallecida, declarado o declarada incapaz o ausente judicialmente, conforme a las disposiciones de la Regla 1.17, mediante el pago del precio de compra acordado a la sucesión o a otro u otra representante de ese abogado o esa abogada;

---

[20]Véase, además, S. Younger, *supra*, págs. 263, 274 y 275.

(3) podrá incluir a empleados y empleadas que no son abogados o abogadas en un plan de compensación o retiro, aunque el plan se base, en todo o en parte, en un acuerdo de participación y distribución de beneficios;

(4) podrá compartir honorarios concedidos por un tribunal con una organización sin fines de lucro que le contrate, emplee o recomiende para atender el asunto.

(b) Una persona que ejerce la abogacía no formará una sociedad con una persona que no sea abogada cuando cualquiera de las actividades de la sociedad consista en la práctica de la abogacía.

(c) Una persona que ejerce la abogacía no permitirá que una persona que le recomienda, le emplea o le paga por prestar servicios legales a otra persona, dirija o controle su juicio profesional al prestar estos servicios.

(d) Una persona que ejerce la abogacía no podrá prestar servicios profesionales a través de una corporación profesional o asociación autorizada para practicar la abogacía con fines pecuniarios, si:

(1) una persona que no ejerce la abogacía posee algún interés en la organización, excepto que un o una representante de la sucesión de una abogada o un abogado podrá retener las acciones o activos de la oficina legal por un periodo de tiempo razonable durante la administración del caudal;

(2) una persona que no ejerce la abogacía es director o directora o funcionario o funcionaria de esa corporación, u ocupa una posición de similar responsabilidad en una organización análoga no corporativa; o

(3) una persona que no ejerce la abogacía tiene el derecho de dirigir

o controlar el juicio profesional de
la persona que ejerce la abogacía.

En síntesis, la redacción anterior, no aprobada por una mayoría de este Tribunal, pero muy similar a la Regla Modelo 5.4 de la ABA, reiteraba las limitaciones conocidas sobre compartir honorarios legales y la prohibición de que terceras personas inviertan en las oficinas legales del país. Estas restricciones tienen como propósito fundamental preservar la independencia y el juicio profesional de los abogados y las abogadas, evitando cualquier influencia externa que pueda comprometer su deber ético y la adecuada representación de sus clientes.[21] Además, buscan garantizar que la prestación de servicios legales se rija exclusivamente por criterios profesionales y no por intereses económicos ajenos a la práctica jurídica.

Por ello, la Regla Modelo 5.4 ha sido, durante mucho tiempo, un método eficaz para prevenir preocupaciones éticas sobre la independencia profesional de las personas que ejercen la abogacía, y su validez fue reafirmada recientemente por la Cámara de Delegados de la ABA.[22] En mi opinión, flexibilizar o eliminar la Regla 5.4 no resolverá los problemas que sus defensores afirman abordar, sino que,

---

[21]Véase, además, la página 1 de la Opinión Formal 499 de 2021 de la ABA, donde se reafirma lo siguiente: "ABA Model Rule of Professional Conduct 5.4 features a number of prohibitions designed to preserve the professional independence of lawyers."

[22]S. Younger, *supra*, págs. 250-260.

en realidad, podría generar riesgos significativos para la profesión jurídica.

En consonancia con lo anterior, los jueces y las juezas debemos mantener una mirada crítica y pragmática ante las verdaderas motivaciones de ciertos sectores económicos interesados en ser copropietarios de firmas legales. No obstante, si partimos del principio de buena fe, existen alternativas que respetan de manera más rigurosa los postulados éticos que rigen nuestra profesión y deben preservarse en nuestra jurisdicción.

Las jurisdicciones de Arizona, el Distrito de Columbia y Utah han decidido explorar este modelo; observemos sus experiencias y analicemos con cautela los efectos de una posible comercialización excesiva del derecho, la influencia de sectores económicos poderosos y los desafíos que esto podría representar para el acceso a la justicia. Hasta el momento, no hemos observado que estos sectores se asocien con firmas legales para litigar en defensa del medio ambiente o en favor de poblaciones vulnerables.[23]

No debemos permitir que el principio de acceso a la justicia sea utilizado como pretexto para perpetuar desigualdades y comercializar desmedidamente la práctica de la abogacía. Por estas razones, respetuosamente disiento respecto a esta regla.

---

[23]Íd., pág. 277.

**CAPÍTULO VII – INFORMACIÓN SOBRE SERVICIOS LEGALES**

## A. Regla 7.1 - Comunicaciones concernientes a los servicios

La regla según aprobada por este Tribunal dispone lo siguiente:

> Una persona que ejerce la abogacía o la notaría no deberá comunicar información falsa o engañosa relacionada con su persona o sus servicios. Una comunicación es falsa o engañosa si contiene una tergiversación sustancial de hechos o del Derecho, si omite un hecho necesario para que la comunicación, considerada en su totalidad, no sea sustancialmente engañosa o induzca a error.

Esta disposición, junto con la Regla 7.2 – *Comunicaciones concernientes a los servicios de personas que ejercen la abogacía: reglas específicas*, representa otro cambio sustancial en la normativa ética-disciplinaria, ya que brinda mayor flexibilidad para que las personas que ejercen la abogacía puedan anunciar sus servicios y ofertas mediante diversos mecanismos de publicidad. Con ello, se aclara el panorama con respecto a los límites que el Canon 36 del Código de Ética Profesional, *supra*, imponía a la comunidad legal al momento de anunciarse o promocionarse para atraer nueva clientela.

Así también, con la aprobación de esta regla, nos alejamos del postulado del Canon 36 del Código de Ética Profesional, *supra*, que sostenía que el mejor anuncio del abogado o de la abogada era únicamente la reputación de idoneidad e integridad adquirida en el ejercicio de su profesión. Valga aclarar que, ciertamente, la reputación seguirá desempeñando un rol clave para la publicidad, pero

bajo estas reglas se permitirá que la comunidad legal se promocione con mayor libertad, sujeto a que estas comunicaciones no sean falsas o engañosas.

## CAPÍTULO VIII – LA INTEGRIDAD DE LA PROFESIÓN LEGAL

### A. Regla 8.2 - Comentarios sobre jueces, juezas, oficiales adjudicativos y el Ministerio Público

De entrada, favorezco la adopción de una norma ética que sancione a los abogados y a las abogadas que realicen manifestaciones públicas sobre las cualificaciones o la integridad de un juez, jueza, oficial adjudicativo, funcionario o funcionaria del Ministerio Público, o sobre una persona nominada para tales cargos, si saben que sus manifestaciones son falsas o las hacen con grave menosprecio de la verdad.

Resulta acertada la inclusión de nuestros pronunciamientos jurisprudenciales sobre la manera adecuada de formular críticas hacia las funcionarias y los funcionarios de los tribunales, aun cuando tales críticas no sean falsas ni se hayan realizado con grave menosprecio de la verdad.

Al amparo de esta normativa ética hemos sancionado expresiones de abogados y abogadas que, aunque no fueran falsas o emitidas con grave menosprecio de la verdad, mancillaban las cualificaciones o integridad de algún funcionario o funcionaria judicial. Por ejemplo, hemos resuelto que el Canon 9 del Código de Ética Profesional, *supra*, consagraba un principio básico en nuestro

ordenamiento: "[l]a práctica de la abogacía exige hacia los tribunales constante respeto". *In re Pagán*, 116 DPR 107, 111 (1985). Además, requiere que las personas que ejercen la profesión legal, al dirigirse al tribunal, incluso al formular críticas, lo hagan con respeto y deferencia. *In re Irizarry Rodríguez*, 193 DPR 633 (2015); *In re Crespo Enríquez*, 147 DPR 656, 662-663 (1999).

Asimismo, hemos reiterado que para reclamar derechos y solventar controversias no es necesario menoscabar la dignidad personal ni institucional de los miembros de la judicatura ni de ninguna otra persona. *In re García Pérez*, 211 DPR 638 (2023); *In re Pagán*, *supra*. Después de todo, el hecho de que una persona que ejerce la abogacía defienda apasionada y diligentemente la causa de acción de su cliente no es incompatible con la exigencia de que, al dirigirse al tribunal, lo haga de manera respetuosa y decorosa. *In re García Pérez*, *supra*; *In re Ortíz Sánchez*, *supra*; *In re Crespo Enríquez*, *supra*, pág. 663.

Finalmente, hemos dispuesto que las determinaciones judiciales adversas nunca justifican el uso de lenguaje impropio e hiriente por parte de los abogados y las abogadas de la parte adversamente afectada por el dictamen. *In re García Pérez*, *supra*. En tales situaciones, ninguna persona que ejerce la abogacía "tiene licencia absoluta en el uso del lenguaje para poner en entredicho o mancillar la dignidad de los jueces". *In re Cardona Álvarez*, 116 DPR 895, 906 (1986).

Cónsono con esa línea jurisprudencial, considero adecuado que la Regla 8.2 se dividiera en dos incisos: (a) y (b), recomendación que fue acogida. Como resultado, el primero recoge el lenguaje de la regla según propuesto por el Comité Especial. El segundo aclara que, aunque las manifestaciones no sean falsas ni realizadas con grave menosprecio de la verdad, deben verterse con respeto, decoro y deferencia. Concretamente, la regla quedó de la forma siguiente:

(a) Una persona que ejerce la abogacía no podrá hacer manifestaciones públicas concernientes a las cualificaciones o a la integridad de un juez o una jueza, oficial adjudicativo o un funcionario o una funcionaria del Ministerio Público, cualquier recurso humano que labore en el Poder Judicial como por ejemplo, personal de Secretaría o del alguacilazgo, o sobre una persona nominada como juez o jueza o funcionario o funcionaria del Ministerio Público, si sabe que sus manifestaciones son falsas o las hace con grave menosprecio de la verdad.

(b) Aunque las manifestaciones públicas de una persona que ejerce la abogacía se expresen de conformidad con lo establecido en el inciso (a), toda persona que ejerce la abogacía tiene la obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra un juez o una jueza, oficial adjudicativo o un funcionario o una funcionaria del Ministerio Público, cualquier recurso humano que labore en el Poder Judicial como por ejemplo, personal de Secretaría o del alguacilazgo, o sobre una persona nominada como juez o jueza o funcionario o persona funcionaria del Ministerio Público o cualquier otro funcionario o funcionaria judicial.

Además, el comentario [3], como mencioné en los párrafos anteriores, incorpora nuestros pronunciamientos jurisprudenciales sobre la forma adecuada de formular

crítica hacia los funcionarios y las funcionarias de los tribunales, incluso cuando tales críticas no sean falsas ni formuladas con grave menosprecio de la verdad. En ese sentido, el comentario quedó redactado de la manera siguiente:

> [3] Las manifestaciones púbicas de una persona que ejerce la abogacía deben darse dentro de un marco de respeto, decoro y deferencia de modo que estas no atenten contra el buen orden en la administración de la justicia en los tribunales.

## II.

Con la adopción de las nuevas Reglas de Conducta Profesional de Puerto Rico, se incorporaron normas éticas dirigidas específicamente a las personas que ejercen la práctica notarial. Esta inclusión responde a que, en nuestra jurisdicción se practica el notariado de tipo latino, una característica distintiva de la profesión legal puertorriqueña que difiere notablemente del notariado de estirpe anglosajón. *López v. González*, 151 DPR 225, 239-241 (2000) (sentencia). Lo anterior, ya que para desempeñarse como notario o notaria es requisito indispensable haber sido admitido o admitida previamente al ejercicio de la abogacía. Véase, Ley Núm. 75 de 2 de julio de 1987, según enmendada, Ley Notarial de Puerto Rico, 4 LPRA sec. 2011. En otras palabras, en Puerto Rico, la función de abogado o abogada y notario o notaria es dual.

Si bien esta inclusión en las nuevas reglas éticas que hoy aprobamos responde a las particularidades de nuestra jurisdicción, a mi juicio, también representa un

distanciamiento del propósito original encomendado al Comité Especial de armonizar y actualizar las Reglas de Conducta Profesional conforme al esquema de las Reglas Modelo de la ABA. *In re Proy. Conducta Prof. y Regl. Disc.*, *supra.*

De acuerdo con lo anterior, aunque las guías éticas propuestas por la ABA ofrecen un marco general de conducta profesional que puede adaptarse a diversos contextos, no necesariamente resultan idóneas para regular la práctica notarial en Puerto Rico. Esto se debe a que las normas de la ABA están diseñadas principalmente para jurisdicciones que operan bajo el sistema de notariado anglosajón, donde el rol de la persona que ejerce la notaría es más limitado y administrativo. En contraste, el sistema de notariado de tipo latino, que caracteriza a nuestra jurisdicción, atribuye al notario o a la notaria una función pública de mayor relevancia, con responsabilidades que incluyen garantizar la autenticidad de los actos jurídicos, brindar certeza y seguridad jurídica, y velar por la legalidad de las transacciones privadas.

En este sentido, la Unión Internacional del Notariado Latino cuenta con un conjunto de normas éticas específicamente dirigidas a regular la práctica notarial bajo este sistema. Estas normas no solo reflejan las particularidades inherentes al notariado de tipo latino, sino que también establecen los altos estándares y principios que se exigen en el ejercicio de esta función pública. Por lo tanto, la estructura y el enfoque de estas normas podrían

servir como un marco de referencia más adecuado que atienda las necesidades específicas de las personas que ejercen la notaría en Puerto Rico. Dicho código no solo tendría en cuenta los aspectos legales, sino también las responsabilidades que conlleva la función notarial, garantizando así que las y los profesionales del notariado cuenten con las herramientas necesarias para ejercer su labor con el mayor grado de ética, transparencia y compromiso con la sociedad.

Es importante destacar que, en las secciones previas de este Voto particular de conformidad en parte y disidente en parte, decidí no abordar la inclusión de las disposiciones éticas relacionadas con la práctica del notariado en Puerto Rico. La razón radica en mi decisión de exponer, de manera detallada y de forma separada a los temas vinculados con las reglas de la práctica de la abogacía, las razones por las cuales no estoy de acuerdo con esta incorporación en el contexto de las nuevas Reglas de Conducta Profesional.

De entrada, es fundamental destacar la diferencia principal entre la función notarial y la práctica de la abogacía. La función del notario o la notaria se caracteriza por su imparcialidad, mientras que la del abogado o de la abogada se define por su compromiso ético hacia el interés de su cliente. En consecuencia, la persona que ejerce la notaría no actúa como abogado o abogada de ninguna de las partes comparecientes ni representa a un cliente en particular; en cambio, sí representa la fe pública y la ley

para todas las partes involucradas. En ese sentido, el notario o la notaria ejerce una función imparcial en el ámbito extrajudicial, no contencioso y preventivo. Por consiguiente, debe orientar, aconsejar y advertir legalmente a todas las partes por igual sobre los aspectos legales y las consecuencias jurídicas del instrumento que otorga y autoriza, sin adelantar los intereses de nadie en particular.

Por estas razones, en *In re Lavastida et al.*, 109 DPR 45, 86 (1979), el Juez Asociado señor Irizarry Yunqué expresó que

> [el ejercicio de la abogacía y el del notariado son dos cosas distintas. El abogado notario ha de ser escrupuloso en deslindar los campos. El abogado representa los intereses de un cliente. El notario no representa a cliente alguno. Representa la fe pública. Es el testigo por excelencia que ha de dar forma al negocio convenido, y ha de advertir a los otorgantes de los aspectos legales del instrumento que ellos otorgan y que él autoriza. El notario no es, en esa función, abogado de ninguno de los otorgantes.

Por otro lado, considero pertinente señalar que, al estudiar la discusión presentada por el Colegio Notarial de Puerto Rico (Colegio Notarial) mediante su comparecencia especial, reflexioné sobre la importancia de adoptar un enfoque similar al que implementamos en 1977 y 2005, cuando aprobamos los cuerpos normativos que regulan los deberes éticos de los jueces y las juezas del país. *In re Aprobación Cánones Ética 2005*, 164 DPR 403 (2005). Así como en el 2005 se estableció un nuevo código ético para la judicatura, estimo que sería igualmente pertinente contar con normas

separadas para la abogacía y la notaría. Este planteamiento responde a la necesidad de garantizar que cada una de estas profesiones, que, si bien comparten ciertas similitudes, cuenten con normas claras y diferenciadas, adaptadas a sus características y funciones particulares.

Cabe destacar que nuestro sistema legal está conformado principalmente por tres (3) profesionales del derecho, cada uno con funciones distintas dentro del sistema de justicia. Estos y estas profesionales de nuestro sistema legal son las juezas, los jueces, las abogadas, los abogados, las notarias y los notarios. En virtud de nuestro poder inherente, tenemos la facultad constitucional de reglamentar los requisitos, procedimientos y conducta profesional de quienes ejercen la abogacía, la notaría y la judicatura. Por ello, el Poder Judicial debe asegurar que la función notarial se desarrolle de manera adecuada y organizada, en concordancia con las normas que rigen otras funciones dentro del sistema jurídico.

En este contexto, el Colegio Notarial destaca que, en Puerto Rico, mientras los jueces y las juezas cuentan con un código de ética definido, los notarios y las notarias no disponen de uno propio. Actualmente, en el caso de las personas que ejercen la notaría, sus normas éticas están entrelazadas y mezcladas con las que corresponden a la función de la abogacía, las cuales son distintas en su naturaleza y esencia.

Por lo tanto, considero que contar con unas reglas de ética notarial específicas contribuiría a garantizar

eficientemente que cada una de las y los profesionales del derecho cumpla con sus responsabilidades de manera ética, contribuyendo al correcto funcionamiento del sistema de justicia.

Otro aspecto que respalda mi postura es que la legislación notarial actual y su reglamento no resuelven la falta de normativas éticas claramente diferenciadas para la función notarial, ya que carecen de normas deontológicas específicas. Aunque la legislación notarial regula la forma en que se debe ejercer el notariado, no establece directrices sobre la conducta ética de los notarios y las notarias en Puerto Rico.

En resumen, no cabe duda de que la práctica notarial y la abogacía son funciones claramente distinguibles, cada una con responsabilidades y características propias que requieren regulación adecuada. Como integrantes del Poder Judicial, tenemos la responsabilidad de establecer los procedimientos y las reglas de conducta profesional que se ajusten a las particularidades de cada una de estas profesiones. Por ello, estimo que este era el momento oportuno para definir con claridad las obligaciones, deberes, incompatibilidades y responsabilidades inherentes de la función notarial, diferenciándola de nuestra otra profesión igualmente importante: la abogacía.

Ante esta coyuntura, considero que lo ideal, conforme a la recomendación del Comité Especial, habría sido la aprobación de un conjunto de reglas de conducta exclusivas

para las personas que ejercen la función notarial en Puerto Rico, con normas separadas de aquellas aplicables a la práctica de la abogacía. Con ese fin, el Comité Especial nos presentó dos propuestas: una destinada a regular la abogacía y otra enfocada en codificar el ejercicio del notariado en Puerto Rico. En particular, la segunda propuesta, titulada *Proyecto de Código de Ética del Notariado de Puerto Rico*, se inspiró en las Reglas de Organización del Notariado, un modelo elaborado por la Unión Internacional del Notariado Latino, pero adaptado a las particularidades del contexto puertorriqueño.

Sin más, en apoyo a esta visión de establecer un cuerpo normativo ético exclusivo para el notariado puertorriqueño, suscribo las palabras de la licenciada y profesora Cándida Rosa Urrutia de Basora, quien expresó lo siguiente:

> Considerando que no existen normas éticas claras y precisas que guíen directamente a la clase [notarial] y las existentes están diseminadas en diversas opiniones de nuestro Tribunal Supremo y en algunas disposiciones de nuestra Ley y del Reglamento Notarial y otras reglamentaciones y disposiciones legales, el momento es oportuno para trabajar en esta encomienda y tratar de reunir las mismas en un solo cuerpo que pudiera constituir un Código de Ética Notarial. […][24]

### III.

Por las razones expuestas, estoy conforme con la mayor parte de las nuevas Reglas de Conducta Profesional. Reconozco que se llevó a cabo un proceso que cumplió con los postulados

---

[24]Cándida Rosa Urrutia de Basora, Ética Notarial, San Juan, Puerto Rico, Ed. Jurimetrics Research Corporation, 2000, págs. 8-9.

de participación multisectorial y que durante la deliberación colegiada con mis compañeras y compañeros de estrado se atendieron varias de mis preocupaciones, lo cual agradezco.

Ante la realidad innegable de que el Derecho es cambiante, anticipo que la puesta en vigencia de este nuevo cuerpo reglamentario, al representar un cambio de paradigma en materia ética-disciplinaria en esta jurisdicción, conllevará que este Tribunal asuma su responsabilidad de atender las futuras controversias éticas que se susciten al amparo de estas Reglas de Conducta Profesional. Por consiguiente, consigno mi compromiso con procurar que estas se atiendan de manera integral y en observancia de las experiencias compartidas en otras jurisdicciones, así como de la idiosincrasia propia de nuestra comunidad jurídica.


Luis F. Estrella Martínez
Juez Asociado



**CERTIFICACIÓN DE CUMPLIMIENTO CON LA RESOLUCIÓN ER-2025-02**

Conforme exige la Resolución ER-2025-02 del Tribunal Supremo de 17 de junio de 2025, certifico que completé las seis horas crédito de educación jurídica continua en cursos relacionados con las Reglas de Conducta Profesional de Puerto Rico y que anejo el(los) certificado(s) de participación emitido(s) por la proveedora o el proveedor del curso.

Certifico como correcta y veraz toda la información aquí provista. Entiendo que esta certificación es para fines de cumplir con la Resolución del Tribunal Supremo y no sustituye el trámite de acreditación de cursos requerido por el Programa de Educación Jurídica Continua. Asimismo, soy consciente de que, si se descubriese cualquier falsedad o fraude en relación con lo que afirmo en esta certificación, se podrá referir el asunto al Tribunal Supremo para comenzar un proceso disciplinario.

_____ _____ _____
Nombre/primer y segundo apellido      Firma        Fecha (d/m/a)

_____ _____ _____
    Núm. de RUA          Dirección postal         Correo electrónico



# REGLAS DE CONDUCTA PROFESIONAL DE PUERTO RICO

# Reglas de Conducta Profesional de Puerto Rico

## TABLA DE CONTENIDO

ALCANCE DE LAS REGLAS ............................................................................................................................. 4

    REGLA 1.0. DEFINICIONES ...................................................................................................................... 6

CAPÍTULO I: LA RELACIÓN CLIENTE-ABOGADO O ABOGADA Y REQUIRENTE-NOTARIO O NOTARIA ...................... 15

    REGLA 1.1. COMPETENCIA ..................................................................................................................... 15

    REGLA 1.2. ALCANCE DE LA REPRESENTACIÓN LEGAL Y LA FUNCIÓN NOTARIAL .................................. 18

    REGLA 1.3. DILIGENCIA.......................................................................................................................... 24

    REGLA 1.4. COMUNICACIÓN ................................................................................................................... 26

    REGLA 1.5. HONORARIOS ....................................................................................................................... 31

    REGLA 1.6. CONFIDENCIALIDAD DE LA INFORMACIÓN ........................................................................... 38

    REGLA 1.7. DEBERES HACIA LAS O LOS CLIENTES ACTUALES ................................................................. 49

    REGLA 1.8. CONFLICTO DE INTERESES: CLIENTES ACTUALES: REGLAS ESPECÍFICAS ............................... 63

    REGLA 1.9. DEBERES HACIA CLIENTES ANTERIORES .............................................................................. 76

    REGLA 1.10. IMPUTACIÓN DE CONFLICTOS DE INTERESES: REGLA GENERAL ......................................... 81

    REGLA 1.11. CONFLICTOS DE INTERESES ESPECIALES PARA PASADOS Y ACTUALES FUNCIONARIOS, FUNCIONARIAS, EMPLEADOS Y EMPLEADAS DEL GOBIERNO ................................................................... 86

    REGLA 1.12. EXJUEZ, EXJUEZA, ÁRBITRO, ÁRBITRA, MEDIADOR, MEDIADORA O EVALUADOR O EVALUADORA NEUTRAL............................................................................................................................ 91

    REGLA 1.13. LA ORGANIZACIÓN COMO CLIENTE .................................................................................... 93

    REGLA 1.14. CLIENTE CON CAPACIDAD LIMITADA ................................................................................. 100

    REGLA 1.15. PROTECCIÓN DE LOS BIENES DE LA O EL CLIENTE............................................................. 104

    REGLA 1.16. RECHAZO O TERMINACIÓN DE LA REPRESENTACIÓN O LA GESTIÓN NOTARIAL...................... 107

    REGLA 1.17. VENTA DE UNA PRÁCTICA PROFESIONAL LEGAL ................................................................ 113

    REGLA 1.18. DEBERES HACIA UNA O UN CLIENTE POTENCIAL................................................................ 118

    REGLA 1.19. COMPETENCIA Y DILIGENCIA TECNOLÓGICA..................................................................... 122

CAPÍTULO II: LA FUNCIÓN DE ASESORAMIENTO ........................................................................................ 125

    REGLA 2.1. EL O LA PROFESIONAL DEL DERECHO COMO ASESOR O ASESORA.......................................... 125

    REGLA 2.2. EVALUACIÓN DE ASUNTOS PARA EL USO DE TERCERAS PERSONAS ...................................... 127

    REGLA 2.3. LA PERSONA QUE EJERCE LA ABOGACÍA COMO INTERVENTORA NEUTRAL ........................... 130

CAPÍTULO III: EL ABOGADO Y LA ABOGADA COMO REPRESENTANTE LEGAL ................................................... 132

    REGLA 3.1. RECLAMACIONES Y COMPARECENCIAS MERITORIAS............................................................ 132

    REGLA 3.2. PRONTITUD EN LA TRAMITACIÓN DE LAS CAUSAS O LOS ASUNTOS NOTARIALES .................. 133

    REGLA 3.3. CONDUCTA ANTE LOS TRIBUNALES.................................................................................... 134

**REGLA 3.4. CONDUCTA HACIA LA PARTE CONTRARIA Y SU REPRESENTANTE LEGAL** ....................................... 140

**REGLA 3.5. IMPARCIALIDAD E INFLUENCIAS INDEBIDAS** ................................................................. 143

**REGLA 3.6. PUBLICIDAD SOBRE JUICIOS** ........................................................................................ 144

**REGLA 3.7. LA PERSONA QUE EJERCE LA ABOGACÍA COMO TESTIGO** .............................................. 149

**REGLA 3.8. DEBERES ESPECIALES DE LAS PERSONAS QUE EJERCEN LA ABOGACÍA COMO DEFENSORAS Y FISCALES** ........................................................................................................................................ 152

**REGLA 3.9. LA PERSONA QUE EJERCE LA ABOGACÍA EN PROCESOS NO ADJUDICATIVOS** .................. 155

**CAPÍTULO IV: EL TRATO HACIA PERSONAS QUE NO SON CLIENTES** ................................................ 156

**REGLA 4.1. VERACIDAD EN LAS DECLARACIONES A TERCERAS PERSONAS** ...................................... 156

**REGLA 4.2. COMUNICACIÓN CON PERSONAS REPRESENTADAS POR UNA PERSONA QUE EJERCE LA ABOGACÍA** .................................................................................................................................... 157

**REGLA 4.3. TRATO CON PERSONAS SIN REPRESENTACIÓN LEGAL** .................................................. 160

**REGLA 4.4. RESPETO A LOS DERECHOS DE TERCERAS PERSONAS** .................................................. 161

**CAPÍTULO V: ASUNTOS RELATIVOS A LA PRÁCTICA DE LA ABOGACÍA Y LAS OFICINAS LEGALES** ......... 163

**REGLA 5.1. RESPONSABILIDADES DE LOS SOCIOS Y LAS SOCIAS Y DE LAS PERSONAS QUE EJERCEN LA ABOGACÍA CON FUNCIONES DE SUPERVISIÓN** ................................................................................. 163

**REGLA 5.2. RESPONSABILIDADES DE LA PERSONA QUE EJERCE LA ABOGACÍA BAJO SUPERVISIÓN** .............. 166

**REGLA 5.3. RESPONSABILIDADES POR LA CONDUCTA DE ASISTENTES QUE NO SON ABOGADOS O ABOGADAS** ...................................................................................................................................... 167

**REGLA 5.4. INDEPENDENCIA PROFESIONAL DE LA PERSONA QUE EJERCE LA ABOGACÍA** ................ 170

**REGLA 5.5. PRÁCTICA NO AUTORIZADA DE LA ABOGACÍA; PRÁCTICA MULTIJURISDICCIONAL DE LA ABOGACÍA** ...................................................................................................................................... 172

**REGLA 5.6. RESTRICCIONES AL EJERCICIO DE LA ABOGACÍA** ....................................................... 180

**REGLA 5.7. RESPONSABILIDAD POR SERVICIOS RELACIONADOS CON LA ABOGACÍA** ..................... 181

**CAPÍTULO VI: LOS DEBERES DE LAS PERSONAS QUE EJERCEN LA ABOGACÍA CON LA SOCIEDAD** ......... 185

**REGLA 6.1. SERVICIO *PRO BONO* VOLUNTARIO** .......................................................................... 185

**REGLA 6.2. ACEPTACIÓN DE ASIGNACIÓN DE OFICIO** .................................................................. 189

**REGLA 6.3. PARTICIPACIÓN EN ORGANIZACIONES DE SERVICIOS LEGALES** .................................. 190

**REGLA 6.4. PARTICIPACIÓN EN REFORMAS JURÍDICAS QUE AFECTEN INTERESES DE CLIENTES** ..................... 191

**REGLA 6.5. PARTICIPACIÓN EN PROGRAMAS DE SERVICIOS LEGALES LIMITADOS SIN FINES DE LUCRO O AUSPICIADOS POR EL TRIBUNAL** ...................................................................................................... 191

**CAPÍTULO VII: INFORMACIÓN SOBRE SERVICIOS LEGALES** ........................................................... 193

**REGLA 7.1. COMUNICACIONES CONCERNIENTES A LOS SERVICIOS** ............................................... 194

**REGLA 7.2. COMUNICACIONES CONCERNIENTES A LOS SERVICIOS DE PERSONAS QUE EJERCEN LA ABOGACÍA: REGLAS ESPECÍFICAS** ................................................................................................... 196

**REGLA 7.3. SOLICITACIÓN DE CLIENTES** .................................................................................... 200

**CAPÍTULO VIII: LA INTEGRIDAD DE LA PROFESIÓN LEGAL**.............................................................. 205

**REGLA 8.1. ADMISIÓN A LA PROFESIÓN Y ASUNTOS DISCIPLINARIOS** ................................. 205

**REGLA 8.2. COMENTARIOS SOBRE JUECES, JUEZAS, OFICIALES ADJUDICATIVOS Y EL MINISTERIO PÚBLICO** ............................................................................................................................ 206

**REGLA 8.3. OBLIGACIÓN DE INFORMAR LA CONDUCTA PROFESIONAL IMPROPIA**........................................... 207

**REGLA 8.4. CONDUCTA IMPROPIA** ............................................................................................ 209

**REGLA 8.5. AUTORIDAD DISCIPLINARIA Y DERECHO APLICABLE**.......................................... 213

## ALCANCE DE LAS REGLAS

Las Reglas de Conducta Profesional de Puerto Rico (Reglas) deben interpretarse con referencia a los propósitos de una representación legal y del propio Derecho. Algunas Reglas son imperativas, presentadas en términos de "deberá" o "no deberá". Estas definen una conducta apropiada para fines de disciplina profesional. Otras, generalmente presentadas en términos de "podrá" son permisivas y definen áreas en las cuales un abogado, una abogada, un notario o una notaria tiene discreción para ejercer su juicio profesional. No deberá tomarse acción disciplinaria cuando un abogado, una abogada, un notario o una notaria actúa o deja de actuar dentro de los límites de tal discreción. El comentario que acompaña a cada regla explica e ilustra su significado y propósito. Los comentarios pretenden ser guías de interpretación y no añaden obligaciones, pero el texto de cada regla constituye la autoridad.

Estas Reglas no agotan las consideraciones éticas y morales que deben guiar a un abogado, una abogada, un notario o una notaria, ya que ninguna actividad humana puede quedar definida completamente por reglas legales. Por consiguiente, constituyen un marco de referencia para la práctica ética del Derecho y para solucionar los conflictos que pueden desarrollarse por diferencias entre los deberes hacia sus clientes o personas requirentes de servicios notariales, el sistema legal o debido a sus propios intereses. Sin embargo, en ocasiones surgirán controversias difíciles que requieren que la abogada, el abogado, la notaria o el notario ejerza su juicio profesional y ético en conformidad con estas Reglas para solucionarlas. En caso de dudas, la abogada o el abogado podrá utilizar como referente las Reglas Modelo de la American Bar Association, sus comentarios explicativos y la teoría académica desarrollada sobre estas normas. No obstante, la observancia de lo anterior no eximirá por sí solo a la abogada o al abogado de responsabilidad ética. Respecto al ejercicio de la notaría, en caso de dudas, la notaria o el notario deberá cumplir con las disposiciones de la Ley Notarial y el Reglamento Notarial de Puerto Rico y su jurisprudencia interpretativa. De igual forma, además de los principios fundamentales o las doctrinas que se establecen en estas Reglas, el notario o la notaria podrá utilizar como referente las instrucciones generales emitidas por la Oficina de Inspección de Notarías.

A su vez, estas Reglas presuponen un contexto legal mayor que da forma a la función de un abogado, una abogada, un notario o una notaria. Ese contexto incluye las reglas de los tribunales y los estatutos concernientes a asuntos

sobre la licencia para practicar, las leyes que definen las obligaciones específicas de los abogados y las abogadas, y las leyes sustantivas y procesales en general. Los comentarios se utilizan en ocasiones para alertar a las personas que ejercen la abogacía y la notaría en torno a sus responsabilidades con esas otras disposiciones legales.

Por último, adviértase que una violación a alguna de estas Reglas por sí sola no es razón para incoar una causa de acción civil, criminal o administrativa contra una persona que ejerce la abogacía o la notaría, ni debe establecer una presunción en tal causa de acción de que se ha incurrido en una violación a algún deber legal. Además, una violación a una regla no requiere necesariamente otro remedio no disciplinario, tal como la descalificación de un abogado o una abogada en un litigio pendiente. Estas Reglas procuran que una persona que ejerce la abogacía o la notaría cumpla con ciertos deberes éticos. El propósito de estas Reglas puede ser tergiversado cuando se invocan por una parte adversa como estrategia procesal. El hecho de que una regla constituya base para que una persona que ejerce la abogacía autoevalúe su conducta, o para que se sancione a un abogado o una abogada por una agencia disciplinaria, no implica que una parte adversa en un procedimiento o transacción colateral tenga legitimación activa para solicitar la aplicación de la regla. No obstante, ya que estas Reglas establecen estándares de conducta para las personas que ejercen la abogacía y la notaría, la violación de una regla puede constituir evidencia de que se ha violado el estándar de conducta aplicable.

**REGLA 1.0. DEFINICIONES**

(a)　"Abogado o abogada de oficio", "asignación de oficio", "asignaciones de oficio", "asignado o asignada de oficio" o "representante de oficio" se refiere a los abogados y las abogadas con autorización para ejercer la abogacía en Puerto Rico a quienes un tribunal asigna para asumir la representación legal de una persona indigente al amparo del Reglamento para la Asignación de Abogados y Abogadas de Oficio. Incluye la persona asignada como "abogado o abogada auxiliar". Excluye a los abogados y las abogadas que se hayan admitido por cortesía al amparo de la Regla 12(f) del Reglamento del Tribunal Supremo.

(b)　"Aislada", "aislado" o "aislamiento" se refiere a las medidas que se adoptan para evitar que la persona que ejerce la abogacía en una oficina legal intervenga en un asunto mediante la imposición oportuna de procedimientos que resulten razonablemente adecuados, dentro de las circunstancias, para proteger la información que la abogada aislada o el abogado aislado tiene la obligación de proteger conforme a lo dispuesto en estas Reglas o en cualquier otra ley.

(c)　"Advertencias" se refiere a toda aquella reserva o aclaración que la Ley Notarial de Puerto Rico requiera o que, a juicio de la persona que ejerce la notaría, deba incluirse en la parte expositiva de los instrumentos públicos según el negocio jurídico o las circunstancias lo ameriten.

(d)　"Arancel notarial" se refiere a los honorarios predispuestos por ley que las personas que ejercen la notaría están autorizadas a cobrar por la prestación de sus servicios notariales.

(e)　"Asunto no contencioso" se refiere a asuntos conocidos comúnmente como *ex parte* o de jurisdicción voluntaria. Son aquellos sobre los cuales no existe controversia entre quienes demuestran un interés legítimo y que, por disposición de ley y a petición de las partes requirentes, necesitan la intervención de un juez o una jueza o que, por disposición de la Ley de Asuntos No Contenciosos Ante Notario, pueden ventilarse también ante una persona que ejerce la notaría.

(f)     "Autorización" se refiere a la suscripción del instrumento público por la persona que ejerce la notaría mediante su firma, signo, sello y rúbrica luego de la firma de las personas comparecientes.

(g)     "Asesorar" se refiere a la obligación de la persona que ejerce la notaría de ilustrar e informar de forma imparcial y oportuna, a las personas que requieran el servicio notarial de la naturaleza y las consecuencias de un acto o un negocio jurídico.

(h)     "Cliente potencial" se refiere a una persona que interactúa con una persona que ejerce la abogacía con el interés de formalizar una relación cliente-abogado o abogada. Una persona que se comunica con una persona que ejerce la abogacía como estrategia para inhabilitar a tal abogado o abogada o para que no pueda intervenir en un asunto no es una o un cliente potencial.

(i)     "Compareciente" se refiere a la persona que está físicamente en el otorgamiento y que, de ser otorgante, compromete su patrimonio y persona, y de ser representante, compromete el patrimonio y persona de su representado o representada.

(j)     "Consentimiento informado" se refiere al consentimiento prestado por una persona para seguir un determinado curso de acción luego de que persona que ejerce la abogacía o la notaría le haya provisto información y explicación adecuadas sobre los riesgos sustanciales que tal curso de acción podría conllevar y sobre la existencia de alternativas que estén razonablemente disponibles.

(k)     "Conocida", "conocido", "saber" o "a sabiendas" se refiere al conocimiento de que un hecho es veraz. El conocimiento de una persona se puede inferir de las circunstancias.

(l)     "Creencia" o "cree" significa que la persona involucrada en realidad dio por cierto el hecho en cuestión. La creencia de una persona se puede inferir de las circunstancias.

(m)     "Creencia razonable" o "cree razonablemente", cuando se refiere a una persona que ejerce la abogacía, significa que la abogada o el abogado cree el asunto en cuestión y que las circunstancias son tales que dicha creencia resulta razonable.

(n) "Debe conocer razonablemente", cuando se refiere a una persona que ejerce la abogacía, significa que una abogada o un abogado razonablemente prudente y competente debe asegurarse de conocer con certeza el asunto en cuestión.

(o) "Derechos arancelarios" se refiere a los derechos fiscales establecidos por ley que devenguen los instrumentos públicos. Se satisfacen en cada documento e instrumento original autorizado por la persona que ejerce la notaría, en documentos que deban ser protocolizados y sus copias certificadas.

(p) "Escrito o documento" o "por escrito" se refiere al registro tangible o electrónico de una comunicación o una representación manuscrita, mecanografiada, impresa, fotocopiada, fotografiada, grabada en audio o en vídeo o efectuada por medios electrónicos. Un escrito o documento firmado incluye un sonido, símbolo o proceso electrónico adjuntado a un escrito o asociado lógicamente con este y realizado o adoptado por una persona con la intención de firmarlo.

(q) "Fe pública notarial" se refiere a la facultad que gozan las personas que ejercen la notaría para brindarle una presunción de veracidad a los hechos que ven, oyen y perciben por sus sentidos. La fe pública notarial confiere autenticidad y fuerza probatoria a las declaraciones de voluntad de las personas otorgantes en los instrumentos públicos que autoriza la persona que ejerce la notaría.

(r) "Fraude", "fraudulento" o "fraudulenta" se refiere a una conducta que el derecho sustantivo o procesal considera que su propósito es engañar.

(s) "Función pública" se refiere a la responsabilidad dual de las personas que ejercen la notaría al darle forma legal a la voluntad de las personas otorgantes y para con el Estado al brindar certeza al tráfico jurídico.

(t) "Honorarios extraarancelarios" se refiere a los honorarios pactados entre la persona que ejerce la notaría y la persona otorgante por los servicios ofrecidos no relacionados directamente con el acto de otorgar un instrumento público y no contemplados en el arancel notarial.

(u)     "Instrumento público" se refiere a las escrituras y las actas, bien sean en original o en copia certificada.

(v)     "Oficina legal" se refiere a una persona que ejerce la abogacía o a un grupo de abogados y abogadas que se constituyen en una sociedad, corporación profesional, firma unipersonal u otro tipo de asociación dedicada y autorizada a ejercer la práctica de la abogacía. También se refiere a las personas que ejercen la abogacía que laboran como empleados o empleadas de una organización que provee servicios legales o al departamento de asuntos legales de una corporación u otra organización.

(w)     "Oficina notarial" se refiere al lugar donde habitualmente una persona que ejerce la notaría ofrece sus servicios notariales y conserva el protocolo, según haya sido notificado a la Oficina de Inspección de Notarías.

(x)     "Otorgamiento" se refiere al acto en el que las personas comparecientes en una escritura pública le expresan a la persona que ejerce la notaría su anuencia sobre el negocio jurídico o la declaración de voluntad. Es la parte del instrumento público que contiene la ratificación formal del consentimiento manifestado por las personas otorgantes, por las personas comparecientes o por ambas. Se compone por el acto de lectura de la escritura, la firma e iniciales de las personas otorgantes y, de ser necesario, de las personas testigos, y de la dación de fe de la persona que ejerce la notaría sobre todo lo contenido en el documento.

(y)     "Otorgante" se refiere a la persona que presta su consentimiento y compromete su patrimonio o persona en un instrumento público.

(z)     "Persona usuaria de servicio" se refiere a cualquier persona que acude ante una persona que ejerce la notaría a orientarse u obtener información general sobre un asunto que pudiera requerir un acto notarial.

(aa)     "Poder delegado por el Estado" se refiere a la autoridad investida a los notarios y las notarias para ejercer su capacidad autenticadora y legalizadora en el plano de las relaciones privadas.

(bb)    "*Pro bono*" se refiere a aquellos servicios legales que se ofrecen gratuitamente y sin la expectativa de recibir compensación a personas o comunidades de escasos recursos económicos, o a personas jurídicas con limitados recursos para sufragar honorarios y cuya misión primordial es proveer servicios que benefician directamente a personas en estado de insolvencia económica.

(cc)    "Protocolo de instrumentos públicos" se refiere a la colección ordenada por secuencia numérica y fecha concordante de escrituras matrices y actas autorizadas durante un año natural por la persona que ejerce la notaría, así como los documentos que se le incorporen. El protocolo será secreto y solo podrá ser examinado según lo dispuesto en la Ley Notarial de Puerto Rico o por mandato judicial.

(dd)    "Ratificado por escrito", cuando se utiliza en relación con el consentimiento informado prestado por una persona, se refiere al consentimiento informado que presta por escrito o a un documento remitido oportunamente a una persona por una persona que ejerce la abogacía para confirmar el consentimiento informado prestado verbalmente. Si no es factible obtener o remitir por escrito el consentimiento informado de una persona en el momento en que lo presta, la persona que ejerce la abogacía tiene que obtenerlo o remitirlo dentro de un periodo razonable de tiempo a partir de ese momento. Véase la definición de "consentimiento informado" en el inciso (j) de esta regla.

(ee)    "Razonable" o "razonablemente", cuando se utiliza en relación con la conducta de una persona que ejerce la abogacía, se refiere a que este o esta obra con prudencia y competencia.

(ff)    "Requirente" se refiere a una persona que solicita la intervención de una persona que ejerce la notaría para realizar un acto notarial.

(gg)    "Seguridad jurídica" se refiere a la garantía que imparte el notario o la notaria con su fe pública de que el documento cumple con todas las formalidades de ley y que se trata de una transacción válida y legítima.

(hh)  "Socio" o "socia" se refiere a una o un miembro de una sociedad, a una o un accionista de una oficina legal constituida como una corporación profesional o a una o un miembro de una asociación autorizada a ejercer la práctica de la abogacía.

(ii)  "Sustancial", cuando se utiliza en relación con el grado o el alcance de algo, se refiere a un asunto significativo de peso e importancia evidentes.

(jj)  "Tribunal" significa un foro, una corte o un tribunal, un árbitro o una árbitra en un procedimiento de arbitraje vinculante, un cuerpo legislativo, una agencia administrativa u otro organismo en el ejercicio de su capacidad adjudicativa. Un cuerpo legislativo, una agencia administrativa o cualquier otro organismo ejerce capacidad adjudicativa cuando, luego de que la parte o las partes presenten prueba o su argumentación legal, un funcionario o una funcionaria neutral emite un dictamen legal y vinculante que afecta directamente los intereses de una parte en relación con un asunto en particular.

## COMENTARIOS

### Aislado, aislada o aislamiento

[1] Esta definición aplica a situaciones en las que para eliminar la imputación de conflictos bajo las Reglas 1.10, 1.11, 1.12 o 1.18 se permite el aislamiento de una persona que ejerce la abogacía que está inhabilitada personalmente.

[2] El propósito del aislamiento es asegurar a las partes afectadas que quede protegida la información confidencial que el abogado inhabilitado o la abogada inhabilitada conoce. El abogado inhabilitado o la abogada inhabilitada personalmente debe reconocer su obligación de no comunicarse con alguna de las demás personas que ejercen la abogacía de la oficina legal en relación con el asunto. Similarmente, las demás personas que ejercen la abogacía de la oficina legal que trabajan en el asunto deben ser informadas de que se estableció un aislamiento y no deben comunicarse personalmente con el abogado inhabilitado o la abogada inhabilitada en relación con el asunto. Medidas adicionales de aislamiento apropiadas para un asunto en particular dependerán de las circunstancias. Para implementar, reforzar y recordar a las personas que ejercen la abogacía de las medidas de aislamiento, podrá ser apropiado que la oficina legal establezca procedimientos para que el abogado

aislado o la abogada aislada haga constar por escrito que evitará cualquier comunicación con otro personal de la oficina legal. También podrá ser apropiado que el abogado aislado o la abogada aislada deje constancia escrita de que evitará tener cualquier contacto con los archivos u otra información, incluso información guardada electrónicamente relacionada con el asunto. Igualmente, la oficina legal podrá emitir notificaciones escritas con instrucciones a todo el personal de la oficina legal que prohíban cualquier comunicación sobre el asunto con el abogado aislado o la abogada aislada y que nieguen acceso al abogado aislado o a la abogada aislada a los archivos de la oficina legal u otra información, incluso información sobre el asunto que ocasiona el asilamiento archivado electrónicamente. También puede hacer recordatorios periódicos sobre el aislamiento al abogado aislado o a la abogada aislada y al resto del personal de la oficina legal.

[3] Para asegurar su efectividad, las medidas de aislamiento deben implementarse tan pronto sea práctico, una vez una persona que ejerce la abogacía, o la oficina legal, conoce o debe conocer razonablemente que hay la necesidad de establecer un aislamiento.

**Cliente potencial**

[4] Si las comunicaciones, escritas, orales o electrónicas, constituyen una consulta supone considerar si se genera de una interacción entre la persona y quien ejerce la abogacía o luego de un requerimiento de esta. Por ejemplo, es probable que una consulta haya ocurrido cuando una persona que ejerce la abogacía, ya sea en persona o a través de un medio utilizado para anunciarse, solicita o invita a que se le someta información acerca de una posible representación sin advertencias claras y razonablemente comprensibles, o no provee advertencias que limite sus obligaciones y una persona le provee información en respuesta a dicha solicitud o invitación. En cambio, no constituye una consulta si una persona provee información a una persona que ejerce la abogacía en respuesta a un anuncio que se limita a describir su educación, su experiencia, sus materias de práctica, su información de contacto o proporciona información legal de interés general. Tal persona comunica unilateralmente información a la persona que ejerce la abogacía, sin ninguna expectativa razonable de que la persona que ejerce la abogacía está dispuesta a discutir la posibilidad de formar una relación cliente-abogado o

abogada, y no es por tanto una o un "cliente potencial".

**Consentimiento informado**

[5] Muchas de las reglas requieren que la persona que ejerce la abogacía obtenga el consentimiento informado de su cliente o de otra persona (por ejemplo, una o un cliente anterior o, bajo ciertas circunstancias, una o un cliente potencial) antes de aceptar o de continuar una representación o de proseguir un curso de acción. Véanse, por ejemplo, las Reglas 1.2(c), 1.6(a) y 1.7(b). La comunicación necesaria para obtener tal consentimiento variará según la regla aplicable y las circunstancias que dan margen a la necesidad de obtener el consentimiento informado. La persona que ejerce la abogacía debe llevar a cabo esfuerzos razonables para asegurarse que su cliente u otra persona posee información razonablemente adecuada para hacer una decisión informada. De ordinario, requerirá una comunicación que incluya la divulgación de los hechos y las circunstancias que dan margen a la situación, cualquier explicación que sea razonablemente necesaria para informar a su cliente u otra persona de las ventajas y desventajas significativas del curso de acción propuesto, y una discusión de las opciones y alternativas para su cliente o la otra persona. En algunas circunstancias será apropiado que la persona que ejerce la abogacía aconseje a su cliente u otra persona a obtener el consejo de otra persona abogada. Una persona que ejerce la abogacía no tiene que informar a su cliente u otra persona de los hechos o las implicaciones que ya son conocidos por su cliente u otra persona; sin embargo, una persona que ejerce la abogacía que no brinda información personalmente a su cliente u otra persona asume el riesgo de que su cliente u otra persona no esté informada adecuadamente y que el consentimiento sea inválido. Al determinar si la información y la explicación provista son razonablemente adecuadas, los factores relevantes incluyen si su cliente u otra persona tiene experiencia general en asuntos legales y en tomar decisiones como las que se requieren en ese momento y si su cliente o la otra persona está representada independientemente por otra persona que ejerce la abogacía al prestar el consentimiento. Normalmente, estas personas necesitan mucho menos información y explicación que otras y, generalmente, se presume que un o una cliente u otra persona que al momento de consentir tiene la representación independiente de otra persona que ejerce la abogacía prestó un consentimiento informado.

[6] En general, una persona que ejerce la abogacía no debe presumir que el silencio de su cliente u otra persona significa que consintió. Obtener el

consentimiento informado requerirá usualmente una respuesta afirmativa de su cliente u otra persona. Sin embargo, el consentimiento puede inferirse de la conducta de su cliente u otra persona que recibió información adecuada sobre el asunto. Varias reglas requieren que el consentimiento de una persona se confirme por escrito. Véanse las Reglas 1.7(b) y 1.9(a). Para una definición de "escrito o documento" y "por escrito", véase el inciso (p) de esta regla. Otras reglas requieren que el consentimiento de la o del cliente se obtenga por un escrito firmado por la persona. Véanse los incisos (a) y (g) de la Regla 1.8.

**Fraude, fraudulento o fraudulenta**

[7] Al mencionarse en estas Reglas los términos "fraude" "fraudulento" o "fraudulenta" se refieren a conducta que se caracteriza como tal en el derecho sustantivo o procesal en Puerto Rico y que tiene como propósito engañar. Sin embargo, no incluye una declaración inexacta basada en negligencia o el incumplimiento negligente de notificar información pertinente. Para propósito de estas Reglas, no es necesario que alguien haya sufrido un daño o que se haya amparado en la declaración inexacta o en la ausencia de información.

**Oficina legal**

[8] La determinación de si dos o más personas que ejercen la abogacía constituyen una oficina legal según definido en el inciso (v) dependerá de los hechos específicos. Por ejemplo, dos practicantes que comparten espacio de oficina y que se consultan y se ayudan ocasionalmente, de ordinario no se considerará que constituyen una oficina legal. Sin embargo, si se presentan ante el público de una manera que sugiere que son una oficina legal, o se comportan como una oficina legal, deben considerarse como una oficina legal para propósitos de estas Reglas. Los términos de cualquier acuerdo formal entre personas que ejercen la abogacía que se asocian serán pertinentes para determinar si constituyen una oficina legal, como lo es el hecho de que tengan mutuamente acceso a la información de su respectiva clientela. Además, es relevante en casos dudosos considerar el propósito de la regla que esté en controversia. Un grupo de personas que ejercen la abogacía podría considerarse como una oficina legal para propósitos de la regla que dispone que la misma persona que ejerce la abogacía no debe representar partes opuestas en un litigio, aunque podría no serlo para propósitos de la regla que dispone que la información adquirida por una persona que ejerce la abogacía

se le atribuye a otra persona abogada.

[9] En lo concerniente al departamento legal de una entidad, incluido el gobierno, de ordinario no se cuestiona que las y los miembros de tal departamento se consideran una oficina legal conforme al significado de estas Reglas. Sin embargo, podrá haber incertidumbre en cuanto a la identidad de su cliente. Por ejemplo, puede que no quede claro si el departamento legal de una corporación, además de representar a la corporación, también representa a una subsidiaria o a una corporación afiliada. Una duda similar puede surgir concerniente a una asociación no incorporada y sus afiliadas locales.

[10] Cuestionamientos similares pueden suscitarse respecto a personas que ejercen la abogacía que laboran en oficinas u organizaciones de asistencia legal o de servicios legales. Según sea la estructura de la organización, en su totalidad o algunos de sus componentes, podrá constituir una oficina legal para propósitos de estas Reglas.

**Ratificado por escrito**

[11] Si no es posible que la persona que ejerce la abogacía obtenga una ratificación por escrito en el momento en que su cliente brinda consentimiento informado, entonces deberá obtener tal ratificación dentro de un tiempo razonable. Si la persona que ejerce la abogacía obtuvo el consentimiento informado de su cliente, podrá actuar basado en tal consentimiento siempre y cuando se ratifique posteriormente por escrito dentro de un tiempo razonable.

### CAPÍTULO I: LA RELACIÓN CLIENTE-ABOGADO O ABOGADA Y REQUIRENTE-NOTARIO O NOTARIA

#### REGLA 1.1. COMPETENCIA

La persona que ejerce la abogacía proveerá a sus clientes una representación legal competente. Una representación legal competente requiere que la persona que ejerce la abogacía posea el conocimiento jurídico, las destrezas, la rigurosidad, la disponibilidad de tiempo y los recursos y la preparación que razonablemente se exija para atender apropiadamente el asunto.

La persona que ejerce la notaría desarrollará su función con corrección y competencia en la aplicación de la ley y en todas las manifestaciones de su actividad profesional. Buscará la forma jurídica más adecuada

para atender los intereses públicos y privados implicados en las transacciones y en los actos en que interviene.

**COMENTARIOS**

**Conocimiento del Derecho y destrezas profesionales**

[1] Al determinar si una persona que ejerce la abogacía emplea el conocimiento jurídico y la destreza que sea necesaria en un asunto en particular, se considerará la complejidad y la naturaleza del asunto, la experiencia en general de la persona que ejerce la abogacía, su formación y experiencia en la materia del Derecho en controversia, la preparación y el estudio que podrá dedicarle al asunto, y si es factible referir el asunto, asociarse o consultar con una persona que ejerce la abogacía de reconocida competencia en la materia.

[2] Una persona que ejerce la abogacía no necesita una formación especial o experiencia previa para manejar asuntos legales de naturaleza que le son desconocidos. Aun cuando cuente con poco tiempo de admisión, una persona que ejerce la abogacía puede ser tan competente como una persona practicante con vasta experiencia. Algunas destrezas importantes, tales como el análisis de jurisprudencia, la evaluación de prueba y la redacción legal son requeridas para todo asunto legal. Quizás la destreza más fundamental consiste en determinar la naturaleza del problema legal de una o un cliente, destreza que trasciende el conocimiento especializado. Una persona que ejerce la abogacía puede proveer a su cliente una representación adecuada en una materia completamente novedosa con el estudio necesario. La representación competente también puede ser provista mediante la asociación con una persona que ejerce la abogacía que tenga una competencia reconocida en la materia del Derecho en controversia.

[3] En una emergencia una persona que ejerce la abogacía puede brindar consejo o asistencia en un asunto para el cual no cuenta necesariamente con las destrezas requeridas cuando no es factible referirlo, asociarse o consultar con otra persona que ejerce la abogacía. Aun en caso de emergencia, sin embargo, la asistencia debe limitarse a lo que sea razonablemente necesario bajo las circunstancias, ya que una acción mal concebida bajo condiciones de emergencia puede menoscabar los intereses de su cliente.

[4] Una persona que ejerce la abogacía puede aceptar una representación legal para la cual logrará la competencia requerida mediante una preparación razonable. Esto aplica también a una persona que ejerce la abogacía que sea asignada como representante de oficio. Véase también la Regla 6.2.

**Rigurosidad y preparación**

[5] El manejo competente de una controversia en particular incluye la investigación y el análisis sobre los hechos y los aspectos legales del asunto, así como el uso de los métodos y los procedimientos aceptados por personas que ejercen la abogacía de forma competente. También incluye la preparación adecuada. La atención y la preparación requerida están determinadas en parte por lo que se encuentra en controversia; la litigación compleja y las transacciones complicadas por lo general requieren un trato más exhaustivo que las controversias que tienen menos complejidad y consecuencias. Un acuerdo entre la persona que ejerce la abogacía y su cliente en cuanto al alcance de la representación puede limitar los asuntos por los cuales el abogado o la abogada será responsable. Véase la Regla 1.2(c).

**Contratar con otras personas que ejercen la abogacía**

[6] Antes de que una persona que ejerce la abogacía se asocie con otra persona que ejerce la abogacía, que no pertenezca a su oficina legal, para asistir o proveer servicios legales a su cliente, de ordinario debe obtener el consentimiento informado de su cliente y deberá creer razonablemente que los servicios legales de las abogadas o los abogados contratados contribuirán a una representación competente y ética de su cliente. Véanse las Reglas 1.2(a) (distribución de autoridad), 1.4 (comunicación), 1.5(e) (honorarios compartidos), 1.6 (confidencialidad de la información), y 5.5(a) (práctica no autorizada de la abogacía). La razonabilidad de la decisión por parte de la persona que ejerce la abogacía de asociarse con otra persona que ejerce la abogacía que no pertenece a su oficina legal dependerá de las circunstancias particulares de cada caso, incluida la educación, la experiencia y la reputación de las personas que ejercen la abogacía, la naturaleza de los servicios que se le asignen a estas personas que ejercen la abogacía; y las protecciones legales y estas Reglas, en particular, las relacionadas con la confidencialidad de la información.

[7] Cuando las personas que ejercen la abogacía de más de una oficina legal proveen servicios legales a su cliente sobre un asunto en particular, de

ordinario deberán consultar entre sí y con su cliente sobre el alcance de su representación y la distribución de responsabilidad entre sí. Véase la Regla 1.2. Al hacer una distribución de responsabilidad en un asunto pendiente ante un tribunal, los y las representantes legales de las partes podrán tener obligaciones adicionales que están fuera del alcance de estas Reglas.

**Mantenerse competente**

[8] Para mantener el conocimiento y la destreza requerida, una persona que ejerce la abogacía debe mantenerse al tanto de los cambios en el Derecho y en la práctica, así como cumplir con los requisitos de educación jurídica continua exigibles a toda persona que ejerce la abogacía. Sobre el deber de cumplir con los requisitos del Programa de Educación Jurídica Continua, véase la Regla 8.4(h) y su comentario [9]. Véase, además, la Regla 1.19 sobre el deber de competencia y diligencia tecnológica.

**Competencia en la función notarial**

[9] La seguridad jurídica en el ámbito extrajudicial, como necesidad social, exige de un instrumento público, por medio del ejercicio de una función pública. La importancia de los efectos que se le reconocen a este documento público conlleva exigencias especiales. En relación con el deber de competencia, es de suma importancia que las personas que ejercen la notaría cumplan con rigor los requisitos sustantivos y de forma en la autorización de documentos.

[10] Las personas que desempeñen la notaría ejercerán su actividad profesional con competencia y preparación adecuada, particularmente, en las funciones esenciales de consejo, asesoramiento, interpretación y aplicación de la ley. Actualizarán sus conocimientos, tanto en el plano jurídico como en el plano técnico, y cumplirán con el deber de educación jurídica continua que el Tribunal Supremo de Puerto Rico disponga. Respecto al deber de competencia y diligencia tecnológica, véase la Regla 1.19.

REGLA **1.2.** ALCANCE DE LA REPRESENTACIÓN LEGAL Y LA FUNCIÓN NOTARIAL

(a)     Salvo lo dispuesto en los incisos (c), (d) y (e), la persona que ejerce la abogacía deberá acatar las decisiones de su cliente relacionadas con los objetivos de la representación legal y, conforme dispone la Regla 1.4, le consultará la forma de adelantar estos objetivos.

Asimismo, podrá realizar aquellas acciones a nombre de su cliente autorizadas implícitamente con el propósito de efectuar la representación legal. La persona que ejerce la abogacía acatará la decisión de su cliente en cuanto a una transacción. De igual forma, en un caso penal, luego del correspondiente asesoramiento, acatará la decisión de su cliente sobre la alegación a formular, si desea renunciar a su derecho a juicio por jurado o si desea testificar durante el juicio.

(b)      Salvo lo dispuesto en la Regla 6.2, ninguna persona que ejerce la abogacía tiene la obligación de representar a determinada o determinado cliente. No obstante, asumir la representación de su cliente, incluso al amparo de una asignación de oficio, no constituirá un endoso a las actividades o los pensamientos políticos, económicos, sociales o morales de su cliente.

(c)      La persona que ejerce la abogacía podrá limitar el alcance de su representación legal si la limitación es razonable bajo las circunstancias y su cliente presta su consentimiento informado.

(d)      La persona que ejerce la abogacía no aconsejará o ayudará a su cliente a incurrir en conducta criminal o fraudulenta. Sin embargo, podrá discutir las consecuencias de cualquier conducta propuesta por su cliente y podrá aconsejarle o asistirle en un esfuerzo de buena fe para determinar la validez, alcance, significado o aplicación de una ley o norma jurídica.

(e)      Una persona que ejerce la abogacía puede asumir la defensa de una persona imputada o acusada de un delito, independientemente de su opinión en cuanto a su culpabilidad. Después de asumir la defensa de una persona imputada o acusada, tiene el deber de presentar cualquier defensa que las leyes permitan, con el fin de que no sea privada de su libertad sin el debido proceso de la ley.

(f)      Ha de entenderse que la mejor práctica es que los acuerdos de representación legal sean reducidos a escrito.

(g) La persona que ejerce la notaría aplicará su propio criterio al prestar el servicio requerido por las personas que solicitan su intervención y actuará libre de influencias al formar un juicio profesional sobre las alternativas jurídicamente adecuadas para

garantizar la legalidad y validez de los actos y los documentos que autoriza. Como figura autónoma, no está subordinado ni subordinada a las influencias, órdenes o instrucciones de terceras personas en aspectos administrativos o económicos.

**COMENTARIOS**

**Distribución de responsabilidad entre la o el cliente y la persona que ejerce la abogacía**

[1] El inciso (a) confiere autoridad total a su cliente para determinar los propósitos de la representación legal dentro de los límites impuestos por ley y las obligaciones profesionales impuestas a la persona que ejerce la abogacía. Las decisiones especificadas en el inciso (a), tales como transigir una causa civil, deberán también ser tomadas por su cliente. Véase la Regla 1.4(a)(1) sobre el deber de la persona que ejerce la abogacía de comunicarse con su cliente sobre tales decisiones. Respecto a la manera de lograr los objetivos de su cliente, deberá consultarlo con su cliente según requerido por la Regla 1.4(a)(2) y podrá tomar acciones conducentes para cumplir con la representación para la cual esté implícitamente autorizado o autorizada.

[2] Sin embargo, existen ocasiones en las cuales una persona que ejerce la abogacía y su cliente están en desacuerdo en cuanto a la manera de lograr los objetivos de la representación. Normalmente sus clientes dan deferencia a la persona que ejerce la abogacía en los asuntos que ameritan conocimiento técnico y destrezas profesionales, en particular en lo que concierne a asuntos técnicos, legales y estratégicos. En cambio, las personas que ejercen la abogacía delegan a su cliente los asuntos relacionados con los gastos del litigio y la posibilidad de afectar a terceras personas. Ahora bien, esta regla no establece cómo deben ser resueltos los desacuerdos sobre los asuntos señalados. Además, podría ser aplicable alguna legislación especial, por lo cual, deberá ser evaluada por la persona que ejerce la abogacía. La persona que ejerce la abogacía también deberá consultar con su cliente para intentar llegar a un acuerdo que sea aceptable mutuamente para dirimir el desacuerdo. Si tales esfuerzos no rinden fruto y la persona que ejerce la abogacía mantiene el desacuerdo fundamental con su cliente, podrá solicitar la renuncia de la representación legal de su cliente. Véase la Regla 1.16(b)(4). De otra parte, su cliente podrá resolver el desacuerdo solicitando la renuncia a la persona que ejerce la abogacía. Véase la Regla 1.16(a)(3).

[3] Al comienzo de una representación legal, el o la cliente podrá autorizar a su representante legal para tomar una acción específica en beneficio suyo sin una consulta adicional. De no darse un cambio significativo, y sujeto a la Regla 1.4, una persona que ejerce la abogacía podrá actuar de acuerdo con tal autorización previa. No obstante, su cliente podrá revocar tal autorización en cualquier momento.

[4] En caso de que su cliente parezca perder su capacidad de obrar, el deber de la persona que ejerce la abogacía de acatar las decisiones de su cliente estará guiado de acuerdo con lo establecido en la Regla 1.14.

**Independencia frente a los puntos de vista o las actividades de la o del cliente**

[5] La persona que ejerce la abogacía no debe negar representación legal a personas que no puedan costear servicios legales, o porque se trate de un asunto controversial o goce del rechazo popular. De la misma manera, representar a una o un cliente no significa que la persona que ejerce la abogacía aprueba los puntos de vista o las actividades de su cliente.

**Acuerdos que limitan el alcance de la representación**

[6] El alcance de los servicios a ser provistos por una persona que ejerce la abogacía podrá limitarse por acuerdo con su cliente o por los términos bajo los cuales los servicios de la persona que ejerce la abogacía se hacen disponibles a su cliente. Cuando una aseguradora contrata a una persona que ejerce la abogacía para que brinde representación al asegurado, por ejemplo, la representación podrá estar limitada a los asuntos cubiertos por la póliza de seguros. Una representación limitada podrá ser apropiada porque su cliente tiene una expectativa limitada para su representación. Además, los términos bajo los cuales se asume la representación podrían excluir maneras específicas que, de lo contrario, estarían disponibles para lograr los objetivos de su cliente. Tales limitaciones pueden excluir acciones que su cliente considere que son muy costosas o que la persona que ejerce la abogacía considere repulsivas o imprudentes.

[7] Aunque esta regla confiere una capacidad sustancial para que la persona que ejerce la abogacía limite la representación legal, tal limitación deberá ser razonable de acuerdo con las circunstancias. Si, por ejemplo, el objetivo de su cliente se limita a obtener información general sobre el Derecho para que

pueda atender un asunto legal común y típicamente sencillo, podrán acordar que los servicios de la persona que ejerce la abogacía se limitarán a una breve consulta vía telefónica. Esta limitación, sin embargo, no sería razonable si el tiempo dedicado no fuera suficiente para ofrecer un consejo legal en el cual su cliente pueda confiar. Aunque un acuerdo de representación limitada no exime a la persona que ejerce la abogacía del deber de proveer una representación competente, tal limitación es un factor para considerar al determinar el conocimiento legal, la destreza, la profundidad y la preparación razonablemente necesarios para la representación. Véase la Regla 1.1.

[8] Todos los acuerdos relacionados con la representación legal de un cliente deberán ser cónsonos con estas Reglas y otras leyes. Véanse las Reglas 1.1, 1.8 y 5.6.

**Transacciones prohibidas, fraudulentas y criminales**

[9] El inciso (d) prohíbe que una persona que ejerce la abogacía asesore o asista, a sabiendas, a su cliente para que cometa un crimen o fraude. Sin embargo, esta prohibición no impide que la persona que ejerce la abogacía pueda dar una opinión honesta sobre las consecuencias reales que podrían resultar del curso de acción que ordene su cliente. El hecho de que su cliente haga uso del consejo al momento de incurrir en un acto criminal o fraudulento no convierte a la persona que ejerce la abogacía en partícipe de tal acto. Existe una gran distinción entre presentarle a su cliente un análisis sobre las consecuencias legales de una conducta impropia versus recomendar cómo cometer con impunidad un crimen o fraude.

[10] Cuando una o un cliente ha iniciado la actividad prohibida o fraudulenta y tal conducta aún continúa, la responsabilidad de la persona que ejerce la abogacía es particularmente delicada. La persona que ejerce la abogacía está impedida de asistir a su cliente, por ejemplo, en la redacción o entrega de documentos que sabe que son fraudulentos o de sugerir la manera en que el acto incorrecto puede ocultarse. Una persona que ejerce la abogacía no podrá continuar asesorando a su cliente luego de darse cuenta de que la actividad que la persona que ejerce la abogacía pensó en un inicio que era legal se tornó criminal o fraudulenta. Por tanto, la persona que ejerce la abogacía deberá renunciar de inmediato a la representación legal de su cliente en el asunto. Véase la Regla 1.16(a). En algunos casos, la renuncia de la persona que ejerce la abogacía no será suficiente. Podrá ser necesario que la persona que ejerce la abogacía indique la razón para su renuncia y que retire cualquier opinión,

documento o aseveración que haya ofrecido sobre el asunto. Véase la Regla 4.1.

[11] Cuando su cliente es un fiduciario o fiduciaria, la persona que ejerce la abogacía tiene obligaciones especiales al tratar con la persona o entidad beneficiaria.

[12] El inciso (d) aplica independientemente de si la parte defraudada participó en la transacción. Por tanto, una persona que ejerce la abogacía no debe participar en una transacción que tenga el propósito de evadir de manera criminal o fraudulenta una responsabilidad contributiva. El inciso (d) no excluye que pueda asumirse la defensa en un incidente criminal como parte de la iguala para servicios legales que se tenga con una entidad legítima. La última cláusula del inciso (d) reconoce que para cuestionar la validez de la interpretación de una ley o de una reglamentación puede incurrirse en un curso de acción que implique la desobediencia de una ley, reglamentación, o interpretación hecha por las autoridades gubernamentales.

[13] Si una persona que ejerce la abogacía conoce o debe conocer razonablemente que su cliente espera asesoramiento contrario a lo establecido por estas Reglas u otra ley o si el abogado o la abogada tiene la intención de actuar de manera contraria a las instrucciones de su cliente, la persona que ejerce la abogacía deberá consultar con su cliente respecto a las limitaciones sobre la conducta de la persona que ejerce la abogacía. Véase la Regla 1.4(a)(5).

**Acuerdos con organizaciones**

[14] Al contratar con organizaciones para la representación de sus miembros, la relación cliente-abogado o abogada se establece con la o el miembro de la organización a ser representada o representado, no con la organización que contrata a la persona que ejerce la abogacía. Para que la persona que ejerce la abogacía pueda aceptar compensación de la organización para la representación de la o del cliente, se tiene que cumplir con la Regla 1.8(f).

**Autonomía de la persona que ejerce la notaría**

[15] La autonomía de la persona que ejerce la notaría se refiere a la potestad de decidir su propia organización y ejercer sus funciones públicas sin más limitaciones que las establecidas en la Constitución, las leyes y la normativa

del Tribunal Supremo que le aplique. Los aranceles notariales están dispuestos por ley y los honorarios extraarancelarios razonables podrán pactarse por acuerdo entre las partes. Véase el Artículo 3 de la Ley Notarial.

**Independencia de la persona que ejerce la notaría**

[16] Las personas que ejercen la notaría actuarán con independencia con respecto a las partes. Esto significa que debe encontrarse libre de influencias de los intereses de quienes han requerido su intervención. Las personas que practiquen la notaría buscarán la verdad de manera objetiva, sin sujeción a los criterios de las partes ni de la administración pública. Como criterio para cumplir con esta condición, es importante que las personas que ejercen la notaría no tengan intereses particulares que puedan limitar su independencia. Véase la Regla 4 del Reglamento Notarial. Los notarios y las notarias ejercen una función pública en virtud del poder delegado por el Estado. Véase la Regla 1.0 (s) y (aa).

REGLA 1.3. DILIGENCIA

> Una persona que ejerce la abogacía deberá actuar con diligencia razonable y prontitud al asumir la representación de su cliente.

> Una persona que ejerce la notaría estará razonablemente disponible y actuará con diligencia profesional al brindar sus servicios notariales.

<u>**COMENTARIOS**</u>

[1] Una persona que ejerce la abogacía debe atender los asuntos de su cliente a pesar de que sienta oposición, obstrucción o tenga reparos personales, y debe tomar las medidas que sean necesarias y éticas para vindicar los derechos o intereses de su cliente. Una persona que ejerce la abogacía también debe actuar con compromiso y dedicación en beneficio de los intereses de su cliente. Sin embargo, una persona que ejerce la abogacía no tiene la obligación de perseguir otra ventaja que podría obtenerse para su cliente. Por ejemplo, una persona que ejerce la abogacía tiene discreción profesional para determinar la manera en que debe abogar por los intereses de su cliente. Véase la Regla 1.2. El deber de la persona que ejerce la abogacía de actuar con diligencia razonable no requiere el uso de tácticas que sean ofensivas o que no ofrezcan un trato cortés y respetuoso hacia todas las personas involucradas en el proceso legal.

[2] La persona que ejerce la abogacía debe controlar su carga de trabajo para que así pueda manejar de manera competente los asuntos encomendados.

[3] Probablemente, no hay una falla profesional que indigne más que la procrastinación. Los intereses de su cliente pueden afectarse adversamente por el transcurso del tiempo o por un cambio en las circunstancias; en situaciones extremas, cuando una persona que ejerce la abogacía deja prescribir una acción, se afectan los derechos de su cliente. Sin embargo, aun cuando los intereses de su cliente no se vean afectados sustancialmente, un atraso irrazonable puede ocasionar ansiedad innecesaria en su cliente y la pérdida de confianza en su representante legal. El deber de una persona que ejerce la abogacía de actuar con prontitud razonable, sin embargo, no excluye que la persona que ejerce la abogacía pueda presentar una solicitud razonable para prorrogar algún asunto que no conlleve un perjuicio a los intereses de su cliente o a la administración de la justicia.

[4] A no ser que la relación cliente-abogado o abogada se termine como establece la Regla 1.16, una persona que ejerce la abogacía deberá culminar todos los asuntos que atiende para su cliente. Si la contratación de la persona que ejerce la abogacía está limitada a un asunto en particular, la relación cliente-abogado o abogada concluye cuando el asunto en particular llegue a su final. Si una persona que ejerce la abogacía le sirvió a su cliente durante un periodo sustancial de tiempo en variedad de asuntos, se puede dar el caso de que su cliente presuma que la persona que ejerce la abogacía seguirá representándole de manera continua a menos que la persona que ejerce la abogacía le notifique su renuncia. La persona que ejerce la abogacía debe aclarar, preferiblemente por escrito, cualquier duda sobre si existe una relación cliente-abogado o abogada, de modo que su cliente no presuma equivocadamente que la persona que ejerce la abogacía está a cargo de sus asuntos pendientes cuando dejó de hacerlo. Por ejemplo, si una persona que ejerce la abogacía manejó un procedimiento judicial o administrativo que produjo un resultado adverso para su cliente y la persona que ejerce la abogacía no acordó que la representación legal continuará durante la apelación, debe consultar con su cliente sobre la posibilidad de presentar un recurso apelativo antes de abandonar su responsabilidad en el caso. Véase la Regla 1.4(a)(2). Si la persona que ejerce la abogacía tiene la obligación de presentar el recurso apelativo dependerá del alcance de la representación que haya acordado con su cliente. Véase la Regla 1.2.

[5] Para evitar el abandono de los asuntos del o de la cliente, el deber de diligencia hace aconsejable que un abogado o una abogada que trabaja por cuenta propia designe de antemano a otra persona que ejerce la abogacía de forma competente en caso de muerte, incapacidad (disminución de capacidad) o cuando se desconozca su paradero. La persona que ejerce la abogacía así designada, previa autorización de la o del cliente, podrá revisar los archivos, notificar a cada cliente sobre la muerte o la incapacidad de la persona que ejerce la abogacía, y determinar si existe la necesidad de alguna acción protectora inmediata. Las gestiones realizadas por la persona designada que ejerce la abogacía no establecerán una relación cliente-abogado o abogada, a menos que la o el cliente solicite que la abogada designada o el abogado designado le represente.

La persona que ejerce la abogacía notificará al abogado o a la abogada que se propone designar para estas gestiones, quien deberá expresar su aceptación por escrito. Aceptada la designación, deberá comunicar cualquier cambio en sus circunstancias que le impida continuar como abogada o abogado designado.

**Diligencia en la función notarial**

[6] La atención de una persona que ejerce la notaría a las personas usuarias del servicio notarial será diligente y eficaz. Véase *In re: Pagani Padró*, 198 DPR 812, 822 (2017).

### REGLA 1.4. COMUNICACIÓN

(a)     Para mantener una comunicación efectiva con su cliente, la persona que ejerce la abogacía deberá:

(1)     informar prontamente a su cliente sobre cualquier decisión o circunstancia para la cual, bajo estas Reglas, se requiera el consentimiento informado de su cliente, según se define en la Regla 1.0(j);

(2)     consultar razonablemente con su cliente sobre los medios que se proponga utilizar para lograr sus objetivos;

(3)     mantener a su cliente razonablemente informado o informada sobre el estado del asunto objeto de la representación;

(4)     responder con prontitud cualquier solicitud razonable de información relacionada con el asunto objeto de la representación;

(5)     consultar con su cliente sobre cualquier limitación pertinente que pueda afectar la conducta de la persona que ejerce la abogacía, cuando sabe que su cliente espera asistencia que no está permitida por estas Reglas, otra ley o norma jurídica, y

(6)     efectuar esfuerzos razonables y diligentes dirigidos a restablecer la comunicación con su cliente cuando haya perdido contacto con este o esta y estén por vencer los términos para presentar una causa de acción.

(b)     Una persona que ejerce la abogacía ofrecerá a su cliente aquellas explicaciones que sean razonablemente necesarias para que pueda tomar decisiones informadas sobre el asunto objeto de la representación.

(c)     Una persona que ejerce la notaría ofrecerá consejo, asesoramiento e interpretación de la ley a la persona usuaria de servicio para que tome una decisión informada. Informará claramente los medios legítimos para la obtención de los fines lícitos que la persona usuaria del servicio interesa y las consecuencias de los actos o los negocios pretendidos.

## COMENTARIOS

[1] Una comunicación razonable entre la persona que ejerce la abogacía y su cliente es necesaria para que su cliente pueda participar de manera efectiva en la representación legal.

**Comunicación con clientes**

[2] Estas Reglas requieren que la o el cliente decida el curso de acción de la representación legal. El subinciso (a)(1) requiere que la persona que ejerce la abogacía consulte prontamente con su cliente y obtenga su consentimiento antes de poder tomar cualquier decisión, a menos que en discusiones previas hayan establecido el curso de acción. Por ejemplo, una persona que ejerce la abogacía que recibe una oferta de transacción de la representación legal de la parte contraria en un caso civil, o una oferta para hacer una alegación en un caso criminal, deberá informar de manera inmediata sobre este asunto a su cliente, a no ser que su cliente haya expresado previamente que tal oferta debe ser aceptada o rechazada o haya autorizado a su representante legal a aceptar o rechazar la oferta. Véase la Regla 1.2(a).

[3] El subinciso (a)(2) requiere que la persona que ejerce la abogacía cumpla razonablemente con su obligación de consultar con su cliente sobre los medios que se utilizarán para lograr los objetivos de la representación. En algunas situaciones se requiere que la persona que ejerce la abogacía consulte antes de actuar. La razonabilidad de consultar con un cliente depende tanto de la importancia de la acción bajo consideración, así como de si es factible consultar con la o el cliente. En otras circunstancias, como sería durante un juicio en el que se tiene que tomar una decisión inmediata, las exigencias de la situación pueden requerir que la persona que ejerce la abogacía actúe sin consulta previa. Aún en tales situaciones, la persona que ejerce la abogacía debe actuar razonablemente e informar a su cliente las decisiones que tomó a su nombre. Además, el subinciso (a)(3) requiere que la persona que ejerce la abogacía mantenga a su cliente razonablemente informado o informada sobre el estado de los procedimientos, tal y como sería un asunto sustancial que afecte un plazo o algún elemento esencial de la representación.

[4] La comunicación continua de una persona que ejerce la abogacía con sus clientes minimizará las ocasiones en las que su cliente necesitará solicitar información concerniente a la representación. Cuando su cliente hace una solicitud razonable de información, el subinciso (a)(4) requiere el cumplimiento rápido de la solicitud, o si una respuesta rápida no es factible, la persona que ejerce la abogacía, o un o una miembro de la oficina legal, debe acusar el recibo de la solicitud de información e informarle en cuánto tiempo deberá esperar una respuesta. Una persona que ejerce la abogacía debe responder con prontitud a las comunicaciones de su cliente o acusar su recibo.

**Explicaciones a su cliente**

[5] Su cliente debe tener información suficiente para poder participar de manera inteligente en las decisiones concernientes a los objetivos de la representación y la manera de alcanzarlos, en tanto su cliente quiera y pueda participar. La idoneidad de la información depende, en parte, del tipo de asesoramiento o de la asistencia que sea requerida. Por ejemplo, cuando hay tiempo para explicar una propuesta formulada en una negociación, la persona que ejerce la abogacía debe revisar con su cliente todas las disposiciones importantes antes de llegar a un acuerdo. Cuando se trata de un litigio, una persona que ejerce la abogacía debe explicar a su cliente la estrategia general y la posibilidad de éxito de esta y, de ordinario, debe consultar a su cliente sobre aquellas tácticas de litigación que podrían resultar en un gasto sustancial o causar daño a terceras personas. Por otro lado, no se espera que una persona que ejerce la abogacía de ordinario haga una descripción detallada de la estrategia que implementará en algún juicio o transacción. El principio rector es que la persona que ejerce la abogacía debe satisfacer las expectativas razonables de información de la o del cliente consistentes con el deber de actuar por los mejores intereses de su cliente y cumplir con lo requerido de acuerdo con la naturaleza de la representación. En ciertas circunstancias, tales como cuando una persona que ejerce la abogacía le solicita a su cliente que consienta a una representación que está afectada por un conflicto de intereses, la o el cliente debe prestar su consentimiento informado, tal y como se define en la Regla 1.0(j).

[6] De ordinario, la información a ser provista es aquella que es apropiada para una persona adulta comprensiva y responsable. Sin embargo, en ocasiones esto no podría ser factible, por ejemplo, cuando su cliente es una persona menor de edad o tiene alguna condición que afecta su capacidad de comprensión. Véase la Regla 1.14. Cuando su cliente es una entidad, organización o grupo, con frecuencia resulta imposible o inapropiado informar a cada miembro sobre los asuntos legales. En estos casos, la persona que ejerce la abogacía debe dirigir sus comunicaciones a los oficiales apropiados de la entidad. Véase la Regla 1.13. Cuando se trata de muchos asuntos rutinarios, se puede acordar con el cliente un sistema de información limitado u ocasional.

[7] Cuando una persona que ejerce la abogacía pierde contacto con su cliente y están por vencer los términos para presentar una causa de acción, su

responsabilidad ética está sujeta al grado de diligencia que despliegue para contactar a la persona representada. Esto significa que la persona que ejerce la abogacía deberá efectuar esfuerzos razonables y diligentes dirigidos a restablecer la comunicación con su cliente y advertirle de la situación procesal del asunto encomendado. Lo que constituye un esfuerzo "razonable y diligente" para localizar a la o al cliente dependerá de un análisis sobre la totalidad de las circunstancias del caso.

**Retraso en la comunicación**

[8] En algunas circunstancias, una persona que ejerce la abogacía podría justificar demorarse en comunicar cierta información a su cliente cuando, en caso de comunicarlo al momento, esta persona probablemente pueda reaccionar de manera imprudente. De esta forma, una persona que ejerce la abogacía puede reservarse el diagnóstico psiquiátrico de una o un cliente cuando el médico psiquiatra que examinó a su cliente advierte que divulgar el padecimiento podría ser perjudicial a su cliente. Una persona que ejerce la abogacía no puede reservarse información que sirva a su propio interés o conveniencia, o los de otra persona. Las reglas u órdenes procesales del litigio podrían permitir que la información suministrada a una persona que ejerce la abogacía no pueda ser divulgada a la o el cliente. La Regla 3.4(c) ordena el cumplimiento de tales reglas procesales u órdenes.

**Comunicación en la función notarial**

[9] Antes de iniciar su intervención profesional, la persona que ejerce la notaría explicará detalladamente a las personas que requieran sus servicios las etapas del proceso de otorgamiento y autorización de un instrumento público o del trámite de un asunto no contencioso o declaración jurada, según sea el caso, al igual que el alcance de su intervención. Ofrecerá el asesoramiento que sea necesario, incluso las aclaraciones y advertencias requeridas, para que las personas que requieran sus servicios puedan tomar decisiones informadas sobre el asunto objeto de la intervención notarial. Asesorará y ofrecerá la oportunidad de hacer las consultas que entienda procedentes con otros u otras profesionales, cuando las personas que requieran sus servicios así lo desean, para entender mejor el alcance de las recomendaciones. Véase *In re: Meléndez Pérez*, 104 DPR 770, 776 (1976).

[10] Será obligación de la persona que ejerce la notaría explicar los límites impuestos a la función notarial. Cuando el servicio que se le solicita no es

permitido por el ordenamiento jurídico, ofrecerá, cuando sea posible, otras alternativas cónsonas con el ordenamiento. Una persona que ejerce la notaría orientará a las personas que requieran sus servicios sobre los trámites necesarios relacionados con el servicio solicitado, incluso un estimado del costo que conllevan. La persona que ejerce la notaría no aconsejará a las personas que requieran sus servicios la adopción de formas jurídicas o documentales que sean inadecuadas o innecesarias con el propósito de obtener una mayor retribución. Véase *Chévere v. Cátala*, 115 DPR 432, 438 (1984).

[11] Una persona que ejerce la notaría informará a las partes con interés de cualquier situación que afecte la eficacia del instrumento público autorizado. También realizará de forma diligente las gestiones necesarias para rectificar y mitigar los efectos derivados de tal situación. Véase Artículo 29 de la Ley Notarial.

**REGLA 1.5. HONORARIOS**

(a)     Una persona que ejerce la abogacía no podrá pactar, cobrar o recibir honorarios o partidas irrazonables por concepto de gastos. Los criterios que han de considerarse para determinar la razonabilidad de los honorarios incluyen los siguientes:

(1)     el tiempo y trabajo requerido, la novedad y dificultad de las cuestiones involucradas y la destreza requerida para llevar a cabo el trabajo adecuadamente;

(2)     la posibilidad, si así es percibida por su cliente, de que la aceptación de la encomienda de servicios impida que la persona que ejerce la abogacía trabaje otras encomiendas de servicio;

(3)     los honorarios que se acostumbran a cobrar por servicios legales similares en el lugar en donde se prestarán, en consideración a los límites establecidos en las leyes, los reglamentos o las disposiciones administrativas pertinentes;

(4)     la cuantía del asunto encomendado y los resultados obtenidos;

(5)     las limitaciones de tiempo impuestas por su cliente o las circunstancias;

(6)     la naturaleza y duración de la relación profesional con su cliente;

(7)     la experiencia, reputación y habilidad de la oficina legal o de las personas que ejercen la abogacía que brindarán el servicio, y

(8)     si los honorarios son fijos o contingentes.

(b)     El alcance de la representación y la base o tarifa que se utilizará para calcular los honorarios y gastos por los cuales responderá su cliente, le serán comunicados, preferiblemente por escrito, antes o razonablemente cerca de haber comenzado su representación, excepto cuando se trate de un o una cliente regular bajo la misma base o tarifa. Cualquier propuesta de cambio en la base o tarifa de los honorarios o gastos también le será informado a la o el cliente.

(c)     Los honorarios pueden ser contingentes al resultado del asunto para el cual se presta el servicio excepto en aquellos asuntos en que la ley o el inciso (d) de esta regla lo prohíban. El acuerdo por honorarios contingentes se hará por escrito, estará firmado por la o el cliente e indicará el alcance de la representación legal, el método en que se determinará la partida de honorarios, incluso el porcentaje o porcentajes que devengará la persona que ejerce la abogacía si el caso se transige, se ve en juicio o se apela; los gastos del litigio y otros gastos relacionados con el litigio que se deducirán de la suma obtenida; y si tales gastos se deducirán antes o después de que se calcule la partida de honorarios contingentes. El acuerdo de honorarios tiene que notificar claramente a la o al cliente sobre cualquier gasto por el cual será responsable independientemente de si su cliente prevalece. Al concluir el asunto para el cual se pactaron honorarios contingentes, la persona que ejerce la abogacía proveerá a su cliente un documento en el que establezca por escrito cuál fue el resultado del asunto y, si hubo recobro, precisará la cuantía remitida a su cliente y cómo se determinó.

(d)     Una persona que ejerce la abogacía no puede pactar, cobrar o recibir mediante pago de dinero o de bienes muebles o inmuebles:

> (1)     honorarios contingentes a la obtención de un divorcio, en reclamaciones de pensiones de alimentos futuros o adeudados, o en una división de bienes en comunidad,

> (2)     honorarios contingentes por representar a una persona imputada en un procedimiento de naturaleza penal.

(e)     La división de honorarios entre profesionales de la abogacía que no ejercen en la misma oficina legal podrá hacerse solo cuando:

> (1)     esta sea en proporción al trabajo llevado a cabo por cada persona que ejerce la abogacía, o todas hayan asumido responsabilidad conjunta por la representación;

> (2)     su cliente esté de acuerdo, incluida la partida que recibirá cada persona que ejerce la abogacía, y este acuerdo se ratifique por escrito, y

> (3)     el total de honorarios sea razonable.

(f) Una persona que ejerce la notaría deberá pactar su responsabilidad notarial con las personas requirentes por acuerdo oral o escrito al inicio de la relación. En este contrato acordará el arancel notarial, el cual se ajustará estrictamente a lo que dispone la Ley Notarial y el Reglamento Notarial. Además, las partes pactarán la suma de los honorarios extraarancelarios y no admitirán que terceras personas intervengan indebidamente en la fijación de estos.

(g) Al autorizar instrumentos públicos, expedir copias certificadas y autorizar testimonios, una persona que ejerce la notaría cancelará los aranceles, los sellos o los derechos correspondientes, conforme lo requieran las leyes y los reglamentos aplicables.

**COMENTARIOS**

**Razonabilidad de honorarios y gastos**

[1] El inciso (a) requiere que las personas que ejercen la abogacía cobren honorarios que sean razonables bajo las circunstancias del caso. Los factores especificados en los subincisos (a)(1) a (a)(8) no constituyen una lista taxativa. Estos factores serán pertinentes según cada caso. Además, el inciso (a) requiere que los gastos a ser facturados a su cliente sean razonables. Una persona que ejerce la abogacía puede solicitar el reembolso del costo de los servicios que preste en su oficina, como copias, o por gastos en que incurra su oficina, como cargos telefónicos, ya sea mediante el cobro de una cantidad razonable acordada por adelantado con la o el cliente o una cantidad que refleje razonablemente el costo incurrido por la persona que ejerce la abogacía.

**Base o tarifa de honorarios**

[2] Cuando la persona que ejerce la abogacía representó regularmente a una o un cliente, de ordinario habrán desarrollado un entendido sobre la base o tarifa de honorarios y los gastos por los cuales la o el cliente será responsable. Sin embargo, en una nueva relación cliente-abogado o abogada se debe establecer prontamente un acuerdo sobre honorarios y gastos. Por lo general, es deseable proporcionar a la o el cliente al menos un memorando simple o una copia de los honorarios que cobra usualmente, donde establezca de forma general la naturaleza de los servicios legales a prestar, la base, tarifa o suma total de los honorarios y hasta qué medida la o el cliente responderá por los gastos que se produzcan en el curso de la representación. Un acuerdo por escrito sobre los términos de la representación reduce la posibilidad de malentendidos entre la persona que ejerce la abogacía y su cliente.

[3] Los honorarios contingentes, así como cualesquiera otros honorarios, están sujetos al criterio de razonabilidad del inciso (a) de esta regla. Para determinar si unos honorarios contingentes en particular son razonables, o si resulta razonable cobrar cualquier tipo de honorarios contingentes, la persona que ejerce la abogacía deberá considerar los factores que sean pertinentes bajo las circunstancias del asunto. Se deben cumplir con aquellas leyes que prohíben el cobro de honorarios contingentes o imponen un porcentaje determinado.

**Términos para el pago**

[4] Una persona que ejerce la abogacía puede requerir el pago anticipado de los honorarios, pero tendrá la obligación de devolver cualquier porción no devengada. Véase la Regla 1.16(d). Una persona que ejerce la abogacía puede aceptar bienes como pago de los servicios profesionales, por ejemplo, un interés económico en una empresa, siempre que esto no implique la adquisición de un interés económico en la causa de acción o asunto del litigio contrario a la Regla 1.8(i). Sin embargo, unos honorarios pagados con una propiedad en lugar de dinero pueden estar sujetos a los requisitos de la Regla 1.8(a) porque tales honorarios tienen a menudo las cualidades esenciales de una transacción comercial entre la persona que ejerce la abogacía y su cliente.

[5] Una persona que ejerce la abogacía no podrá formalizar un acuerdo cuyos términos le permitan reducir indebidamente los servicios o llevarlos a cabo de una manera contraria a los intereses de la o del cliente. Por ejemplo, no debe acordar que los servicios se proporcionarán solo hasta alcanzar una cantidad predeterminada si es previsible que los servicios que se requerirán podrían extenderse sustancialmente, a menos que se le explique adecuadamente la situación a la o el cliente. De lo contrario, la o el cliente tendría que negociar la prestación de servicios adicionales en medio de un procedimiento litigioso o de una transacción. Sin embargo, es apropiado tomar en cuenta la capacidad de pago de la o del cliente para definir el alcance de los servicios profesionales. Una persona que ejerce la abogacía no debe aprovecharse de un pacto de honorarios por hora para realizar gestiones innecesarias.

**Honorarios contingentes**

[6] Como normal general, el pacto de honorarios contingentes es el acuerdo entre la persona que ejerce la abogacía y su cliente en el que se establece que será compensada si prevalece en el caso y en proporción a una cuantía que se recobre en virtud de una sentencia o acuerdo. Cuando así se pacte, la persona que ejerce la abogacía asume el riesgo de no cobrar por la gestión realizada si su cliente no prevalece o, de prevalecer, no se recobran fondos.

[7] Honorarios fijados porcentualmente a base de la participación económica que reciba una o un cliente por sentencia o acuerdo no se consideran honorarios contingentes por el hecho de que se haya pactado un porcentaje para computar los honorarios. Si existe certeza sobre la responsabilidad de la parte demandada y no está en disputa que la o el cliente tiene una acreencia o

alguna participación en el objeto de un litigio o controversia, aun cuando su alcance preciso requiera una determinación judicial, los honorarios fijados porcentualmente no se considerarán honorarios contingentes.

[8] La gestión profesional de una persona que ejerce la abogacía que suponga realizar un trámite simple o rutinario como, por ejemplo, solicitar el retiro de fondos consignados en el tribunal, cuya titularidad no está en disputa, o solicitar el pago de una póliza en la cual su cliente es la parte beneficiaria, no podrá compensarse mediante un acuerdo de honorarios contingentes. Los honorarios pactados por tales servicios serán razonables cuando correspondan a las gestiones realizadas y al tiempo dedicado al asunto, de conformidad con el subinciso (d)(1).

[9] El subinciso (d)(1) también prohíbe pactar honorarios contingentes en casos de división de bienes en comunidad, como son las divisiones de bienes después de un divorcio o de bienes hereditarios. Estos casos pueden pactarse por una tarifa fija, a base de una tarifa por hora, o sobre un porciento de lo que le corresponda a la o al cliente. Sin embargo, al no estar presente el elemento de riesgo usual de los honorarios contingentes, el porcentaje pactado en esos casos debe ser sustancialmente menor que los permitidos en pactos contingentes como**,** por ejemplo, en reclamaciones por daños y perjuicios.

[10] Además de los deberes impuestos en esta regla respecto al cobro de honorarios, toda persona que ejerce la abogacía debe regirse también por las limitaciones estatutarias que existen respecto a la fijación de honorarios profesionales. Entre estas la prohibición de llevar a cabo pactos sobre honorarios con trabajadores o trabajadoras que reclamaren contra sus patronos, según dispuesto por la Ley Núm. 402 de 12 de mayo de 1950, 32 LPRA sec. 3112 et seq. Asimismo, al momento de redactar un acuerdo de representación legal en el que se pacte el cobro de honorarios contingentes, toda persona que ejerce la abogacía deberá observar el límite máximo para los honorarios contingentes en acciones por daños y perjuicios establecido en la Ley Núm. 9 de 8 de agosto de 1974, 4 LPRA sec. 742 y, en reclamaciones por impericia médica establecido en la Ley Núm. 4 de 30 de diciembre de 1986, 26 LPRA sec. 4111. Particularmente, en aquellas instancias en las que la persona que ejerce la abogacía acuerde representar a una persona menor de edad.

**Honorarios contingentes prohibidos**

[11] El inciso (d) prohíbe que una persona que ejerce la abogacía cobre honorarios contingentes en una controversia sobre relaciones de familia cuando el pago esté supeditado a que se obtenga un divorcio, una pensión de alimentos o una adjudicación sobre bienes. El concepto "pensiones de alimentos" incluye, pero no se limita a, pensiones en casos de personas menores, pensiones entre parientes y pensiones en casos de divorcio. La disposición no excluye un acuerdo de honorarios porcentuales razonables para una representación legal en relación con reclamaciones de alimentos adeudados, una pensión de excónyuge o para otros asuntos financieros, pues estos contratos no ameritan una protección particular como política pública.

**División de honorarios**

[12] Una división de honorarios ocurre cuando se hace una sola factura a una o un cliente que cubre los honorarios de dos o más personas que ejercen la abogacía que no laboran en la misma oficina legal. Una división de honorarios facilita la asociación de más de una persona que ejerce la abogacía para un asunto. Cuando una persona que ejerce la abogacía refiere un asunto a otro abogado o abogada, el inciso (e) les permite dividir los honorarios, ya sea basado en proporción a los servicios que presta cada persona que ejerce la abogacía, o según el acuerdo de representación legal conjunta. Además, la o el cliente deberá aceptar el acuerdo, incluso la porción que cada persona que ejerce la abogacía debe recibir y, además, el acuerdo debe ser ratificado por escrito. Los acuerdos de honorarios contingentes serán por escrito e incluirán la firma de la o del cliente, además de cumplir con el inciso (c) de esta regla. La representación conjunta conlleva una responsabilidad financiera y ética de la representación tal y como si las personas que ejercen la abogacía fueran socios o socias. Una persona que ejerce la abogacía debe referir un asunto solo cuando razonablemente entienda que el abogado o la abogada a quien hace el referido tiene la competencia necesaria para atender el asunto. Véase la Regla 1.1.

[13] El inciso (e) no regula ni prohíbe la división de honorarios que se recibirán en el futuro por trabajo realizado cuando las personas que ejercen la abogacía estuvieron previamente asociadas en una oficina legal.

**Controversias sobre honorarios**

[14] Si existe un método alterno para la solución de disputas por honorarios establecido por una asociación de abogados a la cual pertenece la persona que ejerce la abogacía, esta tiene que cumplir con tal procedimiento cuando sea obligatorio. Cuando el procedimiento sea voluntario, debe considerar seriamente participar en este. Una persona que ejerce la abogacía deberá cumplir con el procedimiento que disponga una ley para determinar los honorarios. La persona que ejerce la abogacía que representa a otra parte que tenga interés en tales honorarios deberá cumplir con el procedimiento establecido.

**Honorarios extraarancelarios en la función notarial**

[15] La persona que ejerce la notaría cobrará los honorarios que crea razonables y prudentes por las gestiones previas y preparatorias, incluso las gestiones posteriores que realice, tales como estudios de antecedentes, estudios de título, consultas, preparación de minutas y mandatos en el que la persona que ejerce la notaría presta un servicio adicional. Estos honorarios extraarancelarios se pactarán únicamente por acuerdo entre las partes comparecientes y la persona que ejerce la notaría y no admitirá interferencia indebida de terceras personas. Véase Artículo 78 de la Ley Notarial y Regla 14 del Reglamento Notarial.

**REGLA 1.6. CONFIDENCIALIDAD DE LA INFORMACIÓN**

(a)    La persona que ejerce la abogacía no deberá divulgar información relacionada con la representación de su cliente a no ser que la o el cliente preste su consentimiento informado, la divulgación de la información esté autorizada implícitamente por ser necesaria para representar a su cliente o se permita al amparo del inciso (b) de esta regla.

(b)    La persona que ejerce la abogacía puede divulgar la información relacionada con la representación de su cliente que considere razonablemente necesaria:

(1)    para evitar por medio razonable una muerte o un grave daño corporal que seguramente ocurrirá;

(2)    para evitar que su cliente cometa un crimen o un acto fraudulento que con certeza razonable ocasionará un daño sustancial a los intereses económicos o la propiedad de terceras personas y para lo cual su cliente haya usado o esté usando los servicios del abogado o de la abogada;

(3)    para evitar, rectificar o mitigar un daño sustancial a los intereses económicos o propiedad de otra persona que con certeza razonable hayan sido o puedan ser resultado de un crimen o un acto fraudulento de su cliente, para el cual se haya valido de los servicios profesionales prestados por su representante legal;

(4)    para obtener consejo legal sobre el cumplimiento de su representante legal con estas Reglas;

(5)    para establecer una defensa o reclamación a su favor en una controversia con su cliente, para interponer una defensa contra cargos penales o reclamaciones civiles en su contra por razón de conducta en la cual su cliente se involucró, o para contestar alegaciones en cualquier procedimiento concerniente a la representación de su cliente;

(6)    para cumplir con la ley u orden judicial; o

(7)    para detectar o resolver conflictos de intereses que surjan por razón de que su representante legal cambió de empleo o por cambios en la composición o los intereses propietarios de una oficina legal, pero únicamente si la información divulgada no pondrá en riesgo el privilegio abogada o abogado-cliente o perjudicará a su cliente.

(c)    La persona que ejerce la abogacía deberá hacer esfuerzos razonables para evitar la divulgación inadvertida o no autorizada, o el acceso no autorizado, a información relacionada con la representación de su cliente.

(d)    La persona que ejerce la notaría cumplirá el deber de guardar secreto profesional. Esta obligación vincula a la persona que ejerce la

notaría, así como a sus empleados, empleadas, colaboradoras y colaboradores. El secreto profesional no tiene carácter absoluto, por lo que una persona que ejerce la notaría deberá revelar el contenido de sus archivos notariales cuando así lo disponga una orden judicial o disposición legal.

(e)     El deber de guardar secreto profesional de la persona que ejerce la notaría se extiende a secretos y confidencias respecto a la información, los hechos y las circunstancias sobre las que advenga en conocimiento por motivo de su gestión notarial. Incluye la información preservada electrónicamente. También se extiende a los documentos incorporados a los protocolos y demás archivos notariales, así como a los antecedentes que hubieran sido conservados por la persona que ejerce la notaría. Incluye materias que le hubieran sido reveladas verbalmente, aun si el acto para el cual adquirió la información no se completara o no estuviese relacionado con la gestión.

## COMENTARIOS

[1] Esta regla regula la divulgación que puede hacer una persona que ejerce la abogacía de información relacionada con la representación de su cliente durante su representación. Véase la Regla 1.18 sobre los deberes de la persona que ejerce la abogacía con respecto a la información brindada por una o un cliente potencial. Véanse la Regla 1.9(c)(2) sobre el deber de la persona que ejerce la abogacía de no revelar información relacionada con una representación legal previa de una o un cliente anterior y las Reglas 1.8(b) y 1.9(c)(1) sobre los deberes de la persona que ejerce la abogacía con respecto al uso de dicha información en perjuicio de clientes actuales o anteriores.

[2] Un principio fundamental en la relación cliente-abogado o abogada es que, en ausencia del consentimiento informado de su cliente, la persona que ejerce la abogacía no debe revelar información relacionada con la representación. Véase la Regla 1.0(j) para la definición de "consentimiento informado". Esto contribuye a la confianza que es lo fundamental en la relación cliente-abogado o abogada. De esta manera, se estimula a su cliente para que solicite asesoramiento legal y brinde con franqueza a su representante legal la totalidad de la información, incluso comunicar asuntos vergonzosos que podrían tener consecuencias legales negativas para su cliente. La persona que ejerce la abogacía necesita esta información para representar a su cliente de manera efectiva y, si es necesario, para aconsejar a su cliente de abstenerse de

conducta impropia. Casi sin excepción, sus clientes acuden ante las personas que ejercen la abogacía para conocer sus derechos y, ante la complejidad de las leyes y los reglamentos, determinar qué es legal y correcto. Basadas en la experiencia, las personas que ejercen la abogacía saben que casi todos sus clientes siguen los consejos ofrecidos y, por lo tanto, siguen la ley.

[3] El principio de confidencialidad entre cliente y representante legal cobra vigencia mediante otras normas del Derecho: el privilegio abogada o abogado-cliente y la doctrina del producto del trabajo y la regla de confidencialidad establecida en estas Reglas. El privilegio abogada o abogado-cliente y la doctrina del producto del trabajo aplica en procedimientos judiciales y en otros procedimientos en los cuales una persona que ejerce la abogacía pueda ser llamada como testigo o para producir prueba relacionada con una o un cliente. La regla sobre confidencialidad entre cliente y la persona que ejerce la abogacía aplica en situaciones distintas a aquellas en las que se cita bajo autoridad de ley a la persona que ejerce la abogacía como testigo. La regla de confidencialidad, por ejemplo, no aplica solo en cuanto a las comunicaciones hechas confidencialmente por su cliente, sino también en cuanto a toda la información relacionada con la representación legal, independientemente de su fuente. Una persona que ejerce la abogacía no puede divulgar tal información, excepto si está autorizada o es requerida por lo establecido en estas Reglas o alguna ley.

[4] El inciso (a) prohíbe que una persona que ejerce la abogacía revele información relacionada con la representación legal de su cliente. Esta prohibición también aplica a la divulgación hecha por una persona que ejerce la abogacía que por sí sola no constituye revelación de información protegida, pero que podría conducir razonablemente al descubrimiento de dicha información por una tercera persona. El uso por una persona que ejerce la abogacía de un caso hipotético para discutir asuntos relacionados con la representación legal es permisible siempre que no haya una probabilidad razonable de que la persona oyente pueda determinar la identidad del o de la cliente o la situación de la que se trate.

**Divulgación autorizada**

[5] Excepto en la medida en que las instrucciones de la o del cliente o circunstancias especiales limiten dicha autoridad, una persona que ejerce la abogacía está autorizada de manera implícita a hacer revelaciones sobre su cliente cuando entienda que es apropiado dentro del curso de la

representación legal. Por ejemplo, en algunas situaciones una persona que ejerce la abogacía puede estar autorizada implícitamente a admitir un hecho que no puede ser debidamente cuestionado o a hacer una divulgación que facilite concluir satisfactoriamente un asunto. Las personas que ejercen la abogacía en una oficina legal pueden, en el curso de la práctica de la oficina legal, compartir mutuamente información sobre una o un cliente de la firma, a menos que la o el cliente haya dado instrucciones de que determinada información se limite a alguna persona que ejerce la abogacía en particular.

**Divulgación adversa a la o el cliente**

[6] Aunque el interés público está mejor atendido mediante una regla estricta que obligue a la persona que ejerce la abogacía a mantener en secreto la información relacionada con la representación de sus clientes, la regla sobre confidencialidad está sujeta a limitadas excepciones. El inciso (b)(1) reconoce el valor de la vida y la integridad física y permite divulgar cierta información si es razonablemente necesario para prevenir una muerte o un daño corporal sustancial cuando existe una certeza razonable de que ocurra. Ese daño tendrá certeza razonable de ocurrir si es inminente que se sufrirá un daño o si existe una amenaza significativa de que una persona podrá sufrir en el futuro un daño, a menos que la persona que ejerce la abogacía tome medidas para eliminar esa amenaza. Así, por ejemplo, cuando una persona que ejerce la abogacía que sabe que su cliente descargó accidentalmente desperdicios tóxicos en el suministro de agua de un pueblo, puede divulgar esta información a las autoridades si entiende que existe una amenaza presente y sustancial de que una persona que consuma esa agua contraerá una enfermedad mortal o debilitante y la divulgación por parte de la persona que ejerce la abogacía es necesaria para eliminar esa amenaza o para reducir el número de víctimas.

[7] El subinciso (b)(2) es una excepción limitada a la regla de confidencialidad que permite a la persona que ejerce la abogacía revelar la información que sea necesaria para que las personas afectadas o las autoridades apropiadas puedan evitar que la o el cliente cometa un crimen o acto fraudulento, según se define en la Regla 1.0(r) que pueda resultar razonablemente en un daño sustancial a los intereses financieros, la propiedad de otra persona, o el bienestar público y para el cual la o el cliente haya usado o esté usando los servicios de la persona que ejerce la abogacía. Un abuso tan serio de la relación cliente-abogado o abogada pierde protección de esta regla. La o el cliente puede evitar la divulgación por parte de su representante legal absteniéndose de llevar a cabo el acto ilícito. Aunque el subinciso (b)(2) no requiere que la

persona que ejerce la abogacía revele la conducta impropia de su cliente, el abogado o la abogada no podrá asesorar o asistir a la o el cliente en una conducta que la persona que ejerce la abogacía sabe que es criminal o fraudulenta. Véanse la Regla 1.2(d); la Regla 1.16, respecto a la obligación o el derecho de la persona que ejerce la abogacía a renunciar a la representación de la o del cliente en tales circunstancias, y la Regla 1.13(c), que permite que la persona que ejerce la abogacía, cuando su cliente es una organización, pueda revelar información relacionada con la representación legal en algunas circunstancias limitadas.

[8] El subinciso (b)(3) se refiere a una situación en la cual la persona que ejerce la abogacía no conoce que su cliente cometió un crimen o fraude hasta después de que se consumó. Aunque ya su cliente no tiene la opción de prevenir la divulgación absteniéndose de incurrir en la conducta ilícita, habrá situaciones en las que la pérdida sufrida por la persona afectada pueda ser prevenida, rectificada o mitigada. En tales situaciones, la persona que ejerce la abogacía puede revelar información relativa a la representación legal en la medida que sea necesario para permitir a las personas afectadas prevenir o mitigar pérdidas razonablemente ciertas o intentar recuperar sus pérdidas. El subinciso (b)(3) no aplica cuando una persona, quien cometió un crimen o fraude, emplea posteriormente a una persona que ejerce la abogacía para la representación legal concerniente a tal ofensa.

[9] La obligación de la persona que ejerce la abogacía de preservar las confidencias de la o del cliente no impide que un abogado o una abogada obtenga asesoramiento legal confidencial sobre la responsabilidad personal de la persona que ejerce la abogacía en cuanto al cumplimiento de estas Reglas. En la mayoría de las situaciones, la divulgación de información para obtener dicho asesoramiento estará implícitamente autorizada para que la persona que ejerce la abogacía pueda llevar a cabo la representación. Aun cuando la divulgación no esté implícitamente autorizada, el inciso (b)(4) permite tal divulgación debido a la importancia del cumplimiento con estas Reglas por parte de una persona que ejerce la abogacía.

[10] Cuando una reclamación legal o un proceso disciplinario imputen que durante la representación legal o representación de su cliente, una persona que ejerce la abogacía actuó con complicidad en la conducta impropia de su cliente o impute otra conducta impropia al abogado o a la abogada, la persona que ejerce la abogacía puede responder en la medida que crea razonablemente necesario para establecer una defensa. Lo mismo aplica respecto a una

reclamación que involucre la conducta o la representación de una o un cliente anterior. Tal imputación puede surgir en un procedimiento civil, criminal, disciplinario o de otra índole y puede basarse en conducta impropia que se alega fue incurrida por una persona que ejerce la abogacía contra su cliente o en una alegación de conducta ilícita por una tercera persona, por ejemplo, una persona que afirme haber sido defraudada por la persona que ejerce la abogacía y su cliente actuando en conjunto. El derecho de la persona que ejerce la abogacía a responder surge cuando se hizo una afirmación de tal complicidad. El subinciso (b)(5) no requiere que la persona que ejerce la abogacía espere por el comienzo de la acción o procedimiento que impute tal complicidad, de manera que la defensa puede establecerse respondiendo directamente a la tercera persona que hizo tal afirmación. El derecho a defenderse también aplica, por supuesto, cuando se ha iniciado el procedimiento.

[11] El subinciso (b)(5) permite que una persona que ejerce la abogacía pueda probar los servicios rendidos a la o el cliente en una acción para recobrar sus honorarios. Este aspecto de la regla expresa el principio de que la persona beneficiaria de una relación fiduciaria no puede aprovecharse de esta en detrimento del fiduciario, en este caso, su representante legal.

[12] Puede existir alguna ley que requiera que una persona que ejerce la abogacía revele información sobre su cliente. Si dicha ley tiene prelación sobre la Regla 1.6 es un asunto de Derecho que está fuera del alcance de estas Reglas. Cuando la divulgación de información relacionada con la representación legal aparente estar requerida por otra ley, la persona que ejerce la abogacía debe discutir el asunto con su cliente según requerido en la Regla 1.4. Sin embargo, si la otra ley tiene prelación sobre esta regla y requiere divulgación, el subinciso (b)(6) le permite a la persona que ejerce la abogacía hacer la divulgación que sea necesaria para cumplir con dicha ley.

**Detección de conflictos de intereses**

[13] El subinciso (b)(7) reconoce que las personas que ejercen la abogacía de diferentes oficinas legales pueden necesitar compartir información limitada entre sí para detectar y resolver conflictos de intereses, tales como cuando una persona que ejerce la abogacía está considerando asociarse con otra oficina legal, dos o más oficinas legales están considerando una fusión, o una persona que ejerce la abogacía está considerando la compra de una práctica legal. Véase la Regla 1.17, comentario [7]. En estas circunstancias, las personas que

ejercen la abogacía, al igual que las oficinas legales, están autorizadas a divulgar información de manera limitada, pero solo cuando se hayan producido discusiones sustanciales relacionadas con la nueva relación. Tal divulgación no debe incluir más que la identidad de las personas y entidades involucradas en el asunto, un breve resumen de los asuntos involucrados e información en torno a si la controversia concluyó. Esta información limitada solo debe divulgarse en la medida que sea razonablemente necesaria para detectar y resolver conflictos de intereses que pudieran surgir de darse la posible nueva relación. Más aún, la divulgación de cualquier información está prohibida si afecta el privilegio abogada o abogado-cliente o si perjudica a su cliente de otra forma. (Por ejemplo, el hecho de que una o un cliente corporativo busque asesoramiento en torno a una adquisición corporativa que no se ha anunciado públicamente; que una persona haya consultado con una persona que ejerce la abogacía sobre la posibilidad de un divorcio antes de que las intenciones de dicha persona sean conocidas por su cónyuge, o que una persona haya consultado a una persona que ejerce la abogacía sobre una investigación criminal por la cual aún no se han presentado cargos). En esas circunstancias, el inciso (a) prohíbe su divulgación a menos que su cliente brinde su consentimiento informado. El deber fiduciario de una persona que ejerce la abogacía hacia su oficina legal también debe regir la conducta de la persona que ejerce la abogacía que explora otras alternativas de asociación con otra oficina legal, pero este asunto queda fuera del alcance de estas Reglas.

[14] Cualquier información divulgada de conformidad con el subinciso (b)(7) puede ser usada o revelada solamente en la medida que sea necesaria para detectar y resolver conflictos de intereses. El subinciso (b)(7) no restringe el uso de la información adquirida por medios independientes de cualquier divulgación de confidencialidad de conformidad con el subinciso (b)(7). El subinciso (b)(7) no afecta la divulgación de información confidencial dentro de una oficina legal, véase el comentario [5], como ocurre cuando una persona que ejerce la abogacía revela información confidencial con otra persona asociada de la misma oficina legal para detectar o resolver conflictos de intereses que pudieran surgir al aceptar una nueva representación legal.

[15] A una persona que ejerce la abogacía se le puede ordenar a divulgar información relacionada con la representación de su cliente por un tribunal u otra entidad gubernamental que afirme tener autoridad, de conformidad con alguna ley, para compeler tal divulgación. A falta de consentimiento informado de su cliente para actuar de otra manera, la persona que ejerce la abogacía debe exponer en nombre de su cliente, mediante reclamaciones que no sean

frívolas, que la orden no está autorizada por otra ley o que la información solicitada está protegida por el privilegio abogada o abogado-cliente u otra ley aplicable. En caso de que el tribunal emita una decisión no favorable para su cliente, la persona que ejerce la abogacía debe consultar con su cliente sobre la posibilidad de recurrir en revisión en la medida que lo requiere la Regla 1.4. A menos que se pida una revisión de la determinación, el subinciso (b)(6) permite que la persona que ejerce la abogacía cumpla con la orden del tribunal.

[16] El inciso (b) permite la divulgación de la información solo en la medida en que la persona que ejerce la abogacía entienda que es necesaria para lograr alguno de los objetivos de este inciso. En la medida posible, la persona que ejerce la abogacía debe tratar de persuadir antes a la o el cliente para que tome medidas adecuadas que eviten la necesidad de divulgar información confidencial. En cualquier caso, la información confidencial que la persona que ejerce la abogacía divulgue no debe exceder aquella que entienda necesaria para lograr sus propósitos. Si la divulgación se hará en conexión con un proceso judicial, debe hacerse de una manera que limite el acceso a la información al tribunal o a otras personas que tengan la necesidad de conocerla y la persona que ejerce la abogacía debe solicitar órdenes protectoras u otros remedios hasta donde sea posible.

[17] El inciso (b) permite, pero no requiere la divulgación de información relacionada con la representación de su cliente para lograr los propósitos especificados en los subincisos (b)(1) a (b)(6). Al ejercer la facultad discrecional conferida por esta regla, la persona que ejerce la abogacía debe considerar factores tales como la naturaleza de la relación de la persona que ejerce la abogacía con su cliente y con aquellas personas que puedan quedar perjudicadas por su cliente, la propia participación de la persona que ejerce la abogacía en la transacción y los factores que puedan mitigar la conducta en controversia. La decisión de una persona que ejerce la abogacía de no divulgar lo permitido por el inciso (b) no viola esta regla. La divulgación puede ser requerida, sin embargo, por otras reglas. Algunas reglas requieren divulgación solamente si es permitida por el inciso (b). Véanse las Reglas 1.2(d), 4.1(b), 8.1 y 8.3. La Regla 3.3, por otra parte, requiere la divulgación en algunas circunstancias, independientemente de si tal divulgación está permitida por esta regla. Véase la Regla 3.3(c).

**Actuar competentemente para preservar confidencialidad**

[18] El inciso (c) requiere que una persona que ejerce la abogacía actúe competentemente para salvaguardar la información relacionada con la representación de su cliente contra el acceso no autorizado de terceras personas y contra la divulgación inadvertida o no autorizada por parte de la persona que ejerce la abogacía u otras personas que participan en la representación legal de la o del cliente cuya supervisión recae en una persona que ejerce la abogacía. Véanse las Reglas 1.1, 5.1 y 5.3. El acceso no autorizado, o la divulgación inadvertida o no autorizada, de información relacionada con la representación de una o un cliente no constituye una violación del inciso (c) si los esfuerzos de la persona que ejerce la abogacía han sido razonables para evitar el acceso o la divulgación de la información. Los factores que deben considerarse al determinar la razonabilidad de los esfuerzos de la persona que ejerce la abogacía incluyen, pero no se limitan, al nivel de sensibilidad de la información, a la probabilidad de divulgación de no emplearse salvaguardas adicionales, al costo de implementar medidas adicionales de protección, a la dificultad para implementar medidas adicionales, y la medida en que las salvaguardas afectan adversamente la capacidad de la persona que ejerce la abogacía para representar a sus clientes (por ejemplo, hacer que un dispositivo o un programa importante de computadoras sea excesivamente difícil de usar).

[19] Al transmitir una comunicación que incluya información relativa a la representación de una o un cliente, la persona que ejerce la abogacía debe tomar precauciones razonables para evitar que la información llegue a personas destinatarias no deseadas. Sin embargo, este deber no requiere que la persona que ejerce la abogacía utilice medidas especiales de seguridad si el método de comunicación ofrece una expectativa razonable de privacidad. Circunstancias especiales, sin embargo, pueden requerir que se establezcan medidas adicionales de precaución. Los factores que se deban considerar al determinar la razonabilidad de la expectativa de confidencialidad de la persona que ejerce la abogacía incluyen el grado de sensibilidad de la información y la medida en que la privacidad de la comunicación está protegida por ley o por un acuerdo de confidencialidad. Una o un cliente puede requerir que la persona que ejerce la abogacía implemente medidas especiales de seguridad no requeridas por esta regla o puede dar su consentimiento informado al uso de un medio de comunicación que de otra manera estaría prohibido por esta regla. En cuanto a si una persona que ejerce la abogacía tiene la obligación de tomar medidas adicionales para cumplir con otra ley,

tales como las leyes estatales y federales que rigen la privacidad de datos, es un asunto que está fuera del alcance de estas Reglas.

**Cliente anterior**

[20] El deber de confidencialidad continúa después de terminada la relación cliente-abogada o abogado. Véanse la Regla 1.9(c)(2) y, además, la Regla 1.9(c)(1) sobre la prohibición de utilizar dicha información confidencial en perjuicio de una o un cliente anterior.

**Confidencialidad en la función notarial**

[21] Un principio fundamental es que una persona que ejerce la notaría no debe revelar información que obtuvo como parte de una gestión notarial. De esta manera, se estimula que las personas comuniquen toda la información, incluso asuntos que podrían tener consecuencias legales negativas. Para proveer un asesoramiento efectivo y recomendar el acto notarial adecuado, quienes ejercen la notaría deben contar con toda la información necesaria. La parte interesada podrá renunciar expresamente al secreto profesional. Véase *In re: Belén Trujillo*, 126 DPR 743, 754 (1990).

[22] El secreto profesional incluye las confidencias que la persona usuaria del servicio notarial revele, así como los secretos obtenidos por la persona que ejerce la notaría como parte de la gestión notarial, aunque el servicio notarial no se complete. No obstante, el secreto profesional no crea un privilegio evidenciario.

[23] Esta regla contempla la posibilidad de que una persona que ejerce la notaría divulgue información cuando una ley o una orden judicial así lo requiera. Si la divulgación se hace en conexión con un proceso judicial, la persona que ejerce la notaría limitará el acceso a lo ordenado por el tribunal.

[24] El acceso no autorizado, o la divulgación inadvertida o no autorizada, de información relacionada con una gestión notarial no constituye un incumplimiento con esta regla si los esfuerzos de la persona que ejerce la notaría han sido razonables para evitar el acceso o la divulgación de la información. Los factores que deben considerarse al determinar la razonabilidad de los esfuerzos incluyen, pero no se limitan, al nivel de sensibilidad de la información, a la probabilidad de divulgación de no

emplearse salvaguardas adicionales, al costo y a la dificultad de implementar medidas adicionales de protección.

[25] Al transmitir una comunicación que incluya información relativa a una gestión notarial, la persona que ejerce la notaría tomará precauciones razonables para evitar que la información llegue a personas que no tienen interés legítimo en la transacción. Sin embargo, este deber no requiere que la persona que ejerce la notaría utilice medidas especiales de seguridad si el método de comunicación ofrece una expectativa razonable de privacidad. Circunstancias especiales pueden requerir que se establezcan medidas adicionales de precaución.

**REGLA 1.7. DEBERES HACIA LAS O LOS CLIENTES ACTUALES**

(a)     Excepto lo dispuesto en el inciso (b) de esta regla, una persona que ejerce la abogacía no deberá representar a una o un cliente si esto presenta un conflicto de intereses concurrentes. Existe un conflicto de intereses concurrentes cuando:

(1)     la representación de una o un cliente será directamente adversa hacia otra u otro cliente, o

(2)     hay un riesgo significativo de que la representación de uno, una o más clientes esté sustancialmente limitada por los deberes de la persona que ejerce la abogacía hacia otro u otra cliente actual, un o una cliente anterior, una tercera persona, o por los intereses personales de la persona que ejerce la abogacía; o

(3)     la persona que ejerce la abogacía tiene una relación de parentesco por cuarto grado de consanguinidad o segundo grado de afinidad, cohabita, tiene una relación personal íntima o existe una unión civil análoga al matrimonio con la persona que ejerce la abogacía de una parte adversa.

(b)     Aun cuando exista un conflicto de intereses concurrentes, según definido en el inciso (a) de esta regla, una persona que ejerce la abogacía podrá asumir la representación de una o un cliente si:

(1)     la persona que ejerce la abogacía cree razonablemente que podrá brindar una representación competente y diligente a cada cliente afectado o afectada;

(2)     la representación no está prohibida;

(3)     la representación no conlleva la reclamación entre clientes a quienes la persona que ejerce la abogacía representa, y

(4)     cada cliente afectado o afectada por el conflicto presta su consentimiento informado, ratificado por escrito.

## COMENTARIOS

### Principios generales

[1] La lealtad y el juicio independiente son elementos esenciales en la relación abogada o abogado y su cliente. El conflicto de intereses de naturaleza concurrente puede surgir de las responsabilidades de la persona que ejerce la abogacía hacia otra u otro cliente actual o anterior, una tercera persona o de los propios intereses de la persona que ejerce la abogacía. Para reglas específicas relativas a ciertos conflictos de intereses concurrentes, véase la Regla 1.8. Para los conflictos de intereses que involucran a clientes anteriores, véase la Regla 1.9. Para conflictos de intereses que involucren a clientes potenciales, véase la Regla 1.18. Para la definición de "consentimiento informado" y "ratificado por escrito", véanse la Regla 1.0(j) y (dd).

[2] Para resolver un conflicto de intereses concurrentes bajo esta regla se requiere que la persona que ejerce la abogacía:

(1)     identifique claramente a su cliente o sus clientes;

(2)     determine si existe un conflicto de intereses;

(3)     decida si la representación puede ser llevada a cabo a pesar de la existencia de un conflicto, es decir, si el conflicto puede ser consentido, y

(4)     de ser así, consultar con las y los clientes afectados bajo el inciso (a) y obtener su consentimiento informado, ratificado por escrito.

Las y los clientes afectados en el inciso (a) incluyen tanto a las y los clientes a los que se refiere el subinciso (a)(1), así como a su cliente o clientes cuya representación podría estar sustancialmente limitada bajo el subinciso (a)(2).

[3] Un conflicto de intereses puede existir desde antes de que se perfeccione la representación legal, en cuyo caso, la representación deberá ser rechazada, a menos que la persona que ejerce la abogacía obtenga el consentimiento informado de cada cliente bajo las condiciones del inciso (b). Para determinar si existe un conflicto de intereses, una persona que ejerce la abogacía deberá adoptar procedimientos razonables, apropiados para el tamaño y el tipo de oficina legal y su práctica, para determinar en los asuntos litigiosos y no litigiosos, las personas y los asuntos involucrados. Véanse también los comentarios de la Regla 5.1. La ignorancia causada para no poner en vigor dichos procedimientos no excusará a la persona que ejerce la abogacía de infringir esta regla. En cuanto a si existe o continúa vigente una relación cliente-abogada o abogado, véase el comentario de la Regla 1.3.

[4] Si surge un conflicto luego de haberse perfeccionado la relación cliente-abogado o abogada, la persona que ejerce la abogacía de ordinario debe retirarse de la representación, a menos que haya obtenido el consentimiento informado de la o del cliente bajo las condiciones del inciso (b). Véase la Regla 1.16. Cuando un asunto involucre a más de una o un cliente, la decisión de si la persona que ejerce la abogacía puede continuar la representación dependerá de si puede cumplir con la obligación debida a su cliente anterior y representar adecuadamente al cliente o clientes restantes al tomar en consideración sus obligaciones previas. Véanse también los comentarios [5] y [29] de esta regla y la Regla 1.9.

[5] Desarrollos imprevisibles tales como los cambios en las afiliaciones corporativas y otras organizaciones o la adición o realineación de partes en un litigio, podrían crear conflictos en una representación legal, como sucede cuando una empresa demandada por la persona que ejerce la abogacía en nombre de una o un cliente es adquirida por otro u otra cliente de la persona que ejerce la abogacía a quien representa en un asunto no relacionado. Según sean las circunstancias, la persona que ejerce la abogacía puede tener la opción de retirarse de una de las representaciones para evitar el conflicto. La persona que ejerce la abogacía debe solicitar la aprobación de su renuncia al tribunal cuando sea necesario y debe tomar medidas para minimizar el daño a sus clientes. Véase la Regla 1.16. La persona que ejerce la abogacía debe continuar

protegiendo las confidencias de su cliente anterior, aun cuando se le relevó de la representación. Véase la Regla 1.9(c).

**Identificación de conflictos de intereses: directamente adversos**

[6] La lealtad hacia una o un cliente actual prohíbe que la persona que ejerce la abogacía acepte una representación que le sea adversa, a menos que preste su consentimiento informado. Por lo tanto, en ausencia de consentimiento, una persona que ejerce la abogacía no puede actuar como representante legal en un asunto en contra de una persona a la que representa en algún otro asunto, aunque las controversias no estén relacionadas. El o la cliente para quien la representación es adversa directamente puede llegar a sentirse traicionado o traicionada, y el daño a la relación cliente-abogado o abogada es probable que afecte la capacidad de la persona que ejerce la abogacía para representarle efectivamente. Además, la o el cliente en cuyo nombre se acepta la representación adversa puede temer razonablemente que la persona que ejerce la abogacía tramite el caso de esa o ese cliente con menos eficacia por deferencia hacia la o el otro cliente; por ejemplo, que la representación puede estar sustancialmente limitada por el interés de la persona que ejerce la abogacía en continuar con la representación de la o del cliente actual. Del mismo modo, puede surgir un conflicto directamente adverso cuando una persona que ejerce la abogacía tiene que contrainterrogar a una o un cliente que declara como testigo en una demanda que involucra a otra u otro cliente, como cuando el testimonio será perjudicial a la o el cliente a quien está representando en la demanda. Por otra parte, la representación simultánea en asuntos no relacionados de clientes cuyos intereses son solo económicamente adversos, tal como la representación en litigios no relacionados de entidades que compiten en una industria, de ordinario no constituyen un conflicto de intereses y puede que no requiera el consentimiento de sus respectivos clientes.

[7] Los conflictos directamente adversos también pueden surgir en asuntos transaccionales. Por ejemplo, si se solicita a una persona que ejerce la abogacía que represente a la parte vendedora en negociaciones con la parte compradora, y esta es representada por la persona que ejerce la abogacía en otro asunto no relacionado con la compraventa, la persona que ejerce la abogacía no podrá asumir la representación sin obtener el consentimiento informado de cada cliente.

**Identificación de conflictos de intereses: limitación sustancial**

[8] Aun cuando no exista una adversidad directa, existe un conflicto de intereses si hay un riesgo significativo de que la habilidad de una persona que ejerce la abogacía para considerar, recomendar o llevar a cabo un curso de acción apropiado en beneficio de la o del cliente estará limitada sustancialmente como resultado de otras responsabilidades o intereses de la persona que ejerce la abogacía. Por ejemplo, una persona que ejerce la abogacía a quien se le solicita que represente a varias personas que buscan formar una empresa común, tendrá probablemente limitada su habilidad para recomendar o abogar por todas las posibles posiciones que cada cual puede asumir por razón del deber de lealtad de dicha persona que ejerce la abogacía hacia las demás personas. El conflicto, en efecto, excluye alternativas que de otra manera estarían disponibles para su cliente. La mera posibilidad de un daño subsiguiente no requiere por sí la divulgación y el consentimiento. El criterio rector es la probabilidad de que se produzca una diferencia en los intereses y, de ser así, si habrá de interferir sustancialmente con el juicio profesional independiente de la persona que ejerce la abogacía al considerar o excluir alternativas o cursos de acción que deberían razonablemente ser perseguidas en nombre de su cliente.

**Responsabilidades de la persona que ejerce la abogacía hacia clientes anteriores y otras personas**

[9] Además de los conflictos con otras u otros clientes actuales, los deberes de lealtad e independencia de una persona que ejerce la abogacía pueden estar limitados sustancialmente por responsabilidades hacia clientes anteriores bajo la Regla 1.9 o por las responsabilidades de la persona que ejerce la abogacía hacia otras personas, tales como los deberes fiduciarios que surgen por las funciones de la persona que ejerce la abogacía como fiduciario o fiduciaria, albacea o director o directora de una corporación.

[10] Los intereses personales de la persona que ejerce la abogacía no deben tener un efecto adverso en la representación de sus clientes. Por ejemplo, si la integridad de la conducta de una persona que ejerce la abogacía en una transacción está seriamente en dudas, podrá ser difícil o imposible para la persona que ejerce la abogacía dar a su cliente un consejo legal imparcial. Del mismo modo, cuando una persona que ejerce la abogacía sostiene conversaciones sobre una oferta de trabajo con el adversario de su propio cliente, o con la oficina legal que representa a su adversario, tales

conversaciones podrían limitar sustancialmente la representación legal del o de la cliente por su representante legal. Además, una persona que ejerce la abogacía no debe permitir que intereses comerciales afecten la representación, por ejemplo, referir clientes a una empresa en la que la persona que ejerce la abogacía tiene un interés financiero que no ha divulgado. Véase la Regla 1.8 para reglas específicas sobre conflictos vinculados con intereses personales, incluso transacciones comerciales con clientes. Véase también la Regla 1.10 (los conflictos de intereses personales de una persona que ejerce la abogacía bajo la Regla 1.7 de ordinario no se imputan a las otras personas que ejercen la abogacía de la oficina legal donde labora la persona que ejerce la abogacía).

[11] Cuando las personas que ejercen la abogacía que representan a diferentes clientes en el mismo asunto o en asuntos relacionados sustancialmente están vinculados estrechamente por consanguinidad o matrimonio, puede haber un riesgo sustancial de que se revelen confidencias de la o del cliente y que la relación familiar de la persona que ejerce la abogacía interfiera con su deber de lealtad y juicio profesional. Por tal razón, antes de que la persona que ejerce la abogacía acepte asumir la representación, cada cliente tiene derecho a conocer la existencia e implicaciones de la relación entre las personas que ejercen la abogacía. Por lo tanto, una persona que ejerce la abogacía que tiene una relación con otra persona que ejerce la abogacía, por ejemplo, de padre, madre, hijo, hija, hermano, hermana, cónyuge, comparte vivienda, tiene una relación personal íntima o análoga al matrimonio, de ordinario no debe representar a una o un cliente en un asunto donde esa persona que ejerce la abogacía representa a otra parte, a menos que cada cliente preste su consentimiento informado. La descalificación que surge por una relación familiar estrecha es personal y de ordinario no se imputa a las o los demás miembros de la oficina legal donde labora la persona que ejerce la abogacía. Véase la Regla 1.10.

**Intereses de la persona que paga los honorarios de la persona que ejerce la abogacía**

[12] Los honorarios de una persona que ejerce la abogacía pueden ser pagados por una tercera persona que no sea la o el cliente, incluso por quien también sea cliente de la persona que ejerce la abogacía, si se le informa a la o el cliente de ese hecho, la o el cliente consiente, y el acuerdo no arriesgue el deber de lealtad de la persona que ejerce la abogacía hacia su cliente ni su juicio profesional independiente. Véase la Regla 1.8(f). Si aceptar el pago de

honorarios de una tercera persona presenta un riesgo significativo de que la relación cliente-abogado o abogada se verá sustancialmente limitada debido a los intereses personales de la persona que ejerce la abogacía en complacer a quien le paga sus honorarios, o por las responsabilidades de la persona que ejerce la abogacía hacia quien paga sus honorarios, quien también es su cliente, entonces la persona que ejerce la abogacía debe cumplir con los requisitos del inciso (b) antes de aceptar la representación legal, incluso hacer la determinación de si el conflicto puede ser consentido y, en caso afirmativo, que la o el cliente tenga información adecuada sobre los riesgos sustanciales que conlleva la representación.

**Representaciones prohibidas**

[13] De ordinario, las y los clientes pueden consentir a una representación, a pesar de que exista un conflicto. Sin embargo, según se indica en el inciso (b), en algunas situaciones el o la cliente no puede prestar su consentimiento para autorizar una representación legal, lo que significa que la persona que ejerce la abogacía no puede solicitar el consentimiento o proveer la representación aun con el consentimiento de la o del cliente. Cuando la persona que ejerce la abogacía representa a más de una o un cliente, se debe evaluar a cada cliente para resolver si es posible el consentimiento.

[14] Para determinar si un conflicto puede consentirse, se debe considerar si los intereses de los o las clientes estarán protegidos adecuadamente de permitírseles que presten su consentimiento informado para una representación que carga con el peso de un conflicto de interés. Por tanto, según el subinciso (b)(1), la representación se prohíbe si en las circunstancias la persona que ejerce la abogacía no puede concluir razonablemente que podrá proporcionar a la o el cliente una representación competente y diligente. Véanse la Regla 1.1 (competencia) y la Regla 1.3 (diligencia).

[15] El subinciso (b)(2) reconoce que un cliente no puede consentir a un conflicto si existe una prohibición.

[16] El subinciso (b)(3) describe los conflictos que no pueden consentirse debido a que la postura de una o un cliente es contraria a la de otras u otro cliente dentro del mismo pleito u otro procedimiento ante un tribunal, lo cual limita que se defienda con vigor los intereses de sus clientes. Determinar si las posturas de las y los clientes son contradictorias entre sí según establece este subinciso es un asunto que requiere que se examine el contexto del

procedimiento. Aunque este subinciso no excluye la representación múltiple de un abogado o una abogada de partes adversas en una mediación (porque la mediación no es un procedimiento ante un "tribunal" de acuerdo con la Regla 1.0(jj)), tal representación puede quedar excluida por el inciso (b)(1).

**Consentimiento informado**

[17] El consentimiento informado requiere que cada cliente afectado o afectada sea consciente de las circunstancias relevantes y de las maneras razonablemente previsibles y sustanciales en que el conflicto podría tener efectos adversos en los intereses de ese o esa cliente. Véase la Regla 1.0(j) ("consentimiento informado"). La información requerida depende de la naturaleza del conflicto y de los riesgos involucrados. Cuando asume la representación de múltiples clientes en un mismo asunto, la información tiene que incluir las implicaciones de la representación múltiple, incluidos sus posibles efectos en la lealtad, confidencialidad y el privilegio abogado o abogada-cliente y las ventajas y los riesgos que están presentes. Véanse los comentarios [30] y [31] de esta regla (efecto de la representación común en la confidencialidad).

[18] Bajo ciertas circunstancias, podrá ser imposible hacer la divulgación que sea necesaria para obtener el consentimiento. Por ejemplo, cuando la persona que ejerce la abogacía representa a diferentes clientes en asuntos relacionados y uno de sus clientes se rehúsa a consentir la divulgación necesaria para que la otra o el otro cliente pueda tomar una decisión informada, la persona que ejerce la abogacía no podrá pedirle a este último su consentimiento. En algunos casos la alternativa a la representación común podrá ser que cada parte necesite obtener representación por separado con la posibilidad de incurrir en gastos adicionales. Estos gastos y los beneficios de obtener una representación separada son factores que pueden considerarse por la o el cliente afectado al determinar si la representación común responde a los intereses del o de la cliente.

**Consentimiento ratificado por escrito**

[19] El inciso (b) requiere que la persona que ejerce la abogacía obtenga el consentimiento informado de la o del cliente, ratificado por escrito. Este escrito puede consistir en un documento suscrito por la o el cliente o uno que la persona que ejerce la abogacía prontamente prepara y envía a la o al cliente luego de haberse producido un consentimiento verbal. Véanse la Regla 1.0(dd)

y 1.0(p) (un escrito incluye una transmisión electrónica). De no ser posible obtener o enviar el escrito al momento en que la o el cliente presta el consentimiento informado, entonces la persona que ejerce la abogacía deberá obtenerlo o enviarlo dentro de un tiempo razonable. Véase la Regla 1.0(dd). El requisito de que se haga un escrito no sustituye, en la mayoría de los casos, la necesidad de que la persona que ejerce la abogacía dialogue con la o el cliente, le explique los riesgos y las ventajas, si alguna, de una representación afectada por un conflicto de intereses, al igual que las alternativas razonables disponibles, y concederle a la o el cliente una oportunidad razonable para evaluar los riesgos y las alternativas y para plantear preguntas y preocupaciones. Más bien, el escrito se requiere para hacer conscientes a los o las clientes de la seriedad de la decisión que se le está pidiendo que tomen, y para evitar disputas y ambigüedades que luego puedan surgir en ausencia de un escrito.

**Revocación del consentimiento**

[20] Una o un cliente que ha prestado su consentimiento a un conflicto puede revocar el consentimiento, y al igual que cualquier cliente, puede dar por terminada la representación legal en cualquier momento. Si la revocación del consentimiento de la o del cliente a su propia representación implica que la persona que ejerce la abogacía no pueda seguir representando a otros clientes depende de las circunstancias, incluso la naturaleza del conflicto, si la o el cliente revocó el consentimiento debido a un cambio sustancial en las circunstancias, las expectativas razonables de demás clientes y si esto causará detrimento sustancial a las otras u otros clientes de la persona que ejerce la abogacía.

**Conflictos en litigación**

[21] El subinciso (b)(3) prohíbe representar a partes opuestas en el mismo litigio, independientemente del consentimiento de los o las clientes. De otro lado, la representación simultánea de partes cuyos intereses en la litigación podrían confligir, tales como partes codemandantes o codemandadas, está gobernada por el inciso (a)(2). Podría existir un conflicto por razón de una discrepancia sustancial en los testimonios de las partes, por posturas incompatibles en relación con una parte adversa, o al hecho de que hay alternativas sustancialmente diferentes en cuanto a la posibilidad de llegar a una transacción o en la distribución de responsabilidad. Estos conflictos pueden surgir en casos criminales o civiles. El potencial conflicto de interés al

representar múltiples personas acusadas en un mismo caso criminal es tan grave que de ordinario una persona que ejerce la abogacía debe rechazar la representación de más de una persona coacusada. De otro lado, la representación conjunta en casos civiles de partes que tienen intereses similares será apropiada si se cumplen los requisitos del inciso (b).

[22] De ordinario, una persona que ejerce la abogacía puede asumir posturas legales inconsistentes en tribunales y momentos diferentes al representar a distintos o distintas clientes. El mero hecho de que abogue por una postura legal en beneficio de una o un cliente que podría establecer un precedente que resulte adverso a los intereses de otra u otro cliente a quien la persona que ejerce la abogacía representa en un asunto no relacionado no crea un conflicto de intereses. Existe un conflicto de intereses, sin embargo, si hay un riesgo significativo de que las ejecutorias de la persona que ejerce la abogacía en representación de una o un cliente limitarán sustancialmente la efectividad de la persona que ejerce la abogacía al representar a otro u otra cliente en un caso diferente. Por ejemplo, cuando se emita una decisión a favor de una o un cliente, que creará un precedente que probablemente debilite la postura asumida en representación de otra u otro cliente. Los factores pertinentes para determinar si hay la necesidad de asesorar a las y los clientes de tales riesgos incluyen: el lugar donde los casos están pendientes, si se trata de una controversia sustantiva o procesal, la contemporaneidad entre los asuntos, la importancia del asunto para los intereses inmediatos y a largo plazo de las y los clientes involucrados y las expectativas razonables que tengan las y los clientes en continuar con los servicios de su representante legal. Si hay un riesgo significativo de que exista una limitación sustancial, entonces, en ausencia del consentimiento informado de las o los clientes afectados, la persona que ejerce la abogacía debe renunciar a la representación de uno de ellos o a ambos de no existir el consentimiento informado de las o los clientes afectados.

[23] Cuando una persona que ejerce la abogacía representa o se propone representar a una clase de demandantes o demandados en un pleito de clase, las y los miembros de la clase que no se identifiquen, de ordinario, no se consideran clientes de la persona que ejerce la abogacía para propósitos de aplicar el subinciso (a)(1) de esta regla. Por lo tanto, la persona que ejerce la abogacía usualmente no necesita obtener el consentimiento de tal persona al representar a una o un cliente en una demanda en contra de tales personas en un asunto no relacionado. De la misma forma, una persona que ejerce la abogacía que se propone representar a quien es una parte adversaria en un

pleito de clase, no necesita usualmente el consentimiento de una o un miembro no identificado de la clase a quien la persona que ejerce la abogacía representa en un asunto no relacionado.

**Conflictos fuera de la litigación**

[24] Los conflictos de intereses bajo los subincisos (a)(1) y (a)(2) surgen en contextos fuera de la litigación. Para una discusión de los conflictos directamente adversos en asuntos transaccionales, véase el comentario [7] de esta regla. La duración y la estrechez de la relación entre la persona que ejerce la abogacía con sus clientes, las funciones que llevará a cabo la persona que ejerce la abogacía, la probabilidad de que surjan desacuerdos y el perjuicio probable a la o el cliente debido al conflicto son factores pertinentes al determinar si existe potencialmente una limitación sustancial. Véase el comentario [8] de esta regla.

[25] Por ejemplo, en la planificación sucesoral, en la administración, en la partición y en la liquidación extrajudicial de un caudal hereditario, pueden surgir conflictos. La persona que ejerce la abogacía que representa al ejecutor o a la ejecutora, sea esta o este albacea, administradora o administrador judicial, contadora o contador partidor, puede representar a una persona heredera en su carácter personal en gestiones durante una administración o disposición extrajudicial de un caudal hereditario, cuando no existan conflictos entre las personas herederas. Una persona que ejerce la abogacía no debe representar a más de una persona heredera en la división extrajudicial en la que existe desacuerdo entre estas, a menos que represente a más de una persona heredera que tienen el mismo interés en el caudal hereditario. Para cumplir con las reglas sobre conflictos de intereses, la persona que ejerce la abogacía debe hacer clara su relación con las partes involucradas.

[26] Determinar si se puede consentir a un conflicto dependerá de las circunstancias. Por ejemplo, una persona que ejerce la abogacía no podrá representar múltiples partes en una negociación si los intereses de dichas partes son fundamentalmente antagónicos entre sí, pero se permite la representación común cuando las o los clientes están generalmente alineados en sus intereses, aunque exista alguna diferencia de intereses entre sí. Por lo tanto, una persona que ejerce la abogacía puede procurar establecer o ajustar la relación entre clientes de una manera amigable y en una base que sea mutuamente ventajosa; por ejemplo, ayudar a organizar un negocio en el cual dos o más clientes son empresarios o empresarias, ayudar en una

reorganización financiera en una empresa en la cual dos o más clientes tienen un interés, o en lograr la distribución de los bienes de un caudal al liquidar una sucesión. La persona que ejerce la abogacía intentará resolver los intereses potencialmente adversos al conciliar los intereses mutuos de las partes. De lo contrario, cada parte tendría que obtener representación legal independiente, con la posibilidad de aumentar los gastos y complicar el asunto, y quizás tener que litigar. Debido a estos y a otros factores pertinentes, las o los clientes pueden preferir que la persona que ejerce la abogacía actúe en representación de todos o todas.

**Consideraciones especiales en la representación conjunta**

[27] Al considerar si se debe asumir una representación de múltiples clientes en el mismo asunto, una persona que ejerce la abogacía debe tener en cuenta que, si la representación común no es factible debido a que los potenciales intereses adversos no pueden conciliarse, el resultado podrá ser un gasto adicional, la recriminación o el bochorno. De ordinario, la persona que ejerce la abogacía estará obligada a renunciar a la representación de todas y todos los clientes si la representación común no es posible. En algunas situaciones, el riesgo de fracasar es tan grande que la representación múltiple es sencillamente imposible. Por ejemplo, una persona que ejerce la abogacía no puede aceptar una representación múltiple de clientes cuando es inminente que surgirá una litigación o negociación contenciosa entre estos o estas. Además de eso, debido a que se requiere que la persona que ejerce la abogacía sea imparcial en cuanto a todas y todos los clientes que representa en común, la representación es impropia cuando sea improbable que se pueda mantener tal imparcialidad. Generalmente, si la relación entre las partes ya se tornó antagónica, la posibilidad de que los intereses de las y los clientes puedan ser atendidos adecuadamente mediante una representación común es escasa. Otros factores pertinentes serán si la persona que ejerce la abogacía representará a ambas partes de forma continua y si la situación conlleva crear o terminar una relación entre las partes.

[28] Un factor particularmente importante al determinar si la representación común es apropiada es el efecto que pueda tener en la confidencialidad de la relación cliente-abogado o abogada y en el privilegio abogada o abogado-cliente. En relación con este asunto, la regla prevaleciente es que el privilegio no aplica entre las y los clientes que son representadas o representados en común. Por tanto, debe presumirse que, si surge un litigio entre esas y esos

clientes, el privilegio no protegerá esas comunicaciones y a los o las clientes deben asesorarles así.

[29] En cuanto al deber de confidencialidad, continuar una representación conjunta será inapropiado si una o un cliente le solicita a su representante legal que no divulgue a la otra u otro cliente información que es pertinente para la representación conjunta. Esto es así porque una persona que ejerce la abogacía tiene un deber de lealtad idéntico hacia cada cliente y este o esta tiene el derecho de estar informado o informada de cualquier asunto sobre la representación que pueda afectar sus intereses, así como el derecho a tener la expectativa de que su representante legal hará uso de tal información en beneficio suyo. Véase la Regla 1.4. La persona que ejerce la abogacía deberá, desde el inicio de la representación conjunta y como parte del proceso de obtener el consentimiento informado de cada cliente, aconsejar a cada cliente que se compartirá la información y que la persona que ejerce la abogacía tendrá que renunciar a la representación si alguna o algún cliente decide que cierto asunto sustancial para la representación no deba ser informado al otro. En circunstancias limitadas, podrá ser apropiado que la persona que ejerce la abogacía prosiga con la representación cuando las o los clientes así lo acuerden, luego de haber sido informadas o informados debidamente de que la persona que ejerce la abogacía mantendrá confidencial cierta información. Por ejemplo, la persona que ejerce la abogacía podrá concluir razonablemente que no divulgar los secretos de negocio a otro y otra cliente no afectará adversamente la representación que involucra a una empresa común entre los o las clientes y acuerde mantener en confidencialidad esa información con el consentimiento informado de ambos clientes.

[30] Al tratar de establecer o modificar una relación entre clientes, la persona que ejerce la abogacía debe aclarar que su función como partidario o partidaria no será la normal que se espera en otras circunstancias y que, por tanto, puede ser que se requiera a los o las clientes que asuman mayor responsabilidad en decisiones que cuando se les representa por separado. Cualquier limitación en el alcance de la representación que sea necesaria adoptar como resultado de la representación conjunta deberá ser explicada en detalle a los o las clientes desde el inicio de la representación. Véase la Regla 1.2(c).

[31] Sujeto a las limitaciones antes mencionadas, cada cliente en la representación conjunta tiene el derecho a una representación leal y diligente y a la protección de la Regla 1.9 concerniente a las obligaciones hacia clientes

anteriores. El o la cliente también tiene el derecho a prescindir de los servicios de su representante legal según establecido en la Regla 1.16.

**Consideraciones especiales en la representación conjunta en casos penales**

[32] Los conflictos de intereses en casos penales pueden tener implicaciones constitucionales, pues pudieran afectar el derecho de una persona acusada a una adecuada asistencia de representante legal. El conflicto se puede configurar, por ejemplo, cuando una persona que ejerce la abogacía representa simultáneamente a varias personas acusadas que tienen defensas incompatibles o cuando alguna de las personas acusadas interesa alcanzar una alegación preacordada a cambio de cooperar con el Ministerio Público. Una persona que ejerce la abogacía o una entidad que ofrece representación legal a personas acusadas de delito podrá representar a más de una persona acusada en un mismo caso criminal, cuando la posibilidad de que surja un conflicto a medida que avanza el proceso es mínima o cuando la representación en común sea ventajosa para cada una de las personas representadas. Al asumir la representación legal de varias personas coacusadas en un mismo proceso, una persona que ejerce la abogacía deberá comunicarles los riesgos y cómo estos pudieran afectar la continuidad de la relación profesional. Además, deberá cumplir con las normas procesales aplicables a estas circunstancias.

**Clientes que son organizaciones**

[33] La persona que ejerce la abogacía que representa a una corporación u otra organización no necesariamente por esto representa a alguna organización constituyente o afiliada, tales como una matriz o subsidiaria. Véase la Regla 1.13(a). Por lo tanto, la persona que ejerce la abogacía que representa a una organización no está impedida de asumir una representación adversa a una afiliada en un asunto no relacionado, a menos que las circunstancias sean tales que deba considerarse que esa afiliada también es cliente de la persona que ejerce la abogacía, o haya un entendido entre el abogado o la abogada y su cliente organizacional de que  no asumirá una representación adversa a las afiliadas de la o del cliente, o que las obligaciones de la persona que ejerce la abogacía hacia su cliente organizacional o el cliente nuevo o la cliente nueva probablemente limitarán sustancialmente la representación de la otra o el otro cliente.

[34] La persona que representa legalmente a una corporación u otra organización y que también es miembro de su junta de directores o directoras debe determinar si las responsabilidades de ambas funciones pueden confligir. La corporación podría solicitar a su representante legal asesoramiento en asuntos relacionados con la conducta de sus directores o directoras. Debe considerarse la frecuencia con la cual podrían surgir tales situaciones, la posible intensidad del conflicto, el efecto que tendría la renuncia del abogado o de la abogada a la junta de directores o directoras y la posibilidad de que la corporación obtenga consejo legal de parte de otra persona que ejerce la abogacía en esas situaciones. Si hay un riesgo sustancial de que la función dual de la persona que ejerce la abogacía pueda comprometer su independencia del juicio profesional, no debe fungir como director o directora o debe cesar de actuar como representante legal de la corporación al surgir conflictos de intereses. La persona que ejerce la abogacía debe asesorar a las otras u otros miembros de la junta de directores o directoras que en algunas circunstancias los asuntos que se discutan en la junta, mientras la persona que ejerce la abogacía esté presente en su capacidad como director o directora, podrían no estar protegidos por el privilegio abogada o abogado-cliente. Además, que consideraciones sobre conflictos de intereses podrían requerir que la persona que ejerce la abogacía se inhiba de participar como directivo o podría requerirle, o a su oficina legal, declinar la representación en un asunto en particular.

### REGLA 1.8. CONFLICTO DE INTERESES: CLIENTES ACTUALES: REGLAS ESPECÍFICAS

(a) Una persona que ejerce la abogacía no deberá hacer transacciones comerciales con su cliente o, a sabiendas, adquirir interés propietario, posesorio, de garantía o cualquier otro interés pecuniario que sea adverso a su cliente, a no ser que:

(1) la transacción y los términos bajo los cuales la persona que ejerce la abogacía adquiere su interés son justos y razonables para su cliente y sean completamente divulgados y comunicados por escrito de una manera que su cliente pueda entenderlos razonablemente;

(2) le haya aconsejado por escrito a su cliente sobre la conveniencia de obtener consejo legal independiente sobre la transacción y se le haya ofrecido una oportunidad razonable de obtenerlo; y

(3)    su cliente preste su consentimiento informado, mediante escrito firmado, en cuanto a los términos esenciales de la transacción y a la participación de la persona que ejerce la abogacía en esta, incluso si la persona que ejerce la abogacía representa a su cliente en la transacción.

(b)    Una persona que ejerce la abogacía no deberá usar en detrimento de su cliente información relacionada con la representación, a no ser que su cliente preste el consentimiento informado, excepto según lo permitan o requieran estas Reglas.

(c)    Una persona que ejerce la abogacía no solicitará de una o un cliente un regalo sustancial, incluso una disposición testamentaria, o redactará un documento legal a nombre de su cliente que le conceda a la persona que ejerce la abogacía, o alguna persona relacionada con esta, un regalo sustancial a no ser que la persona que ejerce la abogacía, o la persona que recibe el regalo, esté relacionada con la o el cliente. Para propósitos de este inciso, personas relacionadas incluyen una o un cónyuge, hijo o hija, nieto o nieta, progenitores, abuelos o cualquier otra u otro pariente con quien la persona que ejerce la abogacía o la o el cliente mantenga una relación familiar estrecha o cualquier otra persona con la que cohabita.

(d)    Previo a la terminación de la representación legal de su cliente, una persona que ejerce la abogacía no deberá negociar un acuerdo con su cliente para obtener los derechos literarios o de autor o para difundir y representar en los medios una historia que se base sustancialmente en información relacionada con la representación.

(e)    Una persona que ejerce la abogacía no proveerá a su cliente asistencia económica relacionada con la representación en un litigio pendiente o contemplado, excepto que:

(1)    una persona que ejerce la abogacía podrá adelantar las costas y gastos de un litigio, cuyo repago podrá ser contingente al resultado del litigio; y

(2)    la persona que ejerce la abogacía que represente a una o un cliente indigente podrá pagar las costas y gastos de un litigio en beneficio de su cliente; y

(3)    una persona que ejerce la abogacía que representa *pro bono* a una o un cliente indigente a través de una organización que provee servicios legales sin fines de lucro y una persona que ejerce la abogacía que representa *pro bono* a una o un cliente indigente a través de un programa clínico o *pro bono* de una escuela de Derecho, puede hacer regalos módicos a su cliente para alimentación, pago de alquiler, transportación, medicinas y otros gastos básicos de subsistencia.

La persona que ejerce la abogacía:

(i)    no podrá prometer, asegurar o implicar la disponibilidad de tales regalos antes de ser contratada o como un incentivo para continuar la relación cliente-abogado o abogada posterior a la contratación;

(ii)    no podrá solicitar u obtener el reembolso del o de la cliente, de un o una familiar del o de la cliente o de cualquier persona afiliada con el o la cliente, y

(iii)    no podrá publicar o anunciar a clientes potenciales su disponibilidad para proveer tales regalos.

La ayuda económica bajo esta regla puede proveerse aunque la representación de la persona que ejerce la abogacía cualifique para que se le concedan honorarios bajo algún estatuto.

(f)    Una persona que ejerce la abogacía no aceptará compensación de quien no sea su cliente por representarle a no ser que:

(1)    su cliente preste su consentimiento informado,

(2)    no haya interferencia con el juicio profesional independiente de la persona que ejerce la abogacía o en la relación cliente-abogado o abogada, y

(3)   la información relacionada con la representación esté protegida según lo requiere la Regla 1.6.

(g)   Una persona que ejerce la abogacía que represente a dos o más clientes no podrá participar en una transacción de las reclamaciones que consista en una suma global a favor o en contra de sus clientes, o en un caso criminal, en una alegación conjunta preacordada sobre la culpabilidad o alegación *nolo contendere* de sus clientes, a no ser que cada cliente preste su consentimiento informado en un escrito firmado por la o el cliente. La divulgación que haga la persona que ejerce la abogacía incluirá la existencia y la naturaleza de todas las reclamaciones o las alegaciones de las personas involucradas y la participación de cada persona en la transacción.

(h)   Una persona que ejerce la abogacía no podrá:

(1)   hacer un acuerdo que prospectivamente limite su responsabilidad por impericia profesional hacia una o un cliente, o

(2)   transigir una reclamación actual o potencial por impericia profesional con una o un cliente actual o anterior que no tenga representación legal independiente y adecuada, a no ser que le haya advertido por escrito sobre la conveniencia de obtener representación legal independiente en conexión con la transacción y le haya ofrecido una oportunidad razonable de obtener dicha representación legal independiente y adecuada.

(i)   Una persona que ejerce la abogacía no deberá adquirir interés propietario en la causa de acción o asunto que es objeto de su representación, excepto que podrá:

(1)   adquirir un gravamen autorizado por ley para garantizar el pago de sus honorarios y los gastos, y

(2)   contratar con su cliente honorarios contingentes razonables en un caso civil.

(j) Cuando un grupo de personas que ejercen la abogacía constituyan una oficina legal, las prohibiciones descritas en los párrafos (a) hasta el (i) que le apliquen a una persona que ejerce la abogacía se extenderán a las y los demás integrantes de la oficina legal.

(k) La abogacía y la notaría constituyen prácticas jurídicas distintas. La persona que ejerce la notaría se abstendrá de intervenir en casos en que su actuación pudiera denotar una incompatibilidad por la doble gestión en un mismo asunto como profesional de la abogacía y como profesional de la notaría. De igual modo, aun si estuviera permitida la actuación, se abstendrá cuando, al servir a las mismas personas requirentes, las circunstancias particulares puedan generar un potencial conflicto.

## COMENTARIOS

### Transacciones de negocio entre una persona que ejerce la abogacía y su cliente

[1] La capacidad y la formación profesional de una persona que ejerce la abogacía, junto con la relación de fiducia y confianza entre el abogado o la abogada y su cliente, crean la posibilidad de que la persona que ejerce la abogacía se extralimite cuando participa en una transacción de negocio, de bienes o financiera con una o un cliente, por ejemplo, un préstamo o una transacción de venta o una inversión de la persona que ejerce la abogacía en nombre de una o un cliente. Los requisitos del inciso (a) deben cumplirse incluso cuando la transacción no está estrechamente relacionada con el asunto objeto de la representación, como cuando una persona que ejerce la abogacía que redacta un contrato para una o un cliente se entera de que necesita dinero para gastos no relacionados y ofrece extenderle un préstamo al o a la cliente. La regla aplica a las personas que ejercen la abogacía que se dedican a la venta de bienes o servicios relacionados con la práctica del Derecho, por ejemplo, la venta de seguros de títulos o servicios de inversión a clientes actuales de su práctica. Véase la Regla 5.7. También aplica a las personas que ejercen la abogacía que compran propiedades a sucesiones que representan. No aplica a los acuerdos de honorarios ordinarios entre la o el cliente y su representante legal, los cuales se rigen por la Regla 1.5, aunque sus requisitos deben ser satisfechos cuando la persona que ejerce la abogacía acepta un interés en el negocio del o de la cliente u otra propiedad no monetaria como pago de todo o como parte de unos honorarios. Además, la regla no aplica a las

transacciones comerciales rutinarias entre la persona que ejerce la abogacía y la o el cliente sobre productos o servicios que la o el cliente generalmente ofrece a otros u otras como, por ejemplo, servicios bancarios o de corretaje, servicios médicos, productos fabricados o distribuidos por la o el cliente y servicios básicos para el público, tales como servicios de energía eléctrica y de agua potable. En tales transacciones, la persona que ejerce la abogacía no tiene ventaja alguna al negociar con la o el cliente y las restricciones del inciso (a) son innecesarias e imprácticas.

[2] El subinciso (a)(1) requiere que la transacción en sí sea justa para la o el cliente y que sus términos esenciales sean comunicados al o a la cliente, por escrito, de una manera que pueda ser razonablemente entendida. El subinciso (a)(2) requiere que la o el cliente también sea advertida o advertido, por escrito, sobre la deseabilidad de que solicite el asesoramiento de un abogado o una abogada independiente. También requiere que al o a la cliente se le ofrezca una oportunidad razonable de obtener dicho asesoramiento. El subinciso (a)(3) requiere que la persona que ejerce la abogacía obtenga el consentimiento informado del o de la cliente, en un escrito firmado por la o el cliente, a los términos esenciales de la transacción y la función de la persona que ejerce la abogacía en esta. Cuando sea necesario, la persona que ejerce la abogacía debe discutir los riesgos esenciales de la transacción propuesta, incluso cualquier riesgo que presente la participación de la persona que ejerce la abogacía, y la existencia de alternativas razonablemente disponibles y debe explicar por qué el consejo de un abogado o una abogada independiente es deseable. Véase la Regla 1.0(j) (definición de "consentimiento informado").

[3] El riesgo para una o un cliente es mayor cuando este o esta espera que la persona que ejerce la abogacía represente al o a la cliente en la transacción en sí o cuando el interés financiero de la persona que ejerce la abogacía representa un riesgo significativo de que la representación del o de la cliente estará esencialmente limitada por el interés de la persona que ejerce la abogacía en la transacción. Aquí, la función de la persona que ejerce la abogacía requiere que cumpla no solo con los requisitos del inciso (a), sino también con los requisitos de la Regla 1.7. Bajo esa regla, la persona que ejerce la abogacía debe revelar los riesgos asociados con la función dual de la persona que ejerce la abogacía como asesora legal o asesor legal y como participante en la transacción, tal como el riesgo de que la persona que ejerce la abogacía estructure la transacción o que brinde asesoramiento legal de manera que favorezca sus intereses a expensas del o de la cliente. Además, la persona que ejerce la abogacía deberá obtener el consentimiento informado del o de la

cliente. En algunos casos, el interés de la persona que ejerce la abogacía puede ser tal que la Regla 1.7 impida que solicite el consentimiento del o de la cliente para la transacción.

[4] Si la o el cliente está representada o representado de manera independiente en la transacción, el subinciso (a)(2) de esta regla es inaplicable, y el requisito del subinciso (a)(1) de la divulgación total queda satisfecho ya sea con la divulgación por escrito de la persona que ejerce la abogacía involucrada en la transacción o por una persona que ejerce la abogacía independiente del o de la cliente. El hecho de que el o la cliente haya tenido representación independiente en la transacción es pertinente al determinar si el acuerdo era justo y razonable para el o la cliente como requiere el subinciso (a)(1).

**Uso de información relacionada con la representación**

[5] El uso de información relacionada con la representación en perjuicio del o de la cliente viola el deber de lealtad de la persona que ejerce la abogacía. El inciso (b) aplica cuando se usa la información para beneficio de la persona que ejerce la abogacía o de una tercera persona, como sería otro u otra cliente o un socio o una socia de negocio de la persona que ejerce la abogacía. Por ejemplo, si una persona que ejerce la abogacía conoce que una o un cliente tiene la intención de comprar y desarrollar varias parcelas de terreno, la persona que ejerce la abogacía no podrá usar esa información para comprar una de las parcelas en competencia con la o el cliente o recomendar que otra u otro cliente realice tal compra. La regla no prohíbe usos que no perjudiquen al o a la cliente. Por ejemplo, una persona que ejerce la abogacía que durante la representación de una o un cliente obtenga conocimiento sobre la interpretación que hace una agencia gubernamental de alguna legislación comercial, puede utilizar esa información con el fin de beneficiar a otras u otros clientes. El inciso (b) prohíbe el uso perjudicial de la información del o de la cliente a menos que preste su consentimiento informado, excepto lo permitido o requerido por estas Reglas. Véanse las Reglas 1.2(d), 1.6, 1.9(c), 3.3, 4.1(b), 8.1 y 8.3.

**Regalos a personas que ejercen la abogacía**

[6] Una persona que ejerce la abogacía puede aceptar un regalo de una o un cliente, si es justo y razonable dentro de las circunstancias. Por ejemplo, se permite un regalo sencillo como es el regalo que se hace en una ocasión festiva

o como muestra de apreciación. Si una o un cliente ofrece a la persona que ejerce la abogacía un regalo más sustancial, el inciso (c) no prohíbe que la persona que ejerce la abogacía lo acepte, aunque tal regalo puede ser anulado por la o el cliente bajo la doctrina de influencia indebida, la cual trata los regalos de parte de la o del cliente como presuntamente fraudulentos. En cualquier caso, debido a la preocupación de que la persona que ejerce la abogacía se aproveche de sus clientes, o se imponga sobre estos o estas, una persona que ejerce la abogacía no puede sugerir que le haga un regalo sustancial para su beneficio, excepto si la persona que ejerce la abogacía está relacionada con el o la cliente según lo establecido en el inciso (c).

[7] Si la entrega de un regalo sustancial requiere la preparación de un documento jurídico, la persona que ejerce la abogacía debe advertirle a la o el cliente sobre la conveniencia de obtener el asesoramiento desinteresado que otra persona que ejerce la abogacía puede proveer. La única excepción a esta regla es cuando el o la cliente es familiar del donatario o la donataria. No obstante, toda persona que ejerce la abogacía que esté admitida al ejercicio de la notaría en Puerto Rico, en el desempeño de tales funciones, no podrá autorizar instrumentos públicos que contengan disposiciones a su favor. Tampoco podrá autorizarlos si alguna de las personas otorgantes es su pariente dentro del cuarto grado de consanguinidad o segundo de afinidad, excepto cuando aquel o aquella comparezca en el instrumento en calidad representativa. Asimismo, por disposición de ley no producirán efecto las disposiciones a favor de parientes, dentro del cuarto grado de consanguinidad o segundo de afinidad de la persona que ejerce la notaría que autorizó el instrumento público en que se hicieron. Véase, Art. 5 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2005.

[8] Esta regla no prohíbe que una persona que ejerce la abogacía solicite que se le nombre, igual que a cualquier otra persona que ejerce la abogacía con quien esté asociada, como ejecutor o ejecutora del caudal hereditario del o de la cliente, o a otra posición fiduciaria potencialmente lucrativa. No obstante, dichos nombramientos estarán sujetos a la disposición general sobre conflictos de intereses de la Regla 1.7 cuando exista un riesgo significativo de que el interés de la persona que ejerce la abogacía en obtener tal nombramiento limite sustancialmente su juicio profesional independiente al asesorar al o a la cliente sobre la designación de un ejecutor u otro fiduciario o fiduciaria. Al obtener el consentimiento informado del o de la cliente al conflicto, el cual deberá ser ratificado por escrito por el o la cliente, la persona que ejerce la abogacía debe asesorar al o a la cliente acerca de la naturaleza y

el alcance de su interés financiero en la designación, así como la disponibilidad de candidatos alternos o candidatas alternas al cargo.

**Derechos literarios, autor o regalías**

[9] Un acuerdo mediante el cual una persona que ejerce la abogacía adquiere el derecho de presentar o contar en medios literarios, audiovisuales o en cualquier formato la manera en que se condujo la representación crea un conflicto entre los intereses del o de la cliente y los intereses personales de su representante legal. Esto porque actuaciones apropiadas durante la representación del o de la cliente podrían reducir el valor de la historia sobre la cual versa la representación. El inciso (d) no prohíbe que una persona que ejerce la abogacía que representa a un o una cliente en una transacción sobre propiedad literaria o mediática acuerde que los honorarios de la persona que ejerce la abogacía consistirán en una participación en la propiedad, si el acuerdo está de conformidad con la Regla 1.5 y sus incisos (a) y (d).

**Asistencia financiera**

[10] Las personas que ejercen la abogacía no pueden subsidiar demandas judiciales ni procedimientos administrativos que instan a nombre de sus clientes, incluso hacer o garantizar préstamos a sus clientes para gastos de sobrevivencia, ya que al hacerlo se animaría a clientes a proseguir litigios que de otra manera podrían no ser instados y porque dicha asistencia brinda a las personas que ejercen la abogacía un interés financiero demasiado grande en el litigio. Estos peligros no justifican que se prohíba que una persona que ejerce la abogacía adelante las costas y los gastos de un litigio, incluso los gastos de exámenes médicos y los gastos relacionados con la obtención y presentación de prueba, ya que estos anticipos son prácticamente indistinguibles de los honorarios contingentes y ayudan al acceso a los tribunales. Del mismo modo, también se justifica una excepción que permite que las personas que ejercen la abogacía que representan a clientes indigentes paguen las costas y los gastos de la litigación, independientemente de si estos fondos serán reembolsados.

[11] El subinciso (e)(3) provee otra excepción. Una persona que ejerce la abogacía que representa a un o una cliente indigente sin cobrar honorarios, una persona que ejerce la abogacía que representa *pro bono* a un o una cliente indigente a través de una organización sin fines de lucro o de interés público, y una persona que ejerce la abogacía que representa *pro bono* a un o una

cliente indigente a través de un programa clínico o *pro bono* de una escuela de Derecho, puede hacer regalos módicos al o a la cliente permitidos bajo el subinciso (e)(3), incluso aportaciones modestas para alimentación, pago de alquiler, transportación, medicinas y gastos similares para satisfacer las necesidades básicas de subsistencia. Si el regalo tiene consecuencias para el o la cliente, incluso, por ejemplo, en cuanto a su elegibilidad para recibir beneficios del gobierno, recibir servicios sociales, o en cuanto a su responsabilidad contributiva, la persona que ejerce la abogacía debe consultar con el o la cliente sobre esto. Véase la Regla 1.4.

[12] La excepción bajo el subinciso (e)(3) es limitada. Se permiten regalos módicos en circunstancias específicas en las cuales sea improbable que causen conflictos de intereses o inviten al abuso. El subinciso (e)(3) prohíbe que la persona que ejerce la abogacía: (i) prometa, asegure o sugiera, antes de comenzar la relación profesional o como incentivo para continuar la relación cliente-abogado o abogada luego de comenzada, su disponibilidad para proveer ayuda económica; (ii) solicite o acepte el reembolso de la asistencia financiera de parte del o de la cliente, un o una familiar o cualquiera que sea su afiliado o afiliada; y (iii) publique o anuncie su disponibilidad para proveer regalos a clientes futuros más allá de adelantar las costas y gastos de litigación en conexión con una litigación posible o pendiente, o trámites administrativos.

[13] La asistencia financiera, incluso los regalos módicos de acuerdo con el subinciso (e)(3), puede proveerse aunque los servicios legales sean elegibles para el recobro de honorarios de acuerdo con alguna ley que así los conceda. Sin embargo, el subinciso (e)(3) no permite que las personas que ejercen la abogacía provean ayuda en litigios en los cuales puedan recobrar honorarios, tales como casos de daños y perjuicios con pacto de honorarios contingentes, o casos en los cuales los honorarios estén disponibles bajo un contrato en el que la parte perdidosa pagará los honorarios, aunque la persona que ejerce la abogacía termine sin cobrar honorarios.

**Persona que paga los servicios de una persona que ejerce la abogacía**

[14] A menudo se solicita a personas que ejercen la abogacía que representen a una o un cliente en circunstancias en las cuales una tercera persona compensará a la persona que ejerce la abogacía en su totalidad o en parte. La tercera persona podrá ser una o un pariente, amiga o amigo, el que venga llamado o llamada a indemnizar (tal y como una compañía de seguros) o un cocliente (tal y como sería una corporación que es demandada junto a uno o

más de sus empleados o empleadas). Debido a que con frecuencia los terceros o terceras suelen tener intereses que difieren de los del o de la cliente, incluso el interés en minimizar el monto gastado en la representación y en conocer cómo progresa la representación, se prohíbe que las personas que ejercen la abogacía acepten o continúen tales representaciones a menos que la persona que ejerce la abogacía determine que no habrá interferencia con su juicio profesional independiente y haya consentimiento informado del o de la cliente. Véase también la Regla 5.4(c) (que prohíbe que quien recomienda, emplea o paga a la persona que ejerce la abogacía por prestar servicios legales a otro u otra interfiera con el juicio profesional de la persona que ejerce la abogacía).

[15] En algunas ocasiones, será suficiente que la persona que ejerce la abogacía obtenga el consentimiento informado del o de la cliente sobre el hecho del pago por un tercero o una tercera y sobre su identidad. Si, no obstante, el arreglo en cuanto a los honorarios crea un conflicto de intereses a la persona que ejerce la abogacía, entonces estos tendrán que cumplir con la Regla 1.7. La persona que ejerce la abogacía también debe cumplir con los requisitos de la Regla 1.6 sobre confidencialidad. De acuerdo con la Regla 1.7(a), existe un conflicto de interés si existe un riesgo significativo de que la representación de la persona que ejerce la abogacía se vea limitada sustancialmente por el propio interés de la persona que ejerce la abogacía en el arreglo de honorarios o por las responsabilidades de la persona que ejerce la abogacía ante el tercero o la tercera (por ejemplo, cuando el tercero o la tercera es un o una cocliente). De acuerdo con la Regla 1.7(b), la persona que ejerce la abogacía puede aceptar o continuar la representación con el consentimiento informado de cada cliente afectado o afectada, a menos que no se pueda consentir al conflicto bajo ese inciso. De conformidad con la Regla 1.7(b), el consentimiento informado debe ser ratificado por escrito.

**Acuerdos en la representación de múltiples clientes**

[16] Las diferencias entre clientes al momento de hacer o aceptar una oferta de transacción son de los riesgos comunes a la representación conjunta de múltiples clientes por una sola persona que ejerce la abogacía. De acuerdo con la Regla 1.7, este es uno de los riesgos que deberían ser discutidos antes de comenzar la representación, como parte del proceso de obtener el consentimiento informado de los o las clientes. Además, la Regla 1.2(a) protege el derecho de cada cliente a tener la última palabra al decidir si acepta o rechaza una oferta de transacción y al decidir si hace alegación de

culpabilidad o alegación *nolo contendere* en un caso criminal. La regla indicada en este subinciso es corolario de ambas reglas y establece que, antes de que cualquier transacción o alegación preacordada se haga o se acepte en nombre de múltiples clientes, la persona que ejerce la abogacía debe informar a cada uno de estos o estas acerca de todos los términos esenciales del acuerdo, incluso lo que los otros o las otras clientes recibirán o pagarán si se acepta la transacción o la alegación. Véase también la Regla 1.0(j) (definición de "consentimiento informado"). Las personas que ejercen la abogacía que representan a una clase de demandantes o demandados, aquellas o aquellos que proceden de manera derivativa, puede ser que no tengan una relación cliente-abogado o abogada completa con cada miembro de la clase; sin embargo, dichas personas que ejercen la abogacía tienen que cumplir con las normas aplicables que regulan la notificación a las y los miembros de la clase y otros requisitos procesales diseñados para asegurar una protección adecuada a toda la clase.

**Limitación de responsabilidad y transacción sobre reclamos por impericia**

[17] Se prohíben los acuerdos que limiten prospectivamente la responsabilidad de una persona que ejerce la abogacía por impericia. Sin embargo, este inciso no prohíbe que una persona que ejerce la abogacía acuerde con el o la cliente someterse a arbitraje sobre reclamaciones de impericia legal, siempre y cuando dichos acuerdos sean ejecutables y el o la cliente esté plenamente informado del alcance y efecto del acuerdo. Este inciso tampoco limita la capacidad de los abogados y las abogadas para ejercer en forma de una corporación de servicios profesionales o como una sociedad o compañía de responsabilidad limitada, cuando así lo permita la ley, siempre que cada persona que ejerce la abogacía continúe con responsabilidad personal ante el o la cliente por su propia conducta y la oficina legal cumpla con las condiciones requeridas por ley, tales como las disposiciones que requieren que se notifique al o a la cliente sobre la existencia de un seguro adecuado de responsabilidad. Tampoco prohíbe un acuerdo de conformidad con la Regla 1.2 que defina el alcance de la representación, aunque una definición del alcance que haga ilusorias las obligaciones de representación equivaldrá a un intento de limitar la responsabilidad.

[18] Esta regla no prohíbe los acuerdos que resuelvan una reclamación o una potencial reclamación por impericia. Sin embargo, ante el peligro de que una persona que ejerce la abogacía tome ventaja indebida de un o una cliente, o

excliente que no esté representado o representada, la persona que ejerce la abogacía debe primero informar a tal persona por escrito de que es aconsejable que obtenga representación independiente con relación a tal acuerdo. Además, la persona que ejerce la abogacía debe darle al o a la cliente, o al o a la cliente anterior, una oportunidad razonable de obtener dicha representación legal independiente y adecuada.

[19] Los acuerdos que limitan la responsabilidad y aquellos que resuelvan una reclamación o una potencial reclamación por impericia contra una persona que ejerce la abogacía, de ninguna manera limitan el poder inherente del Tribunal Supremo de Puerto Rico de pasar juicio sobre las actuaciones de una persona que ejerce la abogacía. Un acuerdo de relevo de responsabilidad profesional no limita que una o un cliente presente una queja y a la persona que ejerce la abogacía de tener que responder a nivel ético por sus actuaciones u omisiones negligentes. Es altamente impropio que una persona que ejerce la abogacía demandada por daños por impericia profesional transija el caso y que, como parte del acuerdo, incluya una cláusula en la cual el agraviado o la agraviada, a cambio de una indemnización, se obligue a no presentar una queja disciplinaria o a solicitar la desestimación de una queja de esa índole. La persona que ejerce la abogacía no puede condicionar la transacción o el acuerdo a que un o una cliente retire una queja o querella o no presente una queja en su contra.

**Adquisición de interés económico en litigios**

[20] El inciso (i) establece la regla general tradicional en la cual se expresa que a las personas que ejercen la abogacía se les prohíbe adquirir un interés propietario en un litigio. Al igual que el inciso (e), la regla general tiene su origen en los acuerdos ilícitos que existían en el derecho común sobre pago para obtener la representación de un o una cliente o para subsidiarlo durante el litigio y está diseñada para evitar dar a la persona que ejerce la abogacía un interés demasiado grande en la representación. Además, cuando la persona que ejerce la abogacía adquiere un interés propietario en el tema de la representación, será más difícil para una o un cliente prescindir de los servicios de la persona que ejerce la abogacía si así lo desea. La regla está sujeta a excepciones específicas desarrolladas en la jurisprudencia y continuadas en estas Reglas. La excepción sobre ciertos adelantos de los gastos de litigación está establecida en el inciso (e). Además, el inciso (i) establece excepciones para los gravámenes autorizados por la ley para asegurar los honorarios de la persona que ejerce la abogacía o los gastos y los contratos por

honorarios contingentes razonables. Estos pueden incluir gravámenes concedidos por ley, los gravámenes originados en el derecho común y los gravámenes adquiridos por contrato con la o el cliente. Cuando una persona que ejerce la abogacía adquiere por contrato una garantía real sobre un bien que no sea el recuperado a través de los esfuerzos de la persona que ejerce la abogacía en el litigio, dicha adquisición es una transacción comercial o financiera con la o el cliente y se rige por los requisitos del inciso (a). Los contratos por honorarios contingentes en casos civiles se rigen por la Regla 1.5.

### Imputación de prohibiciones

[21] En virtud del inciso (j), la conducta de una persona que ejerce la abogacía cubierta en los incisos (a) al (i) también se aplica a todas las personas que ejercen la abogacía de su oficina legal. Por ejemplo, una persona que ejerce la abogacía en una oficina legal no puede entrar en una transacción comercial con un o una cliente de otra persona que ejerce la abogacía en la oficina legal sin cumplir con el inciso (a), incluso si la primera persona que ejerce la abogacía no participa personalmente en la representación del o de la cliente.

### Incompatibilidad con la función notarial

[22] La práctica de la abogacía puede ser incompatible con la práctica de la notaría. Entre las incompatibilidades de mayor importancia se encuentra la de proveer representación legal a una o un cliente en un litigio contencioso y, simultáneamente, prestar servicios notariales que se relacionen con el mismo caso. Esta incompatibilidad no se extiende a asuntos no contenciosos o de jurisdicción voluntaria, pues en estos casos una persona que ejerce la notaría podría tramitar el proceso y juramentar la petición o documentos asociados al caso. Véanse Reglas 5 y 5A del Reglamento Notarial.

### REGLA 1.9. DEBERES HACIA CLIENTES ANTERIORES

(a) Una persona que ejerce la abogacía que representó a una o un cliente en un asunto no podrá representar subsiguientemente a otra persona en el mismo asunto o uno sustancialmente relacionado, en el cual los intereses de esta persona sean sustancialmente adversos a los intereses del o la cliente anterior, salvo que la o el cliente anterior preste su consentimiento informado a la representación, el cual debe ser ratificado por escrito.

(b)    Una persona que ejerce la abogacía no podrá, a sabiendas, representar a una persona en el mismo asunto o uno sustancialmente relacionado, en el cual una oficina legal con la que el abogado o la abogada estuvo anteriormente asociado o asociada representó previamente a una o un cliente:

(1)    cuyos intereses son sustancialmente adversos a los de esa persona, y

(2)    de quien la persona que ejerce la abogacía obtuvo información que está protegida bajo la Regla 1.6 y el inciso (c) de esta regla y es sustancialmente relevante al asunto, a menos que la o el cliente anterior preste su consentimiento informado, el cual debe ser ratificado por escrito.

(c)    Una persona que ejerce la abogacía que haya representado con anterioridad a una o un cliente en un asunto, o cuya oficina legal actual o anterior haya representado a una o un cliente en un asunto, en lo sucesivo no deberá:

(1)    usar en perjuicio del o de la cliente anterior información relacionada con la representación, excepto según estas Reglas lo permitan o requieran respecto a un o una cliente o cuando la información se ha convertido en información generalmente conocida; o

(2)    divulgar información relacionada con la representación excepto lo permitido o requerido por estas Reglas respecto a un cliente.

(d)    Una persona que ejerce la notaría que autorice un instrumento público no podrá posteriormente proveer representación legal a cualquier parte otorgante que interese reclamar judicial o extrajudicialmente a la otra parte otorgante las contraprestaciones contenidas en el instrumento público que autorizó.

**COMENTARIOS**

[1] Cuando termina la relación cliente-abogado o abogada, una persona que ejerce la abogacía continúa con ciertas obligaciones respecto a la confidencialidad y los conflictos de intereses y por tanto no puede representar a otra u otro cliente, salvo de conformidad con esta regla. En virtud de esta regla, por ejemplo, no es correcto que una persona que ejerce la abogacía trate de rescindir a beneficio de una nueva o un nuevo cliente un contrato redactado para beneficio de una o un cliente anterior. Así también, no sería correcto que una persona que ejerce la abogacía que haya fungido como fiscal en el procesamiento de una persona acusada la represente en una acción civil posterior contra el gobierno en relación con el mismo asunto. Una persona que ejerce la abogacía que haya representado a múltiples clientes en un asunto tampoco podrá representar en el mismo asunto, o en un asunto relacionado sustancialmente, a uno de las o los clientes contra los demás, luego de que haya surgido una controversia entre las y los clientes sobre ese asunto, a menos que todas las o todos los clientes afectados presten su consentimiento informado. Véase el comentario [9]. Las personas que se desempeñen o se hayan desempeñado en el gobierno como abogado o abogada deben cumplir con esta regla según lo requiere la Regla 1.11.

[2] El alcance de un "asunto" para propósitos de esta regla depende de los hechos de una situación o evento particular. La participación de la persona que ejerce la abogacía en un asunto también puede ser una cuestión de grados. Cuando una persona que ejerce la abogacía estuvo directamente involucrada en una transacción específica, la representación subsiguiente de otras y otros clientes con intereses sustancialmente adversos en esa transacción está claramente prohibida. Por otra parte, una persona que ejerce la abogacía que manejó recurrentemente un tipo de problema para una o un cliente anterior no está impedida de asumir una representación con hechos distintos a ese tipo de problema, aunque la representación subsiguiente conlleve una postura adversa a su cliente anterior. La interrogante es si la persona que ejerce la abogacía estaba tan involucrada en el asunto que la representación subsiguiente puede ser razonablemente considerada como un cambio de bando en el asunto en controversia.

[3] Los asuntos están "relacionados sustancialmente", para fines de esta regla, si involucran el mismo evento o controversia legal o si de otra manera existe un riesgo sustancial de que la información confidencial sobre los hechos que normalmente se hubiera obtenido en la representación previa, adelantaría

sustancialmente la postura de la o del cliente en el asunto subsiguiente. Por ejemplo, una persona que ejerce la abogacía que representó a una persona de negocios y conoció vasta información financiera privada sobre esa persona no puede luego representar al o a la cónyuge de esa persona en un caso de divorcio. Del mismo modo, una persona que ejerce la abogacía que haya representado previamente a una o un cliente en la obtención de permisos ambientales para construir un centro comercial estaría impedido de representar a vecinos que buscan oponerse a la rezonificación de la propiedad amparándose en consideraciones ambientales; sin embargo, la persona que ejerce la abogacía no estaría impedida, por razón de una relación sustancial, de defender a un inquilino del centro comercial en oponerse a un desahucio por falta de pago de la renta. La información que fue divulgada al público o a otras partes adversas al antiguo cliente de ordinario no será motivo para la descalificación. La información adquirida en una representación anterior puede haberse tornado obsoleta por el pasar del tiempo, circunstancia que puede ser pertinente para determinar si dos representaciones están relacionadas sustancialmente. En el caso de una o un cliente organizacional, el conocimiento general de las políticas y prácticas de la o del cliente no impedirá, de ordinario, una representación posterior. Por otra parte, el conocimiento de hechos específicos obtenidos en una representación anterior que sean relevantes para el asunto implicado impedirá de ordinario tal representación. La o el cliente anterior no tiene la obligación de revelar cuál es la información confidencial conocida por la persona que ejerce la abogacía con el fin de establecer que existe un riesgo sustancial de que la persona que ejerce la abogacía tenga información confidencial que pueda utilizar en el asunto posterior. Una conclusión sobre la posesión de tal información puede basarse en la naturaleza de los servicios que la persona que ejerce la abogacía proporcionó a la o el cliente anterior y a la información que en la práctica ordinaria sería conocida por una persona que ejerce la abogacía que presta tales servicios.

**Personas que ejercen la abogacía que migran a otras oficinas legales**

[4] Cuando personas que ejercen la abogacía han estado asociados o asociadas en una oficina legal, y terminan su vinculación, la interrogante sobre si una persona que ejerce la abogacía debe aceptar una representación es más complicada. Hay varias consideraciones que ameritan un análisis. Primero, la o el cliente representado previamente por la oficina legal anterior debe estar razonablemente segura o seguro de que no quedará comprometido el deber de lealtad hacia la o el cliente. Segundo, la norma no puede ser evaluada con

tal amplitud que impida que otras personas puedan hacer una selección razonable de una persona que ejerce la abogacía. Tercero, la regla no debe obstaculizar irrazonablemente a las personas que ejercen la abogacía de establecer nuevas asociaciones y aceptar nuevos clientes tras abandonar una asociación anterior. Al respecto, debe reconocerse que hoy día muchas personas que ejercen la abogacía practican en oficinas legales, que muchas personas que ejercen la abogacía, en algún grado, limitan su práctica a una materia, y que cambian de oficina varias veces en sus carreras. Si el concepto de imputación se aplicara con un rigor absoluto, el resultado sería una reducción dramática de la oportunidad de las personas que ejercen la abogacía de cambiar de un entorno de práctica a otro y de la oportunidad de las o los clientes de escoger a su representante legal.

[5] El inciso (b) opera para descalificar a la persona que ejerce la abogacía solo cuando la persona que ejerce la abogacía involucrada tiene conocimiento confiable de la información protegida por las Reglas 1.6 y 1.9(c). Por lo tanto, si una persona que ejerce la abogacía, mientras estuvo en una oficina legal, no adquirió conocimiento alguno o información relativa a una o un cliente particular de la oficina legal, y cambia posteriormente a otra oficina legal, ni la persona que ejerce la abogacía individualmente, ni la segunda oficina legal están inhabilitados para representar a otra u otro cliente en un asunto relacionado, aunque los intereses de las o los dos clientes estén en conflicto. Véase la Regla 1.10(b) para las restricciones en una oficina legal una vez que una persona que ejerce la abogacía terminó la vinculación con esa oficina legal.

[6] La aplicación del inciso (b) depende de los hechos concretos de una situación, apoyados por inferencias, deducciones o presunciones de trabajo que puedan razonablemente hacerse sobre la manera en la cual las personas que ejercen la abogacía trabajan en conjunto. Una persona que ejerce la abogacía puede tener acceso general a los expedientes de todas o todos los clientes de una oficina legal y puede participar regularmente en discusiones de los asuntos de esos o esas clientes; se debe inferir que tal persona que ejerce la abogacía, de hecho, tiene acceso directo a información confidencial sobre todas o todos los clientes de la oficina legal. Por el contrario, otra persona que ejerce la abogacía puede tener acceso a los archivos de solo un número limitado de clientes y no participar en las discusiones de los asuntos de los o las demás clientes; en ausencia de información en contrario, se debe inferir que tal persona que ejerce la abogacía, de hecho, es poseedora de información confidencial solo de clientes que ha atendido, no así de los o las demás clientes.

En esa indagación, el peso de la prueba debe recaer sobre la oficina legal cuya descalificación se solicita.

[7] Independientemente de la cuestión sobre la descalificación de una oficina legal, una persona que ejerce la abogacía que cambia de asociación profesional tiene el deber continuo de preservar la confidencialidad de la información sobre una o un cliente representado anteriormente. Véanse las Reglas 1.6 y 1.9(c).

[8] El inciso (c) establece que la información obtenida por la persona que ejerce la abogacía en el curso de la representación de una o un cliente no podrá ser utilizada o revelada posteriormente por la persona que ejerce la abogacía en perjuicio de la o del cliente. Sin embargo, el hecho de que una persona que ejerce la abogacía haya atendido a una o un cliente no impide que la persona que ejerce la abogacía haga uso de la información que es de conocimiento general cuando represente posteriormente a otro u otra cliente.

[9] Las disposiciones de esta regla son para la protección de clientes anteriores y pueden ser renunciadas si la o el cliente anterior presta un consentimiento informado, el cual debe ser ratificado por escrito según los incisos (a) y (b). Véase la Regla 1.0(j). En relación con la efectividad de una renuncia por adelantado, véase el comentario [22] de la Regla 1.7. Sobre la descalificación de una oficina legal con la cual una persona que ejerce la abogacía está o estuvo asociada anteriormente, véase la Regla 1.10.

**REGLA 1.10. IMPUTACIÓN DE CONFLICTOS DE INTERESES: REGLA GENERAL**

(a)     Mientras unas personas que ejercen la abogacía estén asociadas en una oficina legal para la práctica de la abogacía, no deberán representar a sabiendas a una o un cliente cuando cualquiera, de practicar individualmente, estaría impedido o impedida de representarle bajo la Regla 1.7 o la Regla 1.9, a menos que:

(1)     la prohibición se base en un interés personal del abogado inhabilitado o la abogada inhabilitada y no presente un riesgo significativo de limitar sustancialmente la representación de la o del cliente por las otras personas que ejercen la abogacía en la oficina legal, o

(2)     la prohibición se base en la Regla 1.9(a) o (b), surja de la asociación que tuvo el abogado inhabilitado o la abogada inhabilitada con una oficina legal anterior y:

(i)     se aísle oportunamente al abogado inhabilitado o a la abogada inhabilitada de cualquier participación en el asunto y no reciba parte alguna de los honorarios que genere ese asunto,

(ii)     se notifique prontamente y por escrito a cualquier cliente anterior afectado o afectada para que pueda constatar el cumplimiento con lo dispuesto en esta regla, lo que incluirá: una descripción de las medidas de aislamiento adoptadas; una declaración de cumplimiento con estas Reglas emitidas por la oficina legal y el abogado aislado o la abogada aislada; una declaración que indique que un proceso de revisión por un tribunal podría estar disponible para revisar las medidas de aislamiento adoptadas, y un acuerdo de la oficina legal de responder prontamente a cualquier indagación u objeción por escrito de la o del cliente anterior en relación con las medidas de aislamiento, y

(iii)     el abogado aislado o la abogada aislada y un socio o socia de la oficina legal provean periódicamente al o a la cliente anterior, a petición por escrito de este o esta, y al concluir las medidas de aislamiento, certificaciones sobre el cumplimiento de estas Reglas y de las medidas de aislamiento adoptadas.

(b)     Cuando una persona que ejerce la abogacía termina su asociación con una oficina legal, esta oficina no estará impedida de representar en lo sucesivo a una persona que tenga intereses sustancialmente adversos a los de una persona que fuera representada por la persona que ejerce la abogacía que termina la asociación y que en ese momento no es representada por la oficina legal, a menos que:

(1)     el asunto sea el mismo o uno sustancialmente relacionado con aquel en el que la persona que ejerce la

abogacía que terminó su asociación representó al o a la cliente; y

(2)     cualquier persona que ejerce la abogacía que permanezca en la oficina legal y tenga información protegida por las Reglas 1.6 y 1.9(c) que es central al asunto.

(c)     La descalificación ordenada por esta regla podrá ser renunciada por la o el cliente afectado bajo las condiciones establecidas en la Regla 1.7.

(d)     La descalificación de abogados asociados o de abogadas asociadas a una oficina legal en la que labore una persona que ejerce la abogacía que sea o haya sido empleada gubernamental se regirá por la Regla 1.11.

## COMENTARIOS

### Definición de oficina legal

[1] A los efectos de estas Reglas, el término "oficina legal" "se refiere a una persona que ejerce la abogacía o un grupo de personas que ejercen la abogacía que se constituyen en una sociedad, corporación profesional, firma unipersonal u otro tipo de asociación autorizada a ejercer la práctica de la abogacía. También se refiere a las personas que ejercen la abogacía que laboran como empleados o empleadas de una organización que provee servicios legales o al departamento de asuntos legales de una corporación u otra organización". Véase la Regla 1.0(v). Determinar si dos o más personas que ejercen la abogacía constituyen una oficina legal conforme a esta definición dependerá de los hechos específicos. Véase la Regla 1.10, comentarios [2] - [4].

### Principios de descalificación imputada

[2] La regla de la descalificación imputada establecida en el inciso (a) concretiza el principio de lealtad a la o el cliente tal y como se aplica a los abogados o las abogadas que ejercen en una oficina legal. Tales situaciones pueden considerarse desde la premisa de que una oficina legal es esencialmente una persona que ejerce la abogacía para los propósitos de las reglas que gobiernan la lealtad a la o el cliente, o desde la premisa de que cada

persona que ejerce la abogacía está vicariamente obligada por el deber de lealtad. El subinciso (a)(1) opera solo entre los abogados asociados o las abogadas asociadas en el presente en una oficina legal. Cuando una persona que ejerce la abogacía cambia de una oficina legal a otra, la situación se rige por las Reglas 1.9(b), y 1.10(a)(2) y 1.10(b).

[3] La norma del inciso (a) no prohíbe la representación cuando no se presentan interrogantes relativas a la lealtad hacia la o el cliente o sobre la protección de información confidencial. Por ejemplo, cuando una persona que ejerce la abogacía en una oficina legal no puede representar eficazmente a una o un cliente determinado debido a fuertes creencias políticas, pero esa persona que ejerce la abogacía no hará trabajo alguno en el caso y las creencias personales de la persona que ejerce la abogacía no limitarán sustancialmente la representación por otras u otros miembros de la oficina legal, la oficina no debe ser inhabilitada. Por otro lado, se imputará la descalificación de todos los abogados y todas las abogadas de una oficina legal cuando la representación que prestan se afecta sustancialmente por la lealtad hacia una persona que ejerce la abogacía integrante de la oficina legal que tiene titularidad en los bienes de la parte adversa.

[4] El inciso (a) tampoco prohíbe la representación por otros u otras en la oficina legal cuando la persona impedida de participar en un asunto no ejerce la abogacía, tal como sería personal paralegal o administrativo. Tampoco el inciso (a) prohíbe la representación si la persona que ejerce la abogacía está impedida de actuar debido a eventos anteriores a que la persona se convirtiera en abogado o abogada, por ejemplo, trabajo que realizó como estudiante de Derecho. Sin embargo, de ordinario, tales personas deben ser aisladas de cualquier participación personal en el asunto para evitar que comuniquen información confidencial a otras personas en la oficina legal que tanto las personas que no son abogadas como la oficina legal tienen una obligación legal de proteger. Véanse las Reglas 1.0(b) y 5.3.

[5] La Regla 1.10(b) permite que una oficina legal, bajo ciertas circunstancias, represente a una persona con intereses adversos directamente a los de una o un cliente representado por una persona que ejerce la abogacía que estuvo asociada a la oficina legal. La regla aplica independientemente de cuándo el abogado o la abogada asociada anteriormente representó a la o el cliente. Sin embargo, la oficina legal no puede representar a una persona con intereses adversos a los de una o un cliente actual de la oficina legal, pues esto violaría la Regla 1.7. Más aún, la oficina legal no puede representar a la persona cuando

el asunto es el mismo o está relacionado sustancialmente con el asunto en el que el abogado o la abogada anteriormente asociada representó a la o el cliente y otro abogado o abogada actualmente en la oficina legal tiene información sustancial protegida por las Reglas 1.6 y 1.9(c).

[6] La Regla 1.10(c) elimina la imputación con el consentimiento informado, ratificado por escrito, de la o del cliente actual o anterior afectado bajo las condiciones establecidas en la Regla 1.7. Las condiciones establecidas en la Regla 1.7 requieren que la persona que ejerce la abogacía determine que la representación no está prohibida por la Regla 1.7(b) y que cada cliente actual o anterior afectado dio su consentimiento informado a la representación, ratificado por escrito. En algunos casos, el riesgo puede ser tan severo que el conflicto no podría ser salvable con el consentimiento de la o del cliente. Para una discusión sobre la efectividad de las dispensas por clientes a conflictos que podrían surgir en el futuro, véase la Regla 1.7, comentario [22]. Para la definición de "consentimiento informado", véase la Regla 1.0(j).

[7] La Regla 1.10(a)(2) también elimina la imputación que de ordinario sería requerida por la Regla 1.10(a), pero a diferencia del inciso (c), lo hace sin requerir que haya el consentimiento informado de la o del cliente anterior. En su lugar, requiere que se sigan los procedimientos establecidos en los subincisos (a)(2)(i)-(iii). En la Regla 1.0(b) se definen las medidas de aislamiento que podrían adoptar. Sin embargo, las personas que ejercen la abogacía deben ser conscientes de que aun cuando se hayan adoptado mecanismos de aislamiento, los tribunales pueden considerar factores adicionales al resolver mociones para descalificar a una persona que ejerce la abogacía en litigios pendientes.

[8] El subinciso (a)(2)(i) no prohíbe que la abogada aislada o el abogado aislado reciba un salario o una participación de una sociedad establecida por un acuerdo independiente previo, pero esa persona que ejerce la abogacía no puede recibir compensación relacionada directamente con el asunto para el cual la persona que ejerce la abogacía se descalifica.

[9] La notificación requerida por el subinciso (a)(2)(ii) debe incluir generalmente una descripción de la representación previa del abogado aislado o de la abogada aislada y debe ser entregada tan pronto como sea posible después de que la necesidad del aislamiento sea aparente. También debe incluir una declaración por el abogado aislado o la abogada aislada y por la oficina legal de que la información confidencial sustancial del o de la cliente no

fue divulgada o usada en violación de estas Reglas. El aviso tiene la intención de permitir a la o el cliente anterior evaluar y comentar sobre la efectividad de las medidas de aislamiento.

[10] Las certificaciones requeridas en el subinciso (a)(2)(iii) le dan a la o el cliente anterior la seguridad de que la información confidencial sustancial suya no fue revelada o usada inapropiadamente, tanto antes o después de la implementación oportuna del aislamiento. Si el cumplimiento no puede ser certificado, la certificación debe describir la falta de cumplimiento.

[11] Cuando una persona que ejerce la abogacía se ha unido a una oficina legal privada después de representar al gobierno, la imputación se rige por la Regla 1.11(b) y (c), no por esta regla. En virtud de la Regla 1.11(d), cuando una persona que ejerce la abogacía representa al gobierno después de haber representado a clientes en la práctica privada, en empleo no gubernamental o en otra agencia gubernamental, los conflictos con clientes anteriores no se imputan a representantes legales gubernamentales asociados o asociadas con el abogado individualmente inhabilitado o la abogada inhabilitada.

[12] Cuando se le prohíbe a una persona que ejerce la abogacía incurrir en determinadas transacciones bajo la Regla 1.8, el inciso (k) de esa regla, y no de esta regla, determinará si esa prohibición también se aplica a otros abogados o a otras abogadas asociadas en una oficina legal con el abogado inhabilitado o la abogada inhabilitada.

### REGLA 1.11. CONFLICTOS DE INTERESES ESPECIALES PARA PASADOS Y ACTUALES FUNCIONARIOS, FUNCIONARIAS, EMPLEADOS Y EMPLEADAS DEL GOBIERNO

(a) Excepto lo expresamente permitido por ley, la persona que ejerce la abogacía que se desempeñó como funcionario o funcionaria o empleado o empleada en el servicio público:

(1) deberá cumplir con lo dispuesto en el inciso (c) de la Regla 1.9, y

(2) no deberá representar a una o un cliente en relación con un asunto en el cual la persona que ejerce la abogacía participó personal y sustancialmente como funcionaria o empleada pública.

(b)     Cuando se descalifique a una persona que ejerce la abogacía de una representación de acuerdo con el inciso (a) de esta regla, ningún abogado ni ninguna abogada de la oficina legal con la cual está asociado o asociada la persona que ejerce la abogacía podrá, a sabiendas, asumir o continuar la representación de ese asunto, a menos que:

(1)     el abogado inhabilitado o la abogada inhabilitada se aísle oportunamente de cualquier participación en el asunto y no reciba parte de los honorarios devengados por tal asunto, y

(2)     se notifique inmediatamente y por escrito a la agencia gubernamental concernida para que pueda constatar que se cumplió con las disposiciones de esta regla.

(c)     Excepto que alguna ley lo permita expresamente, la persona que ejerce la abogacía que posea información obtenida mientras fue una funcionaria o un funcionario o empleada o empleado público y que le consta es información gubernamental confidencial sobre una persona, no podrá representar a una o un cliente privado cuyos intereses sean adversos a los de esa persona en un asunto en el cual la información podría ser usada en desventaja sustancial de tal persona. Una oficina legal con la cual el abogado o la abogada esté asociado o asociada, podrá asumir o continuar la representación en el asunto solo si el abogado inhabilitado o la abogada inhabilitada se aísla oportunamente de cualquier participación en el asunto y no recibe parte de los honorarios devengados por tal asunto. Para propósitos de esta regla, el término "información gubernamental confidencial" significa información que fue obtenida bajo autoridad gubernamental y la cual, al momento de aplicar esta regla, el gobierno está impedido por ley de divulgarla al público o tiene un privilegio legal para no divulgarla, y la cual no está de otra forma disponible al público.

(d)     Excepto que alguna ley lo permita expresamente, la persona que ejerce la abogacía que labore en el servicio público:
(1)     deberá cumplir con las Reglas 1.7 y 1.9, y

(2)     no podrá:

(i)     participar en un asunto en el que participó personal y sustancialmente mientras ejerció en la

práctica privada o empleo no gubernamental, a no ser que la agencia gubernamental concernida preste su consentimiento informado y este sea ratificado por escrito, o

(ii)    negociar para obtener empleo privado con una persona que es parte o representante legal de una parte en un asunto en el que la persona que ejerce la abogacía participa personal y sustancialmente, excepto aquellas personas que ejercen la abogacía que sean oficiales jurídicos de un juez, una jueza, otra u otro oficial adjudicador, árbitro o árbitra podrán negociar para obtener empleo privado según lo permite la Regla 1.12(b) y sujeto a las condiciones establecidas en la Regla 1.12(b).

(e)    Para propósitos de esta regla, el término "asunto" incluye:

(1)    cualquier proceso judicial o de otra índole, solicitud de opinión u otra determinación, contrato, reclamación, controversia, investigación, negociación, cargo, acusación, arresto o cualquier otro asunto particular que involucre a una parte específica o partes, y

(2)    cualquier otro asunto cubierto por las reglas sobre conflicto de intereses de la agencia gubernamental concernida.

## **COMENTARIOS**

[1] Un abogado o una abogada que ejerció o ejerce como funcionaria o funcionario, empleada o empleado público o por contrato, está personalmente sujeto a estas Reglas, incluso la prohibición sobre conflictos de intereses concurrentes establecidos en la Regla 1.7. Además, estas personas que ejercen la abogacía pueden estar sujetas a las leyes y los reglamentos gubernamentales en relación con los conflictos de intereses.

[2] Los subincisos (a)(1), (a)(2) y (d)(1) reiteran las obligaciones de un o una profesional de la abogacía que ejerce o ejerció en el servicio público hacia una o un cliente anterior, ya sea el gobierno o una o un cliente privado. La Regla

1.10 no aplica a los conflictos de intereses a los cuales se refiere esta regla. Más bien, el inciso establece una regla especial de imputación para las y los profesionales de la abogacía que ejercieron en el servicio público, la cual provee para el aislamiento y una notificación. Debido a los problemas especiales planteados por la imputación dentro de una agencia gubernamental, el inciso (d) no imputa los conflictos de una o un profesional de la abogacía que es funcionario o funcionaria o empleado o empleada del gobierno a otros funcionarios o empleados gubernamentales asociados, aunque normalmente será prudente aislar a estas personas que ejercen la abogacía.

[3] Los subincisos (a)(2) y (d)(2) aplican independientemente de si una persona que ejerce la abogacía es adversa a una o un cliente anterior y, por lo tanto, están diseñados no solo para proteger a la o el cliente anterior, sino también para impedir que una persona que ejerce la abogacía se aproveche del cargo público para beneficio de otra u otro cliente. Por ejemplo, una persona que ejerce la abogacía que presentó una demanda a favor del gobierno no puede presentar posteriormente la misma reclamación en beneficio de una o un cliente privado posterior luego de haber cesado en el servicio público. Del mismo modo, una persona que ejerce la abogacía que instó una reclamación en nombre de una o un cliente privado no puede presentar la misma reclamación en nombre del gobierno, excepto cuando está autorizado por el inciso (d). Al igual que en los subincisos (a)(1) y (d)(1), la Regla 1.10 no es aplicable a los conflictos de intereses tratados en estos incisos.

[4] Esta regla presenta un balance de intereses. Por un lado, cuando las y los clientes sucesivos son una agencia gubernamental y otra u otro cliente, público o privado, existe el riesgo de que el poder o la discreción que tiene esa agencia puedan ser utilizados para el beneficio especial de la otra o el otro cliente. Una persona que ejerce la abogacía no debe estar en una situación en la que el beneficio para la otra o el otro cliente pueda afectar el desempeño de las funciones profesionales de la persona que ejerce la abogacía en beneficio del gobierno. Además, se podría producir una ventaja indebida para la o el otro cliente debido al acceso a información confidencial que tiene el gobierno sobre el adversario de la o del cliente obtenible solamente a través del servicio de la persona que ejerce la abogacía en el gobierno. Por otra parte, las reglas que aplican a personas que ejercen la abogacía que están o estuvieron empleadas en una agencia gubernamental no deben ser tan restrictivas como para inhibir el cambio o movimiento de empleo hacia o desde el gobierno. El gobierno tiene una necesidad legítima de atraer a profesionales del Derecho calificados o

calificadas, así como de mantener altos estándares éticos. Por lo tanto, un exabogado o exabogada del gobierno será inhabilitado o inhabilitada a solo de asuntos particulares en los que la persona que ejerce la abogacía haya participado personal y sustancialmente. Las disposiciones para el aislamiento y la dispensa del inciso (b) son necesarias para evitar que la regla de descalificación imponga un disuasivo demasiado severo para ingresar al servicio público. La limitación de la descalificación en los subincisos (a)(2) y (d)(2) a asuntos que involucran a una parte o partes específicas cumple una función similar, en lugar de extender la descalificación a todos los asuntos sustantivos en los que trabajó la persona que ejerce la abogacía.

[5] Cuando una persona que ejerce la abogacía estuvo empleada en una agencia gubernamental y luego se trasladó a una segunda agencia gubernamental, puede ser apropiado tratar a esa segunda agencia como otra cliente para los propósitos de esta regla, como cuando una persona que ejerce la abogacía es empleada por un municipio y posteriormente es empleada por una agencia federal. Sin embargo, debido a que el conflicto de intereses se rige por el inciso (d), esta última agencia no está obligada a aislar a la persona que ejerce la abogacía de la manera en que el inciso (b) lo requiere a una oficina legal. La cuestión sobre si dos agencias gubernamentales deben considerarse como los mismos o diferentes clientes para fines de conflicto de intereses está fuera del alcance de estas Reglas. Véase la Regla 1.13, comentario [9].

[6] Los incisos (b) y (c) contemplan un arreglo para el aislamiento. Véase la Regla 1.0(b) (requisitos para los procedimientos de aislamiento). Estos incisos no prohíben que una persona que ejerce la abogacía reciba un salario o una participación en una sociedad según un acuerdo independiente previo, pero esa persona que ejerce la abogacía no puede recibir compensación que directamente relacione la compensación del abogado o de la abogada a los honorarios en el asunto en el cual la persona que ejerce la abogacía fue inhabilitada.

[7] La notificación, que incluye una descripción de la representación previa del abogado o de la abogada aislada y de los procedimientos de aislamiento adoptados, deben generalmente darse tan pronto como sea posible después de que se hace aparente la necesidad de aislamiento.

[8] El inciso (c) aplica solo cuando la persona que ejerce la abogacía en cuestión tiene conocimiento de la información, lo que significa conocimiento

real; no funciona con respecto a la información que podría ser meramente imputada a la persona que ejerce la abogacía.

[9] Los incisos (a) y (d) no prohíben que una persona que ejerce la abogacía represente conjuntamente a una parte privada y a una agencia gubernamental cuando esté permitido por la Regla 1.7 y no esté prohibido por ley.

[10] Para efectos del inciso (e) de esta regla, un "asunto" puede continuar de otra forma. Para determinar si dos asuntos son los mismos, la persona que ejerce la abogacía debe considerar hasta qué punto los asuntos involucran los mismos hechos básicos, las mismas partes o partes relacionadas, y el tiempo transcurrido.

## REGLA 1.12. EXJUEZ, EXJUEZA, ÁRBITRO, ÁRBITRA, MEDIADOR, MEDIADORA O EVALUADOR O EVALUADORA NEUTRAL

(a)     Excepto lo dispuesto en el inciso (d), una persona que ejerce la abogacía no representará a una persona en conexión con un asunto en el cual participó personal y sustancialmente mientras fue juez, jueza, oficial adjudicativo u oficial jurídico de tal persona, o como árbitro, árbitra, mediador, mediadora o evaluador o evaluadora neutral, a no ser que todas las partes del procedimiento presten por escrito su consentimiento informado.

(b)     Una persona que ejerce la abogacía no entrará en negociaciones sobre empleo con una persona que participa como parte o como representante legal de una parte en el asunto en el cual el abogado o la abogada participa personal y sustancialmente como juez, jueza, oficial adjudicativo, árbitro, árbitra, mediador, mediadora o evaluador o evaluadora neutral. Una persona que ejerce la abogacía que labora como oficial jurídico de un juez, de una jueza o de un oficial adjudicativo puede entrar en negociaciones sobre empleo con una parte o su representante legal que participa en un asunto en el cual el o la oficial jurídico trabaja personal y sustancialmente, pero solo después de que la persona que ejerce la abogacía haya notificado al juez o a la jueza u oficial adjudicativo.

(c)     Si se descalifica a una persona que ejerce la abogacía de acuerdo con el inciso (a) de esta regla, ningún abogado asociado o ninguna

abogada asociada a la oficina legal podrá, a sabiendas, asumir o continuar la representación en ese asunto, a menos que:

> (1)     se aísle oportunamente al abogado inhabilitado o a la abogada inhabilitada de cualquier participación en ese asunto y no reciba parte alguna de los honorarios devengados en el asunto, y

> (2)     se le notifique prontamente por escrito a las partes y al tribunal correspondiente para que puedan constatar si se cumplió con las disposiciones de esta regla.

(d)     Un árbitro o una árbitra que se seleccione como representante de una parte en un panel de árbitros o árbitras múltiples, no tendrá impedimento para representar subsiguientemente a esa parte en ese asunto.

**COMENTARIOS**

[1] En términos generales, esta regla va a la par con la Regla 1.11. El término "personal y sustancialmente" significa que una jueza o juez que fue miembro de un tribunal compuesto de varias o varios miembros, y que luego de cesar en sus funciones judiciales comienza a ejercer la abogacía, no está impedido o impedida de representar a una o un cliente en un asunto pendiente en ese tribunal, en el que el exjuez o la exjueza no participó. Así también, el hecho de que una exjueza o un exjuez ejerciera responsabilidad administrativa en un tribunal no impide que luego pueda comparecer ante ese tribunal como representante legal en un asunto sobre el cual ejerció responsabilidad administrativa remota o incidental que no afectó los méritos. Compárese el comentario con la Regla 1.11. El término "oficial adjudicativo" incluye a personas tales como árbitros, árbitras, comisionadas o comisionados especiales, oficiales examinadores y otras u otros oficiales con funciones análogas.

[2] Al igual que exjueces o exjuezas, personas que ejercen la abogacía que han servido como árbitros, árbitras, mediadoras, mediadores o terceras personas neutrales pueden ser llamadas a representar a una o un cliente en un asunto en el que el abogado o la abogada participó personal y sustancialmente. Esta regla prohíbe tal representación, a menos que todas las partes en el

procedimiento presten su consentimiento informado, ratificado por escrito. Véanse la Regla 1.0(j) y (dd). Leyes especiales o códigos de ética que rigen a evaluadores neutrales pueden imponer normas más estrictas de descalificación personal o imputada. Véase la Regla 2.4.

[3] Aunque las personas que ejercen la abogacía que actúan como terceras personas neutrales no tienen información sobre las partes que estén protegidas por la Regla 1.6, generalmente les deben a las partes una obligación de confidencialidad bajo las leyes especiales o códigos de ética que rigen a terceros o terceras neutrales. Así, el inciso (c) establece que los conflictos de un abogado inhabilitado o de una abogada inhabilitada serán imputados a otras personas que ejercen la abogacía en una oficina legal, a menos que se cumplan las condiciones de este inciso.

[4] Los requisitos para los procedimientos de aislamiento se establecen en la Regla 1.0(b). El subinciso (c)(1) no prohíbe que el abogado o la abogada aislada reciba un salario o una participación en una sociedad establecida por acuerdo independiente previo, pero esa persona que ejerce la abogacía no puede recibir compensación relacionada directamente con el asunto en el cual la persona que ejerce la abogacía es inhabilitada.

[5] Por lo general, se debe dar una notificación, que incluya una descripción de la representación previa del abogado aislado o de la abogada aislada y de los procedimientos de aislamiento adoptados, tan pronto como sea posible después de que sea aparente la necesidad del aislamiento.

## REGLA 1.13. LA ORGANIZACIÓN COMO CLIENTE

(a)     La persona que ejerce la abogacía que sea empleado o empleada o haya sido contratado o contratada para prestar servicios legales a una organización representa a la organización que actúa a través de sus constituyentes debidamente autorizados o autorizadas.

(b)     Si el o la representante legal de la organización sabe que un oficial, empleados o empleadas u otra persona asociada con la organización está actuando, intenta actuar o rehúsa actuar en un asunto relacionado con la representación que constituye una violación de una obligación legal de la organización o una violación de una ley que razonablemente pudiera imputársele a la organización y que probablemente resultaría en daño sustancial hacia esta, entonces el o

la representante legal deberá proceder como sea razonablemente necesario para los mejores intereses de la organización. A menos que el o la representante legal crea razonablemente que en los mejores intereses de la organización es innecesario hacerlo, referirá el asunto a una autoridad superior en la organización, incluso, si las circunstancias así lo requieren, ante la máxima autoridad que puede actuar por la organización según lo determine la ley.

(c)     Excepto lo dispuesto en el inciso (d), si:

(1)     a pesar de los esfuerzos del o de la representante legal de acuerdo con el inciso (b), la máxima autoridad que pueda atenderla en nombre de la organización insiste en la acción, o rehúsa actuar de forma apropiada y a tiempo, en clara violación de la ley, y

(2)     el o la representante legal cree razonablemente que la violación tiene certeza razonable de resultar en un daño sustancial a la organización, entonces podrá divulgar información relacionada con la representación independientemente de si la Regla 1.6 lo permite, pero solamente en la medida que el o la representante legal razonablemente crea necesaria para prevenir un daño sustancial a la organización.

(d)     Las disposiciones del inciso (c) de esta regla no aplicarán a información relacionada con la representación del abogado o de la abogada de una organización para investigar una alegada violación de ley, o para defender a la organización o a un oficial, empleado o empleada, o a algún constituyente asociado con la organización contra una reclamación que surge de una alegada violación de ley.

(e)     Una persona que ejerce la abogacía que crea razonablemente que le han relevado por las acciones tomadas al amparo de los incisos (b) o (c), o renuncia a la representación bajo circunstancias que le requieren o le permiten actuar bajo cualquiera de estos incisos, debe proceder como considere razonablemente necesario para asegurarse de que la máxima autoridad de la organización es informada de su relevo o renuncia a la representación legal.

(f)    Al interactuar con los directores o directoras, oficiales, empleados o empleadas, miembros, accionistas y constituyentes de la organización, la persona que ejerce la abogacía deberá explicarles la identidad de su cliente cuando conoce o debe conocer razonablemente que los intereses de la organización son adversos a los intereses de las y los constituyentes de la organización con quienes la persona que ejerce la abogacía está interactuando.

(g)    La persona que ejerce la abogacía que representa a una organización puede también representar a cualquiera de sus directores o directoras, oficiales, miembros, accionistas u otras u otros constituyentes, sujeto a lo dispuesto en la Regla 1.7. Si la Regla 1.7 requiriera el consentimiento de la organización para la representación conjunta, el consentimiento deberá ser suscrito por los y las accionistas o una o un oficial con autorización de la organización, que no sea la persona que será representada o por las o los accionistas.

## COMENTARIOS

### La organización como cliente

[1] Un cliente organizacional es una persona jurídica que puede actuar únicamente a través de sus oficiales, directores, empleados o empleadas, accionistas y otras u otros constituyentes. Las y los oficiales, directores, empleados o empleadas y accionistas son los o las constituyentes de la o del cliente organizacional corporativo. Los deberes definidos en este comentario se aplican igualmente a las asociaciones no incorporadas. "Otros constituyentes", tal y como se usa en este comentario, significa los puestos equivalentes a las y los oficiales, directores, empleados y accionistas ocupados por personas que actúan para clientes organizacionales que no son corporaciones.

[2] Cuando uno de los o las constituyentes de un cliente organizacional se comunica con el o la representante legal de la organización en la capacidad que ocupa en la organización, la comunicación está protegida por la Regla 1.6. Por ejemplo, si un cliente organizacional requiere a su representante legal que investigue denuncias de conducta incorrecta, las entrevistas realizadas en el curso de esa investigación por el o la representante legal a los empleados o las empleadas del o de la cliente u otros constituyentes están cubiertas por la Regla 1.6. Sin embargo, esto no significa que los o las constituyentes de un

cliente organizacional sean clientes del o de la representante legal. La persona que ejerce la abogacía no puede divulgar a esos o esas constituyentes información relacionada con la representación, excepto la divulgación autorizada explícita o implícitamente por el cliente organizacional para llevar a cabo la representación o según lo permitido por la Regla 1.6.

[3] Cuando las y los constituyentes de la organización toman decisiones por esta, las decisiones ordinariamente deben ser aceptadas por el abogado o la abogada aun cuando su utilidad o prudencia sean dudosas. Las decisiones concernientes a la política y a las operaciones, incluidas las que conllevan un riesgo sustancial, no son de la incumbencia del abogado o de la abogada. El inciso (b) deja claro, sin embargo, que cuando la persona que ejerce la abogacía sabe que probablemente la organización resulte perjudicada sustancialmente por la acción de un o una oficial u otro constituyente que viola una obligación legal hacia la organización o está en violación de una ley que podría imputarse a la organización, el abogado o la abogada debe proceder como sea razonablemente necesario en el mejor interés de la organización. Como se define en la Regla 1.0(k), el conocimiento puede inferirse de las circunstancias, y una persona que ejerce la abogacía no puede ignorar lo obvio.

[4] Al determinar cómo proceder en virtud del inciso (b), la persona que ejerce la abogacía debe dar debida consideración a la seriedad de la violación y sus consecuencias, la responsabilidad en la entidad y la motivación aparente de la persona involucrada, las políticas de la organización relativas a tales asuntos, y cualquier otra consideración relevante. De ordinario, sería necesario un referido a una autoridad superior. En algunas circunstancias, sin embargo, puede ser apropiado que el abogado o la abogada le pida a la o el constituyente que reconsidere el asunto; por ejemplo, si las circunstancias conllevan un malentendido de buena fe de una persona constituyente sobre la ley y se da la subsiguiente aceptación del consejo de la persona que ejerce la abogacía, la persona que ejerce la abogacía puede concluir razonablemente que el mejor interés de la organización no requiere que el asunto sea referido a una autoridad superior. Si una persona constituyente persiste en una conducta contraria al consejo de la persona que ejerce la abogacía, será necesario que la persona que ejerce la abogacía tome medidas para que el asunto sea revisado por una autoridad superior en la organización. Si el asunto es lo suficientemente serio, importante o urgente para la organización, podrá ser necesario el referido a la autoridad superior de la organización, aunque la persona que ejerce la abogacía no se haya comunicado con el o la constituyente. Cualquier medida adoptada deberá, en lo posible, reducir al

mínimo el riesgo de revelar información relacionada con la representación a personas fuera de la organización. Aun en las circunstancias en las que una persona que ejerce la abogacía no esté obligada por la Regla 1.13 a proceder, una persona que ejerce la abogacía puede traer ante la atención de un cliente organizacional, incluso su máxima autoridad, asuntos que la persona que ejerce la abogacía crea razonablemente que son de importancia suficiente para justificar así hacerlo en los mejores intereses de la organización.

[5] El inciso (b) también deja claro que cuando sea razonablemente necesario para que la organización pueda abordar el asunto de una manera oportuna y apropiada, la persona que ejerce la abogacía debe referir el asunto a una autoridad superior, incluso, si las circunstancias lo justifican, la autoridad máxima que puede actuar en nombre de la entidad bajo la ley aplicable. La autoridad más alta de la organización a la cual un asunto puede referirse normalmente será la junta de directores o directoras o algún ente de autoridad similar. Sin embargo, la ley aplicable puede disponer que bajo ciertas condiciones la autoridad máxima resida en otro organismo, por ejemplo, en los directores o directoras independientes de una corporación.

**Relación con otras reglas**

[6] La autoridad y responsabilidad provistas en esta regla son concurrentes con la autoridad y responsabilidad provistas en otras Reglas. En particular, esta regla no limita o amplía la responsabilidad de la persona que ejerce la abogacía bajo las Reglas 1.8, 1.16, 3.3 o 4.1. El inciso (c) de esta regla suplementa la Regla 1.6(b) al proveer una base adicional sobre la cual la persona que ejerce la abogacía puede revelar información relacionada con la representación, pero no modifica, restringe o limita las disposiciones de la Regla 1.6(b)(1) a la Regla 1.6(b)(6). En virtud del inciso (c), la persona que ejerce la abogacía puede revelar dicha información solo cuando la autoridad máxima de la organización insista en, o no enfrente, un curso de acción constitutivo de violación de ley o la amenaza de una acción o una en curso que claramente es una infracción de la ley, y solo en la medida que el abogado o la abogada razonablemente crea necesaria para prevenir ciertos daños sustanciales a la organización. No es necesario que los servicios de la persona que ejerce la abogacía se utilicen para facilitar la violación, pero se requiere que el asunto esté relacionado con la representación de la organización por la persona que ejerce la abogacía. Si los servicios de la persona que ejerce la abogacía son utilizados por una organización para cometer un delito o fraude, las Reglas 1.6(b)(2) y 1.6(b)(3) pueden permitir que la persona que ejerce la

abogacía divulgue información confidencial. En tales circunstancias, también puede ser aplicable la Regla 1.2(d), en cuyo caso, la renuncia de la representación bajo la Regla 1.16 (a)(1) podría ser requerida.

[7] El inciso (d) deja claro que la autoridad de una persona que ejerce la abogacía para divulgar información relacionada con una representación en circunstancias descritas en el inciso (c) no aplica con respecto a la información relacionada con la participación de una persona que ejerce la abogacía que es contratada por una organización para investigar una violación alegada de ley o para defender a la organización o a un o una oficial, empleado, empleada u otra persona asociada con la organización contra una reclamación derivada de una presunta violación de la ley. Esto es necesario para permitir que un cliente organizacional disfrute de los beneficios completos de un asesoramiento legal al llevar a cabo una investigación o al defenderse contra una reclamación.

[8] Una persona que ejerce la abogacía que crea razonablemente que fue despedida debido a las acciones de la persona que ejerce la abogacía tomadas conforme a los incisos (b) o (c), o que renuncia en circunstancias que requieren o permiten que la persona que ejerce la abogacía tome acción bajo cualquiera de estos incisos, debe proceder como crea razonablemente necesario para asegurar que la autoridad más alta de la organización sea informada del despido o renuncia de la persona que ejerce la abogacía.

**Agencias gubernamentales**

[9] El deber definido en esta regla aplica a organizaciones gubernamentales. Definir con precisión la identidad de la o del cliente y prescribir las obligaciones resultantes de tales personas que ejercen la abogacía podrá ser más difícil en el contexto del gobierno y esto es un asunto que queda fuera del alcance de estas Reglas. Aunque en algunas circunstancias la o el cliente puede ser una agencia específica, también puede ser, una rama del gobierno o el Estado como un todo. Por ejemplo, si la acción o falta de acción involucra a la jefa o jefe de un negociado, el departamento al cual pertenece ese negociado o la rama de gobierno de la cual forma parte podría ser el cliente para propósitos de esta regla. Además, en un asunto que trate sobre la conducta de oficiales del gobierno, el abogado o la abogada del gobierno puede tener autoridad bajo la ley aplicable para cuestionar esa conducta con mayor profundidad que la persona que ejerce la abogacía de una entidad privada en circunstancias similares. Por lo tanto, cuando el cliente es una organización gubernamental, podrá ser necesario hacer un balance distinto entre mantener la

confidencialidad y asegurarse de que el acto impropio sea evitado o rectificado, debido a que involucra el interés público. Además, los deberes de los abogados o las abogadas empleadas por el gobierno, o de profesionales de la abogacía en el servicio militar, podrían ser definidos en leyes o por reglamentación. Esta regla no limita tal autoridad.

**Clarificación sobre el rol de la persona que ejerce la abogacía**

[10] En ocasiones ocurre que el interés de la organización puede ser o convertirse en adverso a los de uno o más de sus constituyentes. En tales circunstancias, la persona que ejerce la abogacía debe asesorar a cualquier constituyente cuyo interés considera adverso al de la organización, sobre el conflicto o el posible conflicto de intereses, que la persona que ejerce la abogacía no puede representarlo, y que dicha persona podría interesar obtener representación legal independiente. Se debe tener cuidado en asegurarse de que esa persona entienda que, cuando existe esa adversidad de intereses, el abogado o la abogada de la organización no puede proveerle representación legal y que las conversaciones entre el o la representante legal de la organización y esa persona podrían no ser privilegiadas.

[11] Determinar si tal advertencia debe ser dada por el o la representante legal de la organización a cualquier individuo constituyente dependerá de los hechos de cada caso.

**Representación dual**

[12] El inciso (g) reconoce que el o la representante legal de una organización también puede representar a un o una oficial principal o accionista mayoritaria.

**Acciones derivativas**

[13] En virtud de la Ley General de Corporaciones vigente, los o las accionistas o miembros de una corporación pueden instar una demanda para obligar a los directores o directoras a cumplir sus obligaciones legales en la supervisión de la organización. Las o los miembros de las asociaciones no incorporadas tienen esencialmente el mismo derecho. Tal acción puede ser presentada nominalmente por la organización, pero usualmente es, en realidad, una controversia de Derecho sobre la administración de la organización.

[14] Puede surgir la pregunta de si el o la representante legal de la organización puede defender tal acción. La proposición de que la organización es el cliente de la persona que ejerce la abogacía por sí sola no resuelve el problema. La mayoría de las acciones derivativas son incidentes normales en los asuntos de la organización, a ser defendidas por el o la representante legal de la organización como cualquier otro caso. No obstante, si la controversia presenta acusaciones graves de conducta impropia por parte de quienes ejercen el control de la organización, puede surgir un conflicto entre el deber de una persona que ejerce la abogacía hacia la organización y la relación de la persona que ejerce la abogacía con la junta de directores o directoras. En esas circunstancias, la Regla 1.7 regula quién debe representar a los directores o las directoras y a la organización.

## REGLA 1.14. CLIENTE CON CAPACIDAD LIMITADA

(a)     Cuando la capacidad de una o un cliente para tomar decisiones adecuadamente razonadas con respecto a la representación esté limitada, sea por minoría, condición mental o por cualquier otra razón, la persona que ejerce la abogacía deberá, hasta donde sea razonablemente posible, mantener una relación usual cliente-abogado o abogada.

(b)     Cuando la persona que ejerce la abogacía cree razonablemente que la o el cliente tiene capacidad limitada, está en riesgo de sufrir daño físico sustancial, daño financiero u otro daño, a menos que se tome acción y no pueda actuar en el interés propio de la o del cliente, la persona que ejerce la abogacía  podrá tomar las acciones razonablemente necesarias para proteger los intereses de la o del cliente, incluso consultar con individuos o entidades que tienen la habilidad de tomar acción para proteger a la o el cliente y, en casos apropiados, solicitar el nombramiento de un asesor o asesora, defensor o defensora judicial, administrador o administradora judicial de patrimonio, tutor o tutora.

(c)     La información relacionada con la representación de una o un cliente con capacidad limitada está protegida por la Regla 1.6. Al tomar acciones protectoras bajo el inciso (b) de esta regla, la persona que ejerce la abogacía contará con autorización implícita bajo la Regla 1.6(a) para revelar información sobre su cliente, pero solo hasta donde

sea razonablemente necesario para proteger los intereses de este o esta.

**COMENTARIOS**

[1] La relación usual entre cliente y abogado o abogada está basada en el supuesto de que la o el cliente, cuando está bien asesorado y asistido, es capaz de tomar decisiones sobre asuntos importantes. Sin embargo, cuando la o el cliente es menor de edad o padece de una disminución de su capacidad mental, mantener la relación usual entre cliente y abogado o abogada puede que no sea posible en todos los aspectos. En particular, una persona incapacitada severamente puede que no tenga el poder para tomar decisiones legales vinculantes. No obstante, una o un cliente con capacidad limitada a menudo tiene la capacidad de comprender, deliberar y llegar a conclusiones sobre asuntos que afecten su propio bienestar. Por ejemplo, se estima que menores tan jóvenes como de cinco o seis años de edad, y ciertamente de diez o doce años, pueden tener opiniones que ameritan ser consideradas en procesos legales relativos a su custodia. Así, también se reconoce que algunas personas adultas mayores pueden ser bastante capaces de manejar asuntos financieros rutinarios, aunque necesiten de una protección legal especial con respecto a transacciones sustanciales.

[2] El hecho de que una o un cliente tenga diversidad funcional no disminuye la obligación de la persona que ejerce la abogacía de tratar a la o el cliente con respeto y atención. Aun cuando la persona tenga representante legal, la persona que ejerce la abogacía debe, en lo posible, conferir a la persona representada la condición de cliente, especialmente al mantener una comunicación con esta o este.

[3] La o el cliente podrá desear que sus familiares u otras personas participen en las discusiones con la persona que ejerce la abogacía. Cuando sea necesario para ayudar en la representación, la presencia de esas personas generalmente no afectará la aplicabilidad del privilegio abogada o abogado-cliente. No obstante, la persona que ejerce la abogacía debe mantener el interés de la o del cliente por sobre todo y, excepto en cuanto a la acción protectora autorizada por el inciso (b), debe tener en mente a la o el cliente, y no a miembros de su familia, para la toma de decisiones en nombre de su cliente.

[4] Si una o un representante legal ya se asignó para una o un cliente, la persona que ejerce la abogacía debe de ordinario tener en cuenta a la o el

representante legal para tomar decisiones en nombre de la o del cliente. Si la persona que ejerce la abogacía debe considerar a los padres y madres como tutores naturales, en los asuntos que involucran a una persona menor de edad, dependerá del tipo de procedimiento o asunto en el cual represente a la persona menor de edad. Si la persona que ejerce la abogacía representa a una persona tutora y no a la persona bajo tutela, y es consciente de que la persona tutora actúa de manera adversa al interés de la persona bajo tutela, puede ser que la persona que ejerce la abogacía tenga la obligación de prevenir o corregir la conducta incorrecta de la persona tutora. Véase la Regla 1.2(d).

**Tomar acciones protectoras**

[5] Si una persona que ejerce la abogacía cree razonablemente que una o un cliente se encuentra en riesgo de sufrir un daño sustancial físico, financiero o de otra índole de no tomarse acción, y que una relación usual cliente-abogada o abogado no se puede sostener según lo dispuesto en el inciso (a) porque la o el cliente carece de la capacidad suficiente para comunicarse o para tomar decisiones adecuadamente sopesadas en relación con la representación. Entonces, el inciso (b) le permite a la persona que ejerce la abogacía tomar las medidas protectoras que entienda necesarias. Tales medidas pueden incluir lo siguiente: consultar con miembros de la familia, utilizar un periodo de reconsideración para permitir la aclaración o la mejoría de las circunstancias, utilizar herramientas para la toma de decisiones voluntarias de forma subrogadas como el poder duradero o consultas con grupos de apoyo, servicios profesionales, agencias de protección para personas adultas o de otros individuos o entidades que tengan la habilidad de proteger a la o el cliente. Al tomar cualquier acción protectora, la persona que ejerce la abogacía debe guiarse por factores tales como los deseos y los valores de la o del cliente, hasta donde se conozcan, los mejores intereses de la o del cliente. Asimismo, debe tratar de mantener al menor grado posible la intromisión en la autonomía de toma de decisiones de la o del cliente, maximizar las capacidades de la o del cliente y respetar sus lazos familiares y sociales.

[6] Al determinar el grado de la limitación de la capacidad de la o del cliente, la persona que ejerce la abogacía debe considerar y equilibrar factores tales como los siguientes: la habilidad de la o del cliente para comunicar un razonamiento que conduzca a una decisión, la naturaleza cambiante del estado de ánimo y la habilidad para discernir las consecuencias de una decisión; su capacidad para apreciar cuán justa es una decisión a nivel sustantivo; y cuán congruente es con los compromisos a largo plazo y los valores de la o del

cliente. En circunstancias apropiadas, la persona que ejerce la abogacía puede solicitar la orientación de alguien competente para formular un diagnóstico.

[7] Si no se ha designado a una o un representante legal, la persona que ejerce la abogacía debe considerar si la designación de un defensor o defensora judicial, administrador o administradora judicial, tutor o tutora es necesario para proteger los intereses de la o del cliente. Por lo tanto, si una o un cliente con capacidad limitada tiene bienes sustanciales que deben ser vendidos para el beneficio de su cliente, completar efectivamente esa transacción puede requerir el nombramiento de una o un representante legal.

**Divulgación de la condición de la o del cliente**

[8] Divulgar la capacidad limitada de la o del cliente podría afectar adversamente los intereses de este o esta. Por ejemplo, plantear el asunto de la limitación de la capacidad podría, en algunas circunstancias, conducir a procedimientos de ingreso involuntario. La información relacionada con la representación está protegida por la Regla 1.6. Por lo tanto, a menos que tenga autorización para hacerlo, la persona que ejerce la abogacía no podrá divulgar esa información. Al tomar acciones protectoras de acuerdo con el inciso (b), la persona que ejerce la abogacía tiene autorización implícita para hacer las divulgaciones necesarias, incluso cuando la o el cliente le indica lo contrario. No obstante, dados los riesgos de divulgación, el inciso (c) limita lo que la persona que ejerce la abogacía puede divulgar al consultar con otras personas o entidades o en la búsqueda del nombramiento de una o un representante legal. Por lo menos, la persona que ejerce la abogacía debe determinar si es probable que la persona o entidad consultada actuará de manera adversa a los intereses de la o del cliente antes de discutir asuntos relacionados con la o el cliente. La posición de la persona que ejerce la abogacía en tales casos es inevitablemente difícil.

**Asistencia legal de emergencia**

[9] En una emergencia en la que la salud, la seguridad o un interés financiero de una persona con capacidad limitada severamente se encuentran amenazados de sufrir daños inminentes e irreparables, una persona que ejerce la abogacía puede tomar acción legal en nombre de dicha persona, aun cuando la persona no sea capaz de establecer una relación cliente-abogado o abogada, o de hacer o expresar juicios ponderados sobre el asunto cuando la persona, u otra que actúe de buena fe en nombre de esta, ha consultado con la persona

que ejerce la abogacía. Sin embargo, incluso en una emergencia de este tipo, la persona que ejerce la abogacía no debe actuar a menos que crea razonablemente que la persona no tiene otro u otra representante legal, agente u otra persona representante disponible. La persona que ejerce la abogacía debe tomar acción legal en nombre de la persona solo en la medida que sea razonablemente necesario para mantener el *status quo* o de otra manera evitar un daño inminente e irreparable. Una persona que ejerce la abogacía que se comprometa con una persona en una situación tan exigente tendrá los mismos deberes que una persona que ejerce la abogacía con respecto a una o un cliente.

[10] Una persona que ejerce la abogacía que actúa en nombre de una persona con capacidad limitada severamente en una emergencia debe mantener las confidencias de esa persona como si se tratara de una o un cliente, divulgándolas solo en la medida en que sea necesario para lograr la acción protectora pretendida. La persona que ejerce la abogacía debe divulgar al tribunal correspondiente y a cualquier otra persona que ejerce la abogacía involucrada la naturaleza de su relación con la persona. La persona que ejerce la abogacía debe tomar las medidas necesarias para normalizar la relación o implementar otras soluciones protectoras tan pronto como sea posible. Por lo general, una persona que ejerce la abogacía no debe solicitar honorarios por tomar tales acciones de emergencia.

## REGLA 1.15. PROTECCIÓN DE LOS BIENES DE LA O EL CLIENTE

(a)     Una persona que ejerce la abogacía o una oficina legal deberá mantener separados de sus bienes los bienes de sus clientes o de terceras personas que estén en su posesión en conexión con una representación legal. Los fondos deben mantenerse en una cuenta separada de la cuenta de la persona que ejerce la abogacía o de la oficina legal en la misma jurisdicción donde radica la oficina de la persona que ejerce la abogacía o en algún otro lugar con el consentimiento de su cliente o de la tercera persona. Bienes de otra naturaleza se identificarán como tales y se protegerán apropiadamente. Una persona que ejerce la abogacía o una oficina legal llevará registros detallados de tales cuentas de fondos o de otra propiedad, los cuales pondrá a la disposición de su cliente o de la tercera persona. Estos registros deberán conservarse por un periodo de cinco años después de concluida la representación legal, y en el caso de clientes menores

de edad por un periodo de tres años luego de que alcance la mayoría de edad.

(b)     Una persona que ejerce la abogacía puede depositar en la cuenta fiduciaria de clientes sus fondos propios con el único propósito de pagar los cargos bancarios por servicios de dicha cuenta, pero solo por la cantidad necesaria para tal propósito.

(c)     La persona que ejerce la abogacía depositará en la cuenta de clientes los honorarios y gastos que se le hayan pagado por adelantado, los cuales se retirarán por la persona que ejerce la abogacía según se devenguen los honorarios o se incurra en los gastos.

(d)     Una vez la persona que ejerce la abogacía recibe fondos u otra propiedad en la cual su cliente o una tercera persona tiene interés, la persona que ejerce la abogacía lo notificará con prontitud a su cliente o a la tercera persona. Excepto lo dispuesto en esta regla, lo permitido por la ley o lo acordado con su cliente, la persona que ejerce la abogacía entregará con prontitud cualesquiera fondos o propiedad a su cliente o a la tercera persona que tenga derecho a recibirlos y, al ser requerido por su cliente o esta tercera persona, rendirá con prontitud un informe de contabilidad relacionado con dicho fondo o propiedad.

(e)     Cuando en el curso de una representación, la persona que ejerce la abogacía está en posesión de propiedad o fondos sobre los cuales dos o más personas, una de las cuales podría ser la persona que ejerce la abogacía, reclaman interés, la persona que ejerce la abogacía deberá mantener la propiedad separada hasta que se resuelva la disputa. La persona que ejerce la abogacía distribuirá con prontitud todas las porciones de la propiedad sobre las cuales no existan intereses en disputa.

## COMENTARIOS

[1] Una persona que ejerce la abogacía debe mantener la propiedad de otras personas con la responsabilidad requerida a un fiduciario o fiduciaria profesional. Los instrumentos financieros o valores deben guardarse en una

caja de seguridad o medio de protección análogo que proteja su integridad, excepto cuando alguna otra forma para protegerlos sea requerida por circunstancias especiales. Todos los bienes que sean propiedad de sus clientes o de terceros, incluso la de clientes potenciales, deben mantenerse separados de los negocios de la persona que ejerce la abogacía y de sus bienes personales y, si es dinero, en una o más cuentas fiduciarias. Pueden ser requeridas cuentas fiduciarias separadas cuando se trata de la administración de bienes de un caudal hereditario o cuando actúa en una capacidad fiduciaria similar. Una persona que ejerce la abogacía debe mantener actualizados los libros y los registros de conformidad con los principios de contabilidad generalmente aceptados y cumplir con las normas sobre cómo llevar los registros de contabilidad establecidas por ley o por orden judicial.

[2] Aunque normalmente no es permisible mezclar los fondos propios de la persona que ejerce la abogacía con los fondos de las o los clientes, el inciso (b) establece que es permitido cuando sea necesario para pagar los cargos por servicios bancarios en esa cuenta. Deben mantenerse registros precisos para determinar la parte de los fondos que pertenecen a la persona que ejerce la abogacía.

[3] La dilación en remitir los fondos al o a la cliente es causa suficiente para que una persona que ejerce la abogacía sea disciplinada éticamente, por lo que ni la devolución de los fondos retenidos indebidamente al cliente, ni la falta de intención de apropiárselos permanentemente le exime de la sanción disciplinaria correspondiente. El hecho de que la persona que ejerce la abogacía no conozca a la persona enviada por el o la cliente a recoger los fondos o las propiedades, no es eximente de su deber de no retener indebidamente los fondos o las propiedades perteneciente al cliente o tercera persona con interés si la persona enviada acredita su autoridad para recibir el dinero en representación del o de la cliente o la persona que ejerce la abogacía tenía los medios para acreditar la autoridad delegada. Por eso, el inciso (d) establece que una vez la persona que ejerce la abogacía recibe fondos u otra propiedad en la cual su cliente o una tercera persona tiene interés, deberá notificarlo y entregarlos con prontitud a su cliente o a la tercera persona. Incluso, de ser requerido, deberá rendir con la misma prontitud un informe de contabilidad.

[4] A menudo, las personas que ejercen la abogacía reciben fondos de los cuales serán pagados sus honorarios. La persona que ejerce la abogacía no tiene la obligación de remitir a sus clientes los fondos que estima

razonablemente que representan el pago de honorarios adeudados. Sin embargo, una persona que ejerce la abogacía no puede retener los fondos para coaccionar a una o un cliente a aceptar la contención de la persona que ejerce la abogacía. La parte de los fondos que no se encuentra en controversia, deberá ser distribuida prontamente. La parte de los fondos en disputa debe ser mantenida en una cuenta fiduciaria y la persona que ejerce la abogacía debe sugerir medios para la solución rápida de la controversia y de ser esto viable, las partes podrán acudir a la vía judicial.

[5] El inciso (e) también reconoce que terceras personas pueden tener reclamaciones legítimas contra determinados fondos u otros bienes que se encuentran bajo la custodia de una persona que ejerce la abogacía, tales como el acreedor de una o un cliente que tiene un gravamen sobre los fondos que han sido obtenidos en una acción por lesiones personales. Una persona que ejerce la abogacía puede tener un deber en virtud de una ley aplicable, de proteger tales reclamaciones de parte de terceros contra la interferencia ilícita de parte de la o del cliente. En tales casos, cuando la reclamación de terceros no es frívola bajo la ley aplicable, la persona que ejerce la abogacía debe negarse a entregar la propiedad a la o el cliente hasta que las reclamaciones se resuelvan. Una persona que ejerce la abogacía no debe unilateralmente asumir el arbitrar una disputa entre la o el cliente y el tercero, pero, cuando existen motivos fundados para disputar quién tiene el derecho a los fondos, la persona que ejerce la abogacía puede presentar una acción para que un tribunal resuelva la controversia.

[6] Las obligaciones de una persona que ejerce la abogacía en virtud de esta regla son independientes de las obligaciones derivadas de actividades distintas a la prestación de servicios legales. Por ejemplo, una persona que ejerce la abogacía que actúa solo como agente para custodiar fondos se rige por la legislación aplicable a fiduciarios aun cuando la persona que ejerce la abogacía no preste servicios legales en la transacción y no se rija por esta regla.

**REGLA 1.16. RECHAZO O TERMINACIÓN DE LA REPRESENTACIÓN O LA GESTIÓN NOTARIAL**

 (a) La persona que ejerce la abogacía deberá indagar y evaluar los hechos y las circunstancias de cada representación para determinar si puede aceptarla o continuar con esta. Excepto lo dispuesto en el inciso (c), la persona que ejerce la abogacía no deberá asumir la representación de una o un cliente, o deberá renunciar a una representación que ya ha comenzado, si:

(1)    la representación resultará en la violación de alguna regla de conducta profesional o de alguna ley;

(2)    una condición física o mental de la persona que ejerce la abogacía afecta significativamente su habilidad para representar a la o el cliente;

(3)    se relevó a la persona que ejerce la abogacía de la representación.

(4)    el o la cliente, o cliente potencial, intenta usar o persiste en usar los servicios de la persona que ejerce la abogacía para cometer o facilitar la comisión de un delito o fraude, a pesar de haber discutido con la persona que ejerce la abogacía, en conformidad con las Reglas 1.2(d) y 1.4(a)(5), las limitaciones que la persona que ejerce la abogacía tiene para asistirle en la conducta propuesta por el o la cliente.

(b)    Excepto lo dispuesto en el inciso (c), la persona que ejerce la abogacía podrá renunciar a la representación de una o de un cliente, si:

(1)    la renuncia puede lograrse sin que se produzca un efecto significativo adverso en los intereses de su cliente;

(2)    su cliente insiste en un curso de acción relacionado con los servicios profesionales de la persona que ejerce la abogacía que entiende razonablemente que es delictivo o fraudulento;

(3)    su cliente utilizó sus servicios para perpetrar un acto criminal o un fraude;

(4)    su cliente insiste en perseguir un objetivo que la persona que ejerce la abogacía considera repugnante con el cual la persona que ejerce la abogacía está fundamentalmente en desacuerdo;

(5)    su cliente falla sustancialmente en cumplir una obligación hacia la persona que ejerce la abogacía en relación con sus servicios y se le ha dado aviso razonable de que la persona que

ejerce la abogacía renunciará a la representación de no cumplirse con la obligación;

(6) la representación resultará en una carga económica irrazonable sobre la persona que ejerce la abogacía, o su cliente la convirtió en una irrazonablemente difícil; o

(7) existe otra justa causa para la renuncia.

(c) Cuando se ha iniciado un pleito judicial, una persona que ejerce la abogacía deberá notificar y obtener permiso del tribunal previo a terminar con una representación legal. Deberá continuar con la representación de su cliente cuando el tribunal lo ordene, aunque exista motivo suficiente para terminarla hasta que el tribunal autorice el relevo de la representación legal.

(d) Antes de renunciar a la representación de su cliente, la persona que ejerce la abogacía debe tomar aquellas medidas razonables que eviten perjuicio a los derechos de su cliente, tales como notificarle de su renuncia; aconsejarle debidamente sobre la necesidad de una nueva representación legal cuando sea necesario; concederle tiempo para conseguir una nueva representación legal; aconsejarle sobre la fecha límite de cualquier plazo de ley que pueda afectar su causa de acción o para la presentación de cualquier escrito que le pueda favorecer; así como del cumplimiento de cualquier otra disposición legal del tribunal al respecto, incluso la notificación al tribunal de la última dirección conocida de su representado o representada. Cuando sea efectiva la renuncia, la persona que ejerce la abogacía debe hacerle entrega del expediente a su cliente y de todo documento relacionado con el caso. No obstante, la persona que ejerce la abogacía podrá retener aquellos documentos relacionados con la o el cliente hasta donde estas Reglas u otra ley lo permita.

(e) La persona que ejerce la notaría actuará con diligencia cuando la persona requirente de un servicio notarial en curso le solicite expresamente la terminación de la gestión y la entrega del expediente.

**COMENTARIOS**

[1] El inciso (a) le impone a la persona que ejerce la abogacía la obligación de indagar y evaluar los hechos y las circunstancias de la representación antes de aceptarla. La obligación impuesta por el inciso (a) continúa durante toda la representación. Un cambio en los hechos y las circunstancias relacionados con la representación puede provocar la necesidad de que la persona que ejerce la abogacía realice más indagaciones y evaluaciones. Por ejemplo, una o un cliente tradicionalmente usa a una persona que ejerce la abogacía para adquirir bienes raíces localmente por medio del uso de compañías locales de responsabilidad limitada, con financiamiento de un banco local. Esa o ese mismo cliente entonces le pide a la persona que ejerce la abogacía que organice una estructura corporativa de múltiples niveles en otro estado para adquirir propiedad en una tercera jurisdicción, y le pide que dirija los fondos de la transacción a través de la cuenta de plica de la persona que ejerce la abogacía. Una persona que ejerce la abogacía no debe aceptar la representación en un asunto a menos que pueda desempeñarse de manera competente, sin dilaciones, sin conflictos de intereses y hasta su conclusión. De ordinario, la representación en un asunto se completa cuando la asistencia acordada ha sido concluida. Véanse las Reglas 1.2(c), 6.5 y el comentario [4] de la Regla 1.3.

**Renuncia obligatoria**

[2] Una persona que ejerce la abogacía debe rechazar o renunciar a una representación, si la o el cliente exige que la persona que ejerce la abogacía participe en conducta que es ilegal o que viola estas Reglas u otra ley. La persona que ejerce la abogacía no tiene la obligación de rechazar o renunciar simplemente porque su cliente haya sugerido tal curso de conducta; una o un cliente puede hacer esta sugerencia con la esperanza de que una persona que ejerce la abogacía no estará limitada por un deber profesional. Según el inciso (a)(4), la indagación y evaluación de la persona que ejerce la abogacía sobre los hechos y las circunstancias se basará en el riesgo de que el o la cliente, o cliente potencial, haya usado, intente usar, o persista en usar, los servicios de la persona que ejerce la abogacía para cometer o facilitar la comisión de un delito o fraude. Este análisis significa que el nivel requerido de indagación y evaluación de una persona que ejerce la abogacía variará para cada cliente o cliente potencial, dependiendo de la naturaleza del riesgo que plantea cada situación. Al determinar el nivel de riesgo se deberán considerar factores como los siguientes: (i) la identidad del o de la cliente, como por ejemplo si es una

persona natural o jurídica y, de ser una persona jurídica, quiénes son las personas que ostentan directa o indirectamente control sustancial sobre la referida empresa o sobre una parte considerable de la titularidad de esta; (ii) la experiencia de la persona que ejerce la abogacía y su familiaridad con el o la cliente; (iii) la naturaleza de los servicios legales solicitados; (iv) las jurisdicciones relevantes involucradas en la representación, por ejemplo, si una jurisdicción se considera de alto riesgo de lavado de dinero o blanqueo de capitales o financiamiento del terrorismo; y (v) la identidad de quienes depositan o reciben fondos de la cuenta fiduciaria del o de la cliente de la persona que ejerce la abogacía o de cualquier otra cuenta en la que se mantengan fondos del o de la cliente.

[3] Cuando se asigne a una persona que ejerce la abogacía para representar a una o un cliente, el relevo de representación está sujeto a la aprobación de la autoridad que le extendió la asignación. Véase la Regla 6.2. Asimismo, la aprobación del tribunal es requerida por nuestro estado de Derecho antes de que una persona que ejerce la abogacía renuncie a la representación en un litigio pendiente. Pueden encontrarse dificultades si la petición de relevo de representación está basada en exigencias por parte de la o del cliente para que la persona que ejerce la abogacía participe en conducta contraria a la ética profesional. El tribunal podrá pedir una explicación para la renuncia, mientras que la persona que ejerce la abogacía puede encontrarse obligada a mantener en secreto los hechos que pudieran constituir una explicación para la renuncia. La declaración de la persona que ejerce la abogacía de que consideraciones profesionales le exigen terminar la representación, de ordinario, debería ser aceptada como suficiente. Las personas que ejercen la abogacía deben ser conscientes de sus obligaciones tanto ante clientes como ante el tribunal en virtud de las Reglas 1.6 y 3.3.

**Despido**

[4] Una o un cliente tiene derecho a despedir a su representante legal en cualquier momento, con o sin causa, sin perjuicio de la responsabilidad por el pago de los servicios del o de la representante legal. Cuando se puedan anticipar controversias futuras sobre el relevo de representación, podría ser aconsejable redactar una declaración escrita que indique las circunstancias del relevo.

[5] Cuando una o un cliente procure despedir a un abogado asignado o una abogada asignada de oficio, la persona que ejerce la abogacía deberá realizar

los esfuerzos razonables para explicarle detalladamente las consecuencias de su decisión. Entre las consecuencias puede estar la posibilidad de que no se le asigne otro abogado u otra abogada de oficio, lo que significa que la o el cliente tendrá que representarse por derecho propio.

[6] Cuando una o un cliente tiene su capacidad limitada severamente puede carecer de capacidad jurídica para determinar el cese de las funciones de una persona que ejerce la abogacía que le representa en virtud de una asignación de oficio. Una determinación de este tipo puede ser seriamente adversa a los intereses de una o un cliente. Por esto, la persona que ejerce la abogacía debe hacer un esfuerzo especial para ayudar a la o el cliente a examinar las consecuencias de determinar el cese de la representación de un abogado asignado o una abogada asignada de oficio. En consecuencia, podrá tomar la acción protectora razonablemente necesaria, según lo establecido en la Regla 1.14.

**Renuncia opcional**

[7] Una persona que ejerce la abogacía puede retirarse de la representación en ciertas circunstancias. La persona que ejerce la abogacía tiene la opción de retirarse si no le causa un efecto sustancialmente adverso a los intereses de la o del cliente. El relevo de representación también está justificado cuando la o el cliente insiste en un curso de acción que la persona que ejerce la abogacía entiende razonablemente que es delictivo o fraudulento, ya que no se le requiere a una persona que ejerce la abogacía que se asocie con esa conducta, incluso aunque la persona que ejerce la abogacía no la propicie. El relevo de representación también se permite cuando los servicios de la persona que ejerce la abogacía fueron mal utilizados en el pasado, incluso si esto resulta en perjuicio sustancial a la o el cliente. La persona que ejerce la abogacía también puede renunciar si la o el cliente insiste en una acción que el abogado o la abogada considera repulsiva o con la cual tiene un desacuerdo sustancial.

[8] Una persona que ejerce la abogacía puede renunciar si su cliente se niega a acatar los términos de un acuerdo sobre la representación, tal como un acuerdo sobre honorarios y aranceles para el tribunal o un acuerdo que limita los objetivos de la representación.

**Asistencia a la o el cliente tras la renuncia**

[9] Aun cuando la persona que ejerce la abogacía haya sido despedida injustamente por la o el cliente, una persona que ejerce la abogacía debe tomar todas las medidas razonables para mitigar las consecuencias que pueda ocasionarle a la o el cliente. Véase la Regla 1.16(d). La persona que ejerce la abogacía podría retener documentos como garantía por honorarios solamente en la medida permitida por estas Reglas. Véase la Regla 1.15.

**Cambio de la persona que ejerce la notaría y entrega de expediente notarial**

[10] Esta regla contempla la posibilidad de que la persona requirente haga un cambio de la persona que ejerce la notaría y requiera la entrega del expediente que contenga los documentos relacionados con el servicio notarial requerido. Para esto, se exige que haya una solicitud expresa que especifique el documento o gestión notarial cuyo expediente debe ser entregado por la persona que ejerce la notaría que originalmente se encargaba del trámite.

[11] La entrega del expediente no está supeditada al pago de los gastos y honorarios notariales extraarancelarios.

### REGLA 1.17. VENTA DE UNA PRÁCTICA PROFESIONAL LEGAL

Una persona que ejerce la abogacía o una oficina legal podrá vender o comprar toda o parte de una práctica profesional legal, incluso su plusvalía, siempre y cuando se satisfagan las condiciones siguientes:

(a)  la persona que ejerce la abogacía o la oficina legal que vende, cesa totalmente su práctica legal o la parte de esta que está sujeta a la venta en Puerto Rico;

(b)  se venda en su totalidad la práctica profesional legal o la materia de práctica, según corresponda, a uno o más personas que ejercen la abogacía u oficinas legales;

(c)  la persona que ejerce la abogacía o la oficina legal que vende brinda una notificación escrita a cada cliente de quien vende sobre:

(1)  la venta propuesta;

(2)     el derecho que tiene cada cliente a contratar otro u otra representante legal u otra oficina legal o a que se le entregue el expediente y todos los documentos del caso, y

(3)     el hecho de que se presumirá el consentimiento del o de la cliente a la transferencia de sus expedientes si no toma alguna acción u objeta en un término de noventa (90) días contados a partir de la fecha del recibo de la notificación.

Si resulta imposible notificar a su cliente, la representación de tal cliente podrá transferirse al comprador o compradora solo si un tribunal así lo autoriza, si se agotaron los esfuerzos razonables para localizar a la o el cliente, y si los intereses legítimos de la o del cliente ausente se protegerán al autorizar el traslado del expediente, de modo que la parte compradora pueda continuar la representación. La parte vendedora podrá ofrecer al tribunal en cámara aquella información relacionada con la representación solo hasta donde sea necesario para obtener la autorización para la transferencia del expediente.

(d)     la venta no conlleve aumento de los honorarios que se cobraban a la o el cliente.

## COMENTARIOS

[1] El ejercicio de la abogacía es una profesión, no un mero negocio. Las y los clientes no son productos para ser comprados y vendidos a voluntad. Conforme a esta regla, cuando una persona que ejerce la abogacía o una oficina legal cesa totalmente su práctica, o la práctica de alguna materia del Derecho, y otras personas que ejercen la abogacía u otra oficina legal asumen la representación, el o la profesional de la abogacía u oficina legal que vende puede obtener una compensación por el valor razonable de la práctica, de la misma forma que pueden hacer los socios o socias de la oficina legal. Véanse las Reglas 5.4 y 5.6.

### Cuando una parte vendedora termina su práctica

[2] El requisito de que se venda la totalidad de una práctica privada, o la totalidad de una materia de práctica, se satisface cuando la persona vendedora de buena fe ofrece toda la práctica, o la totalidad de una materia de práctica legal, a la parte compradora. El hecho de que algunas o algunos clientes de la

parte vendedora decidan no querer estar representadas o representados por la parte compradora y quieran llevarse sus asuntos a otro lugar no resulta en una violación. Regresar a la práctica privada como resultado de un cambio no anticipado de circunstancias no resulta necesariamente en una violación. Por ejemplo, una persona que ejerce la abogacía que vendió su práctica para aceptar un nombramiento a un cargo judicial no viola el requisito de que la venta conlleve el cese de la práctica si la persona que ejerce la abogacía reanuda posteriormente la práctica privada tras renunciar.

[3] El requisito de que la parte vendedora cese la práctica privada del Derecho no prohíbe que se emplee como abogado o abogada en una agencia gubernamental, en una entidad de servicios legales que presta servicios legales a indigentes, o como abogado o abogada interno de un negocio.

[4] La regla permite la venta al cesar la práctica privada por retiro en Puerto Rico. Por lo tanto, estas disposiciones se pueden adaptar a la persona que ejerce la abogacía que vende la práctica para trasladarse a otro estado.

[5] Esta regla también permite que una persona que ejerce la abogacía o una oficina legal pueda vender un área de práctica. Si se vende un área de práctica y la persona que ejerce la abogacía permanece activa en la práctica del Derecho, el abogado o la abogada debe cesar de aceptar cualquier asunto relacionado con el área de práctica que fue vendida, sea como representante legal individual, como coabogado o coabogada, o al asumir responsabilidad conjunta de un asunto para el cual, de otra manera, la Regla 1.5(e) permitiría la división de honorarios con otra persona que ejerce la abogacía. Por ejemplo, una persona que ejerce la abogacía con un número considerable de asuntos de planificación sucesoral y un número considerable de casos de administración de herencias puede vender la práctica de planificación sucesoral y permanecer en la práctica de administración de herencias, sin embargo, la persona que ejerce la abogacía no podrá aceptar posteriormente algún asunto de planificación sucesoral. Aunque una persona que ejerce la abogacía que se marcha de la jurisdicción o área geográfica típicamente vendería toda su práctica, esta regla permite que limite la venta a una o más materias de práctica y conserve el derecho de la persona que ejerce la abogacía de continuar su práctica en la materia no vendida.

**Venta de toda la práctica o de toda una materia de práctica**

[6] La regla requiere que la parte vendedora venda toda su práctica o toda una materia de práctica. Esta prohibición de vender menos de la totalidad de un área de práctica protege a aquellas y aquellos clientes cuyos asuntos son menos lucrativos y para quienes podría resultar difícil conseguir otro u otra representante legal si la venta pudiera limitarse a los asuntos que generen honorarios sustanciales. La parte compradora está obligada a asumir todos los asuntos de las y los clientes en la práctica o en la materia de práctica vendida, sujeto al consentimiento de la o del cliente. Este requisito se satisface, sin embargo, aun si la parte compradora no puede asumir un asunto particular del cliente o de la cliente, debido a un conflicto de intereses.

**Confidencias de la o del cliente, consentimiento y notificación**

[7] Las negociaciones entre la parte que quiere vender una práctica o materia de práctica y una parte interesada en comprarla, que no implican divulgar información sobre la representación de clientes, no viola el deber de confidencialidad que establece la Regla 1.6, por ser una situación análoga a las conversaciones preliminares sobre la posible asociación de otra persona que ejerce la abogacía o la fusión entre oficinas legales, situación que no requiere el consentimiento de las o los clientes. Véase la Regla 1.6(b)(7). Sin embargo, proveer a la parte compradora acceso a información detallada en relación con la representación, tal como el expediente de la o del cliente, requiere el consentimiento de la o del cliente. La regla provee que, antes de que dicha información sea divulgada por la parte vendedora a la parte compradora, se debe notificar a la o el cliente por escrito sobre la posible venta, incluida la identidad de la parte compradora, y se le debe indicar que la decisión entre prestar el consentimiento o hacer cualquier otro arreglo debe realizarse dentro de noventa (90) días. Si la o el cliente no se expresa dentro del término provisto, se presume su consentimiento a la venta.

[8] Una persona que ejerce la abogacía o una oficina legal que cesa su práctica no puede ser obligada a permanecer en la práctica por el hecho de que algunas o algunos clientes no puedan ser notificados sobre la venta de la práctica. Dado a que estas y estos clientes no pueden proveer su consentimiento a la venta o establecer alguna otra disposición de sus expedientes, la regla requiere una orden de un tribunal con jurisdicción que autorice la transferencia u otra disposición. Se espera que el tribunal determine si se agotaron los esfuerzos razonables para localizar a la o el cliente, y si los intereses legítimos de la o del

cliente ausente se protegerán al autorizar el traslado del expediente, de modo que la parte compradora pueda continuar la representación. La protección de la información confidencial de la o del cliente requiere que el juez o la jueza evalúe la petición en cámara.

[9] Todos los elementos de la autonomía de la o del cliente, incluso el derecho absoluto de la o del cliente para despedir una persona que ejerce la abogacía y transferir la representación a otra, subsisten tras la venta de una práctica o de una materia de práctica legal.

**Acuerdos de honorarios entre la o el cliente y la parte compradora**

[10] La venta no podrá ser financiada mediante aumentos en los honorarios a ser cobrados a las o los clientes de la práctica. Los acuerdos existentes entre la parte vendedora y el cliente en cuanto a honorarios y el alcance del trabajo deben ser respetados por la parte compradora.

**Otros estándares éticos aplicables**

[11] Las personas que ejercen la abogacía que participan en la venta de una práctica legal o de una materia de práctica están sujetos a los estándares éticos aplicables a la incorporación de otra persona que ejerce la abogacía a la representación de una o un cliente. Estos incluyen, por ejemplo, la obligación de la parte vendedora de ser diligente en identificar una parte compradora cualificada para asumir la práctica y la obligación de la parte compradora de llevar a cabo una representación competente (véase la Regla 1.1); la obligación de evitar conflictos que causen la descalificación, y obtener el consentimiento informado de la o del cliente para aquellos conflictos que pueden ser consentidos. (Véanse la Regla 1.7 sobre conflictos; la Regla 1.0(j) para la definición de "consentimiento informado" y las Reglas 1.6 y 1.9 sobre la obligación de proteger la información relacionada con la representación).

[12] En las instancias en las que existan pleitos pendientes de adjudicación, la parte vendedora deberá cumplir con todas las reglas aplicables a la renuncia de una representación legal e, incluso, puede que no sea posible la renuncia en ciertas ocasiones. Véase la Regla 1.16 incisos (c) y (d).

**Aplicabilidad de la regla**

[13] Esta regla aplica a la venta de la práctica legal de una persona que ejerce la abogacía que falleció, desapareció o enfrenta una discapacidad. Así pues, la parte vendedora puede estar representada por una persona que no ejerce la abogacía que no se encuentra sujeta a estas Reglas. Dado que, sin embargo, ninguna persona que ejerce la abogacía puede participar en la venta de una práctica legal que no cumpla con los requisitos de esta regla, existe la expectativa de que los representantes de la parte vendedora, así como la persona que ejerce la abogacía que compra, cumplan con estos requisitos.

[14] La admisión o retiro de una sociedad legal o asociación profesional, planes de retiro y acuerdos similares, así como la venta de activos tangibles de una práctica legal, no constituyen la venta o compra regulada por esta regla.

[15] Esta regla no aplica a cambios de representación legal entre personas que ejercen la abogacía cuando tales cambios no están relacionados con la venta de una práctica legal o de una materia de práctica legal.

**REGLA 1.18. DEBERES HACIA UNA O UN CLIENTE POTENCIAL**

    (a)   Una persona que consulta con una persona que ejerce la abogacía sobre la posibilidad de establecer una relación profesional respecto a un asunto pudiera convertirse en una o un cliente potencial, lo que será evaluado de acuerdo con las circunstancias.

    (b)   Aun cuando no se formalice la relación profesional, la persona que ejerce la abogacía que ha obtenido información de la o del cliente potencial no podrá usar o revelar esa información, excepto por lo dispuesto en la Regla 1.9 en relación con clientes anteriores.

    (c)   Una persona que ejerce la abogacía a quien le aplique las disposiciones del inciso (b), no podrá representar a una o un cliente que tenga intereses sustancialmente adversos a los intereses de una o un cliente potencial, en un mismo asunto o en un asunto sustancialmente relacionado, cuando recibió información de parte de la o del cliente potencial que podría perjudicarle significativamente en el asunto, excepto lo dispuesto en el inciso (d).

Si una persona que ejerce la abogacía recibe información que le inhabilita para asumir la representación legal de conformidad con este inciso, ninguna persona que ejerce la abogacía de la oficina legal en la que esté asociada podrá, a sabiendas, asumir o continuar con la representación legal en dicho asunto, salvo lo dispuesto en el inciso (d) de esta regla.

(d)    Cuando una persona que ejerce la abogacía ha recibido información que ocasiona su inhabilitación, según definido en el inciso (c), la representación será permisible si:

> (1)    tanto la o el cliente afectado como la o el cliente potencial han prestado su consentimiento informado ratificado por escrito, o

> (2)    la persona que ejerce la abogacía que recibió la información tomó medidas razonables para evitar recibir más información de la necesaria para determinar si asumiría la representación de la o del cliente potencial y:

> (i) el abogado inhabilitado o a la abogada inhabilitada se aísla oportunamente de cualquier participación en el asunto, y no recibe honorarios derivados de la representación en conflicto, y

> (ii) se le provee prontamente una notificación escrita a la o el cliente potencial.

(e)    Una persona que ejerce la notaría no divulgará la información que obtuvo de una persona usuaria del servicio sobre un asunto que pudiera requerir un acto notarial.

## COMENTARIOS

[1] Las y los clientes potenciales, igual que las y los clientes actuales, pueden divulgar información a una persona que ejerce la abogacía, entregar documentos u otros bienes para que sean custodiados por la persona que ejerce la abogacía, o confiar en el asesoramiento de la persona que ejerce la abogacía. Por lo general, las consultas de una o un cliente potencial con una persona que ejerce la abogacía se limitan en tiempo y alcance, y permiten a la o el cliente potencial como la persona que ejerce la abogacía la libertad —y a

veces la obligación— de no asumir la representación. Por lo tanto, las y los clientes potenciales deben recibir algunas de las protecciones que se le confieren a una o un cliente, aunque no todas.

[2] Una persona pudiera convertirse en una o un cliente potencial cuando consulta con una persona que ejerce la abogacía sobre la posibilidad de formalizar una relación cliente-abogado o abogada sobre un asunto. Si las comunicaciones, escritas, orales o electrónicas, constituyen una consulta dependerá de las circunstancias. Por ejemplo, es probable que una consulta haya ocurrido cuando una persona que ejerce la abogacía, ya sea en persona o a través de un medio utilizado para anunciarse, solicita o invita a que se le someta información acerca de una posible representación sin advertencias claras y comprensibles razonablemente, o no provee advertencias que limite sus obligaciones y una persona le provee información en respuesta a dicha solicitud o invitación. Véase también el comentario [4] de esta regla. En cambio, no constituye una consulta si una persona provee información a una persona que ejerce la abogacía en respuesta a un anuncio que se limita a describir la educación de la persona que ejerce la abogacía, su experiencia, materias de práctica, información de contacto o proporciona información legal de interés general. Tal persona comunica unilateralmente información a la persona que ejerce la abogacía, sin ninguna expectativa razonable de que la persona que ejerce la abogacía está dispuesta a discutir la posibilidad de formar una relación cliente-abogado o abogada, y no es por tanto una o un "cliente potencial". Además, una persona que se comunica con una persona que ejerce la abogacía con el fin de descalificar a tal abogado o abogada no es una o un "cliente potencial".

[3] A menudo, es necesario que una o un cliente potencial divulgue información a la persona que ejerce la abogacía durante una consulta inicial, previo a la decisión sobre el establecimiento de una relación cliente-abogado o abogada. La persona que ejerce la abogacía a menudo debe conocer esa información para determinar si hay un conflicto de intereses con una o un cliente actual y si el asunto es uno que la persona que ejerce la abogacía está dispuesta a asumir. El inciso (b) prohíbe a la persona que ejerce la abogacía utilizar o divulgar esta información, excepto según lo permite la Regla 1.9, incluso si la o el cliente o la persona que ejerce la abogacía decide no proceder con la representación. La obligación existe independientemente de cuán breve sea la consulta inicial.

[4] Con el fin de evitar obtener información descalificadora de una o un cliente potencial, una persona que ejerce la abogacía que evalúa si procede aceptar un nuevo asunto debe limitar la consulta inicial solamente a aquella información que aparente ser razonablemente necesaria para ese propósito. Cuando la información indica que existe un conflicto de intereses o cualquier otro motivo que impida la representación, la persona que ejerce la abogacía debe informar de esto a la o el cliente potencial o rechazar la representación. Si la o el cliente potencial desea contratar a la persona que ejerce la abogacía, y el consentimiento es posible en virtud de la Regla 1.7, entonces debe obtenerse el consentimiento de todas y todos los clientes actuales o anteriores afectados antes de aceptar la representación.

[5] Una persona que ejerce la abogacía puede condicionar una consulta con una o un cliente potencial al consentimiento informado de esa persona de que la información obtenida durante la consulta no le prohibirá a la persona que ejerce la abogacía representar a otra u otro cliente en el mismo asunto. Véase la Regla 1.0(j) para la definición de "consentimiento informado". Si el acuerdo lo provee expresamente, la o el cliente potencial también puede brindar su consentimiento al uso posterior por la persona que ejerce la abogacía de la información recibida de la o el cliente potencial.

[6] Aun en ausencia de un acuerdo, en virtud del inciso (c), la persona que ejerce la abogacía no tiene una prohibición de representar a una o un cliente con intereses adversos a las de la o del cliente potencial en el mismo asunto o uno relacionado sustancialmente, a menos que la persona que ejerce la abogacía haya recibido de la o del cliente potencial información que podría ser significativamente perjudicial de ser utilizada en el mismo asunto.

[7] En virtud del inciso (c), la prohibición de esta regla se le imputa a otras personas que ejercen la abogacía conforme a lo dispuesto en la Regla 1.10, pero, bajo el subinciso (d)(1), se puede evitar dicha imputación si la persona que ejerce la abogacía obtiene el consentimiento informado, ratificado por escrito, tanto de la o del cliente potencial, como de las y los demás clientes afectados. En la alternativa, se puede evitar la imputación si se cumplen las condiciones del subinciso (d)(2) y todos los abogados inhabilitados o las abogadas inhabilitadas se aíslan oportunamente y se notifica por escrito con prontitud a la o el cliente potencial. El subinciso (d)(2)(i) no prohíbe que el abogado aislado o la abogada aislada reciba un salario o participación de la sociedad establecida por un acuerdo anterior independiente, pero la persona

que ejerce la abogacía no podrá recibir una compensación relacionada directamente con el asunto en el cual fue inhabilitada.

[8] Una notificación que incluya una descripción general del asunto por el cual la persona que ejerce la abogacía fue consultada y de los procedimientos de aislamiento establecidos, generalmente debe proporcionarse tan pronto sea viable luego de que surja la necesidad del aislamiento.

[9] En cuanto al deber de competencia de una persona que ejerce la abogacía que presta asistencia en los méritos de un asunto a una o un cliente potencial, véase la Regla 1.1. En cuanto a los deberes de una persona que ejerce la abogacía cuando una o un cliente potencial le confía pertenencias o documentos para el cuidado de la persona que ejerce la abogacía, véase la Regla 1.15.

### REGLA 1.19. COMPETENCIA Y DILIGENCIA TECNOLÓGICA

Las personas que ejercen la profesión legal deberán adquirir las destrezas necesarias y mantener un conocimiento razonable sobre los desarrollos tecnológicos que puedan impactar la práctica del Derecho y la función notarial. Esto incluye el deber de utilizar la tecnología de manera diligente y con conocimiento de sus beneficios y riesgos, a fin de prestar una representación legal o ejercer la función notarial de manera competente y efectiva.

### COMENTARIOS

### Competencia tecnológica

[1] Esta regla reconoce que la tecnología se ha convertido en una herramienta indispensable del ejercicio de la profesión jurídica y notarial. El dinamismo de la tecnología requiere que su utilización se evalúe en función del contexto particular de la práctica legal en reconocimiento de la diversidad de las áreas del Derecho y las necesidades de los y las clientes o requirentes de servicio. De ahí que la competencia tecnológica implica comprender razonablemente sus capacidades, beneficios, limitaciones y riesgos; verificar la precisión de sus resultados, y mantener un juicio profesional independiente, sin la expectativa de que las personas que ejercen la profesión legal sean expertas en el uso y desarrollo de cualquier tecnología. La razonabilidad se evaluará en

consideración a la totalidad de las circunstancias, la experiencia en la profesión legal, su materia de práctica, entre otros factores.

El deber de competencia tecnológica opera en conjunto con lo dispuesto en otras reglas, tales como la Regla 1.1 sobre competencia, la Regla 1.3 referente a la diligencia, la Regla 1.4 respecto a la comunicación, la Regla 1.6 que trata de la confidencialidad de la información, la Regla 3.3 sobre la conducta y el deber de sinceridad ante los tribunales, la Regla 5.1 acerca de la supervisión de personas que ejercen la profesión legal, y la Regla 5.3 en cuanto a la responsabilidad en la supervisión del personal auxiliar.

**Diligencia tecnológica**

[2] La diligencia tecnológica implica utilizar las herramientas o las soluciones tecnológicas de forma oportuna, responsable y sin causar dilaciones o perjuicios indebidos. Por ejemplo, no revisar una notificación electrónica, presentar documentos sin validar el contenido generado mediante herramientas tecnológicas, o delegar tareas a estas herramientas sin supervisión adecuada pueden constituir faltas de diligencia, aun cuando se tenga competencia tecnológica.

**Confidencialidad**

[3] La persona que ejerce la profesión legal deberá ser competente y diligente en la protección de la información confidencial y privilegiada. Para esto, entre otras cosas, deberá considerar cómo proteger la información introducida en una herramienta tecnológica sobre una representación legal y los riesgos de revelar o permitir el acceso no autorizado de tal información. Esto incluye tomar medidas razonables para evitar que personas que no deberían tener acceso a dicha información lo puedan obtener.

**Divulgación**

[4] Cuando el uso de la tecnología implique un riesgo significativo de exposición o divulgación, la persona que ejerce la profesión legal deberá informar a su cliente o requirente de servicio y, de ser necesario, obtener su consentimiento informado.

**Honorarios**

[5] Las personas que ejercen la profesión legal deben facturar únicamente por el tiempo efectivamente dedicado al asunto. De ordinario, no se puede facturar por el tiempo invertido en aprender tecnologías que son o serán utilizadas generalmente en la práctica.

**Supervisión**

[6] Las consideraciones de esta regla también aplican en el contexto de la supervisión. Quienes tienen autoridad dentro de una oficina legal deben establecer políticas claras sobre el uso de tecnologías, incluso la inteligencia artificial, y capacitar a las personas integrantes de la oficina, ejerzan o no la profesión legal, para que las utilicen de forma ética, segura y responsable.

**Herramientas tecnológicas e inteligencia artificial**

[7] Las herramientas o soluciones tecnológicas dentro del alcance de esta regla comprenden, entre otras, plataformas de investigación jurídica, comunicación electrónica, almacenamiento en la nube, evidencia digital, descubrimiento electrónico, inteligencia artificial, y otros recursos digitales utilizados en la práctica jurídica o notarial. Esta enumeración no es exhaustiva y debe interpretarse conforme evolucione la tecnología y su integración en el ejercicio de la profesión legal.

En el contexto actual, la inteligencia artificial es un campo de la informática que utiliza algoritmos para imitar el razonamiento humano y generar predicciones, recomendaciones o contenido en atención a las bases de datos y los objetivos establecidos por las personas que desarrollan y operan la herramienta. Así, cuando se utilicen herramientas tecnológicas complejas, quienes ejercen la profesión legal deben contar con un entendimiento razonable de su funcionamiento o procurarlo mediante asesoramiento especializado. Las herramientas tecnológicas, como la inteligencia artificial y otros sistemas avanzados de procesamiento de información, pueden ser útiles para asistir en el análisis jurídico, la redacción de documentos o la organización de información. Sin embargo, no deben sustituir el criterio profesional de quien ejerce la abogacía o la notaría. Todo contenido generado por medios tecnológicos debe revisarse cuidadosamente, especialmente si se trata de documentos presentados ante un tribunal, para garantizar su veracidad, pertinencia y corrección legal.

CAPÍTULO II: LA FUNCIÓN DE ASESORAMIENTO

**REGLA 2.1. EL O LA PROFESIONAL DEL DERECHO COMO ASESOR O ASESORA**

(a) Al asesorar, o de cualquier otra forma representar a su cliente, el abogado o la abogada ejercerá un criterio profesional independiente y ofrecerá su consejo honesto y sincero. Al ofrecer su consejo, la persona que ejerce la abogacía no se limitará a asuntos estrictamente de Derecho, sino que podrá considerar otros factores, tales como de tipo moral, económico, social y político que pudieran ser relevantes a la situación de su cliente.

(b) El notario o la notaria ejercerá su función de asesorar a la persona usuaria del servicio para reflejar una posición equilibrada que tenga por objetivo preservar la legalidad del acto o del negocio, la plena eficacia del documento que autorice y la seguridad jurídica de las partes.

## COMENTARIOS

### Alcance del asesoramiento en la abogacía

[1] Una o un cliente tiene derecho a un asesoramiento honesto. Frecuentemente, el asesoramiento legal conlleva proponer hechos y alternativas que una o un cliente podría no estar dispuesto a enfrentar. Al ofrecer asesoramiento, una persona que ejerce la abogacía se esfuerza en sostener la moral del cliente y puede aconsejar de la manera más aceptable que honestamente pueda ofrecer. Una persona que ejerce la abogacía no deberá abstenerse de ofrecer un consejo honesto, por el hecho de que no sea el deseado por la o el cliente.

[2] Un asesoramiento fundamentado en términos estrictamente legales puede ser de poco valor para la o el cliente, especialmente cuando predominan consideraciones prácticas tales como costos o efectos sobre otras personas. Por lo tanto, un asesoramiento legal puramente técnico en ocasiones puede ser inadecuado. Es apropiado que una persona que ejerce la abogacía se refiera a consideraciones morales y éticas relevantes al momento de ofrecer un consejo legal. Aunque una persona que ejerce la abogacía no es una consejera moral, las consideraciones morales y éticas abarcan a la mayoría de las

controversias jurídicas y pueden influir de forma decisiva en la manera en que se aplicará el Derecho.

[3] Una o un cliente puede solicitar, expresa o implícitamente, a la persona que ejerce la abogacía asesoramiento puramente técnico. Cuando una solicitud de esa naturaleza es hecha por una o un cliente con experiencia en asuntos legales, la persona que ejerce la abogacía puede aceptarla tal y como se le plantea. No obstante, cuando dicha solicitud es hecha por una o un cliente inexperto en asuntos legales, la responsabilidad de la persona que ejerce la abogacía como asesora puede incluir explicarle que la consulta puede involucrar otras consideraciones, más allá de lo jurídico.

[4] Los asuntos que van más allá de las cuestiones estrictamente jurídicas también pueden estar en el campo de otra profesión. Los asuntos de relaciones de familia pueden implicar problemas dentro de la competencia profesional de la psiquiatría, la psicología clínica o el trabajo social; asuntos comerciales pueden presentar problemas en el alcance y competencia de la profesión de contador o de especialistas financieros. Cuando consultar con profesionales en otro campo es algo que una persona que ejerce la abogacía de forma competente recomendaría, debe hacer tal recomendación. Al mismo tiempo, frecuentemente, el mejor consejo de una persona que ejerce la abogacía consiste en recomendar un curso de acción frente a recomendaciones encontradas de los expertos o las expertas.

**Ofrecer asesoramiento en la abogacía**

[5] En términos generales, no se espera que una persona que ejerce la abogacía provea asesoramiento hasta que la o el cliente la solicite. Sin embargo, cuando la persona que ejerce la abogacía conoce que una o un cliente propone un curso de acción que probablemente resultará en consecuencias legales sustancialmente adversas, la responsabilidad de la persona que ejerce la abogacía, en virtud de la Regla 1.4, podría requerirle que ofrezca su asesoramiento si el curso de acción está relacionado con la representación. De igual modo, cuando es probable que un asunto requiera litigación, puede ser necesario que, en virtud de la Regla 1.4, la persona que ejerce la abogacía le informe a la o el cliente sobre métodos alternos para resolver disputas que pueden ser alternativas razonables a un litigio. De ordinario, una persona que ejerce la abogacía no tiene la obligación de iniciar una investigación sobre los asuntos de una o un cliente o dar consejos cuando este o esta le indicó que no los desea, pero una persona que ejerce la abogacía puede comenzar el

asesoramiento de una o un cliente cuando tal asesoramiento parezca ser en el mejor interés de la o del cliente.

**Alcance del asesoramiento en la función notarial**

[6] El asesoramiento que brinde una persona que ejerce la notaría incluye las aclaraciones y las advertencias requeridas para que las personas que requieran sus servicios puedan tomar decisiones informadas sobre el asunto objeto de la intervención notarial.

REGLA 2.2. EVALUACIÓN DE ASUNTOS PARA EL USO DE TERCERAS PERSONAS

(a)     Una persona que ejerce la abogacía puede proveer una evaluación de un asunto que afecte a su cliente, para uso de una tercera persona, si cree razonablemente que hacer tal evaluación resulta compatible con otros aspectos de su relación con tal cliente.

(b)     Cuando la persona que ejerce la abogacía conoce o debe conocer razonablemente que es probable que la evaluación afectará sustancial y adversamente los intereses de su cliente, no proveerá tal evaluación a no ser que su cliente preste consentimiento informado.

(c)     Excepto la divulgación autorizada en conexión con el informe sobre la evaluación realizada, la información relacionada con la evaluación está protegida por la Regla 1.6.

**COMENTARIOS**

**Definición**

[1] Una evaluación puede ser realizada por directriz de la o del cliente o cuando sea autorizada implícitamente para llevar a cabo la representación. Véase la Regla 1.2. Dicha evaluación puede tener el propósito principal de proveer información para beneficio de terceras personas. Por ejemplo, una opinión referente al título de propiedad dada a petición de la parte vendedora para conocimiento de una potencial parte compradora o a instancias de una parte prestataria para el conocimiento de una posible persona financiadora. En algunos casos, la evaluación puede ser requerida por una entidad gubernamental; por ejemplo, una opinión sobre la legalidad de los valores registrados para la venta al amparo de las leyes de valores. En otros casos, la

evaluación puede ser requerida por una tercera persona, como una persona interesada en comprar un negocio.

Otros ejemplos de áreas en las que las personas que ejercen la abogacía realizan evaluaciones son los siguientes: (1) contribuciones: evalúan las consecuencias contributivas de una transacción o si la transacción representa un beneficio fiscal; (2) instrumentos financieros o valores: evalúan el cumplimiento de su cliente con la ley o una posible exención; (3) ambiental: evalúan el cumplimiento con leyes y regulaciones ambientales; (4) bienes raíces comerciales: evalúan la validez de préstamos hipotecarios y (5) riesgos de litigio: evalúan el riesgo de que el litigio en curso de su cliente pueda resultar en una pérdida material para fines de información financiera en un informe de auditoría.

[2] Una evaluación legal debe distinguirse de la investigación de una persona con la cual la persona que ejerce la abogacía no tiene una relación cliente-abogado o abogada. Por ejemplo, una persona que ejerce la abogacía contratada por una parte compradora para analizar el título de la propiedad, no tiene una relación cliente-abogado o abogada con la parte vendedora. Así también, una investigación sobre los asuntos de una persona por una persona que ejerce la abogacía del sector público, o por una asesora o un asesor legal especial empleado por el gobierno, no es una evaluación de acuerdo con el término utilizado en esta regla. La pregunta es si la persona que ejerce la abogacía fue contratada por la persona cuyos asuntos están siendo examinados. Cuando la persona que ejerce la abogacía fue contratada por esa persona, aplican las normas generales relacionadas con la lealtad a la o el cliente y la preservación de su información confidencial, lo que no ocurre si la persona que ejerce la abogacía es contratada por una tercera persona. Por esta razón, es imprescindible identificar a la persona que contrató a la persona que ejerce la abogacía. Esto debe quedar claro, no solo para la persona bajo examen, sino también para otras, a quienes los resultados les serán proporcionados.

**Deberes hacia terceras personas y la o el cliente**

[3] Cuando la evaluación está destinada para el conocimiento o el uso de una tercera persona, no surge necesariamente un deber legal hacia esa persona. Esa interrogante jurídica se encuentra fuera del alcance de esta regla. Sin embargo, debido a que tal evaluación implica una desviación de la relación cliente-abogado o abogada ordinaria, es necesario un análisis cuidadoso del

asunto. La persona que ejerce la abogacía debe sentir satisfacción, como una cuestión de criterio profesional, que realizar esa evaluación es compatible con otras funciones realizadas en nombre de la o del cliente. Por ejemplo, si la persona que ejerce la abogacía actúa como representante legal en la defensa de la o del cliente contra acusaciones de fraude, de ordinario sería incompatible con la responsabilidad de la persona que ejerce la abogacía que lleve a cabo una evaluación para terceras personas relacionada con la misma transacción o con transacciones relacionadas. Sin embargo, suponiendo que no existe impedimento aparente, la persona que ejerce la abogacía debe informar a la o el cliente de las implicaciones de la evaluación, en particular de sus responsabilidades hacia terceras personas y el deber de difundir los resultados.

**Acceso y divulgación de información a la persona que ejerce la abogacía**

[4] La calidad de una evaluación depende de la libertad y la amplitud de la investigación realizada. Normalmente, una persona que ejerce la abogacía, como una cuestión de juicio profesional, debe ampliar la investigación según le parezca necesario. No obstante, en algunas circunstancias los términos de la evaluación pueden ser limitados. Por ejemplo, ciertos asuntos o fuentes pueden ser categóricamente excluidos, o el alcance de la búsqueda puede quedar limitado por restricciones de tiempo o falta de cooperación de las personas que tengan información pertinente. Esas limitaciones que son pertinentes para la evaluación deben ser descritas en el informe. Si después de que una persona que ejerce la abogacía inició una evaluación, la o el cliente se niega a cumplir con los términos que se pactaron para realizar la evaluación, las obligaciones de la persona que ejerce la abogacía serán determinadas por la ley, con referencia a los términos del acuerdo con la o el cliente y las circunstancias que lo rodean. En ningún caso se permite que la persona que ejerce la abogacía haga, a sabiendas, una declaración falsa sobre hechos sustanciales o de Derecho al proveer una evaluación bajo esta regla. Véase la Regla 4.1.

**Obtener el consentimiento informado de la o del cliente**

[5] La información relacionada con una evaluación está protegida por la Regla 1.6. En muchas ocasiones, proveer una evaluación a una tercera persona no plantea un riesgo significativo para la o el cliente. Por lo tanto, la persona que ejerce la abogacía puede tener autorización implícita para divulgar información necesaria para llevar a cabo la representación. Véase la Regla

1.6(a). No obstante, cuando es razonablemente probable que la evaluación afectará sustancial y adversamente los intereses de la o del cliente, la persona que ejerce la abogacía primero debe obtener el consentimiento de la o del cliente después de que haya sido informado o informada adecuadamente sobre los posibles efectos adversos a sus intereses. Véanse las Reglas 1.6(a) y 1.0(j).

**Solicitud de información para auditorías financieras**

[6] Cuando un asunto relacionado con la situación legal de una o un cliente surge por una petición de auditoría financiera de la o del cliente y el asunto es referido a la persona que ejerce la abogacía, la respuesta puede ser realizada de conformidad con los procedimientos reconocidos de la profesión jurídica.

### REGLA 2.3. LA PERSONA QUE EJERCE LA ABOGACÍA COMO INTERVENTORA NEUTRAL

(a) Una persona que ejerce la abogacía contratada como interventora neutral por dos o más personas, quienes no son sus clientes, ayudará de manera imparcial a todas las partes de una controversia a solucionar un conflicto u otro asunto entre estas. Laborar como interventor o interventora neutral puede incluir servir como árbitro o árbitra, mediador o mediadora o en cualquier otra capacidad que le permita a la persona que ejerce la abogacía asistir a las partes a resolver un asunto.

(b) Una persona que ejerce la abogacía contratada que actúa como interventora neutral deberá informar a las partes que no cuenten con representación legal que esta no las representa legalmente durante el proceso de solución de conflictos seleccionado. Cuando conoce o debe conocer razonablemente que una de las partes no entiende la naturaleza de su participación como interventora o interventor neutral, le explicará la diferencia entre la función de una persona que ejerce la abogacía como interventora neutral y la función de una persona que ejerce la abogacía como representante legal.

### COMENTARIOS

[1] Los métodos alternos para la solución de conflictos se han convertido en procesos de creciente uso y relevancia como mecanismos complementarios del sistema de justicia. Aparte de representar clientes en los procesos de

solución de conflictos, las personas que ejercen la abogacía suelen servir como interventores o interventoras neutrales. Una interventora o un interventor neutral es una persona que ejerce de manera imparcial, por ejemplo, como mediadora, árbitra, evaluadora, o conciliadora, que asiste a las partes, quienes pueden o no tener representación legal, en la solución de un conflicto o asunto para lograr un acuerdo transaccional. Si una interventora o un interventor neutral es contratado principalmente para facilitar, evaluar o adjudicar la solución de la controversia, dependerá del proceso particular seleccionado por las partes, por disposición judicial o mandato de ley.

[2] El rol de una interventora o un interventor neutral no se ejerce exclusivamente por personas que ejercen la abogacía, aunque en algunos contextos relacionados con el tribunal solo las personas que ejercen la abogacía podrán desempeñar esta función o atender ciertos casos. En el desempeño de esta función, la persona que ejerce la abogacía podrá estar sujeta a las normas procesales o cualquier otra ley que aplique a interventores o interventoras neutrales en general o a personas que ejercen la abogacía que se desempeñen como interventores o interventoras neutrales. Las personas que ejercen la abogacía que actúan como interventores o interventoras neutrales también pueden estar sujetos o sujetas a otros códigos de ética o disposiciones normativas.

[3] A diferencia de personas que no son abogadas que actúan como interventores o interventoras neutrales, las personas que ejercen la abogacía que desempeñan esta función pueden experimentar problemas particulares como resultado de las diferencias entre el rol de interventor o interventora neutral y el servicio de una persona que ejerce la abogacía como representante de su cliente. La posibilidad de confusión es significativa cuando las partes no se encuentran representadas en el proceso. Por consiguiente, el inciso (b) requiere que un abogado o una abogada que ejerce una función neutral informe a las partes sin representación legal que no les representa legalmente durante el proceso de solución de conflictos seleccionado. Para algunas partes, en especial quienes utilizan frecuentemente los procesos de solución de conflictos, esta información será suficiente. Para otras, en particular aquellas que participan del proceso por primera vez, se requerirá información adicional. La persona que ejerce la abogacía debe informar a todas las partes la diferencia entre la función de una persona que ejerce la abogacía como representante legal, así como la de un interventor o una interventora neutral. Esto último incluye la inaplicabilidad del privilegio abogada o abogado-cliente. El alcance de la divulgación requerida en virtud del presente inciso dependerá

de las partes involucradas y el objetivo del procedimiento, así como de las características particulares del proceso de solución de conflictos seleccionado.

[4] A una persona que ejerce la abogacía contratada como interventora neutral podría posteriormente solicitársele que represente a una o un cliente sobre el mismo asunto. Los conflictos de intereses que surgen tanto para la persona que ejerce la abogacía individual y la oficina legal de la persona que ejerce la abogacía se atiende en la Regla 1.12.

[5] Las personas que ejercen la abogacía que representan a clientes en los procesos de métodos alternos de solución de conflictos se rigen por estas Reglas. Cuando el proceso de solución de conflictos tiene lugar ante un tribunal, como en el arbitraje obligatorio (véase la Regla 1.0(jj)), el deber de sinceridad de la persona que ejerce la abogacía se rige por la Regla 3.3. De lo contrario, el deber de sinceridad de la persona que ejerce la abogacía hacia los interventores o las interventoras neutrales y otras partes se rige por la Regla 4.1.

### CAPÍTULO III: EL ABOGADO Y LA ABOGADA COMO REPRESENTANTE LEGAL

### REGLA 3.1. RECLAMACIONES Y COMPARECENCIAS MERITORIAS

Una persona que ejerce la abogacía no instará procedimiento alguno ni promoverá una controversia o formulará oposición a una controversia, a menos que existan fundamentos jurídicos y de hechos que no sean frívolos. Esto incluye la presentación de argumentos de buena fe para solicitar la ampliación, modificación o revocación de una norma jurídica. En casos de naturaleza penal o en procedimientos que puedan resultar en la encarcelación de su cliente, una persona que ejerce la abogacía podrá requerir, según la etapa que corresponda, que se prueben todos los elementos de la acción presentada.

### COMENTARIOS

[1] La persona que ejerce la abogacía tiene el deber de utilizar los procedimientos judiciales para el mayor beneficio de la causa de su cliente, pero esto no implica que pueda abusar de los procedimientos. El Derecho, tanto procesal como sustantivo, establece los límites dentro de los cuales una persona que ejerce la abogacía puede actuar. Ciertamente, el Derecho no es claro ni estático. Como consecuencia, al determinar el alcance adecuado de la

representación, se deben considerar las ambigüedades del Derecho y su potencial para el cambio.

[2] La comparecencia de una persona que ejerce la abogacía ante un tribunal equivale a una afirmación de que en su opinión el caso de su cliente amerita una determinación o providencia judicial. Cuando una persona que ejerce la abogacía firma una alegación en un caso significa que leyó la alegación y, de acuerdo con su mejor conocimiento, información y creencia, está bien fundamentada y que es plausible.

[3] No es frívola la presentación de una acción, defensa o medidas similares en representación de una o un cliente cuando los hechos no han sido constatados plenamente o porque la persona que ejerce la abogacía espera obtener prueba sustancial en la etapa del descubrimiento de prueba. Sin embargo, se requiere que las personas que ejercen la abogacía se informen sobre los hechos en los casos de sus clientes y el Derecho aplicable para determinar si pueden formular argumentos de buena fe en apoyo de la postura de sus clientes. Esto no es frívolo aun cuando la persona que ejerce la abogacía cree que la postura de su cliente no prevalecerá finalmente. No obstante, el curso de acción es frívolo si la persona que ejerce la abogacía es incapaz de elaborar un argumento de buena fe sobre los méritos del curso de acción tomado o sobre la ampliación, modificación o revocación de una norma jurídica.

[4] Las obligaciones de la persona que ejerce la abogacía que derivan de esta regla están subordinadas al derecho constitucional federal y estatal que le concede a una persona acusada el derecho a estar asistida por un o una representante legal para presentar una reclamación o alegación que de otra forma estaría prohibida por esta regla.

**REGLA 3.2. PRONTITUD EN LA TRAMITACIÓN DE LAS CAUSAS O LOS ASUNTOS NOTARIALES**

(a) La persona que ejerce la abogacía deberá tramitar con prontitud la causa litigiosa de su cliente consistentemente con los intereses de este o esta. Tendrá presente su deber hacia el tribunal, sus compañeros y compañeras de la profesión legal, las partes y testigos. Deberá ser puntual en sus gestiones profesionales, evitará dilaciones indebidas y solicitudes de suspensiones de audiencias o eventos procesales, excepto cuando existan circunstancias excepcionales y sea indispensable.

(b)    La persona que ejerce la notaría atenderá y tramitará con prontitud los documentos y los asuntos encomendados por la persona usuaria del servicio.

**COMENTARIOS**

[1] Las prácticas dilatorias perjudican y desacreditan la administración de la justicia. Aun cuando habrá ocasiones en las que estará justificado solicitar una prórroga o posposición por razones personales, es impropio que una persona que ejerce la abogacía rutinariamente dilate la litigación solo porque le conviene. También será impropio dilatar el proceso para frustrar el intento de la parte contraria de obtener un remedio. No constituye una justificación que conducta similar es a menudo tolerada por los jueces o las juezas, o las personas que ejercen la abogacía. El criterio relevante es si una persona que ejerce la abogacía de forma competente, que actúa de buena fe, consideraría que el curso de acción tomado responde a un propósito legítimo que no sea retrasar el caso. Obtener un beneficio económico u otro tipo de beneficio por la demora indebida en el litigio no constituye un interés legítimo de la o del cliente.

**REGLA 3.3. CONDUCTA ANTE LOS TRIBUNALES**

(a)    Toda persona que ejerce la abogacía debe procurar que en los tribunales prevalezca siempre un ambiente de decoro y formalidad.

(b)    La persona que ejerce la abogacía no deberá, a sabiendas:

(1) hacer una declaración falsa sobre los hechos o el Derecho ante un tribunal o dejar de rectificar una declaración falsa que haya hecho antes sobre un hecho relevante o el Derecho;

(2) dejar de informar al tribunal una fuente o autoridad legal que sea vinculante en la jurisdicción que la persona que ejerce la abogacía sepa que es directamente adversa a su cliente y no haya sido divulgada por el o la representante legal de la parte contraria; u

(3) ofrecer prueba que la persona que ejerce la abogacía sabe que es falsa. Si una persona que ejerce la abogacía, su cliente o una persona testigo llamada a declarar por el abogado o la

abogada ofreció prueba relevante que luego la persona que ejerce la abogacía descubre que es falsa, deberá tomar medidas correctivas razonables, incluso, si fuera necesario, divulgarlo al tribunal. Una persona que ejerce la abogacía puede rehusar ofrecer prueba que cree razonablemente que es falsa, con excepción del testimonio de la persona acusada en un procedimiento penal.

(c) Una persona que ejerce la abogacía que representa a su cliente en un procedimiento adjudicativo y sabe que una persona intenta incurrir, incurre o incurrió en conducta criminal o fraudulenta relacionada con tal procedimiento, deberá tomar medidas correctivas razonables, incluso, si fuera necesario, divulgarlo al tribunal.

(d) Los deberes enumerados en los incisos (a) y (b) se extenderán hasta que concluya el procedimiento y aplicarán aunque su cumplimiento requiera la divulgación de información protegida de ordinario por la Regla 1.6.

(e) En un procedimiento *ex parte*, la persona que ejerce la abogacía deberá informar al tribunal de todo hecho relevante que le sea conocido y le permita al tribunal tomar una decisión informada, sean esos hechos adversos o no a su causa.

## COMENTARIOS

[1] La buena marcha del proceso judicial es responsabilidad de cada miembro de la profesión legal. La persona que ejerce la abogacía debe observar en los tribunales una conducta que se caracterice por el mayor de los respetos. A su vez, la persona que ejerce la abogacía deberá colaborar para mejorar la calidad de la justicia que se imparte en estos foros.

[2] Esta regla rige la conducta de una persona que ejerce la abogacía que representa a su cliente en procedimientos ante un tribunal. Véase la Regla 1.0(jj) para la definición de "tribunal". También aplica cuando la persona que ejerce la abogacía representa a una o un cliente en un procedimiento secundario o derivado de la controversia ante un tribunal, tal como una deposición. Por ejemplo, el subinciso (b)(3) requiere que una persona que ejerce la abogacía tome medidas correctivas razonables si conoce que la o el cliente ofreció información falsa en la deposición.

[3] Esta regla establece deberes especiales de las personas que ejercen la abogacía como funcionarios y funcionarias de los tribunales, con la finalidad de evitar conductas que menoscaben la integridad del procedimiento. Una persona que ejerce la abogacía que actúa como representante de su cliente en un procedimiento adjudicativo tiene la obligación de presentar el caso de manera persuasiva a su favor. No obstante, el cumplimiento de ese deber, mientras mantiene las confidencias de su cliente, está sujeto al deber de sinceridad de la persona que ejerce la abogacía hacia el tribunal. Consecuentemente, aunque en el proceso adversativo la persona que ejerce la abogacía no tiene obligación de hacer una exposición imparcial de la ley o garantizar la corrección de la prueba presentada, tiene que evitar que se induzca a error al tribunal por declaraciones de Derecho, hecho o de prueba que sabe son falsas.

**La persona que ejerce la abogacía como representante**

[4] Una persona que ejerce la abogacía es responsable de las alegaciones y otros documentos preparados para el litigio, pero usualmente no se le requiere tener conocimiento personal de las afirmaciones contenidas en estos, porque en tales documentos normalmente se presentan las aseveraciones de las o los clientes o de terceras personas en beneficio de sus clientes. Compárese con la Regla 3.1. Sin embargo, las aseveraciones basadas en el conocimiento de la persona que ejerce la abogacía, como, por ejemplo, en una declaración jurada de la persona que ejerce la abogacía, o en una declaración durante el juicio, pueden ser hechas solo cuando la persona que ejerce la abogacía tenga conocimiento de su veracidad o tenga razón para creer que es cierto luego de una investigación razonablemente diligente. Por otra parte, existen circunstancias bajo las cuales la ausencia de una declaración podría conllevar la afirmación de una falsedad. La obligación prescrita en la Regla 1.2(d) de no aconsejar a una o un cliente para que cometa un fraude o asistirle en la comisión de este, se extiende al litigio. En cuanto al cumplimiento con la Regla 1.2(d), véase el comentario 9 de esa regla. Véase también el comentario de la Regla 8.4(b).

**Argumentos jurídicos**

[5] Las argumentaciones jurídicas basadas, a sabiendas, en una premisa falsa del Derecho constituye deshonestidad hacia el tribunal. No se requiere que una persona que ejerce la abogacía haga una exposición imparcial del Derecho, pero debe reconocer la existencia de fuentes jurídicas pertinentes, aunque no

le favorezcan. Además, como se señala en el subinciso (a)(2), una persona que ejerce la abogacía tiene el deber de divulgar las fuentes jurídicas adversas que no hayan sido divulgadas por la parte contraria. La premisa subyacente es que una argumentación jurídica es una discusión en la cual se busca establecer cuáles premisas jurídicas son aplicables propiamente a la controversia.

**Presentación de prueba**

[6] El subinciso (a)(3) requiere que la persona que ejerce la abogacía se niegue a ofrecer prueba cuando conoce que es falsa, independientemente de los deseos de su cliente. Este deber presupone la obligación de la persona que ejerce la abogacía, como un funcionario o funcionaria del tribunal, de evitar que la o el oficial adjudicador sea engañado por un testimonio falso. Una persona que ejerce la abogacía no infringe esta regla si ofrece prueba para establecer la falsedad del testimonio.

[7] Si una persona que ejerce la abogacía se entera que su cliente tiene la intención de ofrecer una declaración falsa o quiere que la persona que ejerce la abogacía presente prueba falsa, debe persuadir a su cliente de que la prueba no debe presentarse. Si la persuasión es ineficaz y la persona que ejerce la abogacía continúa representando al cliente, deberá negarse a ofrecer tal prueba falsa. Si solo una parte del testimonio será falso, la persona que ejerce la abogacía puede llamar a la persona testigo a declarar, pero no presentará ni permitirá que declare con el testimonio que la persona que ejerce la abogacía sabe que es falso.

[8] Las obligaciones indicadas en los incisos (a) y (b) aplican a todas las personas que ejercen la abogacía, incluso en casos criminales. No obstante, la persona que ejerce la abogacía deberá permitir que la persona acusada, si lo desea, declare en su defensa u ofrezca un testimonio narrativo, incluso cuando sepa que el testimonio o narrativa podría ser falsa. La obligación de la persona que ejerce la abogacía en virtud de estas Reglas está subordinada a lo anterior. Véase también el comentario [9].

[9] La prohibición de ofrecer prueba falsa aplica solo si la persona que ejerce la abogacía sabe que es falsa. El hecho que una persona que ejerce la abogacía crea que se trata de prueba falsa, no prohíbe su presentación ante un tribunal. Sin embargo, el conocimiento de la persona que ejerce la abogacía de la falsedad de la prueba podrá inferirse de las circunstancias. Véase la Regla 1.0(k). Por consiguiente, a pesar de que una persona que ejerce la abogacía

debe resolver las dudas acerca de la veracidad de los testimonios u otra prueba a favor de la o del cliente, la persona que ejerce la abogacía no puede ignorar cuando sea obvio, que se trata de prueba o testimonios falsos.

[10] Aunque el subinciso (a)(3) prohíbe a una persona que ejerce la abogacía que presente prueba cuando conoce que es falsa, le permite a la persona que ejerce la abogacía negarse a presentar un testimonio u otra prueba cuando considere razonablemente que es falsa. Sin duda, ofrecer dicha prueba puede poner en dudas la capacidad de la persona que ejerce la abogacía para discernir sobre la calidad de la prueba y, por tanto, afectar su actitud como representante legal. No obstante, debido a las protecciones especiales que históricamente han sido provistas a las personas acusadas de delitos, esta regla no permite que una persona que ejerce la abogacía rehúse ofrecer el testimonio de una o un cliente cuando la persona que ejerce la abogacía cree razonablemente que el testimonio será falso, pero no tiene certeza que será así. A menos que la persona que ejerce la abogacía tenga conocimiento de que el testimonio será falso, debe respetar la decisión de su cliente de declarar. Véase también el comentario [7].

**Medidas correctivas**

[11] Existen situaciones en las cuales una persona que ejerce la abogacía debe tomar medidas correctivas razonables para evitar la consideración de prueba o testimonios falsos. Por ejemplo, cuando una persona que ejerce la abogacía ofreció prueba con la creencia de que era cierta pero luego se entera que era falsa o cuando su cliente, u otra persona testigo, ofrece testimonio que la persona que ejerce la abogacía conoce que es falso, ya sea durante su examen directo o en el contrainterrogatorio conducido por la o el representante legal de la otra parte. De igual forma, si la persona que ejerce la abogacía conoce que el testimonio ofrecido por su cliente durante una deposición es falso, deberá tomar las medidas correctivas razonables. En estos casos, la persona que ejerce la abogacía deberá orientar privadamente a su cliente para que rectifique, le advierta sobre el deber de honestidad que tiene la persona que ejerce la abogacía hacia el tribunal y solicitar su cooperación para retirar o corregir las declaraciones o prueba falsa. Si su cliente se rehúsa a rectificar, la persona que ejerce la abogacía debe tomar medidas correctivas razonables adicionales. Cuando la renuncia a la representación legal no sea posible o no pueda retirar o corregir la prueba falsa presentada, la persona que ejerce la abogacía debe divulgar al tribunal la información que sea razonablemente necesaria para remediar la situación, aunque esto requiera revelar

información que de otra manera estaría protegida por la Regla 1.6. El tribunal tomará la acción apropiada, ya sea impartir una declaración sobre la situación ante el jurado, ordenar la nulidad del juicio o no tomar acción alguna.

[12] Divulgar que el testimonio de la o del cliente es falso puede acarrear consecuencias graves, incluso, no solo el sentimiento de traición contra su representante legal, sino también la pérdida del caso y quizás una acusación por perjurio. Sin embargo, lo contrario conllevaría que la persona que ejerce la abogacía coopere para engañar al tribunal y trastocaría el proceso de búsqueda de la verdad para el cual se diseñó el sistema adversativo. Véase la Regla 1.2(d). Además, a menos que se entienda claramente que la persona que ejerce la abogacía actuará bajo el deber de divulgar la existencia de prueba falsa, su cliente puede simplemente rechazar el asesoramiento de la persona que ejerce la abogacía para que divulgue la prueba falsa e insistir en que la persona que ejerce la abogacía guarde silencio. De esta forma, el o la cliente podría, en efecto, coaccionar a la persona que ejerce la abogacía a que sea parte de un fraude al tribunal.

**Preservación de la integridad del proceso adjudicativo**

[13] Las personas que ejercen la abogacía tienen una obligación especial de proteger al tribunal contra conducta criminal o fraudulenta que afecte la integridad del proceso adjudicativo; tales como el soborno, la intimidación o comunicación ilegal con testigos, con el jurado, con funcionarios o funcionarias del tribunal o con cualquier participante en el procedimiento, la destrucción u ocultamiento de documentos u otra prueba, o negarse a revelar información al tribunal cuando sea requerido por ley. De este modo, el inciso (b) requiere que una persona que ejerce la abogacía tome medidas correctivas, incluso divulgar, si conoce que una persona, inclusive su cliente, tiene la intención de participar o participó en conducta criminal o fraudulenta relacionada con el procedimiento.

**Extinción de la obligación**

[14] Ciertamente, debe existir un plazo límite que sea práctico para cumplir con la obligación de rectificar prueba o declaraciones falsas. La conclusión del proceso judicial es un punto apropiado y razonable para que concluya esta obligación. Dentro del significado de esta regla, un proceso concluye cuando la sentencia adviene final y firme.

**Procedimientos *ex parte***

[15] De ordinario, una persona que ejerce la abogacía tiene la responsabilidad limitada de presentar los intereses de la parte que representa en una controversia. Se espera que la posición opuesta sea expuesta por la persona que ejerce la abogacía que representa a esa persona litigante. Sin embargo, cuando se trata de procedimientos *ex parte* —tales como la solicitud de una orden de protección provisional— no hay balance en la presentación de intereses opuestos. Aun así, el procedimiento debe concluir con una determinación justa. El juez o la jueza tiene la responsabilidad de considerar los intereses de la parte ausente. La persona que ejerce la abogacía de la parte que comparece tiene el deber correlativo de divulgar los hechos sustanciales conocidos y aquellos que considere razonablemente necesarios para que se tome una decisión informada.

**Renuncia**

[16] Normalmente, el cumplimiento por la persona que ejerce la abogacía con el deber de sinceridad impuesto por esta regla no requiere que la persona que ejerce la abogacía renuncie a la representación de una o un cliente cuyos intereses estarán o han quedado afectados adversamente por el deber de divulgación impuesto. Sin embargo, puede ser que la Regla 1.16(a) requiera que la persona que ejerce la abogacía solicite permiso al tribunal para renunciar a la representación si su deber de sinceridad bajo la regla resulta en un menoscabo de la relación cliente-abogado o abogada que impide la representación legal competente. Véase además la Regla 1.16(b) para las circunstancias en las cuales se le permitirá a una persona que ejerce la abogacía que solicite autorización al tribunal para renunciar a la representación. En relación con una solicitud de autorización para renunciar que se basa en la conducta impropia de la o del cliente, una persona que ejerce la abogacía puede divulgar información relacionada con la representación solo en la medida que sea razonablemente necesaria para cumplir con esta regla o, que, de otra manera, lo permita la Regla 1.6.

### REGLA 3.4. CONDUCTA HACIA LA PARTE CONTRARIA Y SU REPRESENTANTE LEGAL

La persona que ejerce la abogacía no deberá:

(a)     obstruir ilegalmente el acceso a prueba que pueda tener la otra parte o alterar, destruir o esconder ilegalmente un documento u otra

prueba que tenga valor probatorio. Una persona que ejerce la abogacía no aconsejará ni ayudará a una persona para que así actúe;

(b)     falsificar prueba, ni aconsejar a, o colaborar con una persona testigo para que testifique falsamente, ni ofrecer a una persona testigo un incentivo prohibido por ley;

(c)     desobedecer a sabiendas una obligación que surge bajo las reglas u órdenes de un tribunal, ni podrá aconsejar o asistir a su cliente a que incurra en tal acto, excepto que podrá negarse cuando oportunamente fundamente por qué no existe una obligación válida;

(d)     formular, durante la etapa anterior al juicio, una solicitud frívola sobre descubrimiento de prueba o no hacer un esfuerzo razonablemente diligente para cumplir con una solicitud legalmente adecuada de descubrimiento de prueba formulada por la parte contraria;

(e)     aludir durante un juicio a un asunto que la persona que ejerce la abogacía razonablemente sabe que no es pertinente o que no está sustentado por prueba admisible, afirmar que tiene conocimiento personal de los hechos en controversia excepto cuando declare como testigo o manifestar su opinión personal en torno a lo justo de una causa, la credibilidad de una persona testigo, la responsabilidad de una o un litigante en una causa civil o sobre la culpabilidad o inocencia de una persona acusada;

(f)     solicitar a una persona que no sea su cliente que se abstenga de ofrecer voluntariamente información pertinente a otra parte, a menos que:

> (1)     la persona sea familiar, empleado, empleada o agente de su cliente, y

> (2)     la persona que ejerce la abogacía crea razonablemente que los intereses de la persona no se afectarán adversamente por abstenerse de dar tal información.

**COMENTARIOS**

[1] El procedimiento en un sistema adversativo conlleva que la prueba en un caso sea presentada por las partes en la contienda y permite que la parte contraria la cuestione. La competencia justa en el sistema adversativo se garantiza mediante prohibiciones contra la destrucción y el ocultamiento de prueba, la influencia indebida hacia las personas testigos, las tácticas obstructivas en el descubrimiento de prueba y otras acciones similares.

[2] Los documentos y otras piezas de prueba frecuentemente son esenciales para probar una reclamación o defensa. Salvo los privilegios evidenciarios, el derecho de la parte contraria, incluso el Estado, de obtener prueba a través del descubrimiento de prueba o mediante una orden judicial es un derecho procesal importante. El ejercicio de ese derecho puede quedar frustrado si se altera, oculta o destruye prueba pertinente. El Artículo 285 del Código Penal de Puerto Rico, 33 LPRA sec. 5378, tipifica como delito destruir prueba potencial con el propósito de impedir su disponibilidad en un procedimiento pendiente o previsible. Asimismo, los Artículos 286 y 287 del Código Penal de Puerto Rico, 33 LPRA secs. 5378-5379, tipifican como delitos la preparación y presentación de escritos falsos. El inciso (a) aplica a material probatorio en general, incluso información electrónica. En ocasiones, una persona que ejerce la abogacía podría tomar posesión temporal de alguna prueba física que forme parte de un delito cometido por su cliente, con el propósito de hacerle un examen limitado que no altere ni destruya las características sustanciales de la prueba. En tal caso, la persona que ejerce la abogacía deberá entregar la prueba a la policía o a alguna autoridad pública, de acuerdo con las circunstancias.

[3] En relación con el inciso (b), no es impropio pagar los gastos incurridos por una persona testigo o compensar a una o un testigo perito, según permitido por ley. Es impropio pagarle a una o un testigo de hechos para que testifique y es impropio pagarle a una o un perito mediante honorarios contingentes.

[4] Con relación al inciso (c), la persona que ejerce la abogacía que desobedezca, a sabiendas, una obligación según las reglas u órdenes del tribunal deberá identificar la base legal y exponer de buena fe los fundamentos para sostener que no existe una obligación válida. Asimismo, en protección de los intereses de su cliente, de optar por desobedecer una obligación, la persona que ejerce la abogacía deberá preservar cualquier derecho a agotar los remedios procesales correspondientes.

[5] El inciso (f) permite que una persona que ejerce la abogacía aconseje a las empleadas o los empleados de una o un cliente para que se abstengan de dar información a otra parte, ya que las empleadas o los empleados pueden identificarse con los intereses de la o del cliente. Véase la Regla 4.2.

**REGLA 3.5. IMPARCIALIDAD E INFLUENCIAS INDEBIDAS**

La persona que ejerce la abogacía no deberá:

(a)     intentar influir por medios indebidos a un juez o una jueza, al jurado, a una o un potencial jurado u otro oficial en capacidad similar;

(b)     comunicarse *ex parte* con las personas indicadas en el inciso (a), excepto que se le haya autorizado por ley u orden judicial;

(c)     en ausencia de la otra parte, comunicarse ni discutir con el juez o la jueza sobre los méritos de un caso pendiente;

(d)     comunicarse con una o un miembro del jurado o jurado potencial después de que se le excusa si:

(1)     la comunicación está prohibida por ley o por orden del tribunal,

(2)     el o la jurado le han indicado que no desea comunicarse o

(3)     la comunicación conlleva falsa representación, coerción, intimidación u hostigamiento.

(e)     incurrir en conducta con la intención de entorpecer los trabajos de un tribunal.

## COMENTARIOS

[1] El Código Penal de Puerto Rico y otras leyes penales especiales tipifican como delitos conductas que involucren la influencia indebida sobre una persona en el ejercicio de facultades adjudicativas, jurado o potencial jurado u otro oficial en capacidad similar. Asimismo, el Código de Ética Judicial prohíbe que una jueza o un juez permita la influencia de terceras personas sobre sus

determinaciones. Por tal razón, la persona que ejerce la abogacía no podrá incurrir en esta conducta prohibida o contribuir a que se cometa.

[2] Durante el procedimiento la persona que ejerce la abogacía no deberá comunicarse *ex parte* con personas que desempeñan alguna función adjudicativa u oficial —ya sea una jueza, un juez o algún miembro del jurado— a menos que esté autorizado o autorizada por ley u orden judicial. La persona que ejerce la abogacía merece ser reprendida por cualquier acción encaminada a obtener especial consideración personal de un juez o una jueza.

[3] Una persona que ejerce la abogacía podría comunicarse con una o un miembro del jurado o una o un potencial miembro del jurado luego de que esta persona fue excusada del procedimiento, siempre y cuando no esté prohibido por ley u orden judicial. Ahora bien, deberá respetar el deseo de la o del miembro del jurado de no hablar con la persona que ejerce la abogacía. La persona que ejerce la abogacía no podrá incurrir en conducta impropia durante esta comunicación.

[4] La función del abogado o de la abogada litigante es presentar prueba y argumentos para que la controversia se decida de acuerdo con el estado de Derecho. Deberá abstenerse de conducta abusiva o desordenada, ya que esta es contraria a su derecho a expresarse en representación de sus clientes. En caso de conducta abusiva por parte de un juez o una jueza, la persona que ejerce la abogacía podrá mantenerse firme y manifestar su inconformidad, pero evitará actuar del mismo modo. En esta situación, la persona que ejerce la abogacía podrá continuar con su representación, proteger el récord para una revisión y preservar su integridad profesional.

[5] El deber de la persona que ejerce la abogacía de no incurrir en conducta disruptiva se extiende a cualquier procedimiento ante un tribunal, incluso una deposición. Véase la Regla 1.0(jj) para la definición de "tribunal".

### REGLA 3.6. PUBLICIDAD SOBRE JUICIOS

(a)    La persona que ejerce la abogacía que participe o haya participado en la investigación o litigación de un asunto no deberá hacer una manifestación extrajudicial o proveerle a una tercera persona documentación confidencial o que exponga a riesgos a su cliente de un caso que conoce o debe conocer razonablemente que será difundida a través de los medios de comunicación pública y que tendrá

una alta probabilidad de causar o perjudicar sustancialmente el proceso adjudicativo del asunto.

(b)    No obstante lo dispuesto en el inciso (a), a modo de ejemplo y en consideración a las particularidades de cada caso, una persona que ejerce la abogacía podrá manifestarse sobre:

(1) la reclamación, ofensa o defensa involucrada, y excepto cuando se prohíba por ley, la identidad de las personas involucradas;

(2) información que conste en un documento de acceso público;

(3) el hecho de que la investigación de un asunto está en proceso;

(4) el calendario o resultado de cualquier etapa del litigio;

(5) una solicitud de ayuda para obtener prueba y la información que sea necesaria para esto;

(6) un aviso de peligro concerniente al comportamiento de una persona involucrada, cuando hay razón para creer que existe una probabilidad razonable de que cause daño sustancial a una persona o al interés público, y

(7) en un caso criminal, además de lo dispuesto en los subincisos (1) a (6):

(i) la identidad, lugar de residencia, ocupación y el estado familiar de la persona acusada;

(ii) si la persona acusada no ha sido arrestada, la información que sea necesaria para ayudar a su detención;

(iii) el hecho, la hora y el lugar del arresto, y

(iv) la identidad de oficiales del orden público que hicieron el arresto y oficiales y agencias que participan en la investigación y la duración de esta.

(c)     No obstante lo dispuesto en el inciso (a), y en consideración a las particularidades de cada caso, una persona que ejerce la abogacía puede hacer una manifestación que razonablemente creería es necesaria para proteger a sus clientes del efecto sustancialmente perjudicial de publicidad reciente no iniciada por estos o estas. Una manifestación hecha a tenor con este inciso se limitará a la información que sea necesaria para mitigar la publicidad adversa reciente.

(d)     Ninguna persona que ejerce la abogacía que trabaje en una oficina legal o en una entidad gubernamental con una persona que ejerce la abogacía a quien le aplique lo dispuesto en el inciso (a), podrá hacer una manifestación prohibida por el inciso (a).

**COMENTARIOS**

[1] Sin duda, encontrar un balance entre el derecho a un juicio justo y la libertad de expresión es difícil. Preservar el derecho a un juicio justo implica limitar la información que se puede divulgar sobre los procedimientos antes del juicio, particularmente cuando se trata de un juicio por jurado. De no existir estas limitaciones, el resultado sería permitir la anulación práctica de los efectos protectores de las reglas de decoro forense y las reglas de exclusión de prueba. Por otro lado, existen intereses sociales vitales que son atendidos por la libre difusión de información en relación con hechos que tienen consecuencias legales o sobre los procesos judiciales. El público tiene derecho a conocer sobre amenazas a su seguridad y las medidas para garantizarla. También tiene un interés legítimo sobre la manera en que se conducen los procedimientos judiciales, especialmente en los asuntos de interés público. Además, el tema de los procedimientos legales impacta directamente el debate y la deliberación sobre asuntos de política pública.

[2] Existen normas especiales sobre la confidencialidad para los procedimientos de menores, relaciones de familia, asuntos de salud mental y otros casos similares. La Regla 3.4(c) requiere el cumplimiento con esta reglamentación especial.

[3] La regla establece una prohibición general contra las manifestaciones de una persona que ejerce la abogacía que conoce o debe conocer razonablemente que estas tendrán una probabilidad alta de causar un perjuicio sustancial en un procedimiento adjudicativo. Además, prohíbe que una persona que ejerce la abogacía provea a terceras personas documentación relacionada con una investigación o con un caso cuando conoce o debe conocer razonablemente que será difundida a los medios de comunicación pública y su efecto será perjudicial al proceso adjudicativo del asunto. Véase, Regla 8.4 (a). No obstante, la regla reconoce la importancia y el valor público de comentarios informados de las personas que ejercen la abogacía, que no están involucrados en el caso y la baja probabilidad de que tales comentarios ocasionen un perjuicio. Por tanto, la regla aplica solo a las personas que ejercen la abogacía, sus asociados y asociadas, que están o han estado involucradas en la investigación o la litigación de un caso.

[4] El inciso (b) identifica asuntos específicos sobre los cuales una persona que ejerce la abogacía puede hacer declaraciones que no presentan una probabilidad alta de ocasionar un perjuicio sustancial al caso, y tampoco se deberían considerar prohibidas por lo que dispone el inciso (a). El inciso (b) no pretende ser una lista taxativa de los temas sobre los cuales una persona que ejerce la abogacía puede hacer una declaración, pero declaraciones sobre otros asuntos pueden estar sujetas al inciso (a).

[5] Por otro lado, hay ciertos asuntos que tienen una mayor probabilidad de ocasionar un efecto perjudicial sustancial en un procedimiento, en particular cuando se refieren a un asunto criminal o cualquier otro procedimiento que pueda resultar en encarcelamiento. Estos temas se relacionan con:

(1) el carácter, la credibilidad, la reputación o los antecedentes penales de una parte, una persona sospechosa en una investigación criminal o testigo, la identidad de una o un testigo, o el testimonio que se espera de una parte o testigo;

(2) la posibilidad de que se haga alegación de culpabilidad por el delito, la existencia o el contenido de cualquier confesión, admisión o declaración hecha por una persona acusada o sospechosa, el hecho de que la persona acusada se negó a hacer una confesión, admisión o declaración;

(3) el desempeño o los resultados de cualquier examen o prueba o el rechazo o ausencia de una persona para someterse a un examen, o la identidad o la naturaleza de la prueba física que se espera presentar;

(4) cualquier opinión sobre la culpabilidad o la inocencia de una persona acusada o sospechosa en un caso criminal o procedimiento que pueda resultar en encarcelamiento;

(5) la información que la persona que ejerce la abogacía conoce o debe conocer razonablemente que es probable que sea inadmisible como prueba en un juicio y que, de ser divulgada, crearía un riesgo sustancial que perjudique un juicio justo e imparcial, o

(6) el hecho de que una persona acusada fue imputada de delito, a menos que se incluya una declaración en la que se explique que se trata meramente de una denuncia o acusación y que la persona se presume inocente hasta que se pruebe lo contrario.

[6] También es importante considerar la naturaleza del procedimiento para evaluar el perjuicio. A diferencia de los procedimientos civiles, los juicios criminales por jurado son más sensitivos a las declaraciones extrajudiciales. Existe menos probabilidad de perjuicio en las vistas sin jurado y los procedimientos de arbitraje. La regla también impone limitaciones a comentarios perjudiciales en estos casos, pero la probabilidad de perjuicio puede ser diferente dependiendo de la naturaleza del procedimiento.

[7] Por último, las declaraciones extrajudiciales que, de otro modo podrían levantar cuestionamiento bajo esta regla, pueden ser permisibles cuando son hechas en respuesta a declaraciones públicas de la otra parte, la representación legal de la otra parte o terceras personas cuando una persona que ejerce la abogacía razonablemente cree que una respuesta pública es necesaria para evitar el perjuicio a su cliente. Cuando se han hecho públicamente declaraciones perjudiciales por otras personas, las declaraciones responsivas pueden tener el efecto reparador de disminuir cualquier impacto adverso en el procedimiento adjudicativo. Dichas declaraciones responsivas deben limitarse solo a la información que sea necesaria para mitigar el perjuicio por las declaraciones hechas por otras personas.

[8] Véase la Regla 3.8(c) para los deberes adicionales del Ministerio Público en relación con las declaraciones extrajudiciales sobre procedimientos penales.

**REGLA 3.7. LA PERSONA QUE EJERCE LA ABOGACÍA COMO TESTIGO**

(a)     La persona que ejerce la abogacía no deberá representar a una o un cliente en un procedimiento en el cual la propia persona que ejerce la abogacía probablemente será testigo necesario, excepto cuando:

(1) el testimonio guarda relación con un asunto que no está en controversia,

(2) el testimonio se relaciona con la naturaleza y el valor de los servicios legales rendidos en el caso, o

(3) la descalificación de la persona que ejerce la abogacía ocasionaría un perjuicio sustancial a su cliente.

(b)     La persona que ejerce la abogacía puede representar a una o un cliente en un procedimiento judicial en el cual otra persona que ejerce la abogacía de su oficina legal probablemente será llamada a declarar como testigo, salvo que las Reglas 1.7 y 1.9 se lo impidan.

## COMENTARIOS

[1] Que coincidan las funciones de representante legal y testigo puede ser perjudicial para el tribunal y la parte contraria. También puede presentar un conflicto de intereses entre la persona que ejerce la abogacía y su cliente.

**La persona que ejerce la abogacía como testigo**

[2] La juzgadora o el juzgador de hechos puede confundirse cuando una persona que ejerce la abogacía funge como representante legal y testigo, razón por la cual el tribunal podría impedir esa dualidad de roles. La parte contraria tiene una objeción válida cuando la combinación de roles de la persona que ejerce la abogacía puede perjudicarle sus derechos. Se requiere que una o un testigo declare basado en su conocimiento personal, mientras que se espera que una persona que ejerce la abogacía explique y comente la prueba que otras personas presentan. Podría no estar claro si la declaración de un abogado-

testigo o una abogada-testigo debe considerarse como prueba o como un análisis de la prueba.

[3] El inciso (a) prohíbe que una persona que ejerce la abogacía actúe simultáneamente como representante legal y como testigo, excepto en las circunstancias especificadas en los subincisos (a)(1) hasta (a)(3). El subinciso (a)(1) reconoce que, cuando el testimonio no será cuestionado, las ambigüedades del rol dual son puramente teóricas. El subinciso (a)(2) reconoce que, cuando el testimonio se refiere a la extensión y el valor de los servicios legales prestados en la acción judicial para la que se ofrece el testimonio, permitir a las personas que ejercen la abogacía testificar evita la necesidad de un segundo juicio con nueva representación legal para dilucidar esa controversia. Además, en tal situación, el juez o la jueza tiene conocimiento de primera mano sobre el asunto en controversia; por lo tanto, hay menos dependencia del proceso adversativo para cuestionar la credibilidad del testimonio.

[4] Además de las excepciones anteriores, el subinciso (a)(3) establece que se requiere un balance entre los intereses de la o del cliente, los del tribunal y los de la parte contraria. Determinar si es probable que el tribunal pueda ser inducido a error o que la parte contraria pueda sufrir un perjuicio dependerá de la naturaleza del caso, la importancia y el contexto del testimonio de la persona que ejerce la abogacía, y la probabilidad de que el testimonio de la persona que ejerce la abogacía entre en conflicto con el testimonio de otras personas testigos. Incluso, si existe el riesgo de algún perjuicio, al determinar la descalificación del o de la representante legal, se debe considerar adecuadamente el efecto que tendría en el o la cliente la descalificación de su representante legal. Es relevante que las partes pudieran haber previsto razonablemente que el o la representante legal probablemente sería testigo. Los principios sobre conflicto de intereses establecidos en las Reglas 1.7, 1.9 y 1.10 no aplican en este caso.

[5] Debido a que no es probable que el tribunal se induzca a error cuando una persona que ejerce la abogacía actúa como representante legal en un juicio en el que una persona asociada de su oficina legal testificará, el inciso (b) permite que la persona que ejerce la abogacía testifique a menos que exista un conflicto de intereses.

**Conflicto de intereses**

[6] Al determinar si es permisible que la persona que ejerce la abogacía continúe como representante legal cuando será una o un testigo necesario, la persona que ejerce la abogacía debe considerar si esa función dual puede dar lugar a un conflicto de intereses que requerirá el cumplimiento con las Reglas 1.7 o 1.9. Por ejemplo, cuando es probable que haya un conflicto sustancial entre el testimonio de la o del cliente y el de la persona que ejerce la abogacía, la representación presenta un conflicto de intereses que requiere cumplir con la Regla 1.7. Esto sería así aun cuando la persona que ejerce la abogacía no estuviera impedida bajo el inciso (a) de actuar simultáneamente como representante legal y testigo, porque la descalificación del abogado o de la abogada ocasionaría un perjuicio sustancial al o a la cliente. De manera similar, una persona que ejerce la abogacía que podría estar autorizada a actuar simultáneamente como representante legal y testigo bajo el subinciso (a)(3) podría estar limitada por la Regla 1.9. El problema puede surgir independientemente de que se llame como testigo al o a la representante legal por la o el cliente o por la parte contraria. Determinar si existe un conflicto es responsabilidad principalmente de la o del representante legal involucrado. Si hay conflicto de intereses, la persona que ejerce la abogacía debe obtener el consentimiento informado del o de la cliente, ratificado por escrito. En algunos casos, la persona que ejerce la abogacía estará impedida de solicitar el consentimiento de la o del cliente. Véanse la Regla 1.7, la Regla 1.0(dd) para la definición de "ratificado por escrito" y la Regla 1.0(j) para la definición de "consentimiento informado".

[7] El inciso (b) establece que una o un representante legal no estará inhabilitada o inhabilitado para actuar en tal función por el hecho de que una o un asociado de su oficina legal tenga algún impedimento para participar en el caso como representante legal bajo el inciso (a). Sin embargo, si el abogado o la abogada testigo también se le descalificaría bajo la Regla 1.7 o la Regla 1.9 de representar a la o el cliente en el asunto, el resto de las personas que ejercen la abogacía de la oficina legal no podrán representar a esta persona según lo establecido en la Regla 1.10, a menos que la persona preste su consentimiento informado bajo las condiciones establecidas en la Regla 1.7.

**REGLA 3.8. DEBERES ESPECIALES DE LAS PERSONAS QUE EJERCEN LA ABOGACÍA COMO DEFENSORAS Y FISCALES**

(a)     Es el deber primordial de la persona que ejerce la abogacía como defensora o defensor y de la o del fiscal procurar que se haga justicia.

(b)     La persona que ejerce la abogacía tiene derecho a asumir la defensa de una persona acusada de un crimen independientemente de su opinión en cuanto a la culpabilidad de la persona acusada. Después de que la persona que ejerce la abogacía se ha hecho cargo de la defensa de una persona acusada está en el deber de presentar, por todos los medios rectos y honorables, cualquier defensa que las leyes vigentes permitan con el fin de que ninguna persona sea privada de su vida o de su libertad sin el debido proceso de la ley.

(c)     En el cumplimiento de sus funciones como representante del Ministerio Público, la o el fiscal deberá:

(1)     asegurarse de que la determinación de presentar o no cargos contra una persona esté fundamentada en los hechos del caso y el producto de la investigación realizada;

(2)     divulgar oportunamente a la defensa, toda prueba o información conocida por el Ministerio Público, cuya divulgación sea requerida por las leyes, reglas o jurisprudencia aplicable, incluso toda prueba o información que tienda a negar la culpabilidad de la persona acusada, mitigue la ofensa o sea exculpatoria y, en conexión con el acto de lectura de sentencia, divulgar a la defensa y al tribunal cualquier información conocida por el Ministerio Público que pueda atenuar la pena a imponerse; excepto cuando este sea relevado de tal responsabilidad mediante una orden protectora del tribunal;

(3)     abstenerse de hacer comentarios extrajudiciales que tengan probabilidad sustancial de exacerbar la opinión pública en contra de una persona imputada, excepto cuando los comentarios sean necesarios para informar al público sobre la naturaleza y el alcance de las actuaciones de la o del fiscal y que sirvan para un propósito legítimo, y tomar medidas razonables para prevenir que las y los investigadores o cualquier otro

personal del sistema de justicia penal que asista al Ministerio Público en un caso criminal, ofrezca información o haga manifestaciones extrajudiciales que el Ministerio Público estaría impedido de realizar en virtud de la Regla 3.6 o de esta regla;

(d)     La supresión de hechos o la ocultación de testigos capaces de establecer la inocencia de la persona acusada es altamente reprochable. Será también altamente reprochable que una persona que ejerce la abogacía como defensora o defensor o una o un fiscal produzca ante un tribunal prueba falsa, con pleno conocimiento de su falsedad. La intervención indebida por una persona que ejerce la abogacía o una o un fiscal con sus testigos o los de la parte contraria es intolerable.

(e)     Toda persona que ejerce la abogacía que ostente el cargo de fiscal o procurador o procuradora y se le traslade a otra dependencia del Poder Ejecutivo en calidad de designación administrativa o destaque, tendrá que abstenerse de participar o realizar cualquier gestión o deber de su nuevo puesto, en la medida que esta represente una incompatibilidad de funciones con las del cargo al cual fue nombrada o nombrado. La incompatibilidad de funciones que concierne a esta regla surge cuando un abogado o una abogada ejerce dos funciones antagónicas, opuestas o con intereses encontrados. Esta prohibición aplica, de igual forma, a las gestiones que haga cualquier fiscal o procurador o procuradora a quien se le haya concedido una licencia sin sueldo por parte del Secretario de Justicia o de la Secretaria de Justicia y ocupe un puesto en otra rama del gobierno.

(f)     Toda persona que ejerce la abogacía que ostente el cargo de fiscal o procurador o procuradora deberá informar al tribunal y/o a la persona convicta la existencia de prueba exculpatoria que establezca que una persona acusada fue convicta por un delito que no cometió, cuando advenga en conocimiento de esta. Este deber subiste aun cuando la información se obtenga luego de finalizado el cargo.

**COMENTARIOS**

[1] La existencia de deberes especiales para las y los fiscales dispuestos en esta regla no excluye la aplicabilidad de los deberes éticos generales de la profesión legal.

[2] La responsabilidad de una o un fiscal conlleva obligaciones específicas para garantizar que la persona acusada reciba un debido proceso de ley, que la culpabilidad se base en prueba suficiente y que se tomen precauciones especiales para evitar y rectificar la condena de personas inocentes.

[3] En Puerto Rico una persona imputada puede renunciar a una vista preliminar y, como resultado, perder una oportunidad valiosa para cuestionar la determinación de causa probable para juicio. No obstante, las y los fiscales no tratarán de obtener renuncias a vistas preliminares o a otros derechos y garantías importantes anteriores al juicio de personas imputadas que no cuentan con representación legal. No se prohíbe el interrogatorio legítimo a una persona sospechosa, a quien no se le han presentado cargos, cuando, a sabiendas, renuncia a tener representación legal y a mantenerse en silencio.

[4] El inciso (c)(3) complementa la Regla 3.6, que prohíbe las declaraciones extrajudiciales que tienen una probabilidad sustancial de perjudicar un procedimiento adjudicativo. En el contexto de un proceso criminal, una declaración extrajudicial de una o un fiscal puede exacerbar la opinión pública en contra de la persona sospechosa o acusada. Aunque el anuncio de una acusación formal tendrá consecuencias graves para la persona acusada, una o un fiscal puede y debe evitar los comentarios que no tienen un propósito legítimo y que tienen una probabilidad sustancial de aumentar la condena pública en contra de la persona acusada. Este comentario no tiene la intención de restringir las declaraciones que una o un fiscal puede hacer cuando cumple con la Regla 3.6(b) y (c).

[5] Al igual que otras personas que ejercen la abogacía, las y los fiscales están sujetos a las Reglas 5.1 y 5.3, que se relacionan con las responsabilidades respecto a profesionales del Derecho o personal bajo supervisión en la oficina legal.

[6] El juicio independiente de una o un fiscal, hecho de buena fe, de que la nueva prueba no es de tal naturaleza como para activar las obligaciones del inciso (c)(2), aunque posteriormente se determine que fue errónea, no constituye una violación a esta regla.

[7] El deber de informar subiste aun cuando la información se obtenga luego de finalizado el cargo. Aun si el o la fiscal o el procurador o la procuradora no ostenta el cargo en el momento en que advenga en conocimiento de la prueba

exculpatoria tiene la responsabilidad de informar al tribunal y/o a la persona convicta.

**REGLA 3.9. LA PERSONA QUE EJERCE LA ABOGACÍA EN PROCESOS NO ADJUDICATIVOS**

> La persona que ejerce la abogacía que representa a una o un cliente ante un foro administrativo o legislativo, en procedimientos no adjudicativos, deberá informar que su comparecencia es en capacidad representativa. Durante esa representación cumplirá con las Reglas 3.3(a) hasta el inciso (c), 3.4(a) hasta el inciso (c) y 3.5.

## COMENTARIOS

[1] Al comparecer ante entidades gubernamentales —como la legislatura, asambleas municipales, agencias gubernamentales y otras entidades similares— para participar en procesos de reglamentación o en la formulación de política pública, la persona que ejerce la abogacía presenta hechos, identifica las controversias y adelanta argumentos sobre los asuntos bajo la consideración de tales entidades. La entidad gubernamental que toma la decisión, como un tribunal, debería poder confiar en la integridad de las representaciones que se le hacen. Una persona que ejerce la abogacía que comparezca ante estas entidades gubernamentales debe actuar con honestidad y en conformidad con las reglas de procedimiento aplicables. Véanse las Reglas 3.3(a) a la (c), 3.4(a) a la (c) y 3.5.

[2] A diferencia de su participación en los foros judiciales, las personas que ejercen la abogacía no tienen la autoridad exclusiva para comparecer ante entidades gubernamentales no adjudicativas. Por lo tanto, los requisitos de esta regla pueden someter a las personas que ejercen la abogacía a reglamentación inaplicable a representantes que no ejercen la abogacía. Aun así, las legislaturas y las agencias administrativas tienen facultad para requerir que las personas que ejercen la abogacía se comporten ante estas de la misma manera que lo hacen ante los tribunales.

[3] Esta regla aplica solo cuando una persona que ejerce la abogacía representa a una o un cliente en relación con una audiencia o reunión oficial con una entidad gubernamental o un cuerpo legislativo ante el cual se presenta prueba o argumentos. No aplica a la representación de una o un cliente en una negociación u otra transacción bilateral con una entidad gubernamental o en relación con una solicitud de licencia u otro privilegio o con el cumplimiento

de la o del cliente con los requisitos generalmente aplicables sobre informes gubernamentales, como la de presentar planillas de impuestos sobre ingresos. Tampoco aplica a la representación de una o un cliente en relación con una investigación o examen sobre asuntos de la o del cliente realizado por investigadores o examinadores del gobierno. La representación en estos asuntos se rige por las Reglas 4.1 a 4.4.

## CAPÍTULO IV: EL TRATO HACIA PERSONAS QUE NO SON CLIENTES

### REGLA 4.1. VERACIDAD EN LAS DECLARACIONES A TERCERAS PERSONAS

Al representar a una o un cliente, la persona que ejerce la abogacía no deberá, a sabiendas:

(a)     hacer una declaración falsa a una tercera persona sobre un hecho sustancial o sobre el Derecho, o

(b)     dejar de divulgar a una tercera persona un hecho sustancial cuando tal divulgación sea necesaria para evitar colaborar con una o un cliente en la comisión de un delito o fraude, a menos que tal divulgación esté prohibida por la Regla 1.6.

## <u>COMENTARIOS</u>

### Representación engañosa

[1] Se requiere que una persona que ejerce la abogacía actúe con honestidad al tratar con otras personas en nombre de la o del cliente, pero, por lo general, no tiene el deber afirmativo de informar hechos relevantes a la parte contraria. Una representación engañosa puede ocurrir si la persona que ejerce la abogacía incorpora o confirma una declaración de otra persona que el abogado o la abogada sabe que es falsa. Las representaciones engañosas también pueden ocurrir por declaraciones parcialmente ciertas u omisiones que son equivalentes a declaraciones afirmativas falsas. Sobre la conducta deshonesta de una persona que ejerce la abogacía que no constituye una declaración falsa o representación engañosa durante el curso de la representación de una o un cliente, véase la Regla 8.4.

## Declaraciones sobre hechos

[2] Esta regla se refiere a declaraciones sobre hechos. Si una declaración particular debe considerarse como una de hechos puede depender de las circunstancias. Según la práctica generalmente aceptada en una negociación, ciertos tipos de declaraciones no se toman de ordinario como declaraciones sobre hechos sustanciales. Los estimados sobre el precio o el valor de algo que es motivo de una transacción y las intenciones de una parte para aceptar una transacción de una reclamación, de ordinario, están en esta categoría, así como la existencia de una relación agente-principal que no se divulga excepto cuando no divulgar este hecho constituiría fraude. Las personas que ejercen la abogacía deben tener en cuenta sus obligaciones según la ley aplicable para evitar representaciones delictivas o torticeras.

## Crimen o fraude por la o el cliente

[3] Bajo la Regla 1.2(d) se prohíbe a una persona que ejerce la abogacía que aconseje o asista a una o un cliente en conducta que la persona que ejerce la abogacía sabe que es criminal o fraudulenta. El inciso (b) establece una aplicación específica del principio instituido en la Regla 1.2(d) y aborda el escenario en que un crimen o fraude cometido por la o el cliente configura una mentira o representación engañosa. Por lo general, una persona que ejerce la abogacía puede evitar ayudar a una o un cliente a cometer un crimen o fraude cuando renuncia a la representación. A veces puede ser necesario que la persona que ejerce la abogacía notifique el hecho de su renuncia y desautorice una opinión, documento, afirmación o algo similar. En casos extremos, la ley puede requerir que una persona que ejerce la abogacía divulgue información relacionada con la representación para evitar que se considere que ayudó en el crimen o fraude cometido por parte de la o del cliente. Si la persona que ejerce la abogacía puede evitar ayudar a cometer un crimen o fraude de una o un cliente solo al divulgar esta información, entonces, según el inciso (b), se requiere que la persona que ejerce la abogacía así lo haga, a menos que la divulgación esté prohibida por la Regla 1.6.

**REGLA 4.2. COMUNICACIÓN CON PERSONAS REPRESENTADAS POR UNA PERSONA QUE EJERCE LA ABOGACÍA**

> La persona que ejerce la abogacía que representa a una o un cliente, o se representa a sí mismo o misma, no deberá comunicarse con otra persona en relación con el asunto objeto de la representación cuando

le consta que esta tiene representación legal para atender el asunto, salvo que cuente con el consentimiento del o de la representante legal o esté autorizada por ley u orden judicial.

Por otro lado, la persona que ejerce la abogacía que represente a un o una cliente en cualquier causa criminal, podrá interrogar o entrevistar a las o los testigos de cargo con anterioridad al juicio, siempre y cuando cuente con la anuencia del (de la) testigo o de los(as) testigos.

**COMENTARIOS**

[1] Esta regla contribuye al funcionamiento correcto del sistema legal al proteger a una persona, que eligió ser representada por un abogado o una abogada en un asunto, contra el posible aprovechamiento por parte de otras personas que ejercen la abogacía que participan en el asunto. Asimismo, evita la interferencia de esas personas que ejercen la abogacía en la relación cliente-abogado o abogada y en contra de la divulgación no consentida de información relacionada con la representación.

[2] Esta regla aplica a las comunicaciones con cualquier persona que esté representada por una persona que ejerce la abogacía en el asunto que es objeto de la comunicación.

[3] La regla aplica aun cuando la persona representada inicie o preste su consentimiento para la comunicación. Una persona que ejerce la abogacía debe finalizar inmediatamente la comunicación con una persona si, después de comenzar la comunicación, la persona que ejerce la abogacía se da cuenta que la comunicación con esa persona está prohibida por esta regla.

[4] Esta regla no prohíbe la comunicación con una persona que tiene representación legal, o con un empleado, una empleada o agente de dicha persona, con respecto a asuntos que no están relacionados con la representación. Por ejemplo, la existencia de una controversia entre una entidad gubernamental y una parte privada, o entre dos organizaciones, no prohíbe que una persona que ejerce la abogacía de una parte se comunique con representantes de la otra parte que no son abogados o abogadas con relación a un asunto distinto. Tampoco impide esta regla la comunicación con una persona representada que busca el consejo de una persona que ejerce la abogacía que no representa a una o un cliente en el asunto. Una persona que ejerce la abogacía no puede, a través de los actos de otra persona, tener una

comunicación prohibida por esta regla. Véase la Regla 8.4(a). Las partes en un asunto pueden comunicarse directamente entre sí, y una o un representante legal no está prohibido de asesorar a una o un cliente respecto a una comunicación que la o el cliente tiene derecho a hacer. Además, se permite que una persona que ejerce la abogacía se comunique con una persona representada cuando tiene una justificación independiente o autorización legal para esto.

[5] Las comunicaciones autorizadas por ley pueden incluir comunicaciones de una persona que ejerce la abogacía en nombre de una o un cliente que ejerce un derecho constitucional u otro derecho para comunicarse con el gobierno. Las comunicaciones autorizadas por ley también pueden incluir actividades de investigación por abogados o abogadas que representen entidades gubernamentales, directamente o a través de agentes investigadores, antes del inicio de procedimientos criminales o civiles. Al comunicarse con la persona acusada en un asunto penal, una o un representante legal del gobierno deberá cumplir con esta regla, además de respetar los derechos constitucionales de la persona acusada. El hecho de que una comunicación no viole un derecho constitucional es insuficiente para establecer que la comunicación está permitida por esta regla.

[6] Una persona que ejerce la abogacía que no está segura de, si una comunicación con una persona que tiene representación legal está permitida, puede solicitar una orden judicial. Una persona que ejerce la abogacía también puede solicitar una orden judicial en circunstancias excepcionales para que se autorice una comunicación que de otra manera estaría prohibida por esta regla, por ejemplo, cuando la comunicación con una persona representada por una persona que ejerce la abogacía es necesaria para evitar algún daño razonablemente cierto.

[7] En el caso de una organización que tiene representación legal, esta regla prohíbe las comunicaciones con una persona constituyente de la organización que supervise, dirija o consulte regularmente con el o la representante legal de la organización con respecto al asunto, o que tiene autoridad para obligar a la organización, o cuyo acto u omisión en relación con el asunto puede imputarse a la organización a los efectos de la responsabilidad civil o penal. El consentimiento del o de la representante legal de la organización no es necesario para la comunicación con una persona que fue constituyente de la organización. Si una persona constituyente de la organización está representada en el asunto por su propio representante legal, el

consentimiento de esa persona que ejerce la abogacía para una comunicación será suficiente para los propósitos de esta regla. Compárese con la Regla 3.4(f). Al comunicarse con un constituyente actual o anterior de una organización, una persona que ejerce la abogacía no debe usar métodos para obtener prueba que violen los derechos de la organización. Véase la Regla 4.4.

[8] La prohibición sobre comunicaciones con una persona representada aplica solo en circunstancias en que la persona que ejerce la abogacía conoce que la persona está, de hecho, representada en el asunto a ser discutido. Esto significa que la persona que ejerce la abogacía tiene conocimiento real del hecho de la representación. Tal conocimiento puede inferirse de las circunstancias. Véase la Regla 1.0(k). Por lo tanto, la persona que ejerce la abogacía no puede evadir el requisito de obtener el consentimiento de la representación legal e ignorar lo obvio.

[9] En caso de que la persona que ejerce la abogacía no sepa que la persona con quien se comunica está representada, tales comunicaciones están sujetas a la Regla 4.3.

### REGLA 4.3. TRATO CON PERSONAS SIN REPRESENTACIÓN LEGAL

Al actuar, en nombre de su cliente, con una persona que no tiene representación legal, la persona que ejerce la abogacía no deberá expresar o implicar que no tiene interés en el asunto. Cuando la persona que ejerce la abogacía conoce, o debe conocer razonablemente, que la persona que no tiene representación en el asunto no entiende la función que tiene la persona que ejerce la abogacía, deberá hacer esfuerzos razonables para corregir el malentendido. Una persona que ejerce la abogacía no deberá ofrecer asesoramiento legal a una persona que no tiene representación legal, excepto aconsejarle que obtenga representación legal, si conoce, o si razonablemente debe conocer, que los intereses de esa persona están en conflicto con los de su cliente o tienen posibilidad razonable de estarlo.

### COMENTARIOS

[1] Una persona que no cuenta con representación legal, particularmente una persona que no tiene experiencia en asuntos legales podría suponer que una persona que ejerce la abogacía no tiene lealtades establecidas o que es una autoridad jurídica imparcial, incluso cuando la persona que ejerce la abogacía

represente a una o un cliente. Para evitar un malentendido, una persona que ejerce la abogacía necesitará típicamente identificar a su cliente y, cuando sea necesario, explicar que la o el cliente tiene intereses opuestos a los de la persona que no cuenta con representación legal. Para los malentendidos que a veces surgen cuando un o una representante legal de una organización trata con uno o una de sus miembros o integrantes que no tiene representación legal, véase la Regla 1.13(f).

[2] La regla distingue entre situaciones que involucran a personas que no tienen representación legal y cuyos intereses pueden ser adversos a los de la o del cliente de la persona que ejerce la abogacía y aquellos en los que los intereses de esa persona no están en conflicto con los de su cliente. En la primera situación, la posibilidad de que la persona que ejerce la abogacía pueda comprometer los intereses de la persona que no tiene representación legal es tan grande que la regla prohíbe dar cualquier consejo, excepto aconsejar que esa persona obtenga la representación de una persona que ejerce la abogacía. Determinar si una persona que ejerce la abogacía ofrece un consejo impermisible puede depender de la experiencia y sofisticación de la persona que no tiene representación legal, así como del entorno en el que se producen la conducta y los comentarios. Esta regla no prohíbe a una persona que ejerce la abogacía negociar los términos de una transacción o transigir una disputa con una persona que no tiene representación legal. Siempre que la persona que ejerce la abogacía haya explicado que representa a una parte contraria y que no representa a la persona con quien se está comunicando, la persona que ejerce la abogacía puede informar a esa persona los términos bajo los cuales su cliente haría un acuerdo o transigiría el asunto, puede preparar documentos que requieran la firma de esa persona y puede explicarle su punto de vista sobre el significado del documento o las obligaciones legales subyacentes.

### REGLA 4.4. RESPETO A LOS DERECHOS DE TERCERAS PERSONAS

(a)    En la representación de su cliente, la persona que ejerce la abogacía no podrá usar medios cuyo propósito principal sea avergonzar, causar dilación, hostigar o ejercer presión indebida a una tercera persona, o usar métodos para obtener prueba que violen los derechos de esa persona.

(b)    La persona que ejerce la abogacía que recibe un documento o información almacenada electrónicamente relacionada con la

representación de su cliente, o que afecte derechos de la otra parte o de terceras personas, y que conoce o debe conocer razonablemente que le fue enviado inadvertidamente, deberá notificarlo prontamente al o a la remitente.

**COMENTARIOS**

[1] La responsabilidad hacia una o un cliente requiere que una persona que ejerce la abogacía subordine los intereses de otras personas ante los de su cliente, pero esa responsabilidad no implica que una persona que ejerce la abogacía pueda ignorar los derechos de terceras personas. No es práctico enumerar todos esos derechos, pero cabe destacar entre estos las restricciones legales sobre métodos para obtener prueba en manos de terceras personas y la interferencia injustificada en relaciones privilegiadas, tales como la relación cliente-abogada o abogado.

[2] El inciso (b) reconoce que las personas que ejercen la abogacía en ocasiones reciben documentos o información almacenada electrónicamente que le fue enviada por error o producida por partes contrarias o por sus representantes legales. Un documento o información almacenada electrónicamente se envía inadvertidamente cuando se transmite accidentalmente, como lo sería un correo electrónico con dirección errónea, o cuando se incluye accidentalmente información almacenada electrónicamente junto a información que es transmitida intencionalmente. Si una persona que ejerce la abogacía conoce o debería conocer razonablemente que ese documento o que la información almacenada electrónicamente se envió inadvertidamente, entonces esta regla requiere que la persona que ejerce la abogacía notifique con prontitud a la persona remitente para permitir que esta persona tome medidas para proteger la información. Si se requiere que la persona que ejerce la abogacía tome medidas adicionales, tales como devolver el documento o borrar la información almacenada electrónicamente, es un asunto legal que está fuera del alcance de estas Reglas, como también lo es si ha renunciado al privilegio del documento o de la información almacenada electrónicamente. De manera similar, esta regla no aborda los deberes legales de una persona que ejerce la abogacía que recibe un documento o información almacenada electrónicamente que conoce o que debe conocer razonablemente que pudo haber sido obtenida de manera inapropiada por la persona que lo envió. A los efectos de esta regla, el "documento o información almacenada electrónicamente" incluye, además de los documentos en papel, el correo electrónico y otros medios de información almacenada electrónicamente,

incluso los datos integrados (comúnmente denominados "metadata"), que están sujetos a ser leídos o convertirse en un medio legible. La metadata en documentos electrónicos crean una obligación bajo esta regla solo si la persona que ejerce la abogacía que recibe el documento conoce o debe conocer razonablemente que la metadata fue enviada inadvertidamente.

[3] Algunas personas que ejercen la abogacía pueden optar por devolver sin leer el documento o borrar la información almacenada electrónicamente, por ejemplo, cuando la persona que ejerce la abogacía se entera antes de recibir el documento que fue enviado inadvertidamente. Cuando una persona que ejerce la abogacía no tenga la obligación legal, la decisión de devolver voluntariamente dicho documento o borrar la información almacenada electrónicamente es un asunto de juicio profesional generalmente reservada a la persona que ejerce la abogacía. Véanse las Reglas 1.2 y 1.4.

## CAPÍTULO V: ASUNTOS RELATIVOS A LA PRÁCTICA DE LA ABOGACÍA Y LAS OFICINAS LEGALES

### REGLA 5.1. RESPONSABILIDADES DE LOS SOCIOS Y LAS SOCIAS Y DE LAS PERSONAS QUE EJERCEN LA ABOGACÍA CON FUNCIONES DE SUPERVISIÓN

(a)     Un socio o una socia de una oficina legal, y una persona que ejerce la abogacía que individualmente o en combinación con otras personas que ejercen la abogacía posee autoridad gerencial comparable en una organización, deberá hacer esfuerzos razonables para lograr que la oficina legal implemente medidas que razonablemente aseguren que los abogados y las abogadas integrantes de la oficina legal cumplan con estas Reglas.

(b)     Una persona que ejerce la abogacía con autoridad para supervisar directamente a otra persona que ejerce la abogacía deberá hacer esfuerzos razonables para garantizar que el abogado o la abogada que supervisa cumpla con estas Reglas.

(c)     Una persona que ejerce la abogacía será responsable por una violación a estas Reglas cometida por otra persona que ejerce la abogacía cuando:

(1)     la persona que ejerce la abogacía ordena tal conducta o, con conocimiento específico de esta, la ratifica, o

(2)     la persona que ejerce la abogacía es socio o socia o posee autoridad gerencial comparable en la organización en la cual ejerce el otro abogado o la otra abogada, o tiene autoridad para supervisarle directamente, y sabe de la conducta cuando sus consecuencias podían evitarse o mitigarse, pero no toma acción razonable para remediar la situación.

**COMENTARIOS**

[1] El inciso (a) aplica a las personas que ejercen la abogacía que tienen autoridad gerencial sobre el trabajo profesional en una oficina legal. Véase la Regla 1.0(v). Esto incluye a las y los miembros de una sociedad, a las y los accionistas en una oficina legal organizada como una corporación profesional, y a las y los miembros de otras organizaciones autorizadas a ejercer la abogacía; personas que ejercen la abogacía con autoridad gerencial comparable en una organización de servicios legales o en un departamento legal de una entidad privada o gubernamental; y personas que ejercen la abogacía que tienen responsabilidades gerenciales intermedias en una oficina legal. El inciso (b) aplica a los abogados y las abogadas que tienen autoridad de supervisión sobre el trabajo de otras personas que ejercen la abogacía en una oficina legal.

[2] El inciso (a) requiere que los abogados y las abogadas con autoridad gerencial dentro de una oficina legal hagan esfuerzos razonables para establecer políticas internas y procedimientos diseñados para proporcionar una seguridad razonable de que todas las personas que ejercen la abogacía en la oficina legal cumplirán con estas Reglas. Tales políticas y procedimientos incluyen aquellas diseñadas para identificar y resolver conflictos de intereses, identificar las fechas en que se debe tomar acción en asuntos pendientes, contabilizar y custodiar los fondos y la propiedad de clientes y cerciorarse de que las personas que ejercen la abogacía con menos experiencia estén supervisadas debidamente.

[3] Otras medidas que pueden requerirse para cumplir con la responsabilidad esbozada en el inciso (a) pueden depender de la estructura de la oficina legal y de la naturaleza de su práctica. En una oficina legal pequeña de abogados experimentados o abogadas experimentadas, la supervisión informal y la revisión periódica del cumplimiento de los sistemas requeridos ordinariamente serán suficientes. En una oficina legal grande, o en situaciones en las que con frecuencia surgen problemas éticos difíciles, pueden ser

necesarias medidas más elaboradas. Por ejemplo, algunas oficinas legales tienen un procedimiento mediante el cual abogados asociados o abogadas asociadas pueden hacer referidos confidenciales de problemas éticos directamente a un socio o una socia principal designada o a un comité especial. Véase la Regla 5.2. Las oficinas legales, ya sean grandes o pequeñas, también pueden confiar en la educación jurídica continua sobre ética profesional. De todos modos, el ámbito ético de una organización puede influir en la conducta de todas y todos sus miembros. Los socios y las socias no pueden suponer que todos los abogados asociados y las abogadas asociadas en la oficina legal cumplirán inevitablemente con estas Reglas.

[4] El inciso (c) expone un principio general de responsabilidad personal por actos de otras y otros profesionales. Véase también la Regla 8.4(a).

[5] El inciso (c)(2) define el deber de un socio, una socia u otra persona que ejerce la abogacía con autoridad gerencial comparable en una oficina legal, así como una persona que ejerce la abogacía que tenga autoridad de supervisión directa sobre el desempeño de un trabajo legal específico por parte de otras personas que ejercen la abogacía. El que una persona que ejerce la abogacía tenga autoridad de supervisión en circunstancias particulares es un asunto de hecho. Los socios y las socias y las personas que ejercen la abogacía con autoridad similar tienen al menos responsabilidad indirecta por todo el trabajo realizado por la oficina legal, mientras que un socio o una socia o un supervisor o una supervisora a cargo de un asunto en particular de ordinario también tiene la responsabilidad de supervisar el trabajo de otras personas que ejercen la abogacía en la oficina legal involucradas en el asunto. Una acción correctiva apropiada por parte de un socio, una socia o de un abogado supervisor o abogada supervisora dependerá de la inmediatez de la participación de esa persona que ejerce la abogacía y de la seriedad de la conducta impropia. Se requiere que un supervisor o una supervisora intervenga para prevenir las consecuencias evitables de la conducta impropia si sabe que la conducta impropia ocurrió. Por lo tanto, si un abogado supervisor o una abogada supervisora sabe que una persona subordinada tergiversó un asunto a una parte contraria en una negociación, tanto el supervisor o la supervisora como el subordinado o la subordinada, tienen el deber de corregir el malentendido.

[6] Una conducta profesional impropia por parte de una persona que ejerce la abogacía bajo supervisión podría revelar una violación del inciso (b) por parte del abogado supervisor o de la abogada supervisora aunque no constituya una

violación del inciso (c) al no haber una directriz, ratificación o conocimiento de la violación.

[7] Aparte de esta regla y la Regla 8.4(a), una persona que ejerce la abogacía no tiene responsabilidad disciplinaria por la conducta de un socio o una socia, asociados o asociadas, subordinado o subordinada. Si una persona que ejerce la abogacía podría ser responsable civil o criminalmente por la conducta de otra persona que ejerce la abogacía es un asunto de Derecho que está fuera del alcance de estas Reglas.

[8] Los deberes impuestos por esta regla a abogados y abogadas con funciones gerenciales y de supervisión no alteran el deber personal de cada persona que ejerce la abogacía en una oficina legal de cumplir con estas Reglas. Véase la Regla 5.2(a).

### REGLA 5.2. RESPONSABILIDADES DE LA PERSONA QUE EJERCE LA ABOGACÍA BAJO SUPERVISIÓN

(a) La persona que ejerce la abogacía tendrá la obligación de cumplir con estas Reglas, aunque actúe bajo la dirección de otra persona.

(b) La persona que ejerce la abogacía bajo supervisión no violará estas Reglas si actúa de conformidad con la solución razonable provista por el abogado o la abogada que le supervisa, en relación con un asunto de responsabilidad profesional debatible.

## COMENTARIOS

[1] Aunque una persona que ejerce la abogacía no queda relevada de responsabilidad por una violación, por el hecho de que actuó bajo la dirección de un supervisor o una supervisora, ese hecho puede ser pertinente para determinar si la persona que ejerce la abogacía tenía el conocimiento necesario para que su conducta constituya una violación de estas Reglas. Por ejemplo, si un subordinado o una subordinada presenta una alegación frívola bajo la dirección de un supervisor o una supervisora, el subordinado o la subordinada no sería culpable de una violación ética a menos que supiera del carácter frívolo del documento.

[2] Cuando las personas que ejercen la abogacía en una relación de supervisión-subordinación manejan un asunto que conlleva hacer un juicio

profesional en cuanto al deber ético, el supervisor o la supervisora puede asumir la responsabilidad de emitir el juicio. De lo contrario, no se podría tomar un curso de acción o postura consistente. Si la pregunta puede ser contestada razonablemente de una sola manera, el deber de ambas personas que ejercen la abogacía es claro y son igualmente responsables de cumplirlo. En cambio, si la pregunta tiene respuestas que son razonablemente debatibles, alguien tiene que decidir sobre el curso de acción. Esa autoridad normalmente descansa en el supervisor o la supervisora, y un subordinado o una subordinada puede ser dirigida de tal forma. Por ejemplo, si surge una duda sobre si los intereses de dos clientes entran en conflicto según la Regla 1.7, la solución razonable de la duda por el supervisor o supervisora debe proteger profesionalmente al subordinado o a la subordinada si la decisión es posteriormente cuestionada.

**REGLA 5.3. RESPONSABILIDADES POR LA CONDUCTA DE ASISTENTES QUE NO SON ABOGADOS O ABOGADAS**

En cuanto a una persona que no es abogada, que sea empleada, contratada o se relacione con una persona que ejerce la abogacía o con la oficina legal:

(a)     un socio o una socia de una oficina legal, y un abogado o abogada que posea autoridad gerencial comparable en la oficina legal, deberá hacer esfuerzos razonables para garantizar que la oficina legal tenga en efecto medidas que aseguren que la conducta de la persona que no es abogada sea compatible con las obligaciones profesionales de la abogacía;

(b)   una persona que ejerce la abogacía con autoridad para supervisar directamente a una persona que no es abogada deberá hacer esfuerzos razonables para asegurar que la conducta de esa persona es compatible con las obligaciones profesionales de la abogacía; y

(c)     una persona que ejerce la abogacía será responsable por la conducta de esa persona que no es abogada si, de haber sido llevada a cabo por la persona que ejerce la abogacía, constituiría una violación de estas Reglas cuando:

(1)     la persona que ejerce la abogacía ordena tal conducta o, con conocimiento específico de esta, la ratifica; o

(2)     la persona que ejerce la abogacía es socio o socia, tiene autoridad gerencial comparable en la oficina legal en la cual la persona que no es abogada fue contratada, o le supervisa directamente, y sabe de la conducta cuando sus consecuencias podían evitarse o mitigarse, pero no toma acción razonable para remediar la situación.

## COMENTARIOS

[1] El inciso (a) requiere que las personas que ejercen la abogacía con autoridad gerencial dentro de una oficina legal realicen esfuerzos razonables para asegurar que la oficina legal disponga de medidas que aseguren razonablemente que quienes no son abogados o abogadas que laboran dentro de la oficina legal, así como las personas que laboran fuera de la oficina legal y trabajan en asuntos de la oficina, actúen de una manera compatible con las obligaciones profesionales de las personas que ejercen la abogacía. Véanse el comentario [6] de la Regla 1.1 (contratar con otras personas que ejercen la abogacía) y el comentario [1] de la Regla 5.1 (responsabilidades de personas que ejercen la abogacía que tienen autoridad gerencial). El inciso (b) aplica a personas que ejercen la abogacía que tienen autoridad de supervisión sobre personas que no son abogadas dentro o fuera de la oficina legal. El inciso (c) especifica las circunstancias en las que una persona que ejerce la abogacía es responsable de la conducta de las personas que no son abogadas dentro o fuera de la oficina legal que constituiría una violación de estas Reglas si fuera llevada a cabo por un abogado o una abogada.

### Integrantes de la oficina legal

[2] Por lo general, las personas que ejercen la abogacía contratan a asistentes en su práctica, lo cual incluye personal administrativo, investigativo, estudiantes de Derecho y paralegales. Este personal asistente, ya sean empleados, empleadas o contratistas independientes, actúan a nombre de la persona que ejerce la abogacía en la prestación de servicios profesionales. Una persona que ejerce la abogacía debe proveer instrucciones y supervisión adecuada a este personal, sobre los aspectos éticos de su trabajo, especialmente con respecto a la obligación de no divulgar información relacionada con la representación de las y los clientes, y debe ser responsable del producto del trabajo de este personal. Las medidas utilizadas para supervisar a las personas que no son abogadas deben considerar el hecho de

que no tienen capacitación legal y no están sujetas a la disciplina profesional de las personas que ejercen la abogacía.

**Personas que no son abogadas y no son integrantes de la oficina legal**

[3] Una persona que ejerce la abogacía puede utilizar a personas que no son abogadas y que no son integrantes de la oficina legal para ayudar en la prestación de servicios legales para una o un cliente. Algunos ejemplos incluyen la contratación de un servicio de investigación o paralegales, contratar una empresa de manejo de documentos para crear y mantener una base de datos para litigios complejos, enviar documentos de su clientela a una tercera persona para imprimir, escanear o digitalizar y usar un sistema basado en el Internet u otro sistema similar para almacenar información de la clientela. Al utilizar tales servicios externos a la oficina legal, una persona que ejerce la abogacía debe hacer todos los esfuerzos razonables para asegurar que los servicios se presten de manera compatible con las obligaciones profesionales de la persona que ejerce la abogacía. El alcance de esta obligación dependerá de las circunstancias, incluida la educación, la experiencia y la reputación de las personas que no son abogadas; la naturaleza de los servicios a prestar; los términos de cualquier acuerdo relacionado con la protección de la información de la o del cliente; y los entornos legales y éticos de la jurisdicción en la cual se realizarán los servicios, particularmente con respecto al deber de confidencialidad. Véanse también las Reglas 1.1 (competencia), 1.2 (alcance de la representación), 1.4 (comunicación con la o el cliente), 1.6 (confidencialidad), 5.4(a) (independencia profesional de la persona que ejerce la abogacía) y 5.5(a) (práctica no autorizada de la abogacía). Al contratar o dirigir a una persona externa que no es abogada, una persona que ejerce la abogacía debe comunicar las instrucciones que sean apropiadas bajo las circunstancias para dar una seguridad razonable de que la conducta de la persona que no es abogada es compatible con las obligaciones profesionales de la persona que ejerce la abogacía.

[4] Cuando la o el cliente dirige la selección de un proveedor de servicios particular que es un no abogado o no abogada que no forma parte de la oficina legal, la persona que ejerce la abogacía debe generalmente pactar con la o el cliente la distribución de la responsabilidad de la supervisión entre la o el cliente y la persona que ejerce la abogacía. Véase la Regla 1.2. Al hacer tal distribución en un asunto pendiente ante un tribunal, las personas que ejercen la abogacía y las partes podrían tener obligaciones adicionales que son un asunto de Derecho que va más allá del alcance de estas Reglas.

**REGLA 5.4. INDEPENDENCIA PROFESIONAL DE LA PERSONA QUE EJERCE LA ABOGACÍA**

(a)     Una persona que ejerce la abogacía o una oficina legal no compartirá honorarios con otra persona que no esté autorizada a ejercer la abogacía, excepto que:

(1)     podrá suscribir un acuerdo con su oficina legal, socios o socias, asociados o asociadas para disponer el pago de dinero a su sucesión o a otras personas en particular durante un periodo de tiempo razonable luego de su fallecimiento;

(2)     podrá comprar la práctica profesional de un abogado fallecido o una abogada fallecida, declarado o declarada incapaz o ausente judicialmente, conforme a las disposiciones de la Regla 1.17, mediante el pago del precio de compra acordado a la sucesión o a otro u otra representante de ese abogado o esa abogada;

(3)     podrá incluir a empleados y empleadas que no son abogados o abogadas en un plan de compensación o retiro, aunque el plan se base, en todo o en parte, en un acuerdo de participación y distribución de beneficios;

(4)     podrá compartir honorarios concedidos por un tribunal con una organización sin fines de lucro que le contrate, emplee o recomiende para atender el asunto; y

(5)     podrá compartir dividendos con un propietario o una propietaria que no sea un abogado o una abogada en una oficina legal siempre que cumpla con el inciso (b) de esta regla.

(b)     Una persona que ejerce la abogacía podrá practicar en una oficina legal en la que una participación social sea propiedad de una persona que no ejerce la abogacía solo si:

(1) la oficina legal prevé el cumplimiento colectivo de la responsabilidad de prestar servicios legales gratuitos a las personas indigentes;

(2) toda persona que posea un derecho de propiedad en una oficina legal y no ejerza la abogacía, deberá asegurarse de que dicha oficina sea operada solo por una persona admitida a la profesión legal en Puerto Rico. A su vez, esta persona que ejerce la abogacía, deberá representar al propietario o a la propietaria que no ejerce la abogacía, en el ejercicio de todo derecho relacionado con el voto, y en todos los demás asuntos relacionados con la oficina legal. Además, velará que se cumpla con las reglas de responsabilidad profesional y que, se notifique al Tribunal Supremo una vez comience el acuerdo. El 15 de enero de cada año, debe presentar ante el Secretario o la Secretaria del Tribunal Supremo de Puerto Rico una declaración jurada que detalle, el número de personas abogadas que componen la oficina legal, las fechas y los montos de todas las inversiones realizadas por el propietario o la propietaria que no ejerce la abogacía, y las ganancias recibidas por él o ella durante el año calendario anterior;

(3) ni el propietario o la propietaria que no ejerce la abogacía, ni ningún agente designado por este o esta, desempeñará el ejercicio no autorizado de la abogacía, provisto además que el único valor proporcionado por el propietario o la propietaria que no ejerce la abogacía a cambio de su participación en la propiedad de la oficina legal es dinero, por lo que ni el propietario ni la propietaria, ni ningún agente suyo podrán proporcionar algún servicio a la oficina legal, incluso, pero sin limitarse a, servicios de mercadeo, en relación con la oficina legal;

(4) no habrá interferencia por parte del propietario o de la propietaria que no ejerce la abogacía con la independencia del juicio profesional de la persona que ejerce la abogacía o con la relación cliente-abogado o abogada;

(5) la información relacionada con la representación de un o una cliente está protegida según lo exigido por la Regla 1.6;

(6) el acuerdo dispuesto en el inciso (2) no contraviene la Regla 1.5;

(7) la persona que ejerce la abogacía informa al o a la cliente que una participación social en la oficina legal pertenece a una persona que no ejerce la abogacía; y

(8) los propietarios o las propietarias que no ejercen la abogacía adquieren una participación que no exceda el 49% de las acciones de la oficina legal.

(c)      Una persona que ejerce la abogacía no permitirá que una persona que le recomienda, le emplea o le paga por prestar servicios legales a otra persona, dirija o controle su juicio profesional al prestar estos servicios.

(d)      El Tribunal Supremo hará una evaluación de la efectividad de lo dispuesto en el inciso (b) de esta regla no más tarde de tres años luego de entrar en vigor.

## COMENTARIOS

[1] Las disposiciones de esta regla reiteran las limitaciones conocidas sobre compartir honorarios. Estas limitaciones protegen el juicio profesional independiente de la persona que ejerce la abogacía. Cuando alguien que no es su cliente paga los honorarios o el salario de la persona que ejerce la abogacía, o recomienda la contratación de la persona que ejerce la abogacía, ese acuerdo no modifica la obligación de la persona que ejerce la abogacía hacia su cliente. Según se indica en el inciso (c), estos acuerdos no deben interferir con el juicio profesional de la persona que ejerce la abogacía.

[2] Esta regla expresa las limitaciones conocidas que están relacionadas con permitir que una tercera persona dirija o limite el juicio profesional de la persona que ejerce la abogacía al prestar servicios legales. Véase también la Regla 1.8(f).

**REGLA 5.5. PRÁCTICA NO AUTORIZADA DE LA ABOGACÍA; PRÁCTICA MULTIJURISDICCIONAL DE LA ABOGACÍA**

(a)      Un abogado o una abogada no ejercerá ni colaborará para que otro abogado u otra abogada ejerza la profesión jurídica en otra jurisdicción cuando esto contravenga la reglamentación de la profesión jurídica en esa jurisdicción.

(b)     Una persona no admitida a la práctica de la abogacía en esta jurisdicción no podrá:

>   (1)     establecer una oficina o cualquier otra presencia continua y sistemática para ejercer la abogacía en Puerto Rico, a menos que esté autorizada por estas Reglas o por alguna ley, o

>   (2)     hacer creer al público o aparentar de cualquier manera que puede ejercer la abogacía en Puerto Rico.

(c)     Cualquier persona admitida a ejercer la abogacía en una jurisdicción de Estados Unidos, y que no esté suspendida o separada de la práctica de la abogacía en alguna de sus jurisdicciones, podrá proveer servicios legales en Puerto Rico de forma temporal, siempre que:

>   (1)     sus servicios se ofrezcan en asociación con una abogada admitida o un abogado admitido a la práctica de la abogacía en Puerto Rico y quien participa activamente en el asunto;

>   (2)     sus servicios estén relacionados razonablemente con un procedimiento pendiente o potencial ante un tribunal en Puerto Rico u otra jurisdicción, si el abogado o la abogada con la que colabora está autorizada por ley u orden judicial a comparecer en ese procedimiento;

>   (3)     sus servicios estén relacionados razonablemente con un procedimiento pendiente o potencial de arbitraje, mediación u otro método alterno para resolver un conflicto en esta u otra jurisdicción, si los servicios surgen o están relacionados razonablemente con la práctica de dicha persona que ejerce la abogacía en una jurisdicción en la cual está admitido o admitida y no son servicios para los cuales el tribunal requiere admisión por cortesía; o

>   (4)     sus servicios no queden comprendidos en los incisos (c)(2) o (c)(3) y surjan de, o estén relacionados razonablemente con, la práctica de dicha persona que ejerce la abogacía en una jurisdicción en la cual está admitido o admitida.

(d)     Una abogada admitida o un abogado admitido a ejercer en una jurisdicción de Estados Unidos, o en una jurisdicción extranjera, que no esté desaforado o desaforada, o su equivalente para ejercer en alguna jurisdicción, o una persona que de otro modo practique legalmente como abogado interno o abogada interna (*in-house counsel*) bajo las leyes de una jurisdicción extranjera, puede proveer servicios legales desde una oficina u otra presencia sistemática y continua en esta jurisdicción siempre que:

> (1)     se provean al patrono de la persona que ejerce la abogacía o a alguna de sus organizaciones afiliadas; no sean servicios para los cuales el foro requiere admisión por cortesía; y, cuando se lleven a cabo por una abogada o abogado extranjero y se requiera asesoramiento sobre el Derecho de esta u otras jurisdicciones o de los Estados Unidos, tal asesoramiento se base en el consejo legal de un abogado o una abogada que esté debidamente admitido o admitida y autorizada por dicha jurisdicción para proveer tal asesoramiento; o

> (2)     sean servicios que la persona que ejerce la abogacía esté autorizada a proveer bajo ley federal u otra ley en esta jurisdicción.

(e)     Para propósitos del subinciso (d):

> (1)     una abogada o un abogado extranjero debe estar al día y en cumplimiento con los requisitos de la profesión legal reconocida por dicha jurisdicción extranjera, cuyos miembros estén admitidos o admitidas a ejercer como abogado, abogada, consejero o consejera legal o su equivalente, y estén sujetos o sujetas a la reglamentación efectiva y disciplinaria de un cuerpo profesional debidamente constituido o de una autoridad pública; o

> (2)     la persona que de otro modo ejerza legalmente como abogada o abogado interno (*in-house counsel*) bajo las leyes de una jurisdicción extranjera debe estar autorizada por el Tribunal Supremo de Puerto Rico, en el ejercicio de su discreción, para ejercer bajo esta regla.

(f)     Una abogada admitida o un abogado admitido a ejercer la abogacía en una jurisdicción de Estados Unidos, o en una jurisdicción extranjera, que esté presente físicamente en Puerto Rico, podrá trabajar remotamente desde la jurisdicción de Puerto Rico, sin que se entienda que por esto incurre en práctica no autorizada de la profesión en nuestra jurisdicción, siempre que:

(1)     los servicios legales del abogado o la abogada se limiten a los que está autorizado o autorizada a realizar por la jurisdicción en la cual está admitido o admitida, y

(2)     la persona que ejerce la abogacía no afirme, aparente o haga creer al público que es un abogado o una abogada de Puerto Rico o que está autorizado o autorizada a ejercer la abogacía en Puerto Rico.

(g)     No se podrá practicar la notaría en Puerto Rico sin la autorización del Tribunal Supremo. Ninguna persona admitida al ejercicio de la notaría en Puerto Rico colaborará para que otras personas ejerzan la notaría sin autorización. Se prohíbe permitir o facilitar el que una persona o entidad que no esté autorizada a ejercer la notaría cobre total o parcialmente por los servicios profesionales prestados por las personas admitidas a ejercer la notaría en Puerto Rico. Esas personas tampoco se unirán en sociedad con alguien que no ha sido autorizada o autorizado a ejercer la notaría cuando alguna de las actividades de la sociedad se relaciona con la función notarial.

## **COMENTARIOS**

[1] Un abogado o una abogada puede ejercer la abogacía en Puerto Rico cuando cuente con la autorización del Tribunal Supremo de Puerto Rico. Un abogado o una abogada puede ser admitido o admitida a ejercer la abogacía en una jurisdicción de manera regular o puede ser autorizado o autorizada por una regla judicial u orden o por una ley para ejercer con un propósito limitado o restringido. El inciso (a) aplica a la práctica no autorizada de la abogacía por un abogado o una abogada, ya sea a través de su acción directa o mediante ayuda a otra persona a ejercerla. Por ejemplo, un abogado o una abogada no

puede ayudar a que una persona practique la abogacía en violación de las normas que rigen la conducta profesional en la jurisdicción de esa persona.

[2] Esta regla no prohíbe que una persona que ejerce la abogacía emplee a paraprofesionales y les delegue funciones, siempre y cuando la persona que ejerce la abogacía supervise el trabajo delegado y sea responsable de su trabajo. Véase la Regla 5.3. Paraprofesional es una persona a quien se le delega un aspecto particular de una tarea profesional, pero que no tiene licencia para ejercer como un o una profesional completamente calificado.

[3] Una persona que ejerce la abogacía puede proveer asesoramiento profesional e instruir a personas que no son abogadas y cuyo empleo requiere el conocimiento de la ley y del Derecho; por ejemplo, ajustadores de seguros, personal de instituciones financieras o comerciales, trabajadoras y trabajadores sociales, contadores y contadoras y personas empleadas en entes gubernamentales. Además, una persona que ejerce la abogacía puede aconsejar a quienes, sin ser abogados o abogadas, desean representarse por derecho propio.

[4] Fuera de lo autorizado por la ley o por esta regla, un abogado o una abogada que no está admitido o admitida a ejercer en Puerto Rico viola el subinciso (b)(1) si establece una oficina u otra presencia sistemática y continua para ejercer la abogacía. La presencia puede ser sistemática y continua incluso si el abogado o la abogada no está físicamente presente en Puerto Rico. Tal abogado o abogada no se debe anunciar ante el público ni representar que está admitido o admitida a ejercer la abogacía en Puerto Rico. Véase también la Regla 7.1.

[5] Hay ocasiones en que una abogada admitida o un abogado admitido a ejercer en una jurisdicción de los Estados Unidos, y que no esté desaforado o suspendido en alguna jurisdicción, puede proveer servicios legales de manera temporal en Puerto Rico bajo circunstancias que no creen un riesgo irrazonable para los intereses de sus clientes, el público o los tribunales. El inciso (c) identifica cuatro de esas circunstancias. El hecho de que una conducta no esté identificada no implica que tal conducta esté o no autorizada. Para esto, se evaluará si tal conducta se ajusta a los parámetros establecidos en esta regla. Excepto lo dispuesto en los subincisos (d)(1) y (d)(2), esta regla no autoriza a un abogado o a una abogada estadounidense o del extranjero a establecer una oficina u otra presencia sistemática y continua en Puerto Rico sin que haya sido admitido o admitida a la práctica de la abogacía por el

Tribunal Supremo de Puerto Rico, de conformidad con la reglamentación aplicable para las admisiones por cortesía o *pro hac vice* en esta jurisdicción.

[6] No existe una prueba particular para determinar si los servicios de un abogado o una abogada se prestan de manera "temporal" en Puerto Rico y, por lo tanto, están permitidos según el inciso (c). Los servicios pueden ser "temporales" a pesar de que el abogado o la abogada preste servicios de manera recurrente en Puerto Rico, o por un periodo prolongado, como cuando el abogado o la abogada representa a una o un cliente en una negociación extensa o un litigio complejo.

[7] Los incisos (c) y (d) aplican a abogados o abogadas que son admitidos o admitidas a ejercer la abogacía en cualquier jurisdicción de los Estados Unidos, que incluye el Distrito de Columbia y cualquier estado, territorio o posesión de los Estados Unidos. El inciso (d) también aplica a abogados admitidos o abogadas admitidas en una jurisdicción extranjera. La palabra "admitido o admitida" en los incisos (c), (d), (e) y (f) contempla que el abogado o la abogada está autorizado o autorizada a ejercer en la jurisdicción en la que el abogado o la abogada está admitido o admitida y excluye a un abogado o a una abogada que, aunque esté técnicamente admitido o admitida, no cuenta con autorización porque, por ejemplo, está inactivo o inactiva.

[8] El subinciso (c)(1) reconoce que los intereses de la clientela y el público están protegidos si un abogado admitido o una abogada admitida en otra jurisdicción se asocia con un abogado o una abogada con licencia para ejercer en Puerto Rico. Sin embargo, este subinciso requiere que el abogado admitido o la abogada admitida a ejercer en Puerto Rico debe participar activamente y compartir la responsabilidad por la representación de la o del cliente.

[9] Los abogados y las abogadas que no cuenten con admisión para ejercer en Puerto Rico pueden ser autorizados o autorizadas por ley u orden de un tribunal para comparecer ante un foro judicial o administrativo. Esta autoridad puede concederse de conformidad con las reglas formales que rigen la admisión por cortesía o *pro hac vice* a la abogacía. En la medida en que una regla judicial u otra ley de esta jurisdicción requiera que un abogado o abogada que no esté admitido o admitida a ejercer en Puerto Rico obtenga la admisión por cortesía o *pro hac vice* antes de comparecer ante un tribunal o entidad gubernamental, esta regla requiere que la persona que ejerce la abogacía obtenga esa autorización.

[10] El subinciso (c)(3) permite que un abogado admitido o una abogada admitida a ejercer la abogacía en una jurisdicción realice servicios de manera temporal en esta jurisdicción si estos servicios se prestan o están razonablemente relacionados con un arbitraje, una mediación u otro método alterno de solución de conflictos, pendiente o potencial, en esta u otra jurisdicción, si los servicios surgen o están relacionados razonablemente con la práctica del abogado o de la abogada en una jurisdicción en la que está admitido o admitida a ejercer la abogacía. La persona que ejerce la abogacía, sin embargo, debe obtener la admisión por cortesía o *pro hac vice* en un caso de arbitraje o mediación que está relacionado con un litigio o si las reglas del tribunal o la ley así lo requieren.

[11] El subinciso (c)(4) permite que un abogado admitido o una abogada admitida en otra jurisdicción brinde ciertos servicios legales de manera temporal en Puerto Rico que surjan o estén razonablemente relacionados con la práctica del abogado o de la abogada en la jurisdicción en la que está admitido o admitida, pero que no está comprendido en los subincisos (c)(2) o (c)(3). Estos servicios incluyen tanto servicios legales como servicios que quienes no son abogados o abogadas pueden prestar, pero que se consideran práctica legal cuando los realizan abogados o abogadas.

[12] Los subincisos (c)(3) y (c)(4) requieren que los servicios surjan de, o estén razonablemente relacionados con, la práctica del abogado o de la abogada en una jurisdicción en la que está admitido o admitida. Una variedad de factores evidencia tal relación. La o el cliente de la abogada o del abogado puede haber sido representado anteriormente por el abogado o la abogada, o puede ser residente o tener contactos sustanciales con la jurisdicción en la que la abogada o el abogado está admitido. El asunto, aunque involucre a otras jurisdicciones, puede tener un nexo sustancial con esa jurisdicción. En otros casos, aspectos sustanciales del trabajo del abogado o de la abogada pueden llevarse a cabo en esa jurisdicción o un aspecto sustancial del asunto puede involucrar la ley de la jurisdicción. La relación necesaria puede surgir cuando las actividades de la o del cliente o los asuntos legales involucran jurisdicciones múltiples, como cuando los funcionarios o las funcionarias de una corporación multinacional evalúan mercados comerciales potenciales y buscan los servicios de su representante legal para evaluar los méritos relativos de cada mercado. Además, los servicios pueden involucrar la experiencia reconocida del abogado o la abogada desarrollada mediante la práctica regular de la abogacía en nombre de las y los clientes en asuntos que

involucran un cuerpo particular de leyes federales, leyes uniformes, o leyes extranjeras o internacionales.

[13] El inciso (d) identifica dos circunstancias en las cuales un abogado o una abogada que es admitido o admitida a ejercer en una jurisdicción de los Estados Unidos o una jurisdicción extranjera, y no está desaforado o desaforada, o su equivalente, de la práctica en cualquier jurisdicción puede establecer una oficina u otra presencia sistemática y continua en esta jurisdicción para la práctica de la abogacía. De conformidad con el inciso (c) de esta regla, un abogado admitido o una abogada admitida en cualquier jurisdicción de los Estados Unidos puede proveer también servicios legales en Puerto Rico de manera temporal. Se aclara que salvo lo dispuesto en los subincisos (d)(1), (d)(2) y (f), un abogado o una abogada que esté admitido o admitida a ejercer la abogacía en una jurisdicción de los Estados Unidos o en el extranjero y que establezca una oficina u otra presencia sistemática o continua en una jurisdicción debe solicitar admisión a la práctica de la abogacía en Puerto Rico.

[14] El subinciso (d)(1) aplica a un abogado estadounidense o extranjero, o a una abogada estadounidense o extranjera, que es empleado o empleada por una o un cliente para proveer servicios legales a su patrono o a sus afiliadas, es decir, organizaciones que controlan, están controladas por, o están bajo control común con el patrono. Este subinciso no autoriza a proveer servicios legales personales a los funcionarios o, funcionarias, empleados o empleadas del patrono. El subinciso aplica a abogados o abogadas corporativas internas (*in-house counsel*), abogados o abogadas del gobierno y otros empleados o empleadas que se contraten para prestar servicios legales al patrono. La capacidad de la persona que ejerce la abogacía para representar al patrono fuera de la jurisdicción en la que el abogado o la abogada tiene licencia sirve generalmente a los intereses del patrono y no crea un riesgo irrazonable para otros porque el patrono está capacitado para evaluar las calificaciones de la persona que ejerce la abogacía y la calidad de su trabajo. Para disminuir aún más cualquier riesgo para el patrono-cliente, al asesorar sobre el Derecho de Puerto Rico o de los Estados Unidos, el abogado extranjero o la abogada extranjera autorizada para practicar según el subinciso (d)(1) de esta regla debe basar su asesoramiento en el consejo legal de un abogado o una abogada que esté admitido o admitida a ejercer en Puerto Rico.

[15] Si una persona que ejerce la abogacía establece una oficina legal u otra presencia sistemática en Puerto Rico con el fin de prestar servicios legales a

su patrono, el abogado o la abogada puede estar sujeto o sujeta a la reglamentación establecida por el Tribunal Supremo de Puerto Rico.

[16] El subinciso (d)(2) reconoce que un abogado admitido o una abogada admitida en alguna jurisdicción de Estados Unidos o un abogado extranjero o una abogada extranjera puede proveer servicios legales en Puerto Rico cuando está autorizado o autorizada por alguna ley federal o por otra ley, incluida la reglamentación del Tribunal Supremo de Puerto Rico.

[17] Un abogado o una abogada que ejerce la abogacía en Puerto Rico conforme a los incisos (c) o (d) está sujeto o sujeta a la autoridad disciplinaria del Tribunal Supremo de Puerto Rico. Véase la Regla 8.5(a).

[18] En algunas circunstancias, un abogado o una abogada que ejerce la abogacía en Puerto Rico en virtud de los incisos (c) o (d) podría tener que informar a la o el cliente que el abogado o la abogada no tiene licencia para ejercer la abogacía en Puerto Rico. Por ejemplo, eso puede ser necesario cuando la representación se produce principalmente en Puerto Rico y requiere el conocimiento del Derecho puertorriqueño. Véase la Regla 1.4(b).

[19] Los incisos (c) y (d) no autorizan los anuncios de servicios legales en Puerto Rico por parte de abogados o abogadas que están admitidos a ejercer en otras jurisdicciones. La manera en que las personas que ejercen la abogacía pueden comunicar la disponibilidad de sus servicios en Puerto Rico se rige por las Reglas 7.1 a 7.3.

[20] Una abogada admitida o un abogado admitido a ejercer la abogacía en otra jurisdicción, pero no en Puerto Rico, no incurrirá en práctica no autorizada de la profesión en nuestra jurisdicción cuando, mientras está físicamente en Puerto Rico, conduce su práctica de manera remota y cumple con las condiciones del inciso (f). En estos casos, la presencia del abogado o la abogada en Puerto Rico no tiene el propósito de ejercer la profesión, sino que es incidental.

**REGLA 5.6. RESTRICCIONES AL EJERCICIO DE LA ABOGACÍA**

Una persona que ejerce la abogacía no podrá participar en el ofrecimiento o la constitución de:

(a)    un acuerdo de sociedad, de accionistas, de operación, de empleo u otro similar que restrinja el derecho de una abogada o un abogado a ejercer la abogacía una vez termine esa relación, excepto que se trate de un acuerdo sobre beneficios de retiro, o

(b)    un acuerdo transaccional que ponga fin a la controversia de su cliente en el cual se incluya una restricción al derecho del abogado o de la abogada a ejercer la abogacía.

**COMENTARIOS**

[1] Un acuerdo que restringe el derecho de los abogados o las abogadas a ejercer luego de abandonar una oficina legal no solo limita su autonomía profesional, sino que también limita la libertad de las y los clientes para seleccionar su representación legal. El inciso (a) prohíbe estos acuerdos, con excepción de las restricciones relacionadas con las disposiciones relativas a los beneficios de jubilación o retiro por los servicios prestados a la oficina legal.

[2] El inciso (b) prohíbe que una persona que ejerce la abogacía acepte no representar a otras personas como parte de la transacción de una reclamación en nombre de una o un cliente.

[3] Esta regla no aplica a las prohibiciones o restricciones que pueden incluirse en los acuerdos de la venta de una práctica legal de conformidad con la Regla 1.17.

**REGLA 5.7. RESPONSABILIDAD POR SERVICIOS RELACIONADOS CON LA ABOGACÍA**

(a)    Un abogado o una abogada deberá cumplir con estas Reglas cuando ofrezca servicios relacionados con la práctica de la abogacía, según se definen en el inciso (b) de esta regla, si estos servicios se proveen:

(1)    por la persona que ejerce la abogacía en circunstancias que no se diferencian de los servicios legales que provee a sus clientes, o

(2)    en otras circunstancias —ya sea individualmente, a través de una organización controlada por la persona que ejerce

la abogacía, o en combinación con otras personas que ejercen la abogacía— si el abogado o la abogada no toma las medidas razonables para asegurarse de que la persona que recibe tales servicios relacionados con la práctica de la abogacía sepa que estos no constituyen servicios legales y no existen las protecciones aplicables a la relación cliente-abogado o abogada.

(b)    El término "servicios relacionados con la práctica de la abogacía" se refiere a los servicios que pueden ofrecerse razonablemente en conjunto y están relacionados sustancialmente con la prestación de servicios legales, y que no constituyen una práctica ilegal de la abogacía cuando son provistos por una persona que no está admitida a ejercer la abogacía.

**COMENTARIOS**

[1] Cuando un abogado o una abogada lleva a cabo servicios relacionados con la abogacía o controla una organización que lo hace, existe el potencial de que surjan problemas éticos. El principal de estos es la posibilidad de que la persona para quien se prestan los servicios relacionados con la abogacía no comprenda que los servicios pueden no conllevar las protecciones ofrecidas usualmente como parte de la relación cliente-abogado o abogada. La persona beneficiaria de los servicios relacionados con la abogacía puede esperar, por ejemplo, que la protección de las confidencias, las prohibiciones contra la representación de personas con intereses encontrados y las obligaciones del abogado o de la abogada de mantener la independencia profesional apliquen a la prestación de servicios relacionados con la abogacía cuando puede que ese no sea el caso.

[2] La Regla 5.7 aplica a la prestación de servicios relacionados con la abogacía por parte de un abogado o una abogada, incluso cuando el abogado o la abogada no proporciona ningún servicio legal a la persona para quien se realizan los servicios e independientemente de si estos se realizan a través de una oficina legal de personas que ejercen la abogacía o una organización separada. La regla identifica las circunstancias en las cuales todas estas Reglas aplican a la prestación de servicios relacionados con la abogacía. Sin embargo, aun cuando esas circunstancias no existan, la conducta de un abogado o de una abogada involucrada en la prestación de servicios relacionados con la abogacía está sujeta a las reglas que aplican generalmente a la conducta de un

abogado o una abogada, independientemente de si la conducta implica la prestación de servicios legales. Véase, por ejemplo, la Regla 8.4.

[3] Cuando los servicios relacionados con la abogacía se brindan en circunstancias que no son distintas a la prestación de servicios legales a sus clientes, el abogado o la abogada que provee dichos servicios relacionados con la abogacía tiene que cumplir con los requisitos de estas Reglas según dispuesto en el subinciso (a)(1). Aun cuando los servicios relacionados con la abogacía y los servicios legales se prestan en circunstancias que son distintas entre sí, por ejemplo, mediante organizaciones separadas o personal de apoyo diferente dentro de la oficina legal, estas Reglas aplican a la persona que ejerce la abogacía según lo dispuesto en el subinciso (a)(2), a menos que la persona que ejerce la abogacía tome medidas razonables para garantizar que la o el cliente de los servicios relacionados con la abogacía conozca que estos no son servicios legales y que las protecciones de la relación cliente-abogado o abogada no aplican.

[4] Los servicios relacionados con la abogacía también pueden proveerse a través de una organización que sea distinta de la que la persona que ejerce la abogacía usa al brindar servicios legales. Si la persona que ejerce la abogacía, individualmente o con otras personas, tiene el control de las operaciones de dicha organización, la regla requiere que el abogado o la abogada tome medidas razonables para garantizar que cada persona que use los servicios de la organización conozca que los servicios provistos por la organización no son servicios legales y que las reglas referentes a la relación cliente-abogado o abogada no aplican. El control de una organización por una persona que ejerce la abogacía se extiende a la capacidad de dirigir su operación. Determinar si una persona que ejerce la abogacía tiene tal control dependerá de las circunstancias de cada caso en particular.

[5] Cuando existe una relación cliente-abogado o abogada con una persona que es referida por un abogado o una abogada a una organización separada de servicios relacionados con la abogacía que es controlada por el abogado o la abogada, individualmente o con otras personas, la persona que ejerce la abogacía debe cumplir con la Regla 1.8(a).

[6] Al tomar las medidas razonables incluidas en el subinciso (a)(2), dirigidas a garantizar que una persona que utiliza servicios relacionados con la abogacía entienda el efecto práctico o la importancia de la inaplicabilidad de estas Reglas, la persona que ejerce la abogacía debería comunicar a la persona que

recibe los servicios referentes a la abogacía que la relación de la persona con la organización no será una relación cliente-abogado o abogada. La comunicación debe ser suficiente para asegurar que la persona comprende este hecho. Además, debe hacerse antes de concretarse un acuerdo para la prestación de servicios relacionados con la abogacía y, preferiblemente, por escrito.

[7] El peso recae sobre la persona que ejerce la abogacía para demostrar que tomó medidas razonables bajo las circunstancias para comunicar el entendimiento deseado. Por ejemplo, un usuario sofisticado de servicios relacionados con la abogacía, tal como una corporación, puede requerir una explicación menor que alguien no acostumbrado a hacer distinciones entre servicios legales y servicios relacionados con la abogacía, como por ejemplo una persona que busca asesoramiento contributivo de una persona que ejerce la abogacía y la contabilidad o servicios de investigación relacionados con un pleito.

[8] Independientemente de la sofisticación de las y los clientes potenciales de los servicios relacionados con la abogacía, un abogado o una abogada debe tener especial cuidado para mantener separada la prestación de servicios legales y la de servicios relacionados con la abogacía a fin de minimizar el riesgo de que la o el cliente presuma que los servicios relacionados con la abogacía son servicios legales. El riesgo de tal confusión es especialmente grave cuando la persona que ejerce la abogacía presta ambos tipos de servicios con respecto a un mismo asunto. En algunas circunstancias, los servicios legales y los servicios relacionados con la abogacía pueden estar tan estrechamente entrelazados que no pueden distinguirse entre sí, y el requisito de divulgación y consulta impuesto por el subinciso (a) (2) de la regla no pueda cumplirse. En tal caso, una persona que ejerce la abogacía será responsable de garantizar que su conducta y, en la medida en que es requisito de la Regla 5.3, la de sus empleados o empleadas que no sean abogados o abogadas en la organización que el abogado o la abogada controla, cumplan en todos los aspectos con estas Reglas.

[9] Una amplia gama de intereses económicos y otros intereses de los o las clientes pueden ser atendidos por abogados o abogadas que participan en la prestación de servicios relacionados con la abogacía. Ejemplos de servicios relacionados con la abogacía son proveer seguro de título, servicio de planificación financiera o de contabilidad, asesoramiento sobre fideicomisos, asesoramiento inmobiliario, cabildeo legislativo, análisis económico, trabajo

social, asesoramiento psicológico, preparación de planillas de contribuciones sobre ingresos y consultoría sobre patentes, servicios médicos o asuntos ambientales.

[10] Cuando una persona que ejerce la abogacía está obligada a otorgar a los destinatarios de dichos servicios las protecciones de estas Reglas que aplican a la relación cliente-abogado o abogada, el abogado o la abogada debe tener un cuidado especial para seguir los requisitos de las reglas que regulan los conflictos de intereses (Reglas 1.7 a 1.11, especialmente las Reglas 1.7(a)(2) y 1.8(a), (b) y (f)), y para cumplir escrupulosamente con los requisitos de la Regla 1.6 relacionados con la divulgación de información confidencial. La publicidad sobre los servicios relacionados con la abogacía también debe, en todos los aspectos, cumplir con las Reglas 7.1 a 7.3. De esta manera, las personas que ejercen la abogacía deben tener un cuidado particular para identificar las obligaciones impuestas como resultado de la jurisprudencia aplicable en Puerto Rico.

[11] Cuando las protecciones de estas Reglas no aplican a la prestación de servicios relacionados con la práctica de la abogacía, los principios legales ajenos a estas Reglas, por ejemplo, el concepto del principal y el agente, rigen los deberes legales que se deben a quienes reciben los servicios. Esos otros principios legales pueden establecer un grado diferente de protección para la persona destinataria con respecto a la confidencialidad de la información, los conflictos de intereses y las relaciones comerciales permisibles con los clientes. Véase también la Regla 8.4.

## CAPÍTULO VI: LOS DEBERES DE LAS PERSONAS QUE EJERCEN LA ABOGACÍA CON LA SOCIEDAD

### REGLA 6.1. SERVICIO *PRO BONO* VOLUNTARIO

Cada persona que ejerce la abogacía tiene la responsabilidad profesional de proveer servicios legales a quienes no tienen capacidad de pagarlos. Al descargar esta responsabilidad, deberá:

(a) proveer un número razonable de horas de sus servicios profesionales gratuitamente o sin expectativa de pago a:

(1) personas de recursos económicos limitados; u

(2) organizaciones caritativas, religiosas, cívicas, comunitarias, gubernamentales y educativas en asuntos

orientados principalmente a atender las necesidades de personas de recursos económicos limitados; y

(b)    proveer cualquier servicio adicional mediante:

(1)  la prestación de servicios legales gratuitos o mediante el cobro de honorarios sustancialmente reducidos a personas, grupos u organizaciones que se proponen asegurar o proteger derechos civiles, libertades civiles o derechos públicos, o a organizaciones caritativas, religiosas, cívicas, comunitarias, gubernamentales y educativas en asuntos dirigidos a avanzar sus propósitos organizacionales, si el pago de honorarios regulares reducirían significativamente los recursos económicos de tal organización o serían inapropiados;

(2)  la prestación de servicios legales mediante el cobro de honorarios sustancialmente reducidos a personas de recursos económicos limitados; o

(3)   la participación en actividades dirigidas a mejorar el Derecho, el sistema de justicia o la profesión jurídica.

Además, una persona que ejerce la abogacía debería, en lo posible, contribuir voluntariamente al sostenimiento económico de las organizaciones que proveen asistencia legal a personas de recursos económicos limitados.

## COMENTARIOS

[1] Toda persona que ejerce la abogacía, sin importar su prestigio profesional o su cúmulo de trabajo, tiene la responsabilidad de proveer servicios legales a aquellas personas que no puedan pagarlos. Asistir a las poblaciones en condición de vulnerabilidad puede ser una de las experiencias más gratificantes en la vida de una persona que ejerce la abogacía. Las personas que ejercen la abogacía deben aspirar a ofrecer un número razonable de horas de servicio legal *pro bono*. Los servicios pueden ser en asuntos civiles o criminales o cuasicriminales donde no haya obligación gubernamental de

proveer fondos para la representación legal, como en procedimientos posteriores a la condena.

[2] Los subincisos (a)(1) y (a)(2) reconocen la necesidad apremiante de servicios legales que existe entre las personas de recursos limitados, al establecer que la mayoría sustancial de los servicios legales se presten anualmente a las personas en condición de vulnerabilidad sin honorarios o expectativa de estos. Los servicios legales bajo estos subincisos consisten en una gama de actividades, que incluyen representación individual, grupal o de clase, asesoramiento legal, cabildeo, reglamentación administrativa, y proveer adiestramiento gratuito o mentoría a aquellas personas u organizaciones que representan a personas de recursos limitados. La gama de oportunidades para proveer servicios legales *pro bono* permite la participación de personas que ejercen la abogacía que laboran en el sector público, aun cuando existan restricciones para que practiquen la abogacía externamente.

[3] Las personas y organizaciones elegibles para los servicios legales bajo los subincisos (a)(1) y (a)(2) son aquellas que cualifican para participar en programas de servicios legales gratuitos o subvencionados. Los servicios legales pueden ser ofrecidos a personas u organizaciones, tales como albergues de personas sin hogar, hogares de mujeres maltratadas y centros que provean alimentación a personas con recursos económicos limitados. El término "organizaciones gubernamentales" incluye, pero no está limitado a, programas de protección pública y a subdivisiones de las agencias gubernamentales o del sector público.

[4] Para que el trabajo realizado cumpla con la definición de los subincisos (a)(1) y (a)(2) es esencial que la intención de la persona que ejerce la abogacía sea ofrecer asistencia legal gratuitamente o sin expectativa de honorarios. Se exhorta a las personas que ejercen la abogacía a consignar por escrito que el acuerdo de representación legal con su cliente será gratuito o sin expectativas de recibir honorarios. Véase, Regla 1.5. De esta forma, los servicios no pueden considerarse *pro bono* si existe expectativa de recibir honorarios, aunque no se reciban. En cambio, el hecho de que se concedan honorarios en un caso que originalmente se aceptó *pro bono* no impide que esa labor se considere *pro bono* bajo esta regla. En tales casos, se exhorta a las personas que ejercen la abogacía a que voluntariamente contribuyan una porción apropiada de estos honorarios recibidos a organizaciones o proyectos que benefician a personas de recursos económicos limitados.

[5] Aunque es posible que una persona que ejerce la abogacía pueda rendir servicios *pro bono* exclusivamente a través de las actividades descritas en los subincisos (a)(1) y (a)(2), también puede hacerlo de la manera establecida en el inciso (b). De existir alguna limitación legal que impida que abogados o abogadas del sector público rindan los servicios *pro bono* señalados en los subincisos (a)(1) y (a)(2), estos o estas pueden rendir dichos servicios al amparo de lo dispuesto en el inciso (b).

[6] El subinciso (b)(1) incluye proveer ciertos tipos de servicios legales a aquellas personas cuyos ingresos y recursos financieros les coloquen sobre lo que se considere recursos limitados. También permite que las personas que ejercen la abogacía *pro bono* acepten honorarios sustancialmente reducidos por sus servicios. Algunos ejemplos de los tipos de problemas que se pueden atender bajo este subinciso incluyen reclamaciones al amparo de derechos constitucionales, civiles y de justicia ambiental. Además, puede brindarse representación a una gran variedad de organizaciones, incluso grupos de servicios sociales, investigación médica, culturales y religiosos.

[7] El subinciso (b)(2) cubre instancias en las cuales la persona que ejerce la abogacía acepta recibir honorarios reducidos por brindar servicios legales a personas de recursos limitados. Bajo esta sección se estimula la aceptación de asignaciones de oficio basadas en tarifas reducidas de los honorarios usuales que cobra la persona que ejerce la abogacía.

[8] El subinciso (b)(3) reconoce el valor de las personas que ejercen la abogacía que se involucran en actividades para el mejoramiento del Derecho, el sistema de justicia o la profesión legal. Algunos ejemplos de las diversas actividades que pueden incluirse bajo este subinciso son servir en comités de asociaciones profesionales, en juntas de programas *pro bono* o de programas de servicios legales, ofrecer cursos de educación jurídica continua, mediar o arbitrar una controversia y realizar cabildeos legislativos *pro bono* con el objetivo de mejorar el Derecho, el sistema de justicia o la profesión jurídica.

[9] Cada persona que ejerce la abogacía tiene un compromiso ético individual de proveer servicios *pro bono*, ya que se trata de una responsabilidad profesional. Sin embargo, se reconoce que en ocasiones no será posible que la persona que ejerce la abogacía provea servicios *pro bono*. En tales casos, la persona que ejerce la abogacía podría proveer ayuda económica voluntaria a organizaciones que brindan servicios legales a personas con recursos económicos limitados. Esta ayuda económica voluntaria debe ser

razonablemente equivalente a las horas de servicios que en otras circunstancias proveería. Además, habrá ocasiones en las cuales será más factible satisfacer la responsabilidad de proveer los servicios *pro bono* de manera colectiva, como serían las actividades agregadas *pro bono* de una oficina legal.

[10] Debido a que los esfuerzos individuales de las personas que ejercen la abogacía no son suficientes para satisfacer las necesidades de servicios legales gratuitos para las personas de recursos limitados, el gobierno y la profesión han instituido programas adicionales para proveer esos servicios. Cada persona que ejerce la abogacía debería apoyar financieramente de forma voluntaria estos programas, además de proveer servicios legales *pro bono* directamente o realizar una aportación económica voluntaria cuando prestar estos servicios *pro bono* no sea factible.

[11] Las oficinas legales deben actuar razonablemente para permitir y fomentar que las personas que ejercen la abogacía de la oficina provean los servicios *pro bono* según estas Reglas.

[12] Esta regla no tiene la intención de que las aspiraciones que establecen se hagan cumplir mediante los procedimientos disciplinarios.

**REGLA 6.2. ACEPTACIÓN DE ASIGNACIÓN DE OFICIO**

Las personas que ejercen la abogacía deberán aceptar la asignación de oficio que le haga un tribunal para representar a una persona indigente. Los asuntos relacionados con las asignaciones de oficio quedan regulados por el *Reglamento para la asignación de abogados y abogadas de oficio de Puerto Rico*, incluso las instancias que permitan que una persona que ejerce la abogacía solicite el relevo de una asignación de oficio.

**COMENTARIOS**

[1] Las personas que ejercen la abogacía tienen la responsabilidad de asistir en el ofrecimiento de servicios *pro bono*. Véase la Regla 6.1. La persona que ejerce la abogacía cumple con su responsabilidad individual al asumir la representación de una o un cliente indigente. La persona que ejerce la abogacía también puede estar sujeta a asignaciones por el tribunal para servir a personas que no pueden pagar por servicios legales.

**Abogado o abogada de oficio**

[2] La persona que ejerce la abogacía podrá solicitar el relevo de la representación de una persona indigente de conformidad con el procedimiento establecido en el *Reglamento para la asignación de abogados y abogadas de oficio de Puerto Rico*.

[3] Una abogada o un abogado asignado de oficio tiene las mismas obligaciones hacia su cliente y las mismas limitaciones en la relación cliente-abogado o abogada que una o un representante legal que recibirá honorarios.

REGLA 6.3. PARTICIPACIÓN EN ORGANIZACIONES DE SERVICIOS LEGALES

Una persona que ejerce la abogacía podrá ser director o directora, oficial o miembro de una organización de servicios legales, aunque tenga o pueda tener alguna o algún cliente con intereses adversos a los de una o un cliente de la persona que ejerce la abogacía. No obstante, no deberá, a sabiendas, participar en un acto o una decisión de la organización, en los escenarios siguientes:

(a)     cuando su participación fuese incompatible con sus obligaciones hacia su cliente bajo la Regla 1.7, o

(b)     cuando la decisión o acción pudiera tener un efecto adverso sustancial en la representación de una o un cliente de la organización cuyo interés es adverso a una o un cliente de la persona que ejerce la abogacía.

## COMENTARIOS

[1] Se debe fomentar que las personas que ejercen la abogacía ayuden y participen en organizaciones de servicios legales. Una persona que ejerce la abogacía que es oficial o miembro de dicha organización no tiene una relación cliente-abogada o abogado con las personas a quienes la organización atiende. Sin embargo, existe un conflicto potencial entre los intereses de esas personas y los intereses de las y los clientes de la persona que ejerce la abogacía. Si la posibilidad de este conflicto descalificase a la persona que ejerce la abogacía para formar parte de la junta directiva de la organización, la participación de

la profesión en tales organizaciones quedaría severamente afectada.

[2] En casos apropiados, puede ser necesario asegurarle a la o el cliente de la organización que la representación no se verá afectada por el conflicto de lealtades de una o un miembro de la junta. La credibilidad de tales afirmaciones queda reforzada cuando se establecen por escrito políticas al respecto.

**REGLA 6.4. PARTICIPACIÓN EN REFORMAS JURÍDICAS QUE AFECTEN INTERESES DE CLIENTES**

> Una persona que ejerce la abogacía podrá ser director o directora, oficial o miembro de una organización que participa en la reforma del Derecho o su administración, aunque esa reforma pudiera afectar los intereses de su cliente. Cuando una persona que ejerce la abogacía sabe que los intereses de su cliente pueden beneficiarse sustancialmente por una decisión en la que participa, deberá divulgar ese hecho a la organización, aunque no tendrá que identificar a su cliente.

**COMENTARIOS**

[1] De ordinario, las personas que ejercen la abogacía que participan en organizaciones que impulsan reformas jurídicas no tienen una relación cliente-abogada o abogado con la organización. De lo contrario, podría suceder que una persona que ejerce la abogacía no podría participar en un programa de reformas legales de una asociación profesional que pudiera afectar indirectamente a una o un cliente. Véase también la Regla 1.2(b). Por ejemplo, una persona que ejerce la abogacía especializada en litigios antimonopolios podría considerarse como inhabilitada para participar en la redacción de revisiones de las normas que rigen ese tema. Al determinar la naturaleza y el alcance de la participación en tales actividades, una persona que ejerce la abogacía debe ser consciente de las obligaciones hacia sus clientes bajo otras de las Reglas, en particular la Regla 1.7. Para proteger la integridad del programa, una persona que ejerce la abogacía tiene la obligación de hacer una divulgación apropiada dentro de la organización cuando sabe que una o un cliente privado podría beneficiarse sustancialmente, por una decisión en la que este o esta participa activamente.

**REGLA 6.5. PARTICIPACIÓN EN PROGRAMAS DE SERVICIOS LEGALES LIMITADOS SIN FINES DE LUCRO O AUSPICIADOS POR EL TRIBUNAL**

(a)     Una persona que ejerce la abogacía que provea a una o un cliente servicios legales limitados de corta duración como parte de los servicios que brinda un programa de servicios legales sin fines de lucro o un programa auspiciado por el tribunal, sin que haya expectativa para la persona que ejerce la abogacía o la o el cliente de que continuará representándole en el asunto consultado:

(1)     estará sujeto o sujeta a los requisitos de las Reglas 1.7 y 1.9(a) sobre conflicto de intereses solo si sabe o debe conocer razonablemente que la representación del o de la cliente involucra un conflicto de intereses; y

(2)     estará sujeto o sujeta a la Regla 1.10 sobre imputación de conflictos solo si la persona que ejerce la abogacía sabe que otro abogado u otra abogada de la oficina legal está inhabilitado o inhabilitada al amparo de las Reglas 1.7 o 1.9(a) en relación con ese asunto.

(b)     Excepto según se dispone en el subinciso (a)(2), la Regla 1.10 no aplica a la representación regulada en esta regla.

**COMENTARIOS**

[1] Las organizaciones de servicios legales, los tribunales y varias organizaciones sin fines de lucro han establecido programas a través de los cuales las personas que ejercen la abogacía proveen servicios legales limitados de corta duración —como, por ejemplo, asesorar o cumplimentar documentos legales— que ayudarán a las personas a atender sus problemas legales sin asistencia adicional de la persona que ejerce la abogacía. En estos programas, tales como las líneas directas de asesoramiento legal, las clínicas de asesoramiento o para ayudar en la representación por derecho propio, se forma la relación cliente-abogado o abogada, pero no hay expectativa de que la representación continúe más allá de esa consulta limitada. Normalmente, estos programas operan bajo circunstancias en las que no es viable que una persona que ejerce la abogacía examine sistemáticamente la posibilidad de conflictos de intereses, como generalmente se requiere antes de asumir una representación. Véanse, por ejemplo, las Reglas 1.7, 1.9 y 1.10.

[2] Una persona que ejerce la abogacía que preste servicios legales limitados de corta duración de conformidad con esta regla debe obtener el

consentimiento informado de la o del cliente en cuanto al alcance limitado de la representación. Véase la Regla 1.2(c). Si una representación limitada a corto plazo no fuera razonable bajo las circunstancias, la persona que ejerce la abogacía podrá ofrecer asesoramiento a la o el cliente, pero también debe aconsejarle sobre la necesidad de obtener asistencia adicional de un abogado o una abogada. Salvo lo dispuesto en esta regla, estas Reglas, incluso las Reglas 1.6 y 1.9(c), son aplicables a la representación limitada.

[3] Debido a que una persona que ejerce la abogacía que representa a una o un cliente en las circunstancias tratadas en esta regla de ordinario no puede cotejar sistemáticamente la existencia de conflictos de intereses, el inciso (a) requiere que se cumpla con las Reglas 1.7 o 1.9(a) solo si la persona que ejerce la abogacía sabe que la representación involucra un conflicto de intereses. Además, se requiere que cumpla con la Regla 1.10 solo si la persona que ejerce la abogacía sabe que otro abogado u otra abogada de su oficina legal está inhabilitado o inhabilitada en el asunto por las Reglas 1.7 o 1.9(a).

[4] Dado que la naturaleza limitada de los servicios legales reduce sustancialmente el riesgo de conflictos de intereses con otros asuntos manejados por la oficina legal de la persona que ejerce la abogacía, el inciso (b) establece que la Regla 1.10 es inaplicable a una representación regida por esta regla, excepto según lo dispuesto en el subinciso (a)(2). Al respecto, el subinciso (a)(2) requiere que el abogado o la abogada participante cumpla con la Regla 1.10 cuando el abogado o la abogada conozca que su oficina legal está inhabilitada por las Reglas 1.7 o 1.9(a). En virtud del inciso (b), la participación de una persona que ejerce la abogacía en un programa de servicios legales limitados de corta duración no impedirá que su oficina legal asuma o continúe la representación de una o un cliente con intereses adversos a la o el cliente representado bajo el programa. Tampoco la descalificación personal de la persona que ejerce la abogacía que participa en el programa será imputada a otros abogados u otras abogadas que participen en el programa.

[5] Si después de comenzada una representación limitada de corta duración de conformidad con esta regla, la persona que ejerce la abogacía asume la representación de la o del cliente en el asunto de manera continua, aplicarán las Reglas 1.7, 1.9(a) y 1.10.

**CAPÍTULO VII: INFORMACIÓN SOBRE SERVICIOS LEGALES**

**REGLA 7.1. COMUNICACIONES CONCERNIENTES A LOS SERVICIOS**

Una persona que ejerce la abogacía o la notaría no deberá comunicar información falsa o engañosa relacionada con su persona o sus servicios. Una comunicación es falsa o engañosa si contiene una tergiversación sustancial de hechos o del Derecho, si omite un hecho necesario para que la comunicación, considerada en su totalidad, no sea sustancialmente engañosa o induzca a error.

**COMENTARIOS**

[1] Esta regla aplica a toda comunicación relacionada con los servicios de personas que ejercen la abogacía o la notaría, incluidos los anuncios. Independientemente del medio utilizado para dar a conocer los servicios de la persona que ejerce la abogacía o la notaría, lo declarado sobre tales servicios tiene que ser veraz.

[2] Esta regla prohíbe las comunicaciones que, aunque veraces, sean engañosas, induzcan a error o creen expectativas irrazonables sobre el éxito de la gestión de la persona que ejerce la abogacía o la notaría en el desempeño de las labores por las cuales se le contrató. Una comunicación veraz es engañosa si omite un hecho que es necesario para que la comunicación de la persona que ejerce la abogacía o la notaría considerada en su totalidad no sea sustancialmente engañosa. Una comunicación veraz es engañosa si existe una probabilidad alta de que llevará a una persona razonable a formular una conclusión específica sobre la persona que ejerce la abogacía o la notaría o sus servicios para los cuales no hay una base fáctica razonable. Una comunicación veraz también es engañosa si se presenta de una manera que cree una probabilidad sustancial en una persona razonable de que la comunicación de la persona que ejerce la abogacía o la notaría le requiere tomar una acción cuando, en realidad, no se requiere acción alguna.

[3] Una comunicación que relata de manera veraz los logros de una persona que ejerce la abogacía al representar a otras u otros clientes o cuando representó a clientes anteriores no puede ser engañosa ni inducir a error. Se considerará engañosa o que induce a error si pretende llevar a una persona razonable a que forme una expectativa injustificada de que los mismos resultados podrían obtenerse para otras y otros clientes en asuntos similares sin hacer referencia a las circunstancias o de hechos y de Derecho de los casos de cada cliente. En ese sentido, la Regla 7.1 prohíbe que una persona que ejerce

la abogacía o la notaría comunique información falsa o engañosa relacionada con su persona o sus servicios.

Del mismo modo, una afirmación infundada sobre los servicios o los honorarios de la persona que ejerce la abogacía o la notaría o de su oficina legal o notarial, o una comparación sin fundamento entre los servicios u honorarios de la persona que ejerce la abogacía o la notaría o de su oficina legal o notarial, con los servicios u honorarios de otras y otros profesionales del Derecho, u oficinas legales o notariales, puede ser engañosa si se presenta sin la especificidad que llevaría a una persona razonable a concluir que la comparación puede ser fundamentada. La inclusión de un lenguaje que cualifique lo expresado puede evitar crear expectativas injustificadas, engañar al público o inducir a error.

[4] Constituye conducta impropia que una persona que ejerce la abogacía o la notaría incurra en acciones que conlleven deshonestidad, fraude, engaño o falsa representación. Regla 8.4(c). Véase también la Regla 8.4(e) sobre la prohibición en contra de una comunicación que implique que se puede ejercer influencia indebida sobre alguna entidad de gobierno o alguna persona que labore en el servicio público para obtener resultados por medios que infrinjan estas Reglas u otras leyes.

[5] Los nombres de oficinas legales, membretes y designaciones profesionales constituyen comunicaciones relacionadas con los servicios que presta una persona que ejerce la abogacía o la notaría. Una oficina legal o notarial puede ser designada con los nombres de todos o algunos de sus miembros activos, por los nombres de miembros que fallecieron cuando existió una sucesión continua en la identidad de la firma o por un nombre comercial que no sea falso o engañoso. Una persona que ejerce la abogacía o la notaría o una oficina legal o notarial también puede designarse por un nombre distintivo de una página web, un nombre como usuario en una red social o con una designación profesional comparable que no sea engañosa. El nombre de una oficina legal u oficina notarial o designación es engañoso si implica una conexión con una entidad gubernamental, con una  persona que ejerce la abogacía o la notaría fallecida que no fue miembro de la oficina legal o notarial, con una persona que ejerce la abogacía o la notaría que no tuvo vínculos con la oficina legal o notarial actual o su antecesora, con una persona que no está autorizada a ejercer la abogacía, la notaría o con una organización de servicios legales *pro bono*. Si una oficina legal u oficina notarial usa un nombre comercial que incluye un nombre geográfico, tal como el nombre de un municipio, podrá

requerirse una aseveración expresa de que no es una organización de ayuda legal *pro bono* para evitar que se haga una inferencia engañosa.

[6] Una oficina legal o una oficina notarial con localidades en más de una región puede usar el mismo nombre o designación profesional en cada región.

[7] Las personas que no ejercen la abogacía ni la notaría no pueden representar que constituyen una oficina legal o una oficina notarial cuando no lo son, según se define en la Regla 1.0(v) y (w), pues esto sería falso o engañoso.

[8] Es engañoso usar en el nombre de la oficina legal o de la oficina notarial, o en comunicaciones de esa oficina, el nombre de una persona que ejerce la abogacía o la notaría que ocupa un cargo público, mientras la persona que ejerce la abogacía o la notaría no esté durante un periodo sustancial en la práctica activa y regular con la oficina legal o la oficina notarial.

### REGLA 7.2. COMUNICACIONES CONCERNIENTES A LOS SERVICIOS DE PERSONAS QUE EJERCEN LA ABOGACÍA: REGLAS ESPECÍFICAS

(a) Una persona que ejerce la abogacía podrá comunicar información sobre sus servicios mediante cualquier medio de comunicación.

(b) Una persona que ejerce la abogacía no puede compensar, ofrecer o prometer a una persona algo de valor a cambio de que recomiende los servicios profesionales de la persona que ejerce la abogacía. Sin embargo, la persona que ejerce la abogacía podrá:

(1) pagar por los costos razonables de anuncios o comunicaciones permitidos por esta regla;

(2) pagar los costos usuales de un plan de servicios legales o un servicio cualificado de referidos de abogados o abogadas o sin fines de lucro;

(3) pagar por la compra de una práctica legal de conformidad con la Regla 1.17;

(4)    referir clientes a otro abogado u otra abogada o a cualquier profesional, en virtud de un acuerdo conforme a estas Reglas, que provea para que la persona que recibe el referido también pueda referirle clientes a la persona que ejerce la abogacía si:

(i)    el acuerdo de referidos recíprocos no es exclusivo y

(ii)    se le informa al o a la cliente sobre la existencia y naturaleza del acuerdo, o

(5)    dar regalos nominales que se hacen como expresión de aprecio y no tienen la intención de compensar por el referido, ni deben ser razonablemente esperados como una manera de compensación por la recomendación.

(c)    Una persona que ejerce la abogacía no puede indicar o implicar que es especialista o experta en determinada materia del Derecho.

No obstante, podrá indicar que su práctica se concentra en una o más áreas del Derecho o que cuenta con cierto número de años de experiencia en una o más áreas del Derecho.

(d)    Cualquier comunicación que se haga en conformidad con esta regla, deberá incluir el nombre e información de contacto de al menos un abogado o abogada o de la oficina legal que se responsabiliza por su contenido.

**COMENTARIOS**

[1] Esta regla permite la difusión pública de información sobre el nombre de un abogado, una abogada u oficina legal, dirección, dirección de correo electrónico, página web y número de teléfono; la naturaleza de los servicios que lleva a cabo; la base sobre la que se determinan sus honorarios, incluso las tarifas para servicios específicos y los acuerdos para el pago o arreglos a crédito; si la persona que ejerce la abogacía habla otros idiomas; nombres de referencias y, con su consentimiento, nombres de clientes que representa regularmente; y cualquier otra información que pueda llamar la atención de quienes buscan asistencia legal.

**Pago a otros por recomendar a una persona que ejerce la abogacía**

[2] Excepto lo permitido por los subincisos (b)(1)-(b)(5), las personas que ejercen la abogacía no están autorizadas a pagar a otras personas para que recomienden sus servicios profesionales. Una comunicación contiene una recomendación si endosa o da fe sobre las credenciales, las capacidades, la competencia, el carácter u otras cualidades profesionales de una persona que ejerce la abogacía. Formar parte de un directorio de personas que ejercen la abogacía o anuncios grupales que incluyen nombres de abogados y abogadas por materias de prácticas, sin más, no constituyen "recomendaciones" prohibidas.

[3] El subinciso (b)(1) permite que una persona que ejerce la abogacía pague por los anuncios y las comunicaciones permitidas por esta regla, incluso los costos de los listados en directorios impresos o en línea, anuncios en periódicos, espacio en televisión y radio, registros de nombres de dominio, cargos por patrocinio, anuncios colocados en Internet y los anuncios grupales. La persona que ejerce la abogacía puede compensar a empleados, empleadas, agentes, vendedoras y vendedores que ofrecen servicios de mercadeo o desarrollo de clientela, tales como publicistas, personal de relaciones públicas, personal de desarrollo de negocios, empleados o representantes de estaciones de radio y televisión y diseñadores de páginas web.

[4] El subinciso (b)(5) permite que personas que ejercen la abogacía hagan regalos nominales como expresión de agradecimiento a una persona que recomendó sus servicios o le refirió a una o un cliente potencial. El regalo debe ser similar a aquellos obsequios que se hacen durante festividades u ocasiones similares. Un regalo está prohibido si se ofrece o hace a cambio de una promesa, acuerdo o entendido de que se haría el regalo o que se hace para estimular referidos futuros.

[5] Una persona que ejerce la abogacía podrá pagar a terceras personas para que le proporcione información sobre contactos para conseguir clientes potenciales, a través de, por ejemplo, métodos informatizados por internet. Quien proporcione los contactos no podrá recomendar al abogado o a la abogada, además, cualquier pago debe realizarse de conformidad con las Reglas 1.5(e) y 5.4 y las comunicaciones enviadas a clientes potenciales deben ser conformes con la Regla 7.1. Para cumplir con la Regla 7.1, un abogado o una abogada no deberá pagarle a una tercera persona que afirme, insinúe, o

cree una impresión razonable de que recomienda al abogado o a la abogada, está refiriendo sin haber recibido pago de parte del abogado o de la abogada o ha analizado los problemas jurídicos de una persona a la hora de determinar cuál profesional de la abogacía debería recibir el referido. Véase el comentario [2] (definición de "recomendación"). Véanse, además, las Reglas 5.3 y 8.4(a).

[6] Una persona que ejerce la abogacía podrá pagar los cargos usuales de un plan de servicios legales o de un servicio de referido cualificado de abogados y abogadas o sin fines de lucro. Un plan de servicios legales es un plan de servicios legales prepagado o grupal o un sistema afín que asiste a las personas que buscan obtener representación legal. Un servicio de referido de abogados y abogadas, por otra parte, es cualquier organización que se presente al público como un servicio de referido de abogados y abogadas. Los servicios de referido cualificados son organizaciones orientadas al público que proveen referidos imparciales de personas que ejercen la abogacía con la experiencia adecuada en la materia objeto de la representación y que proveen otras protecciones a clientes, tales como procesos de quejas o requisitos de seguros de impericia. En consecuencia, esta regla solo permite que un abogado o una abogada pague los cargos usuales de un servicio de referidos cualificado o sin fines de lucro. El servicio de referido de abogados y abogadas estará cualificado bajo los criterios aprobados por el Tribunal Supremo de Puerto Rico.

[7] Una persona que ejerce la abogacía que acepte encomiendas o referidos de un plan de servicios legales o referidos de un servicio de referido de abogados y abogadas deberá actuar de manera razonable para asegurar que las actividades del plan o servicio sean compatibles con sus obligaciones profesionales. Los planes de servicios legales y los servicios de referido de abogados y abogadas podrán comunicarse con el público, pero dicha comunicación deberá ser a tenor con estas Reglas. En consecuencia, los anuncios no podrán ser falsos o engañosos, como sería el caso si las comunicaciones de un programa de promociones grupal o un plan de servicios legales grupal lleve el público a creer equivocadamente que es un servicio de referido de abogados y abogadas auspiciado por una agencia estatal o colegio o asociación de profesionales de la abogacía.

[8] Una persona que ejerce la abogacía podrá referir clientes a otro abogado u otra abogada o profesional lego a cambio de que esa persona le refiera clientes a la persona que ejerce la abogacía. Este tipo de arreglo de referido recíproco no deberá interferir con el juicio profesional de la persona que ejerce la

abogacía en cuanto a la forma en que se hacen los referidos o se proveen servicios legales sustantivos. Véanse las Reglas 2.1 y 5.4(c). Salvo lo dispuesto en la Regla 1.5(e), una persona que ejerce la abogacía que reciba referidos de un abogado o una abogada o profesional lego no deberá hacer pago alguno por el referido únicamente, pero este abogado o esta abogada no violenta las disposiciones del párrafo (b) de esta regla por acordar referir clientes al otro abogado o a la otra abogada o profesional lego, siempre que el acuerdo de referido recíproco no sea exclusivo y el o la cliente haya sido informado del acuerdo de referido. Los conflictos de interés que se generen debido a tales arreglos se rigen por la Regla 1.7. Los acuerdos de referido recíproco no deberían ser de duración indefinida y se deberán revisar periódicamente para determinar si cumplen con estas Reglas. Esta regla no es una restricción a los referidos o a las divisiones de ganancias o ingreso neto entre abogados y/o abogadas de oficinas legales que se compongan de múltiples organizaciones.

**Comunicación sobre materias de práctica**

[9] El inciso (c) de esta regla permite que la persona que ejerce la abogacía comunique que ejerce la práctica del Derecho en ciertas áreas. Sin embargo, tales comunicaciones están sujetas al estándar de "falso o engañoso" que aplica a las comunicaciones sobre los servicios de la persona que ejerce la abogacía al amparo de la Regla 7.1.

[10] Las comunicaciones que haga una persona que ejerce la abogacía en cuanto a su práctica en la Oficina de Patentes y Marcas Registradas de Estados Unidos o sobre su práctica en el derecho de almirantazgo no están prohibidas por esta regla.

**Información de contacto requerida**

[11] Esta regla requiere que cualquier comunicación sobre los servicios de una persona que ejerce la abogacía o de una oficina legal incluya el nombre y la información de contacto del abogado, de la abogada o de la oficina legal. La información de contacto debe contener la dirección de página web, el número de teléfono, la dirección de correo electrónico o la ubicación física de la oficina.

REGLA 7.3. SOLICITACIÓN DE CLIENTES

(a)    "Solicitación" o "solicitar" denota una comunicación iniciada por, o en beneficio de una persona que ejerce la abogacía o una oficina legal

que se dirige a una persona en específico cuando la persona que ejerce la abogacía o la oficina legal conoce, o debe conocer razonablemente, que necesita servicios legales en un asunto en particular y que ofrece proveer, o razonablemente puede entenderse que ofrece proveer, sus servicios legales para ese asunto.

(b)     Una persona que ejerce la abogacía no podrá solicitar clientes, mediante contacto en vivo persona a persona, cuando el motivo principal de la persona que ejerce la abogacía sea el ánimo de lucro, a no ser que la persona contactada:

> (1)     sea un abogado o una abogada; o

> (2)     tenga una relación de parentesco, persona cercana o haya tenido una relación profesional previa con el abogado o la abogada; o

> (3)     sea una persona que rutinariamente usa para propósitos del negocio servicios legales similares a los que le ofrece la persona que ejerce la abogacía o la oficina legal.

(c)     Una persona que ejerce la abogacía no solicitará la contratación de sus servicios profesionales por cualquier medio, aunque la comunicación no esté prohibida por el inciso (b), si:

> (1)     quien recibe la comunicación manifiesta a la persona que ejerce la abogacía que no le interesa que le solicite que los contrate, o

> (2)     la solicitación conlleva coerción, coacción u hostigamiento.

(d)     Esta regla no prohíbe las comunicaciones autorizadas por ley u ordenadas por un tribunal.

(e)     A pesar de las prohibiciones incluidas en esta regla, una persona que ejerce la abogacía podrá participar en un plan grupal de servicios legales o en un plan prepagado de servicios legales que sea operado por una organización que no pertenezca ni dirija la persona que ejerce la abogacía y que utilice el contacto en vivo persona a persona para

inscribir como miembros o vender suscripciones para el plan a personas de quienes se desconoce si necesitan servicios legales para un asunto específico cubierto por el plan.

**COMENTARIOS**

[1] El inciso (b) prohíbe que una persona que ejerce la abogacía tenga contacto en vivo persona a persona para solicitar ser contratada para ofrecer sus servicios legales, o los de su oficina legal, cuando un motivo significativo para el contacto es obtener lucro. La comunicación de una persona que ejerce la abogacía no es solicitación si está dirigida al público en general, como sería a través de rótulos en las vías públicas, anuncios fijos en Internet, páginas electrónicas en la web o un anuncio en la televisión comercial, o si es en respuesta a una solicitud de información o si es generado automáticamente como respuesta a una búsqueda por medios electrónicos.

[2] En relación con el contenido de esta regla se entenderá que "contacto en vivo persona a persona" significa en persona, cara a cara, comunicación electrónica o telefónica en vivo y otras comunicaciones visuales o auditivas en tiempo real en las cuales una persona está sujeta a un encuentro personal sin oportunidad para reflexionar. Ese contacto persona a persona no existe en grupos de chat (*chat rooms*), mensajes de texto u otras comunicaciones escritas que quien las recibe puede ignorar fácilmente. Existe un potencial para extralimitarse cuando una persona que ejerce la abogacía, con motivo de lucro, contacta directamente, a una persona que la persona que ejerce la abogacía sabe que necesita servicios legales. Esta forma de contacto somete a una persona a ser importunada por un abogado o una abogada que está adiestrada para persuadir. La persona, quien ya puede sentirse abrumada ante las circunstancias que dan lugar a la necesidad de obtener servicios legales, puede encontrar difícil tener que evaluar plenamente mediante un juicio razonado, y en consideración a sus propios intereses, todas las alternativas que tiene disponibles cuando está ante la presencia de una persona que ejerce la abogacía que insiste en tener una respuesta inmediata. La situación se presta para que se ejerza influencia indebida, se intimide o se extralimite.

[3] El potencial para extralimitarse inherente al contacto en vivo persona a persona justifica su prohibición, sobre todo porque las personas que ejercen la abogacía disponen de medios alternos para hacer llegar la información necesaria. En particular, las comunicaciones pueden enviarse por correo postal o transmitirse por correo electrónico u otros medios electrónicos que

no violen otras leyes. Estas formas de comunicación posibilitan que el público se informe sobre la necesidad de servicios legales y sobre las cualificaciones de las personas que ejercen la abogacía y las oficinas legales disponibles, sin que se tenga que someter al público a la persuasión en vivo, persona a persona, que puede abrumar su juicio.

[4] El solicitar clientes en vivo podría incluir contenido que puede ocasionar controversias, pero es probable que evada el escrutinio por terceras personas. En consecuencia, las personas que ejercen la abogacía son mucho más propensas a acercarse (y ocasionalmente cruzar) la línea divisoria entre las representaciones exactas y las que son falsas y engañosas.

[5] Es poco probable que una persona que ejerce la abogacía incurra en prácticas abusivas contra una o un cliente anterior o una persona con quien tenga una relación personal cercana, familiar, de negocio o profesional, o en situaciones en las que la persona que ejerce la abogacía esté motivada por consideraciones distintas al lucro personal. Tampoco hay un potencial grave de extralimitarse cuando la persona contactada es un abogado o una abogada o es una persona que usa rutinariamente para propósitos de negocio el tipo de servicio legal que ofrece el abogado o la abogada. Ejemplos incluyen personas que contratan rutinariamente a abogados y abogadas externas para que representen a una organización; personas empresarias que contratan regularmente a abogados y abogadas dedicados a la práctica de asuntos comerciales, laborales o de propiedad intelectual; dueños y dueñas de pequeños negocios que contratan rutinariamente a personas que ejercen la abogacía para asuntos contractuales o de arrendamiento, y otras personas que contratan rutinariamente a abogados o abogadas para transacciones comerciales o para formar negocios. El inciso (b) no pretende prohibir que una persona que ejerce la abogacía participe en actividades de organizaciones caritativas de servicios legales u organizaciones bona fide de carácter político, social, cívico, fraternal, gremial o de empleados, protegidas constitucionalmente, cuyos propósitos incluyen ofrecer o recomendar servicios legales para sus miembros o beneficiarios.

[6] Una solicitación que contenga información falsa o engañosa bajo el significado de la Regla 7.1, que conlleve coerción, coacción o acoso bajo el significado de la Regla 7.3(c)(2), o que conlleve contacto con alguien que le hizo saber a la persona que ejerce la abogacía su deseo de no ser solicitada dentro del significado de la Regla 7.3(c)(1), está prohibida. De ordinario el contacto en vivo persona a persona con individuos que podrían ser

especialmente vulnerables a coerción o coacción no es apropiado. Ejemplo de esto serían contactos con personas de mayor edad, personas cuyo primer idioma no es el español o personas que tienen alguna diversidad funcional.

[7] Esta regla no prohíbe que una persona que ejerce la abogacía contacte a representantes de entidades o grupos que puedan estar interesados en establecer un plan legal grupal o un plan legal prepagado para sus afiliados, asegurados, beneficiarios u otros terceros con el fin de informar a dichas entidades sobre la disponibilidad y detalles del plan o arreglo que la persona que ejerce la abogacía o su oficina legal está dispuesta a ofrecer. Esta forma de comunicación no está dirigida hacia personas que están solicitando servicios legales para sí mismas. Por el contrario, suele dirigirse a un individuo que actúa en una capacidad fiduciaria buscando un proveedor de servicios legales para otros que pueden, si así lo desean, convertirse en clientes potenciales de la persona que ejerce la abogacía. Bajo estas circunstancias, la actividad que la persona que ejerce la abogacía se compromete a comunicar a dichos representantes y el tipo de información transmitida al individuo son funcionalmente similares y tienen el mismo propósito que los anuncios permitidos por la Regla 7.2.

[8] Las comunicaciones autorizadas por ley u ordenadas por un tribunal incluyen las notificaciones a las y los miembros potenciales en un pleito de clase.

[9] El inciso (e) de esta regla permite que una persona que ejerce la abogacía participe con una organización que utiliza el contacto personal para solicitar miembros para su plan legal grupal o un plan legal prepagado, siempre que el contacto personal no sea realizado por una persona que ejerce la abogacía que sería proveedora de servicios legales a través del plan. La organización no debe ser propiedad ni estar dirigida —ya sea como gerente o de otra manera— por cualquier persona que ejerce la abogacía u oficina legal que participe en el plan. Por ejemplo, el inciso (e) no permitiría a una persona que ejerce la abogacía crear una organización controlada directa o indirectamente por el abogado o la abogada y utilizarla para solicitar, persona a persona, empleo legal a través de membresías en el plan o de otra manera. La comunicación permitida por estas organizaciones tampoco debe estar dirigida a personas que se conoce que necesitan servicios legales en un asunto particular, sino que debe ser diseñada para informar a los posibles miembros del plan en general sobre otros medios de servicios legales asequibles. Las personas que ejercen la abogacía que participan en un plan de servicios legales deben

razonablemente asegurar que los patrocinadores del plan cumplen con las Reglas 7.1, 7.2 y 7.3(c).

## CAPÍTULO VIII: LA INTEGRIDAD DE LA PROFESIÓN LEGAL

### REGLA 8.1. ADMISIÓN A LA PROFESIÓN Y ASUNTOS DISCIPLINARIOS

Todo asunto relacionado con la reglamentación del ejercicio de la profesión legal, como la admisión o la separación de sus miembros, es facultad inherente del Tribunal Supremo de Puerto Rico.

Una persona aspirante a admisión al ejercicio de la abogacía o de la notaría, o un abogado o una abogada que participe en una solicitud de admisión al ejercicio de la abogacía o de la notaría o participe en un asunto disciplinario, no podrá:

(a)     hacer, a sabiendas, una declaración falsa de hechos sustanciales; o

(b)     dejar de divulgar información necesaria para corregir una apreciación errónea que conoce que surgió en el asunto; o incumplir, a sabiendas, con una orden o un requerimiento de información formulado por la autoridad disciplinaria o encargada del procedimiento de admisión. Esta regla no requiere la divulgación de información protegida por la Regla 1.6.

## COMENTARIOS

[1] El deber impuesto por esta regla se extiende a las personas que solicitan la admisión al ejercicio de la abogacía o de la notaría, así como a los abogados y las abogadas. Por lo tanto, si una persona hace una declaración falsa de hechos sustanciales en relación con una solicitud de admisión y es admitida, tal conducta puede ser base para una acción disciplinaria posterior y, en cualquier caso, puede ser relevante para una solicitud de admisión posterior. El deber impuesto por esta regla aplica a la propia solicitud de admisión del abogado o la abogada o a un proceso disciplinario suyo, así como a la solicitud de admisión o proceso disciplinario de otros abogados y otras abogadas. Consecuentemente, será una violación profesional separada si una persona que ejerce la abogacía a sabiendas hace una declaración falsa o incurre en una

omisión en relación con una investigación disciplinaria sobre su propia conducta. El inciso (b) de esta regla también requiere la rectificación de cualquier declaración incorrecta anterior que el o la aspirante o el abogado o la abogada pueda haber hecho, así como una aclaración afirmativa de cualquier malentendido por parte de las autoridades disciplinarias o encargadas del proceso de admisión de la cual la persona involucrada tenga conocimiento.

[2] Esta regla está sujeta a las disposiciones de la Quinta Enmienda de la Constitución de los Estados Unidos y las disposiciones correspondientes de la Constitución de Puerto Rico. Sin embargo, una persona que invoque tal disposición en respuesta a una pregunta debe hacerlo abiertamente y no utilizar el derecho a no declarar como justificación para el incumplimiento con esta regla.

[3] Las normas aplicables a la relación cliente-abogada o abogado, incluso en la Regla 1.6 y, en algunos casos, la Regla 3.3 también aplican cuando una persona que ejerce la abogacía represente a una persona aspirante a la admisión al ejercicio de la abogacía o de la notaría o represente a un abogado o a una abogada sujeta a una investigación o procedimiento disciplinario.

**REGLA 8.2. COMENTARIOS SOBRE JUECES, JUEZAS, OFICIALES ADJUDICATIVOS Y EL MINISTERIO PÚBLICO**

(a)   Una persona que ejerce la abogacía no podrá hacer manifestaciones públicas concernientes a las cualificaciones o a la integridad de un juez o una jueza, oficial adjudicativo o un funcionario o una funcionaria del Ministerio Público, cualquier recurso humano que labore en el Poder Judicial como por ejemplo, personal de Secretaría o del alguacilazgo, o sobre una persona nominada como juez o jueza o funcionario o funcionaria del Ministerio Público, si sabe que sus manifestaciones son falsas o las hace con grave menosprecio de la verdad.

(b)   Aunque las manifestaciones públicas de una persona que ejerce la abogacía se expresen de conformidad con lo establecido en el inciso (a), toda persona que ejerce la abogacía tiene la obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra un juez o una jueza, oficial adjudicativo o un funcionario o una funcionaria del Ministerio Público, cualquier recurso humano que labore en el

Poder Judicial como por ejemplo, personal de Secretaría o del alguacilazgo, o sobre una persona nominada como juez o jueza o funcionario o persona funcionaria del Ministerio Público o cualquier otro funcionario o funcionaria judicial.

**COMENTARIOS**

[1] Al avaluar la aptitud profesional o personal de las personas nominadas a ocupar el cargo de juez o jueza o funcionario o funcionaria del Ministerio Público**,** se suele descansar en las opiniones de las personas que ejercen la abogacía. Por tal razón, expresar opiniones honestas y sinceras sobre estas personas contribuye a mejorar la administración de la justicia. Por el contrario, las declaraciones falsas pueden socavar injustamente la confianza del público en la administración de la justicia.

[2] Para mantener una administración de la justicia que sea justa e independiente, se alienta a las personas que ejercen la abogacía a defender a los tribunales y miembros de la judicatura ante críticas injustificadas.

[3] Las manifestaciones públicas de una persona que ejerce la abogacía deben darse dentro un marco de respeto, decoro y deferencia de modo que estas no atenten contra el buen orden en la administración de la justicia en los tribunales.

### REGLA 8.3. OBLIGACIÓN DE INFORMAR LA CONDUCTA PROFESIONAL IMPROPIA

(a)      Una persona que ejerce la abogacía que sabe que otro abogado u otra abogada incurrió en una violación a estas Reglas que plantee una duda sustancial sobre su honestidad, confiabilidad o aptitud para ejercer la abogacía, deberá informarlo al Tribunal Supremo de Puerto Rico mediante la presentación de una queja, según se establece en su reglamento.

(b)      Una persona que ejerce la abogacía que sabe que un juez o una jueza incurrió en una violación a los Cánones de Ética Judicial de Puerto Rico que plantee una duda sustancial sobre su aptitud para desempeñar su cargo, deberá informarlo al Tribunal Supremo de Puerto Rico mediante la presentación de una queja, según se establece en su reglamento.

(c)      Esta regla no requiere la divulgación de información protegida por la Regla 1.6 ni información obtenida por una persona que ejerce la abogacía, un juez o una jueza mientras participa en un programa aprobado de asistencia a abogados y abogadas.

**COMENTARIOS**

[1] La autorregulación de la profesión legal requiere que las y los miembros de la profesión promuevan una investigación disciplinaria cuando conozcan de una violación a estas Reglas. Las personas que ejercen la abogacía tienen una obligación similar con respecto a la conducta judicial impropia. Una violación aparentemente aislada podría indicar un patrón de conducta impropia que solo una investigación disciplinaria puede descubrir. Informar una violación es especialmente importante cuando es poco probable que la víctima descubra la ofensa.

[2] No se requiere informar una conducta impropia cuando esto implique una violación de la Regla 1.6. Sin embargo, una persona que ejerce la abogacía debe alentar a que una o un cliente consienta a la divulgación cuando tal acción no perjudicaría sustancialmente los intereses de la o del cliente.

[3] La obligación de informar contenida en esta regla está limitada a aquellas violaciones que una profesión que se autorregula debe esforzarse enérgicamente en prevenir. Por lo tanto, se requiere una medida de discernimiento para cumplir con las disposiciones de esta regla. El término "sustancial" se refiere a la gravedad de la posible violación y no al quantum de prueba de la cual la persona que ejerce la abogacía tenga conocimiento. La persona que ejerce la abogacía deberá informar la violación al Tribunal Supremo de Puerto Rico. Consideraciones similares aplican a la denuncia de conducta judicial impropia.

[4] El deber de denunciar una conducta profesional impropia no aplica a una persona que ejerce la abogacía contratada para representar a un abogado o una abogada cuya conducta profesional está en controversia. Esta situación se rige por las reglas aplicables a la relación cliente-abogada o abogado.

[5] La información sobre la aptitud o conducta impropia de una persona que ejerce la abogacía, un juez o una jueza, podría ser obtenida por un abogado o una abogada en el curso de su participación en un programa aprobado de asistencia para abogados y abogadas o para jueces y juezas. En esa

circunstancia, proveer una excepción a lo requerido por los incisos (a) y (b) de esta regla alienta a personas que ejercen la abogacía, y a jueces y juezas, a buscar tratamiento a través de dicho programa. Por el contrario, la ausencia de esta excepción desalentaría que las personas que ejercen la abogacía, jueces y juezas busquen ayuda de estos programas, lo que podría perjudicar sus carreras profesionales y causar daño adicional al bienestar de las y los clientes y el público. Estas Reglas no atienden la confidencialidad de la información recibida por una persona que ejerce la abogacía, o por un juez o una jueza que participa en un programa aprobado de asistencia para abogados y abogadas. Tal obligación puede ser impuesta por las reglas del programa o alguna ley.

### REGLA 8.4. CONDUCTA IMPROPIA

Constituye conducta impropia de una persona que ejerce la abogacía:

(a)  violar o intentar violar estas Reglas; ayudar o inducir a otra persona, a sabiendas, a que viole o intente violar estas Reglas; o violar o intentar violar estas Reglas a través de los actos de otra persona;

(b)  cometer un acto criminal que refleje adversamente sobre la honestidad, confiabilidad o aptitud de la persona que ejerce la abogacía;

(c)  incurrir en conducta que conlleve deshonestidad, fraude, engaño o falsa representación;

(d)  incurrir en conducta perjudicial a la administración de la justicia;

(e)  manifestar o insinuar que puede ejercer influencia indebida sobre una entidad de gobierno o un funcionario o una funcionaria, o que puede obtener un resultado por medios que violen estas Reglas o alguna ley;

(f)  ayudar, a sabiendas, a un juez o una jueza a incurrir en conducta que sea una violación de los Cánones de Ética Judicial de Puerto Rico o alguna ley;

(g)  incurrir en conducta, relacionada con la práctica de la abogacía, que la persona que ejerce la abogacía conoce o debería conocer

razonablemente que constituye hostigamiento o discrimen contra una persona por motivo de raza, sexo, género, ideas políticas o religiosas, origen nacional, etnia, impedimento o diversidad funcional, edad, orientación sexual, identidad de género, estado civil o condición socioeconómica. Este inciso no limita la capacidad de una persona que ejerce la abogacía de aceptar, rechazar o retirarse de una representación de acuerdo con estas Reglas. Este inciso tampoco limita la capacidad de una persona que ejerce la abogacía de proveer consejo, asesoramiento o representación de manera consistente con estas Reglas.

(h) incumplir con algún requisito reglamentario establecido por el Tribunal Supremo de Puerto Rico que le inhabilite para ejercer la abogacía;

(i) colaborar para que una persona no admitida practique la abogacía o la notaría;

(j) al ejercer la función notarial, incumplir con las disposiciones de la Ley Notarial, el Reglamento Notarial, las Reglas de Conducta Profesional de la Abogacía de Puerto Rico y las leyes que aplican a los documentos que las personas que ejercen la notaría autorizan.

## **COMENTARIOS**

[1] Las personas que ejercen la abogacía están sujetas a la imposición de disciplina profesional cuando violan o intentan violar estas Reglas, ayudan o inducen, a sabiendas, a otra persona a hacerlo, o lo hacen a través de los actos de otra persona, como por ejemplo cuando solicitan o instruyen a una o un agente para que lo haga en nombre de la persona que ejerce la abogacía. Ahora bien, el inciso (a) no prohíbe que una persona que ejerce la abogacía aconseje a una o un cliente sobre una acción que la o el cliente tiene derecho a tomar.

[2] Muchos tipos de conducta ilegal impactan negativamente la aptitud para practicar la abogacía, tales como delitos que conllevan fraude. Sin embargo, algunos delitos no conllevan tal implicación. Tradicionalmente, la distinción se trazaba en términos de delitos que implicaban "depravación moral". Ese concepto puede interpretarse como que incluye delitos que conciernen asuntos de moralidad personal, como por ejemplo el adulterio, y delitos comparables, que no tienen conexión específica con la aptitud para la práctica

de la abogacía. Aunque una persona que ejerce la abogacía responde personalmente por la violación a toda ley penal, un abogado o una abogada solo debe responder profesionalmente por delitos que implican la ausencia de aquellas características relevantes para la práctica de la abogacía. En esta categoría se encuentran los delitos que conllevan violencia, deshonestidad, violación de confianza o interferencia grave con la administración de la justicia. Un patrón de reincidencia, incluso de delitos de menor importancia cuando se consideran por separado, puede ser indicativo de indiferencia hacia las obligaciones legales.

[3] El discrimen y el hostigamiento por personas que ejercen la abogacía en violación del inciso (g) socava la confianza en la profesión jurídica y en el sistema legal. Tal discrimen incluye conducta dañina verbal o física que manifiesta sesgo (*bias*) o prejuicio contra otras personas. El término "hostigamiento" incluye el acoso, aquella conducta verbal o física despectiva o degradante contra otra persona y el hostigamiento sexual. El "hostigamiento sexual" incluye acercamientos sexuales no deseados, requerimientos de favores sexuales y otros tipos de conducta verbal o física de índole sexual no deseada. El Derecho sustantivo, las leyes y la jurisprudencia sobre discrimen y hostigamiento pueden ser guías en la aplicación del inciso (g).

[4] La conducta relacionada con la práctica de la abogacía incluye la representación de clientes; interactuar con testigos, compañeros de trabajo, personal de los tribunales, personas que ejercen la abogacía y otras personas mientras se ejerce la abogacía; operar o administrar una oficina o práctica legal; y participar en asociaciones profesionales, actividades sociales, educativas o de negocios relacionadas con la práctica de la abogacía. Por consiguiente, la conducta relacionada con la práctica de la abogacía puede incluir conducta que ocurre fuera del contexto de la representación de un o una cliente. Las personas que ejercen la abogacía pueden participar en actividades para promover la diversidad y la inclusión sin violar esta regla. Por ejemplo, al implementar iniciativas dirigidas a reclutar, contratar, retener y promover la diversidad de empleados o empleadas o al patrocinar la diversidad en organizaciones de estudiantes de Derecho.

[5] La determinación de un juez o una jueza de primera instancia de que las recusaciones perentorias se ejercieron sobre una base discriminatoria no establece por sí sola una violación del inciso (g). La persona que ejerce la abogacía no viola el inciso (g) al limitar el alcance o el área de su práctica de abogacía o limitar su práctica a poblaciones en condición de vulnerabilidad, de

conformidad con estas Reglas. El inciso (g) no impide el consejo, asesoramiento o representación de conformidad con estas Reglas. El desacuerdo de algunas personas con la posición que asumiría la persona que ejerce la abogacía no afecta el carácter legítimo de la representación. Las personas que ejercen la abogacía también deben ser conscientes de sus obligaciones profesionales bajo la Regla 6.1 para proporcionar servicios legales a aquellos que no pueden pagarlos, y de sus obligaciones bajo la Regla 6.2 de no evadir las asignaciones de oficio excepto por justa causa. Véase la Regla 6.2(a)-(c). La representación de una o un cliente no constituye un endoso de la persona que ejerce la abogacía a las opiniones o actividades de la o del cliente. Véase la Regla 1.2(b). Por otro lado, la expresión de una opinión o punto de vista por parte de la persona que ejerce la abogacía, incluso uno controversial, por sí o a través de su membresía o asociación en una organización, no es, por sí solo, hostigamiento o discrimen bajo el inciso (g).

[6] Una persona que ejerce la abogacía puede negarse a cumplir con una obligación impuesta por una ley bajo la creencia de buena fe de que no existe una obligación válida. Las disposiciones de la Regla 1.2(d) relativas a incoar un recurso de buena fe contra la validez, alcance, significado o aplicación de una ley aplican a las impugnaciones legales contra la regulación de la práctica de la abogacía.

[7] Las personas que ejercen la abogacía que desempeñan cargos públicos asumen responsabilidades legales que van más allá de las de otras personas. El abuso por un abogado o abogada de un cargo público puede sugerir una incapacidad para cumplir con la función profesional de las personas que ejercen la abogacía. Lo mismo ocurre con el abuso de posiciones de confianza privada tales como una parte fiduciaria, liquidadora, ejecutora, administradora, tutora, defensora judicial, agente y oficial, directora o gerencial de una organización.

[8] Ninguna persona admitida al ejercicio de la abogacía o de la notaría colaborará para que otras personas no admitidas practiquen la abogacía o la notaría. En principio, esta prohibición se basa en que la práctica ilegal de la abogacía se tipifica como delito. Esto incluye dedicarse al ejercicio de la profesión, anunciarse como tal, actuar como agente judicial o gestionar asuntos judiciales o cuasijudiciales ajenos ante cualquier tribunal. Ahora bien, la práctica ilegal de la notaría cobra mayor relevancia en tanto las personas que ejercen la notaría son funcionarios y funcionarias públicas. Se trata, pues, de una medida de protección social que persigue asegurar que quienes se

dediquen a la abogacía o la notaría cumplan con todas las formalidades y cuenten con las aptitudes necesarias para ejercer estas profesiones.

[9] Es obligación de toda persona que ejerce la abogacía cumplir con los requisitos y las obligaciones que establece el Tribunal Supremo de Puerto Rico como parte de su poder inherente para reglamentar la práctica de la abogacía. Por ejemplo, mantener al día la información requerida en el Registro Único de Abogados y Abogadas; cumplir con los requisitos del Programa de Educación Jurídica Continua; así como cumplir con el Reglamento para la Asignación de Abogados y Abogadas de Oficio de Puerto Rico.

### REGLA 8.5. AUTORIDAD DISCIPLINARIA Y DERECHO APLICABLE

(a)   Autoridad disciplinaria. Un abogado admitido o una abogada admitida a ejercer la abogacía en Puerto Rico estará sujeta a la autoridad disciplinaria del Tribunal Supremo de Puerto Rico, independientemente del lugar en donde ocurra la conducta. Un abogado o abogada que no esté admitida a ejercer la abogacía en Puerto Rico estará sujeta a la autoridad disciplinaria del Tribunal Supremo de Puerto Rico si provee u ofrece proveer servicios legales en esta jurisdicción. Una persona que ejerce la abogacía podrá estar sujeta tanto a la autoridad disciplinaria del Tribunal Supremo de Puerto Rico, así como de otra jurisdicción, por los mismos hechos o conducta.

(b)   Ley aplicable. En el ejercicio de la autoridad disciplinaria del Tribunal Supremo de Puerto Rico, aplicarán las reglas de conducta profesional de la manera siguiente:

(1)   por conducta en conexión con un asunto pendiente ante un tribunal, aplicarán las reglas de la jurisdicción donde ubica ese tribunal, a menos que las reglas de ese tribunal provean de otro modo; y

(2)   por cualquier otra conducta, las reglas de la jurisdicción en la que ocurrió la conducta de la persona que ejerce la abogacía o, si el efecto predominante de la conducta es en otra jurisdicción, aplicarán las reglas de esa jurisdicción. Una persona que ejerce la abogacía no estará sujeta a disciplina si su conducta está en cumplimiento con las reglas de la jurisdicción

en la que el abogado o la abogada cree razonablemente que ocurrirán los efectos predominantes de su conducta.

**COMENTARIOS**

**Autoridad disciplinaria**

[1] La conducta de un abogado admitido o de una abogada admitida a ejercer en Puerto Rico está sujeta a la autoridad disciplinaria del Tribunal Supremo de Puerto Rico. La extensión de la autoridad disciplinaria de esta jurisdicción sobre otras personas que ejercen la abogacía que proveen u ofrecen proveer servicios legales en esta jurisdicción obedece a la protección del público en Puerto Rico.

**Ley Aplicable**

[2] Una persona que ejerce la abogacía puede estar sujeta a más de un conjunto de reglas de conducta profesional que imponen obligaciones diferentes. La persona que ejerce la abogacía podría estar admitida a ejercer la profesión en más de una jurisdicción con reglas diferentes, o podría estar autorizada para practicar ante un tribunal particular cuyas reglas difieren de las de la jurisdicción o jurisdicciones en las que el abogado o la abogada está admitido o admitida. Además, la conducta de la persona que ejerce la abogacía puede implicar contactos sustanciales con más de una jurisdicción.

[3] El inciso (b) trata de resolver tales conflictos potenciales. Su premisa es que minimizar los conflictos entre reglas, así como la incertidumbre sobre cuáles reglas son aplicables, es para el mejor interés tanto de la clientela como de la profesión. En consecuencia, se adopta el criterio de (i) disponer que cualquier conducta particular de una persona que ejerce la abogacía estará sujeta a un solo conjunto de reglas de conducta profesional, (ii) determinar, de la manera más directa posible, cuál es el conjunto de reglas que aplica a una conducta particular, de manera compatible con los intereses reglamentarios apropiados de las jurisdicciones pertinentes, y (iii) proporcionar protección contra la disciplina cuando las personas que ejercen la abogacía actúan razonablemente ante la incertidumbre.

[4] El subinciso (b)(1) establece que en cuanto a la conducta de una persona que ejerce la abogacía que se relacione con un procedimiento pendiente ante un tribunal, la persona que ejerce la abogacía estará sujeta solamente a las

reglas de conducta profesional de la jurisdicción de ese tribunal. En cuanto a todas las demás conductas, incluida la conducta en anticipación de un procedimiento que aún no está pendiente ante un tribunal, el subinciso (b)(2) dispone que la persona que ejerce la abogacía estará sujeta a las reglas de la jurisdicción en donde ocurrió la conducta de la persona que ejerce la abogacía, o si el efecto predominante de la conducta del abogado o abogada es en otra jurisdicción, aplicarán las reglas de esa jurisdicción a la conducta. En el caso de una conducta en anticipación de un procedimiento que probablemente se presentará ante un tribunal, el efecto predominante de tal conducta podría ser donde ocurrió la conducta, donde ubica el tribunal o en otra jurisdicción.

[5] Cuando la conducta de una persona que ejerce la abogacía implica contactos sustanciales con más de una jurisdicción, puede que no esté claro si el efecto predominante de la conducta de la persona que ejerce la abogacía ocurrirá en una jurisdicción diferente a aquella en la cual la conducta ocurrió. Mientras la conducta de la persona que ejerce la abogacía se ajuste a las reglas de una jurisdicción en la cual cree razonablemente que ocurrirá el efecto predominante de su conducta, la persona que ejerce la abogacía no estará sujeta a sanciones disciplinarias bajo esta regla. En cuanto a los conflictos de intereses, al determinar la creencia razonable de una persona que ejerce la abogacía bajo el subinciso (b)(2), un acuerdo escrito entre la persona que ejerce la abogacía y la o el cliente que razonablemente especifique la jurisdicción en particular respecto al alcance de este subinciso, podría ser considerado si el acuerdo fue obtenido con el consentimiento informado de la o del cliente, confirmado en el acuerdo.

[6] Si dos jurisdicciones en las cuales la persona que ejerce la abogacía está admitida actuaran en contra del abogado o de la abogada por la misma conducta, deberían, al aplicar esta regla, identificar las reglas éticas que rigen. Deberían tomar todas las medidas apropiadas para que aplique la misma regla a la misma conducta y, en todo caso, deberían evitar proceder contra una persona que ejerce la abogacía basándose en dos reglas inconsistentes.

[7] Las personas que ejercen la abogacía que participan en la práctica transnacional están sujetas a la disposición sobre la ley aplicable, a menos que el derecho internacional, los tratados u otros acuerdos entre autoridades reguladoras competentes en las jurisdicciones concernidas dispongan lo contrario.